UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | | |
|---|---|---|
| **KENNY BROWN,** *et al.* | : | ELECTRONICALLY FILED |
| | : | |
| **Plaintiffs** | : | CASE NO. 2:13-cv-00068 |
| | : | |
| V. | : | |
| | : | |
| **COMMONWEALTH OF KENTUCKY,** *et al.* | : | |
| | : | |
| **Defendants** | : | |

## GREG STUMBO, SPEAKER OF THE HOUSE OF REPRESENTATIVES' MOTION TO DISMISS SENATE PRESIDENT'S MOTION FOR DECLARATORY RELIEF

Comes Speaker of the House of Representatives Greg Stumbo, (hereinafter "Speaker Stumbo"), by counsel, and moves this Honorable Court to DISMISS the demand for declaratory relief filed by President Stivers. In support of the Motion, Speaker Stumbo would show this Court as follows:

A.  THE QUESTION PRESENTED IS SOLELY ONE OF LEGISLATIVE POLICY

In the Cross-Claim filed by President Stivers, the Cross-Claim Plaintiff demands that this Court "resolve questions regarding the constitutionality of redrawing state legislative districts using an adjusted population base whereby certain federal prisoners are subtracted from the numbers reported by the United States Census Bureau for the 2010 census." See: Answer, Counterclaim and Cross Claim of Robert Stivers, at pp. 10-11.

1

It is well established that the counting of prisoners for redistricting purposes is a public policy decision committed solely to the state legislature. The Cross-claimant fundamentally misperceives proper use of census data. A recent scholarly journal article sets the record straight:

> Not only does the federal government not require state and local governments to count incarcerated people at the prison location, but the Census Bureau has recently begun helping these governments do the opposite. The Census Bureau recently changed how it publishes its data to make it easier for states and municipalities to draw districts without including the prison population.

See: *Breaking the Census: Redistricting in an Era of Mass Incarceration*, 38 William Mitchell Law Review 1241, at 1248 (2012).

The Census Bureau actually publishes specific data precisely to aid states in not counting these prisoners. Again, the journal article offers guidance:

> Although this is not commonly understood, there is no one monolithic decennial "Census." That is, there are actually at least three different decennial data products provided by the U.S. Census Bureau that are relevant to redistricting, each with its own purpose, methodology, and numbers. …The third is the Advance Group Quarters Summary file, produced for the first time after the 2010 Census, **for the explicit purpose of helping governments with the problem of prison-based gerrymandering.**

Id, emphasis supplied. The Census Bureau provides this data in order to address a "longstanding flaw in the Census count[ing] incarcerated people as residents of the prison location, even though almost all are barred from voting and are not legal residents of the surrounding community." Id., at p. 1241.

B.  COUNTING PRISONERS DILUTES KENTUCKY'S CITIZEN VOTES

The House determined that federal prisoners are a transitory, non-resident, non-voting population and so should not be counted in apportioning legislative seats. A legitimate public interest is clearly served by excluding the federal prisoners. As a learned commentator notes:

> When district population counts include incarcerated populations, people who live close to the prison are given more of a say in government than everybody else. The practice of

> using prison populations to dilute the votes of residents in other districts is referred to as "prison-based gerrymandering."

Id, at 1241-1242.

The Cross-claimant would have this Court ignore nearly 50 years of United States Supreme Court jurisprudence by declaring that such prison populations must be counted. Not satisfied with that novel demand, the Cross-Claimant also asks that this Court arbitrarily select a census or group of data **which is not before the Court or part of the record** and based on that unknown data, enter a declaratory judgment that the unknown factual information is the one data set that is required to be used. That is not the function of the judicial system. It is crystal clear that a state is free to exclude prison population data in apportioning legislative districts. In *Burns v, Richardson*,. 384 U.S. 73 (1966) the United States Supreme Court said:

> Neither in Reynolds v. Sims nor in any other decision has this Court suggested that the States are required to include . . . persons denied the vote for conviction of crime in the apportionment base by which their legislators are distributed and against which compliance with the Equal Protection Clause is to be measured. The decision to include or exclude any such group involves choices about the nature of representation with which we have been shown no constitutionally founded reason to interfere.

384 U.S., at 92.

The central question in this case is whether the Senate intends to include the transitory, non-resident prisoners for purposes of redistricting. The Senate evades answering this simple question and instead demands that this Court rule on a hypothetical situation, without the census data or an alternate map provided by the Senate to provide even tenuous support for its demand. This Court should reject the deeply flawed suggestion that it, and not state policy makers, should answer that basic question.

The Senate has the same right and duty as the House to ensure that census data accurately reflects the face of the community. The House found that the best public policy is to not count federal prisoners. This is so because the vast majority of these prisoners have never been Kentucky residents. The Federal Bureau of Prisons reports that more than of 90% of these

prisoners are not Kentucky residents. See: Exhibit 1, appended hereto. Obviously, none of the prisoners are qualified to vote in Kentucky while incarcerated.

The House recognized that federal prisoners housed in federal facilities are not appropriately counted in redistricting. This is a public policy judgment made openly and forthrightly. Unfortunately, the Senate has failed to respond to this common sense proposal, other than to claim in the instant pleading that it was "not notified" until March 4, 2013 of the House plan.  Whatever the truth of this assertion, the Senate has now had over three months to consider a plan which either counts or does not count prisoners and to determine the appropriate action.  Rather than taking meaningful steps to accomplish responsible redistricting, the Senate instead demands that this Honorable Court rule on an exclusively Legislative prerogative.

Such procedural delays do not advance the parties' shared goal of prompt legislative resolution. The Senate may find it appropriate to count prisoners, or it may not. That determination is to be made by the Senate, not by a Federal court. The issue will then be properly resolved in the regular legislative process in an upcoming Special Session.


### C.  THE MATTER IS NOT RIPE FOR DECLARATORY RELIEF

All courts recognize that a "real controversy" is a prerequisite to declaratory relief under KRS 418.020. 'Even though a court may have jurisdiction of the subject matter and the parties, there is no absolute mandate compelling it to exercise that jurisdiction.' 22 Am.Jur.2d, *Declaratory Judgments,* § 9, at 845. It is not the function of the court to render *advisory* or academic opinions. *Draco v. Liberty National Bank,* Ky., 267 S.W.2d 95  (Ky. 1954).

4

This Honorable Court should specifically reject the Cross-claimant's assertion that "it is appropriate for this Court to address by way of declaratory relief whether it is constitutionally acceptable to redistrict using the adjusted population base proposed by the House of Representatives." See: *Answer, Crossclaim and Counterclaim,* at p. 18, para. 38. That question was long ago resolved by the United States Supreme Court as being exclusively a legislative determination.

The supposed impasse has been entirely created by Senate inaction. It will be rapidly resolved in a Special Session, which removes any excuse for delay. It is the task of the Senate itself to decide the best public policy. If the Senate finds the interests of non-resident felons to be so great as to justify dilution of the votes of Kentucky's citizens, it should say so directly, rather than hiding behind a sham legal maneuver. The legislative process will then function appropriately.

The law is quite clear in holding that the requested ruling is not appropriate under the present facts. The earliest comments on the Federal Declaratory judgment Act make this plain:

> One of the primary purposes behind the Declaratory Judgment Act was to enable plaintiffs to preserve the status quo before irreparable damage was done, see E. Borchard, *supra,* at 58, and a case should not be considered justiciable unless "the court is convinced that [by its action] a useful purpose will be served." *Id.* at 29. The idea behind the Act was to clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future.

69 Cong.Rec. 2108 (1928).

The Federal Declaratory Judgment Act should not be misused for procedural fencing. The district court's exercise of discretion under this Act is reviewed for abuse of discretion.

5

*Scottsdale Ins. Co. v. Roumph,* 211 F.3d 964, 967 (6th Cir.2000). In assessing the district court's discretion, this court generally considers five factors:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Id.* at 968.

Cited with approval in *Northland Ins. Co. v. Stewart Guar. Co*, 327 F.3d 448 (6th Cir. 2003).

The requested relief satisfies **none** of these factors. It settles no controversy, clarifies no legal issue, is clearly interposed as a procedural gambit, would strip state institutions of policy making power, and, perhaps most importantly, would conflict with the upcoming Special session, which is the "alternative remedy that is better."

The law uniformly demands an actual case or controversy exist prior to judicial intervention and declaration of rights. There must be a clear showing that the requested advance determination "would eliminate or minimize the risk of wrong action or mistakes by any of the parties.: *Combs v. Matthews,* Ky., 364 S.W.2d 647 (1963); *Board of Education of Lexington v. Harville,* Ky., 416 S.W.2d 730 (1967).

In the present case, the Cross-Claimant makes speculative claims regarding prisoner data, and asserts that this Court should order "use" of this prisoner data without any discussion whatsoever of the underlying public policy concerns. Under these circumstances, the matter is clearly not ripe for any declaration of rights. This Court is not required to guess what the data is,

6

to imagine what the effect of the use of the speculative and unspecified data might be, or to envision a future based on such hypotheticals.

The law provides that "justiciability turns on evaluating the appropriateness of issues for decision and the hardship of denying relief." *Commonwealth v. Carroll County Fiscal Court,* Ky.App., 633 S.W.2d 720 (1982). Declaratory judgment is not appropriate unless there is a clear showing that there are antagonistic parties, that the issue has an immediacy and that a useful public purpose can be served by a judicial adjudication**.** *Lowery v. County of Jefferson,* Ky., 458 S.W.2d 168 (1970). Even where such a clear showing exists, which is not the case herein, the law does not require the Courts to take action. *McConnell v. Com.*, 655 S.W.2d 43 (Ky. App., 1983). The law simply provides that in the exercise of reasonable discretion, the Court may find such a declaration of rights appropriate on the express grounds that there is an immediate, prominent and non-academic concern to the public which the petitioning individuals serve. 22 Am.Jur.2d, *Declaratory Judgments,* § 9, at 845; KRS 418.020.

A party demanding a declaratory judgment must show that resolving this declaratory-judgment action will definitively settle the controversy between the parties. *Travelers Indem. Co. v. Bowling Green Prof'l Assocs,* 495 F.3d 271-72 (6th Cir. 2007). Cross-Claimant has not even made a bare attempt to meet this initial benchmark. Cross-Claimant expresses some vague unhappiness with the House's map and some unspecified "census data", and simply throws up his hands and demands that the Court invade the province of the legislature, find appropriate data upon which to redistrict, determine all factual and legal issues relevant thereto, take the reins of control away from the public's elected representatives, and basically run the entire process for the Senate. That is not a lawful demand and must be summarily rejected by this Court.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, gives federal district courts the discretion whether to exercise their jurisdiction in actions brought pursuant to the Act. Courts note that "[t]here is ... nothing automatic or obligatory about the assumption of `jurisdiction' by a federal court' to hear a declaratory judgment action." *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F.Supp.2d 737, 743 (E.D. Ky., 2002), citation to authority deleted. This Court has repeatedly affirmed that:

> District courts must exercise this discretion cautiously. We are, after all, courts of limited jurisdiction. And, if our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources. *See Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co.,* 177 F.2d 942, 944 (6th Cir.1949) ("A doctrine conditioning the exercise of discretion in granting a declaratory judgment that is to be derived from the cases, is that no declaration should be made unless it serves a useful, practical purpose." (citing *United States v. Jones,* 176 F.2d 278 (9th Cir.1949), *Smith v. Mass. Mut. Life Ins. Co.,* 167 F.2d 990 (5th Cir.1948), and *Aetna Cos. & Sur. Co. v. Quarles,* 92 F.2d 321 (4th Cir.1937))). The Sixth Circuit recognized as much when it cautioned district courts not to jump into the middle of ongoing litigation: "`declaratory judgment actions seeking an advance opinion of indemnity issues are seldom helpful in resolving an ongoing action in another court.'" *Bituminous Cos. Corp. v. J & L Lumber Co.,* 373 F.3d 807, 812 (6th Cir.2004).

A similar rationale must apply here, where the parties are actively engaged in the state legislative process to finalize redistricting, action by this Court might unlawfully or inappropriately interfere with that process, and so should be denied.

Further, this Court has noted in a recent opinion that a federal district court must not invade the province of a state forum by permitting a federal declaratory action to proceed when appropriate action is being taken by the state. For this reason, this Court mandated that the district court consider three additional sub-factors to determine whether its exercise of jurisdiction is appropriate. These factors are:

8

    1) whether the underlying factual issues are important to an informed resolution of the case;

    2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

    3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Grange Mut. Cas. Co. v. Safeco Ins. Co. of America*, 565 F.Supp.2d 779, 790 (E.D. Ky., 2008).

    One of the most important questions to be answered by the Court in determining whether to intervene and provide a declaration of rights is whether the ruling would "settle the controversy." *Secura Ins. Co. v. Gray Const., Inc.,* 661 F.Supp.2d 721, 729 (W.D. Ky., 2009). In the case before this Court the Cross-Claimant has not even been able to outline what the actual controversy is, let alone the facts and data upon which the Court could reasonably rely in attempting to settle any disagreement. Entry of a declaratory judgment by this Court would simply be a ruling upon a hypothetical, with no basis in fact or law. For this reason, the demand for a declaration of rights must be rejected.

    It is clearly appropriate for the parties to meet in the upcoming special legislative session, determine appropriate data, and propose maps based on such data. For this reason, the matter is premature and not ripe and the Court must stay its hand until the completion of the Special Session on redistricting.

## **CONCLUSION**

This Court must following the directions of the United States Supreme Court, which has repeatedly admonished that federal courts exercising this discretion should avoid "[g]ratuitous interference with the orderly and comprehensive disposition" of state issues. *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 495 (1942).  The underlying factual issues and concerns are being addressed by the legislature, and the matter is not ripe for a declaration of rights in this forum.  The Court must DENY the Cross-Claimant's demand for declaratory relief.


Respectfully submitted,

/s/  Anna Stewart Whites
**ANNA STEWART WHITES**
600 E. Main Street
Frankfort KY 40601
 (502) 352-2373/FAX 352-6860
AnnaWhites@aol.com

**PIERCE WHITES**
Office of the Speaker
Capitol Building, Rm. 309
Frankfort KY 40601
(502) 564-3366
pierce.whites@LRC.KY.GOV


**CERTIFICATE OF SERVICE**

I hereby certify that on June, 17th 2013, a copy of the foregoing Answer was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's electronic filing system.


s/Anna Stewart Whites