Eastern District of Kentucky
F I L E D
JUN 27 2013
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, et al., | |
| Plaintiffs, | Civil No. 13-cv-68 DJB-GFVT-WOB |
| V. | |
| THE COMMONWEALTH OF KENTUCKY, et al., | |
| Defendants. | |
| MARTIN HERBERT, et al., | |
| Plaintiffs, | Civil No. 13-cv-25 DJB-GFVT-WOB |
| V. | |
| KENTUCKY STATE BOARD OF ELECTIONS, et al., | **MEMORANDUM OPINION & ORDER** |
| Defendants. | |

\*\*\* \*\*\* \*\*\* \*\*\*

Before: BOGGS, *Circuit Judge*; VAN TATENHOVE, *District Judge*; and BERTELSMAN, *Senior District Judge*.

Defendant Greg Stumbo, Speaker of the Kentucky House of Representatives, asks the Court to stay this action in which several Kentucky citizens have challenged the constitutionality of the Commonwealth's legislative districts. [R. 36]. He argues that redistricting is the

legislature's job, a job that will be accomplished given the recent Extraordinary Legislative Session called by the Governor for just such a purpose. The Plaintiffs counter that though the General Assembly should be permitted another opportunity to enact new legislative districts, this Court must take steps necessary to draw constitutional lines should the legislature once again fail to perform its duties. [R. 38]. For the reasons that follow, the Motion to Stay is DENIED.

## I

These cases are always informed by the unsuccessful efforts of the legislative process. Based on the 2000 United States Census, the Kentucky General Assembly passed a legislative redistricting plan in 2002. KRS 5.010(2)(c). This was done not only to satisfy the constitutional dictates of Section 33 of the Kentucky Constitution, which requires the General Assembly to redistrict every ten years, but also to ensure adherence to the "one person one vote" principle derived from the Fourteenth Amendment to the United States Constitution. Ten years later, after another census was conducted revealing population changes in Kentucky, the General Assembly passed a new redistricting plan. However, the constitutionality of this plan was challenged in *Legislative Research Comm'n v. Fischer*, 366 S.W.3d 905 (Ky. 2012), wherein the Kentucky Supreme Court invalidated it. Remarkably, the 2012 elections were held under the 2002 legislative district lines, which had not been altered to reflect demographic changes in Kentucky over the intervening decade. Since that time, the legislature went in and out of the 2013 Regular Session without enacting a new redistricting plan.

Now, approaching year four of the ten year election decennial, the legislative districts in force in Kentucky are the lines passed during the second year of former President George W.

Bush's administration. Concerned that the population changes have caused vote dilution and legislative malapportionment, two sets of Plaintiffs initiated an action, consolidated in this Court, against various officials in the Kentucky state government. Speaker Stumbo, one of those named defendants, now requests the Court to stay its hand to allow the Kentucky General Assembly another opportunity to provide the citizens of the Commonwealth of Kentucky with constitutional legislative districts.

## II

Before considering Speaker Stumbo's substantive arguments in favor of staying this action, it is critical to set forth what the Plaintiffs seek at this point in the litigation. First, they request a declaration by the Court that it would be unconstitutional for the legislative districts passed in 2002 to be employed yet again in 2014.[1] Toward this end, the Plaintiffs seek a period of discovery so that relevant population information can be gathered in support of a dispositive motion. Second, if found unconstitutional, the Plaintiffs seek an order enjoining future elections from taking place under the 2002 legislative districts. Finally, if, and only if, the legislature is unsuccessful in passing constitutional legislative districts sufficiently in advance of the November 4, 2013, residency deadline, the Plaintiffs request that the Court be prepared to fulfill its statutory duty and provide constitutional legislative district plans so that fair elections may go forward in the Commonwealth of Kentucky. Typically, this requires the Court to consider expert testimony and maps proposed by the parties at a trial, after which the Court will adopt a legislative redistricting plan for the next election cycle.

---

[1] At the hearing, the constitutionality of the 2012 elections seemed to be a point of concern for the Plaintiffs. However, the *Brown* Plaintiffs have now withdrawn their claim for damages based on past constitutional violations.

## A

Speaker Stumbo's first argument essentially claims that redistricting is in the province of elected members of the Kentucky General Assembly and should not be wrested from the people by unelected judges. In support of this proposition, he cites *Growe v. Emison*, 507 U.S. 25, 33, 113 S. Ct. 1075, 1081, 122 L. Ed. 2d 388 (1993), wherein the United States Supreme Court stated, "In the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch has begun to address the highly political task itself." As a result, Speaker Stumbo argues that the Court should stay this action to allow the legislature to do its job without further interference from the Court.

The Kentucky General Assembly has the primary responsibility for apportioning legislative districts in the Commonwealth of Kentucky. Ky. Const. § 33; *Growe*, 507 U.S. at 34. Though the Defendants have expended much ink in support of this proposition, neither the Plaintiffs nor the Court disagrees that the law contemplates the legislature as Plan A for redistricting.[2] To be clear, in the view of this Court, the most desirable outcome in this matter is for the Kentucky General Assembly to timely pass a constitutional legislative redistricting plan. However, it is equally apparent that when the political branches fail, the law has vested secondary responsibility for these duties in the hands of the courts – Plan B. *Growe*, 507 U.S. at 36; *see Fischer*, 366 S.W.3d at 908.

---

Therefore, the focus of the Court in this action shall be upon the constitutionality of districts to be used in future elections.

The Supreme Court precedent cited by the Defendants clearly permits the simultaneous operation of these two procedures to ensure constitutional legislative districts are in place in time for an election. In *Growe*, a group of Plaintiffs challenged the constitutionality of the Minnesota legislative districts in a State Court action. 507 U.S. at 27. The parties in that case stipulated that in light of new census data, the challenged districts were unconstitutional. *Id.* A second group of Plaintiffs filed suit, raising similar challenges in Federal Court. *Id.* at 28. A three-judge panel was convened, pursuant to 28 U.S.C. § 2284. *Id.* As both cases proceeded, the Minnesota Legislature held public hearings and passed new maps. *Id.* Regrettably, these new maps contained several flaws, requiring curative legislation, which did not pass the legislature before the session ended. *Id.* As this draft legislation was scheduled to be taken up at the beginning of the next session, the Federal District Court granted a motion "to defer further proceedings pending action by the Minnesota Legislature." *Id* at 29. However, in the interim, the Court did set a deadline for legislative actions and appointed special masters to develop contingent plans in the event the legislature failed to provide constitutional legislative districts. *Id.*

Speaker Stumbo seems to argue that these actions taken by the three-judge panel of the Federal District Court in Minnesota – determining the constitutionality of prior maps, setting deadlines, and working toward the creation of contingency maps – constituted the unconstitutional practice condemned in *Growe*. This is decisively not the case. The Supreme Court noted that, "[o]f course the District Court would have been justified in adopting its own plan if it had been apparent that the state court, through no fault of the District Court itself, would not a develop a redistricting plan in time for the primaries. [*Scott v.*] *Germano*[, 381 U.S. 407, 408 (1965),] requires deferral, not abstention." *Id.* at 36-37.

The failure of the Minnesota three-judge district court was not in making the necessary preparations to fulfill its duties in the event that the legislature could not, but in proactively enjoining all proceedings in the parallel State Court action until after the legislature had the opportunity to pass its maps. *Id* at 30. This stay was ultimately lifted by the Supreme Court. *Id*. The State Court then produced a redistricting plan that was conditioned on the failure of the legislature to pass a constitutional map. *Id*. The Minnesota Legislature did ultimately pass a map, but it was vetoed by the Governor. *Id*. The State Court then issued orders adopting its plans. *Id*. Shortly thereafter, the Federal District Court issued an order adopting its own plans and permanently enjoining state interference with those plans. *Id*. at 31. The District Court justified its order on the basis that the State Court's plan violated federal law, the Voting Rights Act. *Id*. It was this action by the District Court that was condemned. The United States Supreme Court reiterated that "reapportionment is primarily the duty and responsibility of the State through its legislature or other body" and that "[a]bsent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Id* at 34 (internal quotation marks omitted).

The relief suggested by the Plaintiffs in our case is distinct from the type of actions taken by the District Court in *Growe*. As an initial matter, in this case there is no parallel state court proceeding that this Court is taking affirmative steps to enjoin and overrule. In addition, the remedy sought by the Plaintiffs is deferential and would neither obstruct state reapportionment nor use federal litigation to impede it. Now that the Governor has called the Extraordinary Legislative Session, the Plaintiffs are agreeable to affording the General Assembly another

opportunity to enact constitutional maps. However, the Plaintiffs argue that this Court should find the 2002 maps that are currently in force to be unconstitutional, enjoin their use, and have a process in place to provide for constitutional districts should the legislature fail. Proceeding in this manner would not run afoul of the teachings of *Growe*, as the District Court therein took nearly identical steps without admonition of the Court. Moreover, by taking these actions, the Court would do nothing to obstruct the work of the legislature, which would retain the primary responsibility to produce constitutional districts. On the contrary, as recognized by counsel for Senate President Stivers, the specter of this litigation may serve as a "powerful motivating factor" for the General Assembly to timely pass its own redistricting plan.

Further, even if the remedy sought by the Plaintiffs at this point could be considered to be obstructive, it would not necessarily offend *Growe*, which contains an exception for federal court actions taken when there exists "evidence that these state branches will fail timely to perform their duty." *Id.* Counsel for Speaker Stumbo asserts that the General Assembly will pass constitutional legislative maps in the newly called legislative session. And while all are hopeful that the legislature will be successful, history teaches that all too often the past is prologue. As noted by the Plaintiffs, the Kentucky General Assembly has already once failed to pass constitutional legislative maps. *See Fischer*, 366 S.W.3d at 908. After this failure, the legislature unsuccessfully addressed redistricting in the following 2013 session. A map passed the House of Representatives, but as confirmed by both the Plaintiffs and some Defendants, this map has generated nearly as many constitutional questions as it answered. At the hearing, between assurances that a redistricting plan would pass, the representatives of each legislative chamber raised competing concerns over the House map.

The Court remains hopeful, but time is short for all. By November 4, 2013, the Kentucky Constitution requires that citizens of the Commonwealth must reside in the district in which they seek to run for election. Allowing that date to pass constrains the choices of these Plaintiffs and allows districts to be drawn punitively. In short, though the Plaintiffs do not seek and the Court does not intend to provide relief that obstructs the legislature, actions must be taken now to prepare for the possibility that the state institutions will be unable to fulfill their duty in a timely manner.

## B

These same reasons defeat Speaker Stumbo's second argument that a stay is justified under the factors that govern granting a stay pending appeal or ordering a preliminary injunction. When considering a stay pending appeal, the Sixth Circuit considers the following factors:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Serv. Emps. Int'l Union Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (internal quotation marks omitted). Assuming without deciding that these factors are relevant in determining whether a stay is necessary here, as Speaker Stumbo suggests, a stay would still not be merited under these circumstances. As previously discussed, there is some evidence to persuade the Court that the legislature will not be able to timely develop constitutional maps. However, even without a stay, the legislature is permitted sufficient time to attempt to do so, thereby causing no irreparable harm if the stay is not granted. Finally, if the legislature were to fail in passing

constitutional legislative districts and the Court were not prepared to do so, the fundamental voting rights of both the Plaintiffs and the general public would be severely threatened.

The Kentucky General Assembly has the primary responsibility to enact a constitutional redistricting plan, and this Court will not interfere with its ability to carry out these duties. However, the Court also has a statutory job to do. As this Court is secondarily responsible for timely providing constitutional electoral maps should the legislature fail, a stay would interfere with the Court's duties. Either as a result of Plan A or Plan B, all citizens of the Commonwealth of Kentucky must be fairly represented in the coming elections.

### III

Accordingly, for the reasons stated herein, it is hereby **ORDERED** as follows:

(1) The Motion of Defendant Greg Stumbo, Speaker of the Kentucky House of Representatives, to Stay Further Action of this Court [R. 36] is **DENIED**; and

(2) A separate Scheduling Order shall issue by the Court directing the parties of the manner of proceeding and the expedited deadlines to govern this action going forward.

This 27th day of June, 2013.

BY THE COURT:

Gregory F. Van Tatenhove
U.S. District Judge