```
 1                    UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF KENTUCKY
 2                     COVINGTON/FRANKFORT DIVISION

 3  KENNY BROWN, ET AL.,        . Docket No. CV 13-68 (Cov)

 4        Plaintiff,            . Lexington, Kentucky
                                . June 21, 2013
 5           v.                 . 1:00 p.m.
                                .
 6  COMMONWEALTH OF KENTUCKY, . Scheduling Conference
       ET AL.,                  .
 7                              .
    AND                         .
 8                              .
    MARTIN HERBERT, ET AL.,     . Docket No. CV 13-25 (Fkt)
 9                              .
             v.                 .
10                              .
    KENTUCKY STATE BOARD OF     .
11     ELECTIONS, ET AL.,       .
                                .
12        Defendant.            .
    . . . . . . . . . . . . . .
13
                      TRANSCRIPT OF PROCEEDINGS
14       BEFORE THE HONORABLE WILLIAM O. BERTELSMAN
                 AND GREGORY F. VAN TATENHOVE
15            UNITED STATES DISTRICT JUDGES
          AND DANIEL J. BOGGS, SIXTH CIRCUIT JUDGE
16
    APPEARANCES:
17
    For the Plaintiffs:  Mr. Christopher David Wiest
18  Kenny Brown          25 Town Center Blvd.
                         Crestview Hills, KY 41017
19
                         Mr. Richard A. Brueggemann
20                       Hemmer DeFrank PLLC
                         250 Grandview Avenue
21                       Suite 500
                         Ft. Mitchell, KY 41017
22
    Martin Herbert       Mr. William Ellis Sharp
23                       ACLU of Kentucky
                         315 Guthrie Street
24                       Suite 300
                         Louisville, KY 40202
25
```

```
 1  APPEARANCES (Continued):

 2  For the Defendants:  Mr. Pierce B. Whites and Ms. Anna
     Greg Stumbo               S. Whites
 3                        Whites & Whites
                          2374 Switzer Rd.
 4                        Frankfort, KY 40601

 5  Steve Beshear        Mr. Clay A. Barkley
                          Office of Attorney General - KY
 6                        700 Capital Avenue
                          Suite 118
 7                        Frankfort, KY 40601

 8  Kentucky Legislative Ms. Laura Hromyak Hendrix
     Research Commission  Legislative Research Commission
 9                        700 Capital Avenue
                          300 Capitol Building
10                        Frankfort, KY 40601

11                        Mr. Gregory Allen Woosley
                          Kentucky Legislative Research
12                            Commission - 170
                          702 Capital Ave.
13                        Room 170
                          Frankfort, KY 40601
14
     The Kentucky State   Ms. Lynn Sowards Zellen
15   Board of Elections   Kentucky Secretary of State
                          700 Capital Ave.
16                        Suite 152
                          Frankfort, KY 40601
17
     Robert Stivers       Mr. Stanton L. Cave
18                        Law Office of Stanton L. Cave &
                              Associates, P.S.C.
19                        P.O. Box 910457
                          Lexington, KY 40503
20
                          Ms. Jessica Ann Burke
21                        J. Burke Law Offices, PLLC
                          8000 John Davis Drive
22                        #2710
                          Frankfort, KY 40601
23

24

25
```

```
 1  APPEARANCES (Continued):

 2  Court Reporter:        K. Ann Banta, RPR, CRR
                           101 Barr
 3                         Lexington, KY 40507
                           (502) 545-1090
 4
    Proceedings recorded by mechanical stenography,
 5  transcript produced by computer-aided transcription.

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                    Friday afternoon session,

2                                    June 21, 2013, 1:00 p.m.

3                           - - -

4          THE HONORABLE JUDGE BERTELSMAN:    Good

5 afternoon, everybody.

6          I am Judge Bertelsman, and presiding here are

7 my colleagues, and it's very unusual to have a court,

8 a three-judge District Court.

9          I would like to introduce Circuit Judge Boggs

10 of the Sixth Circuit, Daniel J. Boggs, who has been

11 delegated to sit with us, and Judge Van Tatenhove, who

12 sits in Frankfort but has also sat all around the

13 district who is a judge of the Eastern District of

14 Kentucky as I am.

15          So let me begin with a few introductory

16 remarks.

17          I am sure those of you who cover the courts

18 regularly are saying what on earth kind of a court is

19 this and where did it come from and why do we have

20 circuit judges and district judges from all over.

21          And this court is convened under a special

22 statute that covers redistricting cases.

23          And that statute provides that if someone

24 files, as was done here in two of our divisions, a

25 redistricting case challenging the constitutionality

1  of state legislative districts in this case that a

2  three-judge District Court -- that is we are a trial

3  court, we are not an appellate court even though there

4  are three judges -- a three-judge District Court shall

5  be appointed, one of the judges being the judge before

6  who first drew the case.

7         And in this case there were two cases, so

8  Judge Van Tatenhove and I were the judges that drew

9  those cases and the circuit -- Chief Judge of the

10  circuit also appoints a circuit judge to sit.

11         But even though it is an honor to have a

12  circuit judge with us, it is a trial court; and we

13  will proceed, although we have three judges, pretty

14  much as we would in a trial court.

15         So let's begin by having everybody enter

16  their appearances, please.

17         We'll start over here anywhere you want, for

18  the plaintiffs I guess first.

19         MR. WIEST:  Good afternoon, Your Honor,

20  Christopher Wiest, and with me is Rick Brueggemann on

21  behalf of the Northern Kentucky plaintiffs in the

22  Brown case.

23         THE HONORABLE JUDGE BERTELSMAN:  All right.

24         MR. BRUEGGEMANN:  Rick Brueggemann, Your

25  Honor, on behalf of the plaintiffs in the Brown case.

1 Thank you.

2             THE HONORABLE JUDGE BERTELSMAN:  All right.

3             MR. SHARP:  Good afternoon, Your Honor,

4 William Sharp on behalf of the plaintiffs in the

5 Herbert v. Kentucky State Board of Elections, et al.,

6 case.

7             MS. WHITES:  Anna Whites on behalf of Speaker

8 Stumbo.

9             MR. WHITES:  Pierce Whites on behalf of

10 Speaker Stumbo.

11            MR. BARKLEY:  Your Honor, Clay Barkley

12 representing Governor Steve Beshear and the

13 Commonwealth.

14            MS. HENDRIX:  Your Honor, Laura Hendrix on

15 behalf of the Legislative Research Commission.

16            THE HONORABLE JUDGE BERTELSMAN:  All right.

17            MR. WOOSLEY:  Your Honor, Greg Woosley on

18 behalf of the Legislative Research Commission.

19            MS. ZELLEN:  Your Honors, Lynn Zellen on

20 behalf of the Secretary of State, State Board of

21 Elections, the State Board of Elections members and

22 the Executive Director of the State Board of

23 Elections.

24            MR. CAVE:  May it please the court, I am Stan

25 Cave.

1          I am appearing today on behalf of sitting

2   President Robert Stivers.

3          President Stivers is here with me today to my

4   far left, and also my co-counsel is Jessica Burke who

5   also represents sitting President Robert Stivers.

6          THE HONORABLE JUDGE BERTELSMAN:  All right,

7   does that cover everyone?  We leave anyone out?

8          All right, well, we have a lot to cover

9   today, and of course we were all prepared when we read

10  in the paper along with everybody else that the

11  Governor has called a special session which has --

12  will have some effect on some of these motions that we

13  have.

14         The first thing I have on the agenda is an

15  argument on the motion to stay, which I believe was --

16  whoever filed that can come forward.

17         MR. WHITES:  Yes, Your Honor.

18         THE HONORABLE JUDGE BERTELSMAN:  Or come to

19  the podium so we can all hear you.

20         MR. WHITES:  Thank you, Your Honor, Pierce

21  Whites for Speaker Stumbo again.  This is our motion

22  to stay --

23         THE HONORABLE JUDGE BERTELSMAN:  Well, before

24  you -- I hate to interrupt you before you even get

25  through a sentence.

```
 1            MR. WHITES:  Yes, sir.

 2            THE HONORABLE JUDGE BERTELSMAN:  But the

 3  court has some questions to ask you before you get

 4  started.

 5            MR. WHITES:  Very good, sir.

 6            THE HONORABLE JUDGE BERTELSMAN:  So Judge Van

 7  Tatenhove will open for us.

 8            THE HONORABLE JUDGE VAN TATENHOVE:

 9  Mr. Whites, good afternoon.  Good afternoon, ladies

10  and gentlemen.

11            It is a privilege to serve with my colleagues

12  on this trial panel.

13            And I want to begin by saying that there is

14  some common ground we can begin with as it relates to

15  this unique litigation.

16            I think one of the places that would be

17  common to all sides here is the recognition that both

18  the statutory framework and the law in this area has a

19  strong preference that these lines be drawn by the

20  legislature.

21            I don't think I would have any disagreement

22  about that --

23            MR. WHITES:  I think that's absolutely true.

24            THE HONORABLE JUDGE VAN TATENHOVE:  -- would

25  that be correct?
```

1           MR. WHITES:  And that it's the case that the

2   plaintiffs and the Speaker have relied on and both

3   agreed on that point.

4           THE HONORABLE JUDGE VAN TATENHOVE:  Okay,

5   well, that's the easy place to start.

6           It would seem to me that there would be

7   agreement -- and I am going to ask if there are and

8   have you speak to this and perhaps the plaintiffs

9   speak to it as well, particularly the defendants --

10  agreement that there is no circumstance in which the

11  2014 election can be conducted with the 2002 lines

12  because they are in fact unconstitutional at this

13  juncture.

14          MR. WHITES:  I believe that the newly issued

15  call which has been issued for August 19th, the

16  special session would then commence at noon on August

17  19th would resolve that issue by providing new and

18  constitutional redistricting.

19          THE HONORABLE JUDGE VAN TATENHOVE:  Well, but

20  my question is more specific than that.

21          I think that's the expectation and hope of

22  everyone.

23          But is there any circumstance in which those

24  2002 lines would in fact be constitutional -- it would

25  be constitutionally permissible to use them in the

1  2014 election?

2          MR. WHITES:  It seems unlikely, Your Honor,

3  that it would reach that point, and certainly by

4  having the legislature carry out its constitutional

5  duty pursuant to the call, we would never reach that

6  point.

7          THE HONORABLE JUDGE VAN TATENHOVE:  Well,

8  there is really only -- there is a plan A, which is

9  the legislature acting; or there is a plan B, which is

10  the court acting.

11          Is there a plan C in which the 2002 lines

12  would be used yet again in 2014?

13          MR. WHITES:  None that has been proposed,

14  Your Honor.

15          THE HONORABLE JUDGE VAN TATENHOVE:  Okay,

16  then let me ask my third question.

17          As we look at it -- and this is for

18  information purposes as much as anything -- it appears

19  to us that there is a drop dead date here, and that

20  drop dead date appears to be November the 4th of this

21  year.

22          And that relates to the fact that a

23  individual who wants to run for office must be a

24  resident of the legislative district for one year

25  prior to the election.

1        So it would seem that there is no

2  circumstance in which there could not be

3  constitutionally affirmed districts in place later

4  than November the 4th, 2013 of this year; is that

5  fair?

6        MR. WHITES:  I think that all of the parties

7  have addressed that issue and have advanced proposals

8  for accomplishing the redistricting within that time

9  frame.

10        Certainly that -- that has been the Speaker's

11  position, and as late as this morning, unfortunately

12  we had to file a reply this morning because the call

13  was issued late yesterday which specifically addresses

14  that issue and points out that the special session

15  which has been called for August 19th would allow for

16  the creation of the new legislative districts well

17  within the time frame specified by the plaintiffs

18  which is November 4, 2013.

19        THE HONORABLE GREGORY VAN TATENHOVE:  And

20  would you agree with that, that that -- there have to

21  be districts in place by November 4?

22        MR. WHITES:  That would be correct.

23        THE HONORABLE GREGORY VAN TATENHOVE:  Now,

24  this is purely a process question.

25        Does anything have to happen, is there any

1 other time necessary with regard to legislative

2 districts?

3          Prior to November 4th and on the mid-- at

4 10:00 at night on November 3rd, if the legislature

5 were to enact the districts at that time, could they

6 then be used on November the 4th or does the Secretary

7 of State's office have to do something?

8          Is there any process that has to occur that

9 in essence would advance that date further?

10          MR. WHITES:  None that has been identified by

11 the parties, Your Honor, and we have operated under

12 the November 4th deadline.

13          Of course, the Secretary of State's office is

14 here today, they may take a different view; but none

15 that we are aware of, Your Honor.

16          THE HONORABLE JUDGE VAN TATENHOVE:  Well,

17 let's just clarify that because I think it's important

18 as it relates to your motion that we know what the

19 drop dead date -- the drop dead date is.

20          Miss Zellen?

21          MS. ZELLEN:  Yes, Your Honors, there is

22 nothing that the Secretary of State's office would

23 have to do after redistricting legislation has passed

24 and has been signed into law.

25          The -- the thing that would have to occur is

1  the potential candidates would need to know in

2  sufficient time to meet that November 4th deadline.

3         THE HONORABLE JUDGE VAN TATENHOVE:  But there

4  is no statutory or regulatory requirement that they be

5  notified so many days in advance or does it have to be

6  published in the paper or --

7         MS. ZELLEN:  None that I am aware of,

8  Your Honor.

9         THE HONORABLE JUDGE VAN TATENHOVE:  Okay, all

10  right, thank you very much.

11         THE HONORABLE JUDGE BERTELSMAN:  Well, I --

12  thank you for yielding.

13         I have a question.  By the way, your

14  arguments have been brilliant so far.

15         MR. WHITES:  Oh, thank you, Your Honor,

16  greatly assisted.

17         THE HONORABLE JUDGE BERTELSMAN:  I have a

18  question also.

19         It is not a speculative question because you

20  know it happened.

21         What if the legislature meets and fails to

22  reach a plan or reach a plan -- reaches a plan that is

23  unconstitutional under either the Federal or State

24  Constitution, and here it is getting on to November.

25  What happens then?

1         MR. WHITES:  Well, we have received extensive

2    guidance both from the Kentucky Supreme Court and --

3    and through other sources as we have worked through

4    these issues.

5         And the Governor, the Speaker and the

6    President of the Senate have made it a priority to

7    agree upon the basic ground rules to ensure that a

8    constitutional plan is passed, and we do appear to be

9    on a -- on a path to accomplish that, Your Honor.

10         THE HONORABLE JUDGE BERTELSMAN:  Okay, that's

11    not really an answer to my question.

12         I don't know if there is an answer to my

13    question.

14         But the -- before, in the last plan that was

15    passed it was declared in the Constitution and the

16    next election was held under the 2002 plan.

17         That's why Judge Van Tatenhove over here

18    asked and we all agreed that that plan is defunct.

19         MR. WHITES:  Yes, and it is our suggestion

20    and assertion both in our motion for the stay and in

21    this morning's reply that we permit the extraordinary

22    session to take place.

23         We have every reason to expect that it will

24    produce a constitutional plan because so many of the

25    issues have been answered, and the parties have been

1  working closely together in order to ensure that a

2  constitutional plan will be produced; and it is our

3  suggestion that the matter be revisited at that time.

4          That would be -- well, it's difficult to say

5  exactly how long an extraordinary session would last.

6  I am sure the aim is to do it in five days.

7          THE HONORABLE JUDGE BERTELSMAN:  All right.

8          MR. WHITES:  So that would put us in late

9  August.

10         THE HONORABLE JUDGE BERTELSMAN:  Let me ask

11 one last question and open it to my colleagues.

12         If that scenario occurred which occurred

13 before, should this court be ready with a plan?

14         MR. WHITES:  Well, Your Honor, it is

15 certainly to be hoped that the legislature will carry

16 out its duty, and I would think that the process,

17 should for some reason the process break down at some

18 point, I would think that this court would be greatly

19 guided by the product of that special session.

20         THE HONORABLE JUDGE BERTELSMAN:  Okay.

21         MR. WHITES:  We certainly hope so.  As the

22 court is no doubt aware, there are a variety of

23 precedents on this point.

24         There are a variety of paths open to this

25 tribunal and proceeding.

1          And we would certainly urge that in the

2    unfortunate event that there was, for any reason, a

3    plan was not signed into law that the court could be

4    guided by the actions taken by the General Assembly.

5          THE HONORABLE JUDGE BERTELSMAN:  Okay.  Judge

6    Boggs?

7          THE HONORABLE JUDGE BOGGS:  Counsel, your

8    argument has been brilliant today, and I wouldn't

9    charge you with obfuscation; but I did not hear you

10   give an explicit answer to Judge Van Tatenhove asking

11   do you concede that the 2002 lines are

12   unconstitutional and the 2014 election cannot be

13   carried out on those lines?

14         MR. WHITES:  No one has suggested that the

15   2014 election be carried out.

16         THE HONORABLE JUDGE BOGGS:  That's still not

17   -- that's still not an answer to my question,

18   counsel.

19         Do you concede that the 2002 lines are

20   unconstitutional under current facts and --

21         MR. WHITES:  They certainly exceed -- they

22   exceed the maximum allowable deviations; therefore,

23   they are unconstitutional.

24         THE HONORABLE JUDGE BOGGS:  Thank you,

25   counsel.

1          MR. WHITES:  And they have been found to be

2   so by the Kentucky Supreme Court.

3          THE HONORABLE JUDGE BOGGS:  But -- okay, but

4   under the Federal Constitution as well.

5          MR. WHITES:  Yes, correct.

6          THE HONORABLE JUDGE BOGGS:  All right, thank

7   you, counsel.

8          THE HONORABLE JUDGE BERTELSMAN:  All right,

9   now continue with your prepared remarks, sir.  Thank

10  you for your patience.

11         MR. WHITES:  Thank you.  I think the

12  brilliant questioning has probably already put forth

13  our argument pretty well.

14         As I noted, we have a call as of late

15  yesterday, and we certainly regret that it came so

16  late.  We realize that that is unfortunate.

17         But we provided to the court this morning

18  along with a link to the Secretary of State's website

19  for the original documentation, and it is Attachment 1

20  to Speaker Stumbo's reply in support.

21         The central issue in this motion to stay

22  concerns the appropriate separation between the

23  legislative and judicial functions, and this court has

24  already seized upon that very important issue in its

25  initial questions here today.

1          I think it's instructive that both the

2   plaintiffs and the Speaker rely heavily on Growe v.

3   Emison in their pleadings in this.

4          And Growe makes very clear that the Federal

5   Court should defer action where a legislature has

6   begun to address the highly political task of

7   redistricting, and you will see that cited in the

8   Speaker's --

9          THE HONORABLE JUDGE VAN TATENHOVE:  But isn't

10  part of the struggle here is that we are not in year

11  one and we are not in year two, we are in year three

12  preparing for the election in year four since the

13  Census?

14         So there has been a lot of deference to the

15  legislative process up to this point.

16         MR. WHITES:  There has been, there has been,

17  Your Honor, although I think that it is important to

18  recall that that deference should continue.

19         And of course each case has to be judged on

20  its own facts, and here we had a challenge to a

21  previously passed redistricting plan which resulted in

22  a very lengthy Kentucky Supreme Court decision which

23  laid out I think extensive additional guidance.

24         That was guidance that the House followed in

25  the just concluded session in 2013 in producing a map,

1  a map which while there may be quibbling over whether

2  or not to count the federal prisoners, leaving that

3  issue aside, it has not been suggested that the plan

4  was otherwise unconstitutional.

5          So what we have here, it seems to me, is a

6  situation where we are beginning from the instructions

7  laid down by the Kentucky Supreme Court.

8          And I do believe that the legislature should

9  be entitled to another opportunity to meet the

10  standards set out by the Kentucky Supreme Court.

11          I do think there was a great deal of

12  clarification provided in the Fischer -- most recent

13  Fischer case.

14          So I would suggest that it is still highly

15  appropriate that the court defer to the legislative

16  process.

17          And I -- there certainly is no shortage of

18  cases from the Supreme Court and indeed in every

19  jurisdiction pointing out the importance of -- of

20  doing so.

21          And the plaintiffs' opposition memo, which

22  was filed I believe yesterday, also cites Growe, the

23  United States Supreme Court case, as requiring

24  evidence that the state legislature will fail to

25  timely perform its duty to redistrict.  So we are in a

1  situation --

2          THE HONORABLE JUDGE BOGGS:  We do know the

3  legislature has already once timely failed -- has

4  failed to timely pass the constitutional plan.

5          MR. WHITES:  Well, I would suggest,

6  Your Honor, that we -- since the Kentucky Supreme

7  Court has offered its guidance that we are entitled to

8  an opportunity to meet those guidelines and that

9  indeed the House has met those guidelines, although

10 there is a dispute over a matter of 8,000 federal

11 prisoners which will be resolved.

12          As the Speaker, President and Governor have

13 agreed, there will be ground rules agreed to as to

14 what the population is.

15          THE HONORABLE JUDGE BOGGS:  When you said

16 that they have met those guidelines, are you referring

17 to the plan that passed one House in the 2013 session?

18          MR. WHITES:  Yes, Your Honor, yes, I don't --

19 I am unaware of any allegation that that plan is

20 constitutionally deficient other than the assertion

21 that the 8,000 should have been counted.

22          There is no question about deviation,

23 exceeding the maximum allowable deviation of 10

24 percent --

25          THE HONORABLE JUDGE BOGGS:  There is no

1  question about splitting counties?

2           MR. WHITES:  No question about splitting

3  counties, so those appear to be the major hurdles.

4           The question appears to be one -- I don't

5  want to minimize it, but it does relate only to 8,000

6  federal prisoners -- which bears mentioning, as has

7  been briefed -- is a specific overlay of the Census

8  which has been developed for the 2010 Census to enable

9  states to either count or not count those prisoners in

10 recognition of the fact that many states will want to

11 exclude them and do exclude them since they are not

12 residents of the jurisdiction, do not vote in the

13 jurisdiction, are really not in any meaningful sense

14 subject to the jurisdiction.

15          So my point would be that great steps,

16 strides have been made since the Kentucky Supreme

17 Court has offered this additional guidance, and the

18 House has met that.

19          That indicates I believe fairly that both the

20 House and the Senate will have little problem in

21 developing constitutional plans.

22          THE HONORABLE JUDGE BERTELSMAN:  So what you

23 are asking us to do when you say stay, you want us to

24 go home and wait and see what happens with the

25 session, and you want us to preclude any discovery or

1 any activity or further pleadings on the part of the

2 plaintiffs and other parties.  Is that what you are

3 asking us to do?

4        MR. WHITES:  Well, I believe it's a fairly

5 straightforward question at this point regarding will

6 the legislature achieve its goal of passing a

7 constitutional plan in the special session, and if for

8 some reason it does not --

9        THE HONORABLE JUDGE BERTELSMAN:  That wasn't

10 my question.  My question was really much simpler than

11 that.

12        It was what you want us to do is cease all

13 proceedings, all further progress in these proceedings

14 and wait to see what the legislature does.  Is that

15 what you are asking us to do?

16        MR. WHITES:  Well, I think that my answer is

17 equally straightforward in that, as I said a little

18 bit ago, I think it would offer great guidance to this

19 court and certainly other courts have found guidance.

20        When a legislature acts to produce a map, it

21 may then guide this tribunal in resolving the matter.

22        So in that sense, it would not be doing

23 nothing, it would be awaiting the next necessary

24 development to guide the final resolution of this case

25 in the unfortunate event that for some reason this

1  does not become law.

2  THE HONORABLE JUDGE BERTELSMAN:  But you want

3  us to stay discovery or anything like that?

4  MR. WHITES:  It's difficult to know without

5  specificity as to what discovery would then -- would

6  then be helpful at this point.

7  We would suggest that the most

8  straightforward and prudent course of action would be

9  to allow the legislature to meet in special session.

10  THE HONORABLE JUDGE BERTELSMAN:  That would

11  be great except we have got a real time problem --

12  MR. WHITES:  Yes, Your Honor.

13  THE HONORABLE JUDGE BERTELSMAN:  -- if things

14  don't work out as we hope.

15  MR. WHITES:  And the special session would

16  presumably -- although it could not be guaranteed --

17  but presumably would conclude fairly promptly after

18  August 19th.

19  The quickest that a bill can be passed is

20  five days, and typically there is great pressure to

21  act with alacrity.

22  THE HONORABLE JUDGE BERTELSMAN:  Well, finish

23  up your remarks, and we'll hear from the other guys.

24  MR. WHITES:  Thank you, Your Honor.  As I was

25  pointing out in Growe, it does require evidence that

1 the state legislature will fail to timely perform its

2 duty.

3          I would suggest to you that we now have a

4 timetable set out and that there is that evidence that

5 the legislature will fail in its duty is missing in

6 this case, all of the evidence points the other way.

7          In fact the record as we have it now before

8 us says -- states very plainly that there is an

9 orderly procedure in place to assure that

10 redistricting can be accomplished well in advance of

11 the November 4 deadline asserted by the plaintiffs.

12          And in light of that, we would ask that the

13 court stay its hand.

14          THE HONORABLE JUDGE VAN TATENHOVE:  Let me

15 just follow up on one of Judge Bertelsman's

16 questions.

17          Your strongest argument really seems to be

18 that this court ought not to promulgate a plan before

19 its had a chance to see what the legislature has done

20 or deems it a necessity for this case to go forward.

21          We ought not to promulgate a plan before that

22 happens.

23          MR. WHITES:  Yes, Your Honor.

24          THE HONORABLE JUDGE VAN TATENHOVE:  Because

25 we are concerned it needs to happen sooner rather than

1 later.

2          But is there any authority for the

3 proposition that we should not perhaps have a

4 parallel process?

5          And maybe it's helpful to think about it that

6 way, a process that starts now, moves in the direction

7 of this court, drawing lines that perhaps, hopefully,

8 by all, gets mooted out by the legislature then

9 successfully doing its job.

10          MR. WHITES:  Yes, Your Honor, there are a

11 number of options available to this tribunal, and I

12 would encourage -- I would suggest that the best

13 option is to wait and see what is produced and take

14 guidance from that.

15          If the court desires to move on parallel

16 tracks, I would urge it also to request the input

17 obviously of the Houses.

18          But, again, that seems perhaps duplicative,

19 perhaps -- I hesitate to say it -- perhaps interfere

20 with the process of redistricting, I don't know that

21 it would.

22          But it does seem not as desirable a path as

23 simply saying, "Legislature, do your job."

24          We recognize this is a politically charged

25 event.  We recognize that you are on a right

1   timetable.

2          We recognize that a special session has been

3   called and to then assess at that point.

4          THE HONORABLE JUDGE BERTELSMAN:  Let me ask

5   you another question, I think.

6          I believe there is like a one-year residence

7   requirement before the election, if somebody wants to

8   run for a seat?

9          MR. WHITES:  That's my understanding, yes.

10          THE HONORABLE JUDGE BERTELSMAN:  Well,

11   suppose the plan isn't forthcoming by the

12   legislature.

13          We have to wait for it, but it's not

14   forthcoming or if it's forthcoming it's

15   unconstitutional like the last one.

16          Do we have the equitable power to change

17   those dates, to say make the residency requirement six

18   months or there is other -- there is other dates so

19   that we would have time to do our own plan?

20          MR. WHITES:  I do not think -- I would have

21   to double check, Your Honor.

22          If it's a Kentucky constitutional provision,

23   that would clearly not.  Probably not if it's a

24   statutory provision.

25          THE HONORABLE JUDGE BERTELSMAN:  All right,

1 well, that might come up I guess, so we better be

2 thinking about it.

3          MR. WHITES:  Yes, Your Honor.

4          THE HONORABLE JUDGE BERTELSMAN:  All right,

5 thank you, sir.  Had you concluded?

6          MR. WHITES:  Yes, I had.

7          THE HONORABLE JUDGE BERTELSMAN:  Anybody else

8 want to speak on behalf of the motions?

9          MR. WHITES:  Thank you, Your Honor.

10         THE HONORABLE JUDGE BERTELSMAN:  Hearing

11 nobody -- there is a gentleman there --

12         MR. CAVE:  I wanted to speak.

13         THE HONORABLE JUDGE BERTELSMAN:  Did you want

14 to speak, sir?

15         MR. CAVE:  Whenever it's the court's

16 pleasure.

17         THE HONORABLE JUDGE BERTELSMAN:  Well, let's

18 get everybody for it to speak, then we'll have people

19 who are against it.

20         MR. CAVE:  I misunderstood the court.  We'll

21 wait 'til after plaintiffs speak because I believe

22 that we will take the position opposite.

23         THE HONORABLE JUDGE BERTELSMAN:  Okay, go

24 ahead, sir.

25         MR. WIEST:  Good afternoon, Your Honors.  I

1  think a couple points that we would make on this

2  particular issue --

3          THE COURT REPORTER:  I'm sorry, can you state

4  your name?

5          MR. WIEST:  I'm sorry.

6          THE COURT REPORTER:  I'm sorry.

7          MR. WIEST:  Christopher Wiest on behalf of

8  the plaintiffs.

9          THE HONORABLE JUDGE BERTELSMAN:  And who do

10  you represent?

11          MR. WIEST:  The plaintiffs in the Brown

12  action, Your Honor.

13          THE HONORABLE JUDGE BERTELSMAN:  All right.

14          MR. WIEST:  We do not and we are not asking

15  this court to have maps set by August 19th or August

16  23rd.

17          That's not the reason for the opposition to

18  the motion to stay.

19          I do want to talk just briefly about the

20  November 4th deadline.

21          It would be our preference that -- you know,

22  and I don't know exactly where that would be, maybe a

23  week beforehand or a week and a half beforehand, but

24  just that there would be sufficient time for people to

25  react to whatever the maps are, the candidates to move

1  so that they all plan the districts that they want to

2  run, which is a lot of the harm that we are -- we are

3  alleging.

4         I don't think that needs to be well in

5  advance, but it just needs to be a reasonable amount

6  of time for people to react to that.

7         The other piece of this is we have seen a lot

8  of pleadings by the Speaker about being actively

9  engaged in discussions and that kind of thing.

10        The Speaker is asking this court to stay its

11 hand based on a hypothetical future event that may or

12 may not occur.

13        Typically plaintiffs go into court, you

14 challenge things; and imagine if federal courts never

15 took up issues because, well, the legislature says

16 that they are going to fix it.

17        I think, Your Honors, there is an important

18 piece of the equation here.

19        There is a reason that the 2012 redistricting

20 litigation was named Fischer IV, and that was because

21 there were three prior Fischers before that dealt with

22 litigation regarding redistricting in Kentucky.

23        There is no guarantee that there is going to

24 be Constitutional maps or, frankly, any maps that are

25 going to come out of the special session.

1          We appreciate the fact that a special session
2 has been called.
3          THE HONORABLE JUDGE BERTELSMAN:  Let me stop
4 you.  What do you want us to do?
5          MR. WIEST:  Your Honor, we are asking not to
6 stay the matter, to allow discovery to potentially
7 occur.
8          We would like to get to the question of
9 liability.
10          And it is interesting we did hear the
11 concession that the existing maps aren't
12 constitutional.
13          We would like to see an order entered to that
14 effect.
15          So we have resolved this question of
16 liability as a matter of an entry by this court, and
17 now we are really into the key question which is
18 remedy.
19          We do not oppose the legislature taking this
20 issue up in August of 2013, but we also want to make
21 sure that there is an evidentiary record that is
22 established which, you know, could be the submission
23 of stipulated population numbers and stipulated maps
24 sufficient to allow this court to take the issue up in
25 the event that they fail.

1         We do not want to be behind the 8 ball in

2    this matter where this court is, frankly, rushed into

3    decision-making, plaintiffs are in a fire drill trying

4    to get constitutional maps in place because the

5    legislature has failed to do its job or enacts a map

6    that's somehow unconstitutional.

7         And we don't know what those maps are going

8    to look like right now.

9         We don't know what these folks are going to

10   enact.

11        THE HONORABLE JUDGE VAN TATENHOVE:  But what

12   Mr. Whites says has some -- some merit in it.

13        And what he says is we are not starting from

14   scratch here.

15        We have the Supreme Court's decision and the

16   sense that we are really, really close, and the

17   Supreme Court tells us specifically what we have to do

18   to get across the line; and every expectation is

19   that's exactly what's going to happen.

20        MR. WIEST:  And Your Honor, I guess my

21   response to that is the Supreme Court has previously

22   told the legislature in Fischer I, II and III what

23   they needed to do.

24        And obviously they didn't get it right, and

25   then we have Fischer IV.

1        So I hear that argument, but I think, you

2  know, perhaps past action is the best predicter of

3  future behavior.

4        THE HONORABLE JUDGE VAN TATENHOVE:  What are

5  you most concerned about that they don't fix?

6        MR. WIEST:  Your Honor, fundamentally, we

7  would like to see equal population between the

8  districts.

9        I think that is the number one concern

10 obviously is equal population.

11        I think that's the number one federal

12 constitutional concern that we have got.

13        And what we don't want -- and there is a

14 number of other issues that could happen.

15        There could be subsequent state court

16 litigation where, again, whatever they pass is set

17 aside.

18        Now, we are back to the 2002 maps because of

19 what they have done as a consequence of state court

20 action, and that is not what we want.

21        What we want is equal apportionment between

22 the districts.

23        We do not want malapportionment, we do not

24 want vote pollution, particularly for our plaintiffs

25 in Northern Kentucky.

1          THE HONORABLE JUDGE BERTELSMAN:  What do you

2   want us to do until the legislature sits and acts?

3   What do you want us to do in between?

4          Now, I realize that everything changed as of

5   4:00 last night.

6          MR. WIEST:  Right.

7          THE HONORABLE JUDGE BERTELSMAN:  You wrote a

8   brief based on no session being called, and I

9   understand that you didn't have time to write a new

10  one.

11         But hopefully you have had time to think

12  about what do you want us to do, if anything, between

13  now and the time that the legislature meets.

14         MR. WIEST:  Your Honor, I think there is

15  three things this court can do to prepare for the

16  eventuality without interfering with the legislative

17  process and without inhibiting that at all while also

18  preparing for the eventuality in the event of a

19  legislative failure which could be either not passing

20  maps or passing unconstitutional maps.

21         First of all, allowing the parties to develop

22  an evidentiary record which could be, you know,

23  submitted by stipulation as to what are the existing

24  population maps on the precinct-based level so that if

25  this court has to take up redistricting it can be

1 prepared to do so and the parties can be prepared to

2 present maps.

3         Secondly, I -- we would like to pursue a

4 motion or an entry as to liability on the existing

5 2002 maps, that those are unconstitutional with the

6 current populations; and I think if we have resolved

7 the liability issue --

8         THE HONORABLE JUDGE BERTELSMAN:  They

9 submitted it.

10         MR. WIEST:  I know they did, Your Honor, but

11 I guess if we don't have -- we don't have -- we don't

12 have an entry to that effect from this court --

13         THE HONORABLE JUDGE BERTELSMAN:  We will --

14 we will by at least tomorrow morning.

15         MR. WIEST:  Okay.

16         THE HONORABLE JUDGE VAN TATENHOVE:  One of

17 the things, my question was actually very specific, it

18 was about '14 as I recall.

19         You are looking for damages for what occurred

20 in 2012.

21         MR. WIEST:  Or at least, Your Honor, a

22 declaration that was an unconstitutional act.

23         I don't know that -- you know, we are willing

24 to treat --

25         THE HONORABLE JUDGE VAN TATENHOVE:  Well,

1  hasn't the Supreme Court of Kentucky already addressed

2  that issue?

3            MR. WIEST:  Well, Your Honor, they -- they

4  addressed the 2012 maps, but they didn't address -- in

5  fact, the Supreme Court of Kentucky ordered

6  essentially that an unconstitutional map from 2002 be

7  used in the 2014 election.

8            I mean, I think that's a fundamental problem,

9  and we cannot have this 2000 map -- 2002 map used

10 again in 2014.

11            We think that at a minimum we are entitled to

12 declaratory judgment that the 2012 elections were

13 unconstitutional.

14            We are more, frankly, concerned, my clients

15 are more concerned with the 2014 election process.

16            The past damages or anything else, we are

17 willing -- in fact we indicated in a filing late

18 yesterday that we are willing, frankly, to forego

19 certain claims because we really want to make sure

20 that -- that what this -- what this action is all

21 about is conducting 2014 elections in a timely and

22 orderly manner with constitutional maps.

23            We would prefer the defendants perform their

24 constitutional duty, enact constitutional maps.

25            But we don't have a lot of faith that they

1  will necessarily do that, and we feel like we need to

2  be in a position and this court needs to be in a

3  position to act in the event that they fail to do

4  that.

5          THE HONORABLE JUDGE BERTELSMAN:  So you want

6  to do discovery -- you want to do discovery between

7  now and then.

8          MR. WIEST:  Your Honor, we may be able to

9  resolve most of those issues by stipulation.  I mean,

10 I don't --

11         THE HONORABLE JUDGE BERTELSMAN:  If they

12 can't, what do you want to do?

13         MR. WIEST:  Well, we are going to need to

14 conduct some discovery on those issues.

15         THE HONORABLE JUDGE BERTELSMAN:  Again, to

16 damages, I don't understand that claim because this is

17 a Federal Court.

18         We are precluded by the Eleventh Amendment

19 from awarding damages against the state.

20         As far as damages against the judges of the

21 Supreme Court of Kentucky, they are protected by

22 absolute judicial immunity.

23         As far as damages against the legislators as

24 individuals, they are protected by absolute

25 legislative immunity.

1          I don't really see anybody left for you to

2   get damages from.

3          MR. WIEST:  Well, Your Honor --

4          THE HONORABLE JUDGE BERTELSMAN:  That's not

5   to say attorneys fees can't be awarded.

6          MR. WIEST:  Right, but --

7          THE HONORABLE JUDGE BERTELSMAN:  But I don't

8   see anybody talking about liability and damages.  I

9   don't see any liability and damages.

10          MR. WIEST:  Well, Your Honor, there are the

11   individual Board of Elections members who conducted

12   that election and administered that election and --

13          THE HONORABLE JUDGE BERTELSMAN:  They would

14   probably have qualified immunity of some sort.

15          MR. WIEST:  And we recognize that there are

16   some challenges to that.

17          That's, frankly, one of the reasons why we

18   are willing to forego or withdraw that, and we did

19   submit an order to that effect.

20          THE HONORABLE JUDGE BERTELSMAN:  Yeah, I saw

21   that, so why are we talking about --

22          MR. WIEST:  Your Honor, we are willing to

23   withdraw it, and that's what I am telling you.

24          THE HONORABLE JUDGE BERTELSMAN:  You are

25   willing to withdraw it right now, let's strike it.

1          MR. WIEST:  Absolutely.

2          THE HONORABLE JUDGE BERTELSMAN:  That's a

3 claim without prejudice as you request.

4          MR. WIEST:  Thank you, Your Honor, yes, we

5 would.

6          THE HONORABLE JUDGE BERTELSMAN:  That gets

7 rid of that issue.

8          Now, you would like us to allow you to do

9 some discovery pending the special session; is that

10 correct?

11          MR. WIEST:  That, Your Honor, and obviously

12 that an entry be put on as to liability, and I think

13 with those two issues --

14          THE HONORABLE JUDGE BERTELSMAN:  When you say

15 liability, you mean the declaration that the 2002's

16 are unconstitutional.

17          MR. WIEST:  That the 2002 maps are

18 unconstitutional, that's correct.

19          THE HONORABLE JUDGE BERTELSMAN:  That's --

20 well, I don't think there has been any liability as to

21 declarations, but I see what you mean.

22          You just admitted it, so we get rid of that

23 issue.

24          MR. WIEST:  Right.  Your Honor, I think with

25 those issues, I mean, as long as there is a process

1 for discovery and a process to get the evidence before

2 this court, I think we can all react, depending on

3 what the legislature does in August, you know, making

4 sure that we are allowing the process to move forward

5 in the meantime so that we are not engaged in a

6 complete federal fire drill on August 23rd.

7         THE HONORABLE JUDGE BERTELSMAN:  I think I

8 understand.  Gentlemen?

9         THE HONORABLE JUDGE VAN TATENHOVE:  And you

10 would concede that it would be improper really for us

11 to promulgate lines that the legislature acts in.

12         MR. WIEST:  Your Honor, I don't know about --

13         THE HONORABLE JUDGE VAN TATENHOVE:  That's

14 different from asking whether we should just stop.

15         We may want to begin the process that would

16 allow us to do it in a timely manner, but we ought not

17 to do it before the legislature acts.

18         MR. WIEST:  And Your Honor, I think from a

19 judicial economy standpoint that makes sense.

20         Why have this court expend time and resources

21 trying to figure out if the maps you request gets --

22 if the legislature gets it right.

23         We don't have an issue with that at all.  In

24 fact, we think it's appropriate for the legislature to

25 have one final bite at the apple.

1          We just want to be in a position to react in

2   the event that they don't do so properly or don't do

3   so at all.

4          THE HONORABLE JUDGE BERTELSMAN:  Judge

5   Boggs?

6          MR. WIEST:  Thank you, Your Honor.

7          THE HONORABLE JUDGE BERTELSMAN:  Thank you

8   very much.

9          Does anybody else want to be heard on this

10  issue?  Yes, sir.

11         MR. CAVE:  May it please the court, I am Stan

12  Cave.

13         I am here today on behalf of Senate President

14  Robert Stivers.

15         We filed an objection -- a response stating

16  that we did not object to the motion for stay.

17         But that response was filed before the call

18  of the special session that was issued by Governor

19  Beshear for August the 19th.

20         After reading the call and thinking about the

21  status of the case with the backdrop of having a call,

22  I started thinking about what would be a pragmatic

23  approach to this.

24         And it occurred to me that the -- what might

25  work best is instead of a stay where someone would

1 have to come back into court, file a motion, have a

2 response or reply and be heard to lift the stay,

3 something akin to an injunctive to try to lift the

4 injunction, that perhaps the court could fashion an

5 order that would hold the case in abeyance.

6        It may be a play on words a little bit, but

7 not really where the case is held temporarily in

8 abeyance, a subsequent status conference is set with

9 the parties ordered to report back as to the progress

10 that the legislature has made.

11       Kind of gives you the best of both worlds,

12 because I would point out to the court that we have a

13 new Senate President.

14       Senator Robert Stivers was not the President

15 of the Senate in 2012 when the 2012 district maps were

16 adopted and subsequently addressed by the Kentucky

17 Supreme Court in Fischer IV.

18       We believe we have a keen interest in seeing

19 that there are consistent numbers applied.

20       We have a keen interest in a constitutional

21 districting of maps being adopted that complies with

22 not only the Fourteenth Amendment of the Kentucky --

23 of the United States Constitution, but it's Section 33

24 of the Kentucky Constitution.

25       It is time for the legislature to stand --

1 step forward and do the right thing and put politics

2 aside.

3          As to Your Honor's question about November

4 4th being a drop dead date, I am not prepared to

5 concede that because I remember in 1995, in August, I

6 believe it was August the 8th of 1995 the Kentucky

7 Supreme Court, maybe in Fischer II, it could have been

8 the Tom Jensen case, but declared the districting

9 unconstitutional.

10          And that fall led to the 1996 regular

11 session, and in January of 1996, the districts were

12 redrawn for both the House and the Senate.

13          The filing deadline may have extended a few

14 days to allow candidates to file, and that 1996

15 election went forward without incident to my

16 knowledge.

17          So what I hear some of the -- maybe some of

18 the arguments the other way is that they want to have

19 the luxury to pick and choose where they want to

20 live.

21          Well, you know, that's the competing side of

22 the issue, but I would represent to the court, to the

23 best of my recollection, there is precedent for there

24 being a district map, districting maps adopted by the

25 General Assembly pretty close to the filing deadline

1  and to this --

2          THE HONORABLE JUDGE VAN TATENHOVE:  It may or

3  may not be permissible, but it certainly is not

4  preferable.

5          MR. CAVE:  I will agree with that,

6  Your Honor, and it also bears emphasis in this regard

7  that the General Assembly has the statutory

8  prerogative to extend that filing deadline by statute

9  if it chooses to do so.

10          But I think also along the lines of the -- I

11  am trying to configure my notes here, but along the

12  lines of holding the case in abeyance, the court will

13  note that Senator President -- President Robert

14  Stivers filed a counterclaim and a cross-claim seeking

15  some guidance from this court.

16          And that kind of fits in hand in glove with

17  holding the case in abeyance because the potential

18  action of this court on legislative redistricting will

19  be a powerful influence to both chambers of the

20  General Assembly.

21          The potential for a party to come back and --

22  any of these parties to come back into the court and

23  say negotiations have fallen apart, weigh in, we

24  welcome it, will be a powerful motivating factor for

25  the General Assembly to do the right thing.

1        We have the right President of the Senate now

2   to do the right thing.

3        But I remember in the 1996 session, then

4   Floor Leader Stumbo who is now Speaker Stumbo

5   announced to the House that there is unapologetically

6   nothing more political that the House chamber does

7   than to draw its House district lines, and that they

8   did and what's produced a litigation that has been

9   referred to here.

10        Now, they have talked about having adopted

11   House Bill 2 in the 2013 session of the General

12   Assembly.

13        I don't think that the representations can go

14   without response in that regard.

15        The House -- in 2012, the House adopted its

16   redistricting lines and drew congressional lines based

17   upon the original population data which included

18   federal prisoners.

19        It also included state prisoners and county

20   inmates in those numbers.

21        So we have a set of lines for the

22   Congressional Districts.

23        Now the redistricting of the Congressional

24   lines is not included in Governor Beshear's call.

25        At the end, with four days left in the 2013

1 session, the House sends over a bill to the Senate and

2 says act on it.

3           Well, it changed the numbers, it excluded

4 certain federal inmates, but even within its change of

5 those numbers, it was internally inconsistent because

6 it failed to address state inmates altogether, it

7 failed to address county inmates altogether.

8           Well, not only do you have to count

9 consistently, you have to count where the population

10 resides.

11          THE HONORABLE JUDGE BERTELSMAN:  So you are

12 saying that the previous statement that this House

13 bill has passed is unchallenged is not correct?  It is

14 challenged?

15          MR. CAVE:  It's correct that it was

16 unchallenged but the premise is not accurate.

17          It was never put up for a challenge.  It was

18 sent to the -- from the House chamber --

19          THE HONORABLE JUDGE BERTELSMAN:  The House

20 passed it, right?

21          MR. CAVE:  The House passed it with four days

22 left in the session.

23          THE HONORABLE JUDGE BERTELSMAN:  Do you think

24 it's an unconstitutional plan that has been

25 represented?

1         MR. CAVE:  I think there is an argument that

2   that House plan, because it differentiates between

3   classifications of individuals being prisoners, there

4   is a 19 I want to say '65 Hawaii case where they said

5   within a classification of people you can't make

6   distinction between those without an overriding state

7   interest.

8         Here, one of our overriding state interests

9   is division of counties, but I don't know what could

10  possibly be an overriding state interest to say, well,

11  we are going to count some federal inmates and not

12  others but we are going to count all state inmates.

13        So what they sent over on that basis, I think

14  that could be adjudged unconstitutional.

15        THE HONORABLE JUDGE BERTELSMAN:  Let me ask

16  the plaintiffs, I was going to ask, do you -- what is

17  your attitude toward the House Bill 2 if it passed?

18        MR. WIEST:  Your Honor, we believe --

19  certainly there is another equation.

20        What basis is the Senate going to use for its

21  population maps --

22        THE HONORABLE JUDGE BERTELSMAN:  First give

23  me a one-word answer.

24        Do you think it's correct that it is -- its

25  constitutionality is not in doubt?

1          MR. WIEST:  Your Honor, we disagree with

2   that.  We think there is a substantial question --

3          THE HONORABLE JUDGE BERTELSMAN:  Now why

4   would you disagree with it?

5          MR. WIEST:  Your Honor, we think there's a

6   substantial question about that House bill's

7   constitutionality for a number of reasons.

8          THE HONORABLE JUDGE BERTELSMAN:  Well, tell

9   us some of them.

10          MR. WIEST:  Among other things they have

11   excluded prisoners, and it's okay to exclude federal

12   prisoners.

13          There is no question the Burns case out of

14   the U.S. Supreme Court you can use different

15   population basises (sic), but you have to have a

16   rational basis for doing so.

17          There is a Carrington case out of the U.S.

18   Supreme Court, it talks about if you are going to

19   exclude prisoners because they are out of state, well,

20   then, you have got to exclude students that are out of

21   state, you have got to exclude military because they

22   are out of state.  That's the Carrington case.

23          You know, they are picking and choosing in

24   the House, and, frankly, they are getting into Equal

25   Protection arguments even on a rational basis level of

1 review.

2         And so, Your Honor, we do think -- and we are

3 not here to litigate what may be a moot point or what

4 may not yet come to fruition, but I would say there

5 are substantial questions about House Bill 2.

6         Not only that, Your Honor, there is one other

7 thing, and this gets into the more recent Cox v.

8 Larios case that came out of the U.S. Supreme Court

9 and out of the three-judge panel in Georgia.

10         But we have the same thing, we have Speaker

11 Stumbo drawing the map punitively punishing the

12 incumbent Republicans and keeping incumbent Democrats,

13 that's exactly what went on in the Cox case.

14         And as a consequence of that, that map down

15 in Georgia got set aside, and so you have got the same

16 thing going on here.

17         You have got very, very punitive actions

18 coming out of the Speaker of the House.

19         So there's a lot of issues with House Bill

20 2.

21         For them to say that it's beyond question --

22 or it's beyond any question to be constitutional, I

23 mean, we think there is all kinds of constitutional

24 issues with that House bill.

25         THE HONORABLE JUDGE BERTELSMAN:  Thank you,

1  sir.

2          MR. WIEST:  Thank you, Your Honor.

3          THE HONORABLE JUDGE BERTELSMAN:  Had you

4  concluded, sir, or --

5          MR. CAVE:  Yes, Your Honor, that concludes my

6  remarks.

7          THE HONORABLE JUDGE VAN TATENHOVE:  Let me

8  ask this question.

9          I am interested in the dynamics here of the

10 legislative process.

11         I don't know that it gives me more confidence

12 or less confidence that they will succeed as we hope

13 they do.

14         I am more concerned about the logistics.  You

15 have talked about this ability to push that November

16 4th date back, in essence, that it's preferable to

17 everybody to know a year in advance.

18         But there would be nothing that would keep --

19 if this happened late, there is nothing that would

20 keep the state legislature from moving the filing

21 deadline to January, right?

22         MR. CAVE:  Let me make sure we are on the

23 same page.

24         One is the year residency, that's the

25 November 4th drop dead date that the plaintiffs have

1 alluded to.

2          THE HONORABLE JUDGE VAN TATENHOVE:  Right.

3          MR. CAVE:  The other is the filing deadline.

4          THE HONORABLE JUDGE VAN TATENHOVE:  Which

5 opens in November of this year.

6          MR. CAVE:  Well, it's -- yes, I think -- yes,

7 I think it could open -- I am not sure what date it

8 opens, but really --

9          THE HONORABLE JUDGE VAN TATENHOVE:  It opens

10 later in November after that November 4th date in

11 2014.

12          MR. CAVE:  Yes, but what drives candidates

13 is -- pragmatically is the filing deadline, you know,

14 when you have to have your papers filed, your two

15 signatures and your $300 filing fee.

16          Now, the residency requirement, you know,

17 like I said, there is precedent in 1996 in that cycle

18 that, you know, members, new challenging candidates

19 for open seats, they all had a chance to file.

20          And to my knowledge, that did not draw any

21 litigation or a constitutional question to my

22 knowledge.

23          THE HONORABLE JUDGE VAN TATENHOVE:  And your

24 point is they didn't know until January of the

25 election year what the lines were going to be.

1          They certainly didn't have a year in advance

2 of the election in order to have -- to be resident, as

3 a resident as is required.

4          MR. CAVE:  It's not a pretty picture, but

5 that is -- that's true.

6          And that was often the complaint is the

7 candidates wouldn't know what district they were going

8 to be in.

9          But what goes with that complaint are

10 candidates wanting to shop who they are going to run

11 against.  You know, it's a two-way street.

12          THE HONORABLE JUDGE VAN TATENHOVE:  Why

13 should we care about that?

14          MR. CAVE:  Well, I am saying that maybe you

15 shouldn't because they reside in a district.  It may

16 have a different number.

17          I remember when I ran in 1992, I had the 45th

18 District.

19          Well, that was out of Louisville, had been --

20 just changed the number and reconfigured that area of

21 Fayette County, but that was a long time ago.

22          But my point about the 1996 cycle is that

23 those districts were drawn, and true, a potential

24 candidate didn't know until that bill was signed into

25 law what their district would look like; but they were

1 not deprived of a district.

2          If they wanted to run for the House of

3 Representatives, file and run.

4          What their -- what their concern was is who

5 they would be filing and run against.

6          THE HONORABLE JUDGE BOGGS:  But conversely it

7 did mean that in that particular circumstance, an

8 incumbent member of the legislature could arrange that

9 some particular people would be unable to run against

10 them.

11          MR. CAVE:  By drawing the line, yes, and I

12 feel like that that happens.

13          THE HONORABLE JUDGE BOGGS:  But not just that

14 they would -- it would be difficult because they would

15 have to move.

16          It would be impossible because their

17 residence was already established and it was closer

18 than a year to the election.  Are we right about that?

19          MR. CAVE:  I believe so, Your Honor, it would

20 still have a district --

21          THE HONORABLE JUDGE BOGGS:  In that case

22 nobody challenged it on that basis.

23          MR. CAVE:  To my knowledge they did not, and

24 that potential candidate still had the ability to file

25 his or her papers and run for a seat in the General

1  Assembly.  Thank you, Your Honor.

2          THE HONORABLE JUDGE BERTELSMAN:  Anybody else

3  want to be heard on this motion?

4          MR. WHITES:  May I briefly respond?

5          THE HONORABLE JUDGE BERTELSMAN:  Let's --

6  anybody else against it before we hear rebuttal?

7          MR. BRUEGGEMANN:  Yes, yes, Your Honor.  I

8  would like to address the November 4 issue briefly.

9          THE HONORABLE JUDGE BERTELSMAN:  Come to the

10 podium, sir, so everyone -- everyone in the courtroom

11 wants to hear you.

12         MR. BRUEGGEMANN:  I'm sorry, Your Honor, my

13 name's Rick Brueggemann for the plaintiffs for the

14 Brown case.

15         I would just like to briefly respond to the

16 issue on November 4th that was raised by Mr. --

17 Mr. Cave.

18         We are -- we are getting experienced on

19 redistricting issues in Kentucky, unfortunately.

20         Past violations with regard to the November

21 deadline doesn't make it right now.

22         The problem is if they draw the line that

23 radically changes a district that an incumbent is in,

24 he doesn't have the ability to run to serve the

25 individuals he or she wants to serve if it passes the

1 November deadline; and that's the issue.

2          The fact that that occurred in 1996 and no

3 one called them on it doesn't make it right now.

4 Thank you.

5          THE HONORABLE JUDGE BERTELSMAN:  Yes, sir.

6          MR. WHITES:  Thank you, Your Honor.  Just

7 very briefly, if I may respond to a couple of points

8 that were made.

9          I certainly agree that it would be a powerful

10 motivating force to have this court issue an order

11 indicating that it is keeping a close eye on the

12 proceedings.

13          I think we can all agree on that just to

14 start on a positive note.

15          However, I do feel that I must rise to defend

16 my client, the Speaker of the House, who may well have

17 said in 1996 that redistricting is one of the most

18 political things that we do in the legislature.

19          And if he did say that, he would have been

20 quoting numerous Supreme Court cases.

21          Politics and political considerations are

22 inseparable from redistricting.

23          Redistricting may pit incumbents against one

24 another.

25          Redistricting inevitably has and is intended

1  to have substantial political consequences.

2          The Supreme Court has never ventured so far

3  or attempted the impossible task of extirpating

4  politics from what are essentially political processes

5  of sovereign states, that's Gaffney v. Cummings.

6          That's a fact of redistricting.  It's not

7  appropriate to suggest that the Speaker was somehow

8  out of line by simply quoting what has been the law of

9  this land for many years.

10          THE HONORABLE JUDGE VAN TATENHOVE:  I don't

11  know if that was the suggestion.

12          In fact, that's why the legislature should do

13  it, right?

14          MR. WHITES:  Yes, Your Honor, I agree with

15  you, and if I misunderstood, I am -- please --

16          THE HONORABLE JUDGE VAN TATENHOVE:  And so

17  the only question is you -- you ought to do it, that

18  was the beginning of my -- my very first question.

19          But you have to do it constitutionally, and

20  there is a safety gap measure.

21          It's not plan A, it's plan B; and for good or

22  ill you are looking at it.

23          MR. WHITES:  And I think I am somewhat

24  astonished that with all of the historic cases that we

25  have to guide us we keep coming back to Growe v.

1  Emison.

2        And I am indebted to the Attorney General's

3  office for pointing out that another one of the

4  holdings in that case is that it is appropriate to

5  presume that the actions will be constitutional --

6  will be constitutional when the legislature acts.

7        It seems today that we have been repeatedly

8  suggesting that -- or presuming that the actions may

9  be unconstitutional.

10        And I would just like to remind the court

11  that Growe v. Emison strongly counsels that when --

12  when looking to future legislative actions, a

13  presumption of constitutionality should be indulged

14  in.

15        And again, I think the facts all point in

16  that direction.

17        I think we have learned a lot and I think

18  that we are moving in the appropriate direction in

19  order to accomplish that.

20        And finally, if I could have just one moment

21  to clarify, I wanted to make sure that I understood --

22  understood the question I have already answered, and

23  that is were the -- would the use of the existing maps

24  be unconstitutional in 2014.

25        And I responded that the Kentucky Supreme

1    Court had already ruled them to be unconstitutional

2    for exceeding the maximum allowable deviation among

3    other reasons.

4          There was a mention here today about the 2012

5    elections being unconstitutional.

6          We would strongly dispute that since we were

7    acting under an order from the Kentucky Supreme Court

8    in using those prior maps.  That's all I have,

9    Your Honor.

10          THE HONORABLE JUDGE VAN TATENHOVE:  All

11    right, thank you, sir.

12          MR. WHITES:  Thank you.

13          THE HONORABLE JUDGE BERTELSMAN:  Anybody else

14    on this motion?  Obviously have to take it under

15    submission.

16          I think the court -- I can speak for the

17    court when we say we are determined that the citizens

18    of the Commonwealth will have an election under a

19    constitutional plan.

20          We hope their legislature does it, but if it

21    doesn't, we will reluctantly.  All right?

22          Anybody -- the next thing I have is the

23    motion to consolidate, and I think there are a couple

24    of motions to consolidate.  Who wants to be heard on

25    that?

1          MR. WHITES:  We have a motion to consolidate,

2 Your Honor.

3          THE HONORABLE JUDGE BERTELSMAN:  Let's hear

4 you again.

5          MR. WHITES:  I'll be very brief, Your Honor.

6 As the court knows, consolidation of actions is

7 appropriate where otherwise there is a risk of

8 inconsistent adjudications.

9          While that probably wouldn't happen in this

10 case, it is clear that if the court, both of these

11 actions, Brown and Herbert, is essential issue of

12 legislative redistricting, we would think that in the

13 interest of judicial economy and because both cases

14 arise from a common nucleus of operative fact that it

15 would be appropriate to consolidate the cases.

16          THE HONORABLE JUDGE BERTELSMAN:  Has it been

17 burdensome that people have to file the same pleading

18 with two captions in two different divisions?  I would

19 think it would be.

20          MR. WHITES:  It -- it possibly has been for

21 some of the parties, Your Honor.

22          We are presently not parties in the Herbert

23 case or --

24          THE HONORABLE JUDGE BERTELSMAN:  Some people.

25          MR. WHITES:  Yes, sir.

1          THE HONORABLE JUDGE BERTELSMAN:  Anybody else

2   in favor of the motion to consolidate?

3          MS. ZELLEN:  Your Honor, Lynn Zellen.  I

4   filed a motion to consolidate in the Herbert action on

5   behalf of the defendants in that case and received a

6   copy of plaintiffs' response, and I don't think there

7   is any disagreement that there are many common issues

8   of fact and of law.

9          And our interest is in the orderly

10  administration of the upcoming elections and however

11  Your Honors would see best fit to ensure that's even

12  going to happen, notwithstanding the pendency of this

13  litigation, we would be amenable to.

14          THE HONORABLE JUDGE BERTELSMAN:  All right,

15  and I believe the plaintiffs or someone were against

16  the motion.

17          MR. SHARP:  May it please the court, counsel,

18  William Sharp with the ACLU of Kentucky on behalf of

19  the plaintiffs in Herbert, et al., v. Kentucky State

20  Board of Elections, et al.

21          Your Honor, we do oppose the motion to

22  consolidate.

23          We do agree there are absolutely common

24  questions of law and fact with regard to both cases.

25          However, we think an unqualified

1 consolidation order such as has been proposed in the

2 tendered order with the Secretary of State, the

3 defendants' motion is inappropriate.

4        We think rather instead more tailored orders

5 pursuant to Federal Rule 42(a)(3) would be more

6 appropriate, and based on the arguments and

7 transpirings of what's happened thus far today, our

8 suggestions about what those might look like have

9 differed than what we thought coming in.

10        THE HONORABLE JUDGE BERTELSMAN:  Well, you

11 understand if they were -- if they were consolidated,

12 all the attorneys would have a chance to have their

13 say.

14        It would just simplify with the pleadings,

15 you only need to file one set -- one answer to some

16 motion and one motion instead of two.

17        MR. SHARP:  I am not --

18        THE HONORABLE JUDGE BERTELSMAN:  It's not

19 contemplated one set of attorneys would be out the

20 door and the other set of plaintiffs' attorneys would

21 run the case.

22        Everybody would continue to have equal

23 opportunity to be heard.

24        It seems to me to be more efficient to

25 consolidate, barring some good reason.  You dropped

1 the damages claim which is --

2          MR. SHARP:  Your Honor --

3          THE HONORABLE JUDGE BERTELSMAN:  Or didn't

4 you?  Somebody -- I thought it was dropped.

5          MR. SHARP:  The other plaintiffs dropped

6 their damages claim.

7          That was part of the reason why we opposed

8 the unqualified consolidation.

9          That concession by the plaintiffs in Brown

10 had not been made at the time we filed our --

11          THE HONORABLE JUDGE BERTELSMAN:  I

12 understand.  Well, how do you feel about it now?

13          MR. SHARP:  We are still opposed to a blanket

14 consolidation.

15          Despite dropping the damages claims, there

16 are still, I think, pending in the Brown case the

17 state law claim seeking prospective injunctive relief

18 to enjoin state officials to comply with state

19 constitutional provisions.

20          We think that claim in and of itself is

21 likely to generate a great deal of satellite

22 litigation regarding possible nonfrivolous defenses

23 that could be raised with regards to the court's

24 jurisdiction.

25          Second, Your Honor, there are the plaintiffs

1 in Herbert crafted their litigation focusing solely on

2 the Equal Protection claim under the Fourteenth

3 Amendment.

4        As such, we have sued the Kentucky State

5 Board of Elections and the official capacity

6 defendants named in our suit.

7        House Speaker, Senate President, the

8 Governor, the Commonwealth are not defendants in our

9 case; and we think that our plaintiffs would be unduly

10 burdened by a blanket consolidation allowing those

11 defendants also to be involved, especially where we

12 now have Senate President Stivers having filed

13 counterclaims and cross-claims against the plaintiffs

14 and the other official capacity defendants in that

15 case.

16        We think the multiplying litigation that's

17 occurring and likely to continue to occur in Brown

18 would unduly prejudice the plaintiffs in Herbert by

19 increasing unnecessarily both costs and delay.

20        Second, Your Honor, as I would also note that

21 a motion to stay has not been filed in Herbert.

22        The Secretary of State, Kentucky State Board

23 of Elections, the official capacity defendants, have

24 not sought a stay.

25        So consolidation would then force us to come

1 back and revisit an issue that we have not yet been

2 afforded a formal opportunity to address.

3          I mean, we are happy to try to do so,

4 especially in the tight time frame, and I can try to

5 address some of our concerns should the court be

6 inclined to consider consolidating the cases and then

7 subjecting the plaintiffs in Herbert to any potential

8 stay if the court were inclined to grant --

9          THE HONORABLE JUDGE BERTELSMAN:  Yeah, isn't

10 Speaker Stumbo, isn't he in both cases?

11          MR. SHARP:  No, sir.

12          THE HONORABLE JUDGE BERTELSMAN:  Okay.

13          MR. SHARP:  Your Honor, also with respect to

14 our 42 proposal to tailor joining and, you know,

15 limited or targeted consolidation of issues only that

16 are necessary for the resolution of both cases and

17 that would avoid the risk of inconsistent

18 adjudications, we think that doing so in a -- in a

19 targeted fashion is the appropriate way.

20          Prior to this morning, we had anticipated

21 suggesting a proposed -- a proposed 42(a)(3) order

22 joining the parties for discovery purposes.

23          If the defendants in our case are prepared to

24 make a concession as has Speaker Stumbo regarding the

25 validity of the 2002 maps, currently that may obviate

1   the necessity for engaging in a great deal of

2   discovery and our proposed timetable for the court may

3   change.

4           But we do stand by the fact that we oppose

5   any stay requests if the cases were consolidated

6   because allowing this case to proceed on an expedited

7   manner and in such a fashion to allow the court to

8   timely address the issue if and when the General

9   Assembly fails to enact constitutionally permissible

10  maps is both a conservation of judicial resources as

11  well as the parties' rights.

12          THE HONORABLE JUDGE BERTELSMAN:  All right,

13  thank you, sir.

14          Does anyone else want to be heard on this

15  motion?

16          MR. WHITES:  May I briefly respond?

17          THE HONORABLE JUDGE BERTELSMAN:  Yes, go

18  ahead.

19          MR. WHITES:  Speaker Stumbo has not appeared

20  in the Herbert case.

21          However, we are prepared to intervene and

22  seek a stay there if that is necessary.

23          We had hoped that the cases would be

24  consolidated and a stay would issue for both.

25          THE HONORABLE JUDGE BERTELSMAN:  Okay, thank

1 you.  All right, thank you.

2          MS. ZELLEN:  Also briefly -- I'm sorry.

3          THE HONORABLE JUDGE BERTELSMAN:  Go ahead.

4          MS. ZELLEN:  Also briefly, Your Honors, I

5 wanted to point out that the plaintiffs in the Brown

6 case also suggested in their most recent pleadings

7 regarding consolidation, I believe, that they would be

8 willing to dismiss their state constitutional claims.

9          And to the extent one of the unique factors

10 to the Brown case is President Stivers's counterclaim

11 and cross-claim, that's related to one of the common

12 questions -- the questions that are common to both

13 cases, which is the population base that we will be

14 using to draw what everyone agrees needs to be one set

15 of --

16          THE HONORABLE JUDGE BERTELSMAN:  I thought

17 somebody said you all had reached an agreement on it,

18 on how to count the prisoners.

19          MS. ZELLEN:  I would let other defendants in

20 the Brown case speak to that.

21          THE HONORABLE JUDGE BERTELSMAN:  All right,

22 maybe I was overly optimistic but --

23          MR. WHITES:  May I speak to that?

24          THE HONORABLE JUDGE BERTELSMAN:  Yes, go

25 ahead.

1          MR. WHITES:  We are very hopeful and believe

2 that a common approach will be adopted by both

3 parties.

4          THE HONORABLE JUDGE BERTELSMAN:  All right,

5 Judge Boggs, have any questions?

6          THE HONORABLE JUDGE BOGGS:  No, you have

7 already answered, so you are good.

8          We have asked you, you seem to be the most

9 proactive about conceding that the lines on which the

10 2014 election would be run, it would be

11 unconstitutional if running on 2002 lines.

12          As was just pointed out, the Herbert --

13 Speaker Stumbo is not one of the Herbert defendants.

14          So I would like to hear from the Herbert

15 defendants, which I guess are primarily the Secretary

16 of State and the State Board of Elections and then

17 inferentially from the remaining Brown defendants,

18 whom there are several here, do you agree with

19 Mr. Whites telling us that it would be

20 unconstitutional to run the 2014 elections on the 2002

21 lines?

22          That's the simple question.  You have

23 answered it, but the other defendants have not had an

24 opportunity.

25          MS. ZELLEN:  Your Honor, I'll go first since

1  I was pointed out in that one.

2          And I, at this point without having had an

3  opportunity to brief it especially, would not be

4  prepared to concede that the 2002 -- that it would be

5  unconstitutional to conduct the 2014 elections on the

6  2002 lines.

7          That's exactly what happened last year.

8  Following the Fischer litigation, the court held that

9  the 2012 lines that were passed were unconstitutional

10  but held that in light of that House Bill 1 from last

11  -- the previous session was void ab initio.

12          You could not conduct elections along those

13  lines, and in that circumstance the only valid lines

14  that could be used in that election were the ones that

15  were adopted in 2002.

16          THE HONORABLE JUDGE BOGGS:  Although with

17  respect to that, counsel, then nobody came forward to

18  any court and said, "And, by the way, those are

19  unconstitutional."

20          According to the data that we have that I

21  guess is not heavily contested, under the 2002 lines,

22  some districts are 40 or 50 percent larger than the

23  smallest district.

24          And so I ask you, you don't have to concede

25  it, but do you have any basis on which you could

1 possibly say that they are not unconstitutional?

2         MS. ZELLEN:  I believe that that argument was

3 in fact addressed in the Fischer litigation --

4 litigation last year that it would be better to --

5 there is an argument, and I am very much paraphrasing

6 here, that the 2012 lines should be used

7 notwithstanding any constitutional defects from which

8 they suffered because they were still better than the

9 2002 lines due to population shifts in that amount of

10 time.

11         So that -- the court considered that and

12 followed precedent from previous cases in which courts

13 have held -- and I believe those precedents go back

14 one hundred years -- that the prior lines would be

15 used until constitutional lines were adopted.

16         THE HONORABLE JUDGE BOGGS:  Okay, so you are

17 not prepared to concede.

18         MS. ZELLEN:  Yes, I am not prepared to

19 concede that, nor that the 2012 elections were

20 conducted unconstitutionally.

21         THE HONORABLE JUDGE BOGGS:  That's a separate

22 question, I am not addressing that.

23         THE HONORABLE JUDGE BERTELSMAN:  Anybody else

24 want to chime in on this?

25         THE HONORABLE JUDGE BOGGS:  Well, I would

1 like to sort of hear from the other parties, the other

2 defendant parties in each case --

3          THE HONORABLE JUDGE BERTELSMAN:  All right.

4          THE HONORABLE JUDGE BOGGS:  -- who have not

5 yet spoken.  You can either agree with Mr. Whites or

6 you can --

7          MR. BARKLEY:  Clay Barkley, assistant

8 attorney general today representing the Commonwealth

9 and the Governor.

10          And due to my role as the representative of

11 the Governor, I would probably like to talk to my

12 client, you know, regarding this issue.

13          I do agree that the 2002 lines were certainly

14 unconstitutional in the Kentucky Constitution pursuant

15 to Section 32, and certainly there is some case law

16 that there is a finite period of time prior that a

17 state legislature needs to redistrict.

18          But as Mr. Cave pointed out, there are --

19 there have been situations such as 1996, you know,

20 that it went further than four years or it went six

21 years.

22          So unfortunately I am unprepared to answer

23 that question.

24          THE HONORABLE JUDGE BERTELSMAN:  Anybody else

25 want to be heard or chime in on this?

1        I think we would like to get everybody's
2   position.

3        MR. CAVE:  I'll try to be very brief,
4   Your Honors, but I think it's -- you are asking a
5   great question in terms of how this issue is framed.

6        Because my understanding is the Fischer --
7   the last Fischer case, the 2012 Fischer case did not
8   say that the 2012 district lines were
9   unconstitutional.  In fact it said --

10        THE HONORABLE JUDGE VAN TATENHOVE:  2012
11   or --

12        MR. CAVE:  Excuse me, 2002, district lines
13   were unconstitutional.

14        And to that end, acting consistent, it
15   ordered that the 2012 elections be conducted based on
16   the 2002 district lines.

17        What it did address was the 2012 district
18   saying they violated the permissible standard
19   deviation.

20        Essentially it's Fourteenth Amendment, one
21   person, one vote criteria.

22        In Kentucky we have this -- we have these
23   competing interests which make this extremely
24   difficult for any redistricting to do.

25        You see, you have got the Fourteenth

1  Amendment, the federal standard of one person can

2  vote.

3          Then you have Section 33 of the Kentucky

4  Constitution that says you cannot split any counties.

5          Through -- through judicial opinion, they

6  say, well, you can split some counties because it's

7  inevitable or you have to or you could never

8  redistrict.

9          So you have your primary concern, which is

10 one person, one vote in the Federal Constitution, but

11 then you have a myriad of state legislation --

12 litigation whereby you have had challenges based on

13 splitting counties.

14         I believe that was the 1997 Jensen case where

15 Laurel County was split five ways, and so that was

16 filed through Section 33 of the Constitution.

17         And then below that your third tier of

18 inquiry which goes to what numbers you used, and so

19 you have to be -- you are trying to be constitutional

20 and meet both the federal and the state standards.

21         But then with the -- you also have a

22 constitutional requirement of the numbers that you

23 use, which goes back to, you know, the discussion

24 about House Bill 2 and the 2013 session which in and

25 of itself was -- appears to be violative of the

1  Constitution, so it's a three-level type of inquiry.

2  I thought that might help the court.

3          THE HONORABLE JUDGE BOGGS:  Did I hear an

4  answer as to whether you agree or don't agree that at

5  least under the Federal Constitution it would be

6  unconstitutional to hold the 2014 elections on the

7  2002 lines?  Do you agree or disagree?

8          MR. CAVE:  Your Honor, I don't know the

9  answer.

10          THE HONORABLE JUDGE BOGGS:  Okay.

11          MR. CAVE:  I would seem -- I don't, I am not

12  prepared to answer that question --

13          THE HONORABLE JUDGE BOGGS:  Despite the fact

14  that the largest one is 40 to 50 percent larger than

15  the smallest one.

16          MR. CAVE:  You have a competing state

17  interest.

18          It would seem that the argument would -- you

19  know, would go to -- lead to that conclusion.

20          I am just not prepared to concede it because

21  that's what I was prepared to answer.

22          THE HONORABLE JUDGE VAN TATENHOVE:  In 2012,

23  the only alternative to having elections was to use

24  one of two sets of lines, right?

25          MR. CAVE:  Yes, sir.

1           THE HONORABLE JUDGE VAN TATENHOVE:  It's not

2  that -- we are not -- we are in a different posture

3  now because there is a statutory framework that says

4  there is another alternative.

5           And so the question I guess really is very

6  specific about -- I mean, it's hard to argue that

7  those 2002 lines aren't in some sense violative of the

8  Federal Constitution.

9           The question is do you use them anyway, and I

10  guess I am interested in whether anybody thinks that

11  there is some scenario here where you use them anyway

12  given the fact that you now have a plan B.

13           MR. CAVE:  As Your Honor knows, just about

14  anything can happen, but I can promise you on behalf

15  of Senate President Robert Stivers we would hope that

16  that does not become the scenario.

17           THE HONORABLE JUDGE VAN TATENHOVE:  Well --

18           MR. CAVE:  And that's why we filed our

19  counterclaim and cross-claim because as a backstop as

20  you mentioned, plan B, our interest is consistent in

21  constitutional outcome on redistricting for State

22  House and State Senate Districts.

23           Accepting the plaintiffs' allegations as true

24  in their complaint, to my knowledge those deviations,

25  that -- for purposes of argument, those deviations

1  that they allege appear to be outside what would be

2  constitutionally acceptable.

3          THE HONORABLE JUDGE VAN TATENHOVE:  Can

4  anyone identify authority for the proposition that if

5  for some reason the state legislature fails to draw

6  constitutionally permissible lines that the remedy now

7  is to use the 2002 lines once again in 2014?

8          MR. CAVE:  It would seem to me that would be

9  your last drawing of districts, and that's what you

10 would have to default to.

11         THE HONORABLE JUDGE VAN TATENHOVE:  Default

12 after what?  We didn't get it done in time?

13         MR. CAVE:  I am not trying to justify the

14 reason, but that would be the last districts which had

15 been drawn that weren't addressed by a court as the

16 2012 districts were in Fischer.

17         THE HONORABLE JUDGE BOGGS:  But now we have a

18 court which is being asked to address that.

19         MR. CAVE:  Yes, sir.  Again, that's why I

20 thought, you know, an abeyance order that kept some

21 accountabilities to the General Assembly might be

22 something that would work to drive the General

23 Assembly to do its constitutional duty here with the

24 presence of new leadership and a determination to do

25 our very dead level best to adopt redistricting which

1  is both constitutional and consistent.

2       THE HONORABLE JUDGE BERTELSMAN:  All right,

3  does anyone else want to be heard on this?

4       MR. WIEST:  Just briefly, Your Honor.  On --

5  and it's a little bit disconcerting that we cannot get

6  past the concession about the -- the population maps.

7       I want to be very, very clear, and, you know,

8  we actually got -- my co-counsel and I received this

9  data from some legislators who got it from the LRC.

10      This is the LRC's own data that was attached

11  to our complaint.

12      I don't understand, and I think maybe it's an

13  interesting question why we cannot obtain concessions

14  about what the population numbers are in the existing

15  districts.

16      And I think, you know, and I guess the

17  broader question of why a stay is inappropriate

18  because we can't even get concessions out of existing

19  population numbers that came from the LRC.

20      I mean, it just -- it sort of boggles my mind

21  that we can't get past that issue and get into the

22  heart of I think where this case is which is kind of

23  how we get from a place where we have got

24  unconstitutional maps at present to constitutional

25  maps; and I would just leave the court with that

1   thought.  Thank you, Your Honors.

2           THE HONORABLE JUDGE BERTELSMAN:  Does anyone

3   else want to bring up anything else?

4           Anybody want to bring up anything else?

5   Going once.

6           MR. SHARP:  Your Honor, if I --

7           THE HONORABLE JUDGE BERTELSMAN:  Okay.

8           MR. SHARP:  I didn't know -- William Sharp on

9   behalf of the Herbert plaintiffs.

10          I didn't know if the court wanted to

11  entertain proposals for a scheduling --

12          THE HONORABLE JUDGE BERTELSMAN:  For what?

13          MR. SHARP:  -- for scheduling moving forward,

14  or if the court wanted to take that under

15  consideration with the motion to stay.

16          THE HONORABLE JUDGE BERTELSMAN:  Well,

17  briefly, briefly what would you suggest?

18          MR. SHARP:  Your Honor, given the inability

19  to establish kind of the base line concession

20  regarding the validity of the current maps, we would

21  think that discovery would need to proceed and to

22  begin immediately and proceed through July with the

23  goal being that by August discovery would be complete,

24  simultaneous briefing be conducted on the issue of the

25  current maps, validity, and have that resolved before

1  the General Assembly even meets.

2          Once the General Assembly meets, we can

3  then -- if after five days they have not reached an

4  agreement on their proposed new maps, we can proceed

5  with the next phase and that is the parties submit

6  their proposed maps for the court's consideration.

7          And that would leave September and October

8  for the parties to handle that as well as the court's

9  consideration of proposed new maps for a final entry

10 of a court ruling on those maps by the end of

11 October.

12         The General Assembly continues to maintain

13 and defendants maintain here that they expect they

14 will have agreement by August -- by the date of the

15 special session and it will only take them five days.

16         If that's the case, then we won't waste the

17 court's time with dealing with drawing new maps if in

18 fact that's the case.

19         If, however, that's not the case or if the

20 parties need to revisit whatever maps are drawn and

21 adopted by the legislature, we would still be in a

22 position to be able to do that hopefully in advance of

23 that November 4th date.  Thank you.

24         THE HONORABLE JUDGE BERTELSMAN:  All right,

25 anybody else?

1        MR. WHITES:  Very briefly, Your Honor.  Just

2   wanted to make sure that you were plain about the

3   five-day period.

4        Five days is the quickest that a bill can be

5   passed by -- by both Houses, so we would object to

6   there being a scheduling order that would say five

7   days after the special session begins that the court

8   then be reconvened to examining.

9        It could take a little longer.  There is

10  enormous pressure to wrap those things up quickly, but

11  we would hope that it would be five days.

12       We cannot predict at this time whether or not

13  it would be.

14       I would also point out I am unclear exactly

15  what this proposed discovery in July is supposed to --

16  to contribute.

17       The existing population data has all been

18  made available by LRC.

19       It is a public document as plaintiffs have

20  pointed out, and I would think that the next set of

21  data that might be -- might be useful or the next

22  information that might be useful would flow from the

23  special session, so we would urge you to take action

24  after that.

25       THE HONORABLE JUDGE BERTELSMAN:  Okay.

1            THE HONORABLE JUDGE BOGGS:  Mr. Whites, if I

2    could ask a question.

3            MR. WHITES:  Sure.

4            THE HONORABLE JUDGE BOGGS:  I was pretty sure

5    that was where the data came from, but I did not see

6    in the complaint a specific reference to that.

7            And I was going to ask again if anybody

8    objects to the accuracy of the Exhibit A, Exhibit B,

9    either the accuracy or the provenance of those figures

10   with respect to the 2002 lines?

11           MR. WHITES:  I suppose I should say that the

12   numbers looked familiar and in a familiar format,

13   although I have not checked them individually.

14           But we do have counsel here from LRC.

15   Perhaps they could verify that or report back to the

16   court.

17           THE HONORABLE JUDGE BOGGS:  I am simply

18   saying when I went back and read the complaint it

19   simply said, "These are the correct numbers, see

20   Exhibit A and Exhibit B."

21           But it did not give a provenance, so I just

22   -- if anybody had a problem with them I wanted to hear

23   it or I wanted to have an affirmation that we can take

24   those as the numbers for the old lines.

25           Now, if they are new lines, of course all

1  bets are off but --

2          MR. WHITES:  I could not personally vouch for

3  the authenticity of the numbers.  They are in an

4  unfamiliar format.

5          I suppose they could be checked by the LRC

6  and reported back to the court if that's the court's

7  pleasure.

8          I am volunteering someone else to do the

9  work, but --

10          THE HONORABLE JUDGE BERTELSMAN:  I think

11  that's all the court has.

12          Anybody else want to bring anything up?  All

13  right.

14          MR. BARKLEY:  Your Honor, Clay Barkley

15  again.

16          I just wanted to say if the court is inclined

17  to allow discovery to begin, the Commonwealth and the

18  Governor would like to be able to file motions to

19  dismiss on Eleventh Amendment immunity grounds and

20  sovereign immunity prior to the beginning of

21  discovery.

22          THE HONORABLE JUDGE BERTELSMAN:  Well, they

23  dropped the damages claim, the Eleventh Amendment

24  agreement --

25          MR. BARKLEY:  There is still equitable

1 attorneys fees and --

2          THE HONORABLE JUDGE BERTELSMAN:  Well, I

3 don't know if you have equitable or not.  You can file

4 whatever you want.

5          MR. BARKLEY:  Thank you.

6          MR. WIEST:  Your Honor, very briefly, I think

7 discovery could be pretty simply handled in this

8 matter with a set of interrogatories and request for

9 admissions to the LRC.

10          It's as simple as admit that Exhibit A in the

11 plaintiffs' complaint are accurate numbers and that

12 Exhibit B are accurate numbers and then, you know, a

13 couple of the interrogatories could say, you know,

14 tell us what the populations are in each district.

15          And I think we could probably get through

16 this discovery in fairly short order as to the

17 existing maps.

18          I mean, if the defendants continue the

19 dispute --

20          THE HONORABLE JUDGE VAN TATENHOVE:  What's

21 fairly short order?  Ten days?

22          MR. WIEST:  Well, Your Honor, the civil rules

23 provide for I believe, what, thirty days to respond.

24          If the court's inclined to shorten that, we

25 think, you know, that might be appropriate here.

1        You know, I would think certainly in the next

2 thirty days we could get through, you know,

3 interrogatories and admissions.

4        And unless there is I am going to call it

5 theatrics with respect to those, I would think we

6 would be able to resolve the factual disputes as to

7 the existing population maps being imposed or the

8 existing population being superimposed over the 2002

9 maps, I would think.

10        THE HONORABLE JUDGE BERTELSMAN:  Going again,

11 going twice.  Anybody else?  Gone.

12        We will be -- motions will be taken under

13 submission.

14        We will get them out to you as soon as we

15 can.

16        Thank you for your cooperation and your

17 attention.

18        (The further hearing in this matter was

19 concluded at 2:23 p.m.)

20                          - - -

21                    CERTIFICATE

22        I certify that the foregoing is a correct

23 transcript from the record of proceedings in the

24 above-entitled matter.

25 s/  K. Ann Banta                  6-28-13
   K. Ann Banta, RPR, CRR           Date