UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

|  |  |  |
|---|---|---|
| **KENNY BROWN,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs** | ) | **Case No. 2:13-cv-00068- DJB-GFVT-WOB** |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COMMONWEALTH OF** | ) | |
| **KENTUCKY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MARTIN HERBERT,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | **(Consolidated Action Case No.** |
| | ) | **2:13-cv-00025-DJB-GFVT-WOB)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KENTUCKY STATE BOARD OF** | ) | |
| **ELECTIONS,** *et al.*, | ) | |
| | ) | |

**DEFENDANT, SENATE PRESIDENT ROBERT STIVERS',
RESPONSE TO SPEAKER GREG STUMBO'S
MOTION TO DISMISS COUNTERCLAIM/CROSS-CLAIM
MOTION FOR DECLARATORY RELIEF**

Comes Senate President Robert Stivers (hereinafter "Senator Stivers"), by counsel, and

for his response to Speaker Stumbo's motion to dismiss, submits the following:

1

## I.   BACKGROUND

On June 10, 2013, Senator Stivers filed an answer to the underlying complaint and a counterclaim/cross-claim for declaratory relief. [Doc. 32].  On June 17, 2013, Speaker Stumbo filed an answer to the counterclaim/cross-claim.  [Doc. 34].  On June 17, 2013, Speaker Stumbo also filed a motion to dismiss Senator Stivers' counterclaim/cross-claim. [Doc. 35].

In the counterclaim/cross-claim, Senator Stivers recounted the redistricting legislative history from the 2012 and 2013 General Assembly sessions, as well as the resulting 2012 litigation in state court following passage of 2012 HB 1. This legislative history included passage of a House redistricting plan by the House of Representatives on the twenty-fifth day of a thirty-day 2013 legislative session which utilized a population base that did not include the federal prison population in the Kentucky population base.  As noted in the counterclaim/cross-claim, this new population base differed from the population base used for all prior redistricting plans, including the 2012 congressional redistricting plan that became law without legal challenge.

Because of this unprecedented and constitutionally significant variable being introduced to the redistricting equation, and seeking to take action legislatively in a manner that will conform to constitutional requirements, Senator Stivers is seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.   Specifically, Senator Stivers seeks a declaratory judgment resolving the issue of whether the use of the "adjusted" population base that removes federal prisoners from the population count, as done in 2013 HB 2 of the 2013 Regular Session of the General Assembly, complies with the requirements of the Constitutions of the United States of America and Kentucky.   Speaker Stumbo makes three primary arguments in his motion to dismiss: 1) the question of counting or not counting federal prisoners in the population base is solely one of legislative policy; 2) counting prisoners dilutes Kentucky's citizen votes; and 3) the

matter of whether an adjusted population base may be used for redistricting is a question that is

not ripe for declaratory relief.

## II.    ARGUMENT

### 1.    CHANGING THE POPULATION BASE HAS BEEN REGULARLY SCRUTINIZED IN FEDERAL COURTS APPLYING CONSTITUTIONAL PRINCIPLES AND IS NOT SOLELY A QUESTION OF "LEGISLATIVE POLICY."

First, it must be noted that Speaker Stumbo appears to misapprehend Senator Stivers'

counterclaim/cross-claim when he argues that "[t]he Cross-claimant would have this Court

ignore nearly 50 years of United States Supreme Court jurisprudence by declaring that such

prison populations must be counted." (Motion to Dismiss, p. 3). Senator Stivers never asserted

that "prison populations must be counted" when forming a population base. However, it is a

gross oversimplification to assert, as Speaker Stumbo does, to say that "[i]t is crystal clear that a

state is free to exclude prison population data in apportioning legislative districts." (*Id*. at p.3).

Speaker Stumbo correctly cites *Burns v. Richardson*, 384 U.S. 73 (1966), for the notion

that states are permitted to remove certain populations from the population base when engaged in

legislative redistricting.  However, this is, by no means, the end of the constitutional analysis. In

*Kirkpatrick v. Preisler*, 394 U.S. 526 (1969), the United States Supreme Court reviewed a

challenge to a Missouri congressional redistricting plan. In the course of reviewing population

variances in the plan, the Court examined the state's justifications for the population deviations,

including the argument that the population variances were justified by unique population

characteristics within districts, such as the high proportion of "military personnel, college

students, and other nonvoters in some districts." (*Id*. at 530).  The *Kirkpatrick* Court reasoned:

Missouri . . . contends that certain population variances resulted from the legislature's taking account of the fact that the percentage of eligible voters among the total population differed significantly from district to district- some districts contained disproportionately large numbers of military personnel stationed at bases maintained by the Armed Forces and students in attendance at universities or colleges. There may be a question whether distribution of congressional seats except according to total population can ever be permissible under Art. I, § 2.  But assuming without deciding that apportionment may be based on eligible voter population rather than total population, the Missouri plan is still unacceptable. Missouri made no attempt to ascertain the number of eligible voters in each district and to apportion accordingly. At best it made haphazard adjustments to a scheme based on total population: overpopulation in the Eighth District was explained away by the presence in that district of a military base and a university; no attempt was made to account for the presence of universities in other districts or the disproportionate numbers of newly arrived and short-term residents in the City of St. Louis. Even as to the Eighth District, there is no indication that the excess population allocated to that district corresponds to the alleged extraordinary additional numbers of noneligible voters there.

. . .

States that are redistricting may properly consider [substantial population shifts].  By this we mean to open no avenue for subterfuge.  Findings as to population trends must be thoroughly documented and applied throughout the State in a systematic, not an ad hoc, manner.  Missouri's attempted justification of the substantial under population in the Fourth and Sixth Districts falls far short of this standard.  The District Court found 'no evidence . . . that the . . . General Assembly adopted any policy of population projection in devising Districts 4 and 6, or any other district, in enacting the 1967 Act.' (citation omitted).

(*Id*. at 534-535).

The United States Supreme Court affirmed the District Court's conclusion that Missouri failed to satisfactorily justify the population variances among the districts. (*Id*. at 536). From this, it is abundantly clear from the ruling in *Kirkpatrick* that federal courts will not bless arbitrary, haphazard adjustments to the population base.

This theme was reinforced by the Sixth Circuit Court of Appeals holding in *Young v. Klutznick*, 652 F.2d 617 (6th Cir. 1981).  In *Klutznick*, the Detroit Mayor sued the Census Bureau

4

Director and the Secretary of Commerce alleging that the 1980 census underreported the black and Hispanic populations in violation of Article 1, Section 2 of the Constitution.  The plaintiffs argued that the Census Act permitted the use of an adjusted set of census figures for purposes of determining Congressional representation. *Id*. at 618-619.   The District Court held for the plaintiffs, finding that the census numbers could not be certified until the government devised a statistically defensible means of adjusting census figures to include uncounted segments.  The Court of Appeals reversed, finding the injuries of the plaintiff to be too hypothetical, and that there was no controversy capable of judicial resolution. *Id*. at 619.

The Court of Appeals also found that the plaintiffs did not possess standing, because it could not be assumed that the Michigan legislature would act in a certain way with the census numbers in hand, thus an injury had not yet occurred. *Id*. at 623-624. "If the Constitution leaves the Michigan legislature free to adjust the census figures reported by the Census Bureau, then the Michigan legislature might adjust the census data, thereby preventing the anticipated harm."  *Id*. at 624.  The *Klutznick* Court noted the holding in *Kirkpatrick* that states may consider population shifts in redistricting, but also quoted *Kirkpatrick:* "(f)indings as to population trends must be thoroughly documented and applied throughout the state in a systematic, not an ad hoc, manner." (Citation omitted). *Id*. Continuing, the *Klutznick* Court stated:

> It is evident that states may use adjusted population figures when redistricting between census years. There is no reason to believe that states would not be free to adjust census figures for redistricting in the census year, as long as the adjustment is "thoroughly documented" and applied in a "systematic" manner.
> . . .
>
> The goal in any redistricting is to assure that "as nearly as is practicable one man's vote in a congressional election is worth as much as another's." (citation omitted). If the Census Bureau had erroneously undercounted the Detroit area by 25%, the Michigan legislature would not be precluded from adjusting the figures for purposes of congressional apportionment.

5

> Although the Constitution prohibits subterfuge in adjustment of census figures for purposes of redistricting, it does not constrain adjustment of census figures if thoroughly documented and applied in a systematic manner.

> *Id*. at 624-625.

A clear theme emerges from the Supreme Court's analysis in *Kirkpatrick* and the Sixth Circuit Court of Appeals in *Klutznick*:  Adjustments to the population base may be made, but they must be "thoroughly documented" and applied in a "systematic" manner.  (See also *Karcher v. Daggett*, 462 U.S. 725, 732 FN. 4 (1983), "If a State does attempt to use a measure other than total population or to 'correct' the census figures, it may not do so in a haphazard, inconsistent, or conjectural manner. *Kirkpatrick*, 394 U.S., at 534,535, 89 S.Ct., at 1230-1231"). Thus, the justification for seeking declaratory relief is quite apparent. Since congressional redistricting occurred in 2012 using an unadjusted population base, with no subsequent constitutional challenge, it is highly questionable whether the General Assembly can thereafter simply remove the federal prisoners from the population base for state legislative redistricting purposes, and then assert that population adjustments occurred in a "systematic manner."

Moreover, in the course of arguing his motion, Speaker Stumbo asserts that Senator Stivers need only answer the "simple question" of whether the Senate "intends to include the transitory, non-resident prisoners for purposes of redistricting." (Motion to Dismiss at p. 3). Such an assertion is ironic given that in 2013 HB 2, Speaker Stumbo's redistricting legislation did not remove the "transitory, non-resident prisoners," as is suggested in the motion. Instead, it simply removed all the federal prisoners from the Kentucky population base. Yet, resident Kentuckians can be found in the Commonwealth's federal prisoner population -- not all federal prisoners are non-residents.  Moreover, "transitory, non-resident prisoners" may be found in the state and local detention facilities around the Commonwealth, not just the federal prisons.  Can

Speaker Stumbo expect the Court to find that his methodology is "systematic" and "thoroughly

documented" when, even in his motion to dismiss, he mistakenly characterizes the simple act of

removing the federal prison population from the population base as removing the "transitory

non-resident prisoners"?  The errors in the motion to dismiss the declaratory relief action confirm

the compelling the need for the Court to rule upon the constitutionality of the population bases.

Whether the changes to the population base were "thoroughly documented" by the House

of Representatives is clearly an unresolved fact question. Senator Stivers has inadequate

information about what subject-matter experts the House of Representatives consulted in the

process of making the adjustments, and how it chose its methodology.  Such information is likely

a key component to determining the constitutionality of an adjusted population base.

Consequently, Senator Stivers is averse to moving forward legislatively without the Court

settling this question, especially considering that the Plaintiffs in the underlying action already

have challenged the constitutionality of the adjusted population base in their Petition.  (Plaintiff's

Complaint at ¶ 49).

### 2.    THE ISSUE OF THE CONSTITUTIONALITY OF ADJUSTED POPULATION BASES IS A MATTER APPROPRIATE FOR DECLARATORY RELIEF.

On page 7 of the June 27, 2013 Memorandum Opinion and Order which denied Speaker

Stumbo's motion to stay the proceedings [Doc. 48], this Court noted the following:

> [T]he Kentucky General Assembly has already once failed to pass
> constitutional legislative maps. *See Fischer*, 366 S.W.3d at 908. After this
> failure, the legislature unsuccessfully addressed redistricting in the
> following 2013 session.  A map passed the House of Representatives, but
> as confirmed by both the Plaintiffs and some Defendants, this map has
> generated nearly as many constitutional questions as it answered.  At the
> hearing, between assurances that a redistricting plan would pass, the
> representatives of each legislative chamber raised competing concerns
> over the House map.

Of course, the primary source of the concern regarding the constitutionality of the House map was the eleventh hour, surprise determination by the House of Representatives to change the population base for redistricting.  The Court in *Nationwide Mutual Fire Ins. Co. v. Creech*, 431 F.Supp.2d 710, 712-713 (E.D. Ky., 2006), citing *Scottsdale Ins. Co. v. Roumph*, 221 F.3d 964 (6th Cir., 2000), stated that:

> District courts should consider the following five factors in deciding whether to exercise jurisdiction over a declaratory judgment action:
>
> (1) whether the judgment would settle the controversy;
>
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*";
>
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy that is better or more effective.

The factors will be addressed, in order, below.

### A.    Whether the Judgment Would Settle the Controversy.

In the instant case, a decision on the constitutionality of the population base used in 2013 HB 2 would give the General Assembly and the Governor critical resolution of one of the most important issues of establishing constitutional legislative redistricting maps as they prepare for the August Extraordinary session. At the risk of being repetitious, it was the House of Representatives, not the Senate, that introduced a completely novel population base for redistricting in the waning days of the 2013 General Assembly. This new population base changes the constitutional equation, and adds a new variable that puts additional pressure on the

8

parties, who are working under a tight scheduling order imposed by the Court. In light of this fact, it would appear to behoove the Speak Stumbo to join Senator Stivers' action for declaratory relief, rather than oppose it.

### B. Whether the Declaratory Judgment Action Would Serve a Useful Purpose in Clarifying the Legal Relations at Issue.

This factor appears most relevant in insurance cases, such as *Roumph* and *Creech*, cited *supra,* in which insurance carriers are seeking determinations in federal court regarding defense and coverage of their insureds. There is no need in the instant case to "clarify legal relationships" *per se*, but the urgency to have a constitutionally sound population base on which to implement state legislative district maps is very real.

### C. Whether the Declaratory Remedy is Being Used Merely for the Purpose of "Procedural Fencing" or "To Provide an Arena for a Race for *Res Judicata*".

Obviously, it is the Plaintiffs in the underlying action that chose the forum of federal court, and the venue of the Eastern District of Kentucky, Northern Division. In his Counterclaim/Cross Claim for declaratory relief, Senator Stivers did not choose the court or the venue. There was no improper "race to the courthouse" or "forum shopping" in the declaratory relief action.

### D. Whether the Use of a Declaratory Action Would Increase the Friction Between Our Federal and State Courts and Improperly Encroach on State Jurisdiction.

There is no allegation (and no indication at the present time) that the declaratory action would increase any "friction" between state and federal courts, or improperly encroach upon state jurisdiction. As this Court is aware, the Kentucky Supreme Court in *LRC v. Fischer*, 366 S.W.3d 905 (Ky. 2012) (hereinafter, "*Fischer IV*") ruled that 2012 HB 1, signed into law by the Governor on January 20, 2012, was unconstitutional, and required that the 2002 redistricting plan

9

remain in effect for the 2012 elections. The ruling in *Fischer IV* is final and there are no outstanding issues pending before the Kentucky Supreme Court.

The Plaintiffs in the instant action filed suit alleging that the General Assembly has failed to pass constitutional legislative district maps in the 2011, 2012, and 2013 sessions following the 2010 decennial census.  The issues before this Court are not identical to those in *Fischer IV,* as the Plaintiffs do not simply allege that the 2012 maps are unconstitutional. There are also no actions against the General Assembly and the Governor regarding state redistricting pending in any state courts of the Commonwealth.

Obviously, this Court, in the June 21, 2013 scheduling conference, expressed its intention that the Commonwealth of Kentucky would have constitutionally sound state legislative districts prior to the November 4, 2013 residency deadlines for candidates running for office in a particular district. The Court's June 27, 2013 Scheduling Order, with its many expedited deadlines, is designed to accomplish that goal.  There are no actions pending in state court, and no state court is thus encroached upon.

### E.    Whether There is an Alternative Remedy That is Better or More Effective.

There is no "better" remedy available to Senator Stivers. The redistricting controversy is fully before the federal three-judge panel, and there is no more efficient or effective means for this issue to be resolved.

### 3.    THIS MATTER IS RIPE FOR DECLARATORY RELIEF.

While Speaker Stumbo argues that this matter is not ripe for declaratory relief, it would be appropriate to again quote from page 8 of the Court's June 27, 2013 Memorandum Opinion and Order:

> [T]ime is short for all. By November 4, 2013, the Kentucky Constitution
> requires that citizens of the Commonwealth must reside in the district in
> which they seek to run for election. Allowing that date to pass constrains
> the choices of these Plaintiffs and allows districts to be drawn punitively.
> In short, though the Plaintiffs do not seek and the Court does not intend to
> provide relief that obstructs the legislature, actions must be taken now to
> prepare for the possibility that the state institutions will be unable to fulfill
> their duty in a timely manner.

The ripeness of this matter has been fully enumerated by this Court. The Court, through its Scheduling Order, has given the parties its instructions to simultaneously prepare for the extraordinary session, and, additionally, prepare for a trial following the session to, presumably, determine the constitutionally of any enacted legislation. Senator Stivers' counterclaim/cross-claim for declaratory relief is in keeping with the urgency of the Court's Order to resolve this controversy, in a constitutionally sound fashion, prior to November 4, 2013. Indeed, the counterclaim/cross-claim expresses the immediacy of the situation in a manner similar to the Court: "In the interest of legislative and judicial efficiency, and in consideration of the importance and time sensitive nature of the issue, it is appropriate for this Court to address by way of declaratory relief whether it is constitutionally acceptable to redistrict using the adjusted population base proposed by the House of Representatives." *Id*. at ¶ 38.

When contemplating the issue of ripeness, it is also again noted that Plaintiffs in the underlying action challenged the constitutionality of the adjusted population base in their Petition. Plaintiff's Complaint at ¶ 49. The fact that the Plaintiff's Complaint challenges the constitutionality of the adjusted population base rebuts the notion that this question is hypothetical or academic.

**4.     A "MOTION TO DISMISS" IS IMPROPER FOLLOWING THE FILING
OF A RESPONSE TO THE COMPLAINT, AND SHOULD BE
CHARACTERIZED AS A MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FRCP 12(b), 12(d), and 56.**

The counterclaim/cross-claim was filed on June 5, 2013, simultaneously with the filing of
Senator Stivers' answer to the plaintiffs' complaint.  Speaker Stumbo filed a response to the
counterclaim/cross-claim on June 17, 2013, simultaneously with his motion to dismiss. [Doc.
34].  Speaker Stumbo's motion to dismiss would perhaps be best characterized as alleging that
Senator Stivers has failed to state a claim upon which relief can be granted – a FRCP 12(b)(6)
motion.  While the merits of the motion are obviously disputed by Senator Stivers, as set forth
above, it is also relevant to this action that Rule 12(b) of the Federal Rules of Civil Procedure
states in pertinent part that, "A motion asserting any of these defenses must be made before
pleading if a responsive pleading is allowed."  Speaker Stumbo did not file his motion to dismiss
prior to filing his answer to the counterclaim/cross-claim.  Thus, Speaker Stumbo's motion
should be re-characterized as a motion for summary judgment pursuant to Rule 56.  While Rule
56 permits a party to file a motion for summary judgment any time until 30 days after the close
of all discovery, it also contemplates full opportunities for the nonmoving party to engage in
discovery.  In the instant case, the Court has already set forth an extensive Scheduling Order for
the parties to complete discovery and prepare for trial.

Moreover, Rule 12(d) states that, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters
outside the pleadings are presented to and not excluded by the court, the motion must be treated
as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity
to present all the material that is pertinent to the motion."  Speaker Stumbo presented "matters
outside the pleadings" by attaching an exhibit containing prisoner data to his motion to dismiss.
Senator Stivers certainly seeks a reasonable opportunity to engage in discovery and the

12

opportunity to supplement this response, if needed, prior to the Court addressing the merits of
Speaker Stumbo's motion.

### III.    CONCLUSION

For the forgoing reasons, Senator Stivers urges the Court to overrule Speaker Stumbo's
Motion to Dismiss the Counterclaim/Cross Claim.  In the alternative, it is requested that the
Court deem the motion to dismiss as a motion for summary judgment, and consider the merits of
the motion after the necessary time for discovery.

Respectfully submitted,

*/s/ Stanton L. Cave*

_____

Stanton L. Cave, Esq.
LAW OFFICE OF STAN CAVE
P.O. Box 910457
Lexington, KY 40591-0457
Telephone: (859) 309-3000
Facsimile: (859) 309-3001
Email: stan.cave@insightbb.com
*Special General Counsel to Senate*
*President Robert Stivers in his Official*
*Capacity*


*/s/ Jessica A. Burke*

_____

Jessica A. Burke, Esq.
Deputy General Counsel
Kentucky State Senate
Office of the President
Room 265 Capitol Annex
Frankfort, Kentucky 40601
(502) 564-3120
jessica.burke@lrc.ky.gov

*Counsel for Senate President Robert Stivers*
*in his Official Capacity as Senate President*

13

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2013, a copy of the foregoing was served via the Court's

CM/ECF system.

/s/ Stanton L. Cave, Esq._____
Stanton L. Cave, Esq.