**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, *et al.*, | |
| Plaintiffs, | Case No. 2:13cv00068 |
| v. | **Electronically filed** |
| COMMONWEALTH OF KY, *et al.*, | |
| Defendants. | |
| MARTIN HERBERT, *et al.*, | |
| Plaintiffs, | Case No. 3:13cv00025 |
| v. | |
| KENTUCKY STATE BOARD OF ELECTIONS, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
JOINT MOTION FOR SUMMARY JUDGMENT**

In these consolidated cases, the Plaintiffs challenge Kentucky's current House and Senate legislative districts (that were enacted in 2002) as contrary to the Fourteenth Amendment's Equal Protection clause on the basis that the districts' populations, in light of the 2010 Census, are now impermissibly mal-apportioned and thus violate the "one person, one vote" principle. Because there are no genuine issues of material fact, and because the Plaintiffs are entitled to judgment as a matter of law, this Court should: 1) grant the Plaintiffs' joint motion for summary judgment; 2) enter a declaratory judgment finding the current House and Senate legislative districts

unconstitutional; and 3) issue a permanent injunction barring the official capacity Defendants' use of those legislative districts in future Kentucky elections.

## Statement of Facts

*2010 Census*

On March 17, 2011, Kentucky officials received the U.S. Census Bureau's detailed population data for the Commonwealth gathered from the 2010 Census. [Plaintiffs' Exh. 1: McCully Letter.] According to that data, Kentucky's total population increased by almost 300,000 people since 2000. [Plaintiffs' Exh. 2: Expert Report of William S. Cooper ("Cooper Report"), ¶ 11.][1] That increase brought Kentucky's 2010 population to 4,339,367 — an increase of almost 7.4% over the past ten years. [*Id*.][2] But, Kentucky's population growth was not uniformly distributed throughout the state. For example, several Kentucky counties experienced dramatic population increases, such as Boone (+38.17%), Bullitt (+21.36%), and Warren (+22.99%). [Plaintiffs' Exh. 3: Table of County Population Changes.] Other counties, however, lost significant population during that time, including Breathitt (-13.8%), Clay (-11.51%), and Harlan (-11.82%). [*Id*.] In fact, Kentucky's five largest counties — Jefferson, Fayette, Kenton,

---

[1]    Plaintiffs' Exhibits 3 through 17 accompanying this Memorandum of Law comprise the exhibits referenced in Mr. Cooper's expert report. For ease of reference, Plaintiffs' attached exhibits correspond to those referenced in Mr. Cooper's report (that he labels alphabetically) as follows:

Plaintiffs' Exh. 3 (Exh. A);    Plaintiffs' Exh. 4 (Exh. B);    Plaintiffs' Exh. 5 (Exh. C);
Plaintiffs' Exh. 6 (Exh. D);    Plaintiffs' Exh. 7 (Exh. E-1);    Plaintiffs' Exh. 8 (Exh. E-2);
Plaintiffs' Exh. 9 (Exh. F);     Plaintiffs' Exh. 10 (Exh. G-1);  Plaintiffs' Exh. 11 (Exh. G-2);
Plaintiffs' Exh. 12 (Exh. H);   Plaintiffs' Exh. 13 (Exh. I);      Plaintiffs' Exh. 14 (Exh. J);
Plaintiffs' Exh. 15 (Exh. K);   Plaintiffs' Exh. 16 (Exh. L);     Plaintiffs' Exh. 17 (Exh. M).

[2]    As set forth in the expert report of William Cooper, Plaintiffs calculate the total population of Kentucky, the ideal district sizes, and population deviations in the House and Senate plans using standard 2010 Census Bureau population data, including the 2010 Redistricting Data (Public Law 94-171) Summary Files and the U.S. Census Bureau American FactFinder website.

2

Boone, and Warren — all experienced population growth from 2000 to 2010. [*Id*.] And the population increases in these five counties combined accounted for more than 40% of Kentucky's total population growth between 2000 and 2010. [*Id*.]

Despite the availability of this information in March 2011, the Governor of Kentucky decided not to call the General Assembly into special session that year to correct the malapportioned districts. Instead, the General Assembly planned to (and did) take up redistricting at its 2012 Regular Session.

### *Kentucky's 2012 Maps Invalidated*

During the 2012 Regular Session, the General Assembly adopted new state and congressional legislative districts utilizing the 2010 Census data. H.B. 1, 2012 KY Gen. Assembly, Reg. Sess. (state legislative districts); H.B. 2, 2012 KY Gen. Assembly, Reg. Sess. (congressional districts). Within days of enacting those new districts, however, several plaintiffs, including some affected state legislators, challenged the new Kentucky House and Senate districts in state court alleging that those legislative maps violated the Kentucky Constitution. *Joseph Fischer, et. al. v. Kentucky Legislative Research Commission*, No. 12-CI-0109 (Franklin Cir. Ct.), *aff'd in Legislative Research Comm'n v. Fischer ("Fischer IV")*, 366 S.W.3d 905, 908 (Ky. 2012). Specifically, the *Fischer IV* plaintiffs asserted that the new maps violated § 33 of the Kentucky Constitution by impermissibly dividing more counties than necessary *and* by failing to achieve sufficient population equality. *Id*. The trial court agreed, and on February 7, 2012, it awarded plaintiffs temporary injunctive relief barring the defendants from using the newly-adopted legislative districts. *Id*. at 908-10; *see also Fischer, et al. v. Grimes, et al.*, No. 12-CI-0109 (Franklin Cir. Ct. Feb. 7, 2012).

In an expedited appeal from that ruling, the Kentucky Supreme Court entered an order on February 24 affirming the lower court's decision that the 2012 state maps were facially invalid and allowing the injunction to stand. *Fischer IV*, 366 S.W.3d at 910. In a subsequently released opinion explaining the decision, the Court analyzed the 2012 maps (using the 2010 Census data) in light of its precedents construing § 33. In doing so, the Court specifically noted that the "largely uncontested" facts established that, under the 2010 Census data, the "ideal" House and Senate district populations were 43,394 and 114,194, respectively. *Id.* at 909. Using this benchmark, the Court found that both the House and Senate maps contained districts whose populations deviated from the "ideal" district size by more than 5% — the presumptively impermissible threshold established by § 33 of the Ky. Constitution. *Id.* at 915-16. The Court held that because the state failed to prove that the population deviations were part of a reapportionment plan that "consistently advance[d] a rational state policy," *and* because the maps divided more counties than were necessary to maintain population equality amongst the districts, both maps violated § 33. *Id.* at 913, 916. This finding rendered the 2012 state legislative maps "null and void" and thus incapable of being used to conduct the 2012 elections. *Id.* at 917.

The *Fischer IV* decision also left intact the trial court's injunction requiring that until the General Assembly enacted constitutionally permissible legislative districts, Kentucky's 2002 maps (which were based upon population data from the 2000 Census) would be used in the 2012 elections. *Id.* at 918; *Fischer, et al. v. Grimes, et al.*, No. 12-CI-0109, slip op. at 15, ¶ 2 (Franklin Cir. Ct. Feb. 7, 2012). The Court reasoned that "ensuring the orderly process of the 2012 elections required the 2002 redistricting plan to remain in effect." *Fischer IV*, 366 S.W.3d at 919. And, in fact, the 2002 maps *were* used during Kentucky's 2012 elections, both during the May

4

primaries and the November general elections. But, as in 2011, the Governor opted not to call the General Assembly into special session to address redistricting in 2012.

Then, despite admonitions from the ACLU of Kentucky and the Secretary of State to resolve redistricting during the 2013 Regular Session, the General Assembly failed to do so. [*See attached* Plaintiffs' Exh. 18: ACLU Letter; Plaintiff' Exh. 19: Secretary of State Letter.] Of course, this result was consistent with the Governor's expressed desire that redistricting *not* be taken up during the 2013 Regular Session because the General Assembly had (according to him) other, more pressing, matters to address. [*See attached* Plaintiffs' Exh. 20: BETH MUSGRAVE, *Beshear Asks Lawmakers to Delay Legislative Redistricting*, Lex. Herald Leader (Jan. 9, 2013).] As a result, Kentucky's state legislative districts remain defined by the district maps adopted in 2002 that are based upon population data from the 2000 Census. Changes in Kentucky's total population (and its distribution) since that time, however, now result in there being grossly mal-apportioned legislative districts under both the 2002 House and Senate maps.

### *Mal-apportionment of Kentucky House and Senate Districts Under 2002 Maps*

Because Kentucky's current legislative districts were enacted in 2002 using population data from 2000, both the House and Senate maps contain districts whose populations deviate substantially from the "ideal" district population as determined using the more recent 2010 Census data. Specifically, when Kentucky's 2010 population of 4,339,367 is divided between its one hundred House districts and thirty-eight Senate districts, the "ideal" population size for a House and Senate district is 43,394 and 114,194, respectively. [Plaintiffs' Exh. 2: Cooper Report, ¶¶ 19, 25; Plaintiffs' Exh. 22: Declaration of James S. Horton ("Horton Declaration"), ¶¶ 13-14.] *See also* KRS 5.200, *et seq*.; KRS 5.300, *et seq*.; *Fischer IV*, 366 S.W.3d at 909. But when those "ideal" district sizes are compared to Kentucky's existing House and Senate districts

5

under the 2002 map, the population inequality among the districts is evident. For example, nineteen (19) House districts have populations that *exceed* the ideal district size by more than 10 percentage points. [Plaintiffs' Exh. 9; Plaintiffs' Exh. 22: Horton Declaration, att. 3.] And another twenty-four (24) House districts have populations that fall *below* the ideal population by more than ten percentage points. [*Id.*] Moreover, when one compares the populations of Kentucky's least and most populous House districts under the 2002 map, there is a deviation of *more than sixty (60) percentage points between the two*. [*Id.*; *compare* House Dist. 60 (+42.7%) *with* House Dist. 43 (-18.01%).]

Similarly, sixteen (16) of the thirty-eight (38) Senate districts — approximately 42% — have populations that deviate from the ideal Senate district size by more than ten (10) percentage points by having either too many people or too few. [Plaintiffs' Exh. 14; Plaintiffs' Exh. 22: Horton Declaration, att. 4.] And the deviation between Senate District 11 (which has the largest population) and Senate District 29 (which has the lowest) is 37.71 percentage points. [*Id.*]

The Plaintiffs in both *Brown* and *Herbert* reside in (and are registered voters of) several of Kentucky's most overpopulated House and Senate districts, including *the* most overpopulated House and Senate districts under the 2002 maps — House District 60 and Senate District 11. [RE #1: Complaint ("*Brown* Complaint"), ¶¶ 2-13; RE #1: Verified Complaint ("*Herbert* Complaint"), ¶¶ 6-10.] Moreover, Plaintiff Kenny Brown is the duly elected County Clerk for Boone County, the county containing these districts. In that capacity, Plaintiff Brown is responsible for administering and conducting elections in the affected districts. Thus, Plaintiffs, who are thus among the most injured by the mal-apportioned districts, clearly have standing to bring this challenge. *See Gray v. Sanders*, 372 U.S. 368, 375 (1963)("any person whose right to vote is impaired ... has standing to sue"). Following the General Assembly's failure to enact

6

constitutionally permissible state legislative districts in 2012 *and* its failure to enact any state legislative maps during the 2013 Regular Session, the *Brown* Plaintiffs and the *Herbert* Plaintiffs separately filed these now-consolidated actions seeking: 1) a declaration that, in light of the 2010 Census data, the 2002 maps violate the Fourteenth Amendment's Equal Protection Clause; and 2) permanent injunctive relief barring the 2002 maps' use in future Kentucky elections. [RE #1: *Brown* Complaint, ¶¶ 59-66; RE #1: *Herbert* Complaint, ¶¶ 37-39.]

## Argument

I.  **SUMMARY JUDGMENT IS PROPER BECAUSE KENTUCKY'S HOUSE AND SENATE DISTRICTS ARE MAL-APPORTIONED IN VIOLATION OF THE FOURTEENTH AMENDMENT'S "ONE PERSON, ONE VOTE" MANDATE.**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Birgil v. Board of Comm'rs*, 125 F.3d 948, 950 (6th Cir. 1997), *cert. denied*, 522 U.S. 1109 (1998). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). And in evaluating a motion for summary judgment, courts "must view all evidence and draw all reasonable inferences in the light most favorable to the nonmoving party." *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). However, if the movant establishes that there are no genuine issues of material fact and that judgment as a matter of law is appropriate, then the opposing party must produce "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). The "mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the

7

requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In this case, Plaintiffs assert that Kentucky's current House and Senate legislative districts — which were adopted in 2002 using population data from the 2000 Census — now suffer from substantial population imbalances that violate the Fourteenth Amendment's "one person, one vote" mandate. *Reynolds v. Sims*, 377 U.S. 533, 577 (1964). To comply with this constitutional mandate, state and local officials must make "an honest and good faith effort" to create the voting districts for elective offices "as nearly of equal population as is practicable" so that each person's vote will be given equal weight. *Reynolds*, 377 U.S. at 577; *Avery v. Midland County*, 390 U.S. 474, 480 (1968); *Abate v. Mundt*, 403 U.S. 182, 185 (1971); *Chapman v. Meier*, 420 U.S. 1, 22 (1975); *Hadley v. Junior College Dist.*, 397 U.S. 50, 56 (1970)("[W]hen members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials.").

In evaluating whether (or not) a given district map complies with the Fourteenth Amendment's equality mandate, courts look to the election plan's total population deviation — the difference between the largest *positive* deviation from the ideal district size and the largest *negative* deviation.[3] Plans with a total deviation of greater than 10 percentage points create a *prima facie* case of an Equal Protection violation and are presumptively invalid. *Brown v.*

---

[3] Districts' relative population equality is usually expressed as a percentage of "ideal" district size. The "ideal" district population is first determined by dividing the total population by the number of districts involved. Here, for example, dividing Kentucky's 2010 total population (4,339,367) by the one hundred House districts and by the thirty-eight Senate districts yields "ideal" populations for each chamber's districts of 43,394 and 114,194, respectively. [Plaintiffs' Exh. 2: Cooper Report, ¶¶ 19, 25; Plaintiffs' Exh. 22: Horton Declaration, ¶¶ 13-14, att. 1-4.] *See also Fischer*, 366 S.W.3d at 909.

*Thomson*, 462 U.S. 835, 843 (1983)(more than 10 percent total deviation presumptively invalid); *see, also, Abate*, 403 U.S. 182 (1971)(11.9% prima facie unconstitutional). Furthermore, even enacting plans with less than 10 percentage points of deviation does not necessarily create a safe harbor. *See e.g.*, *Larios v. Cox*, 300 F.Supp.2d 1320, 1339-1340 (N.D. Ga. 2004)*(per curiam)* (finding state legislative reapportionment plans with total deviation of 9.98% violated Fourteenth Amendment)*, aff'd*, 542 U.S. 947 (2004). But even where a plan is presumptively invalid due to more than 10% total deviation, that presumption can be rebutted by strong evidence showing that the deviation is justified by "legitimate considerations incident to the effectuation of a rational state policy." *Reynolds*, 377 U.S. at 579; *Mahan v. Howell*, 410 U.S. 315, 325 (1973). Plans with a total deviation *above* 16.4 percentage points, however, are rarely justifiable. *Mahan*, 410 U.S. 315, 329 (1973)(upholding state plan with 16.4 percent total deviation but stating that the deviation nearing the "maximum percentage deviation ... within tolerable constitutional limits"); *but see Brown v. Thomson*, 462 U.S. 835, 844-45 (1983)(upholding plan that resulted in one county's substantial negative variance from ideal district size due to state's "undisputed" policy of seeking to preserve county integrity).

Here, the undisputed material facts establish *both* that the 2002 House and Senate maps are grossly mal-apportioned in light of the 2010 Census data *and* that these deviations are not reflective of any legitimate considerations designed to promote a valid state policy.

    **A.**    **Kentucky's 2002 House Districts Are Unconstitutionally Mal-apportioned.**

Based on the 2010 Census data, the ideal population for Kentucky's House districts is 43,394. But under the 2002 House map, House District 43 has a population of only 35,580 whereas House District 60 has a population of 61,922. Thus, the map's total deviation — the difference between District 43's *negative* 18.01 percent deviation and District 60's *positive* 42.70

9

percent deviation — is 60.71 percent. [Plaintiffs' Exh. 2: Cooper Report, ¶ 22; Plaintiffs' Exh. 9; Plaintiffs' Exh. 22: Horton Declaration, ¶¶ 13-14, att. 1-4.] The map, therefore, is presumptively invalid. *Brown*, 462 U.S. at 842-43 (a plan with a deviation greater than 10 percent "creates a prima facie case of discrimination and therefore must be justified by the State.").

Moreover, the substantial population disparity amongst the House districts is not confined to Districts 43 and 60, but rather includes forty-one other districts whose populations exceed (or are less than) the ideal district population by more than ten percent. [Plaintiffs' Exh. 9; Plaintiffs' Exh. 22: Horton Declaration, ¶¶ 13-14.] Thus, *forty-three* of Kentucky's one hundred House districts deviate from the ideal district population by *more* than ten percent.

**B.    Kentucky's 2002 Senate Districts Are Unconstitutionally Mal-apportioned.**

As with the House districts, Kentucky's 2002 Senate Districts are also mal-apportioned in light of the 2010 Census data. Specifically, even though the ideal Senate district population is 114,194, seven districts have populations more than 10 percentage points below that number. [Plaintiffs' Exh. 2: Cooper Report, ¶25; Plaintiffs' Exh. 14; Plaintiffs' Exh. 22: Horton Declaration, ¶¶ 13-14.] Of those, Senate District 29's population of 94,194 is the smallest which represents a *negative* 17.51 percent deviation from the ideal district size. [*Id.*] Senate District 11, however, has the largest population at 137, 257 which is a *positive* deviation of 20.20 percent. [*Id.*] The 2002 Senate map's total deviation is thus 37.71 percent which is, of course, presumptively invalid. *Brown*, 462 U.S. at 842-43

And, as with the House districts noted above, the substantial population deviations in the Senate map apply to several of the districts. Specifically, sixteen Senate districts' populations exceed (or fall below) the ideal district population by more than ten percent. [Plaintiffs' Exh. 14; Plaintiffs' Exh. 22: Horton Declaration, ¶¶ 13-14.] Thus, *forty-two* percent of all Senate districts

10

contain populations that deviate by more than 10 percentage points from the ideal district size. [*Id*.]

### C. Continued Use of the 2002 Maps Does Not Further A Rational State Policy

Because the 2002 House and Senate legislative maps are substantially mal-apportioned and thus presumptively invalid, their use can only be justified where there is strong evidence to support the conclusion that their population deviations are the result of "legitimate considerations incident to the effectuation of a rational state policy." *Reynolds*, 377 U.S. at 579. But that standard cannot be met where (as here) the population deviations are *not* the result of legitimate considerations in furtherance of a rational state policy, but rather are the result of the General Assembly's failure to timely enact constitutionally permissible legislative districts following the release of the 2010 Census data.

In *Reynolds*, the Supreme Court stated that the requirement of substantial equality among voting districts "does not mean that States cannot adopt some reasonable plan for periodic revision of their apportionment schemes." *Id*. at 583. The Court then suggested that reapportionment once every ten years would be a "rational approach to readjustment of legislative representation." *Id*. And although the Court declined to hold as an absolute rule that decennial reapportionment is constitutionally required, the Court stated that "reapportionment ... with less frequency ... would assuredly be constitutionally suspect." *Id*. at 584.

Here, re-apportionment has not occurred since 2002 despite Kentucky having undergone significant population changes since then, both in terms of the total number of persons as well as the distribution throughout the state. Whatever arguments the state may have had to justify its use of the 2002 maps immediately after *Fischer IV*, *e.g.*, the orderly process of the then-impending 2012 elections, those arguments are no longer valid now that the General Assembly

11

has had the opportunity (but failed) to address redistricting during its 2013 Regular Session. As the Legislative Research Commission conceded in the *Fischer* litigation when responding to the trial court's question about the "constitutional deadline, if any" for redistricting:

> Because the 2012 General Assembly redistricted both the Senate and the House of Representatives during the first regular session after the decennial census was available, the General Assembly met any constitutional deadline for redistricting. The districts that existed before the enactment of House Bill 1 were out of population balance and subject to legal challenge if left in place for any additional length of time. The 2011 General Assembly did not have the requisite census information. The 2012 General Assembly has the information and *it is incumbent upon the General Assembly to reapportion the districts at the first opportunity.*

[Plaintiffs' Exh. 21: LRC's Answers to the Court's Questions -- *Fischer, et al. v. Grimes, et al.*, 2012-CI-00109 (Franklin Cir. Ct.), at ¶ 4.] Thus, because the continued use of the 2002 plan is not necessary to ensure "the orderly process" of pending elections as was the case in *Fischer IV*, there is no rational state policy or other governmental interest that can justify the mal-apportionment in Kentucky's 2002 House and Senate legislative districts.

## Conclusion

Even when the facts and inferences are viewed in the light most favorable to Defendants, the undisputed material facts in these cases establish that Kentucky's 2002 legislative districts are now grossly mal-apportioned resulting in widespread voting strength disparity amongst Kentucky's voters. Because the legislative districts' substantial population deviations cannot be justified by any legitimate state interest, and because the total population deviations exceed that which is permitted under the Fourteenth Amendment's "one person, one vote" principle, Plaintiffs in the above-styled consolidated actions are entitled to judgment as a matter of law. The *Herbert* Plaintiffs and the *Brown* Plaintiffs therefore respectfully request that the Court grant their motion for summary judgment, enter a declaratory judgment finding Kentucky's 2002

House and Senate districts are now constitutionally infirm, and enter a permanent injunction barring Defendants' use of those 2002 districts in future Kentucky elections.

Respectfully submitted,

s/ Christopher D. Wiest (by wes w/ permission)
Christopher D. Wiest (KBA 90725)
Chris Wiest, Atty at Law PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859-486-6850
513-257-1895 (v)
chriswiestlaw@yahoo.com

Rick Brueggemann (90619)
E. Jason Atkins (88044)
Hemmer DeFrank, PLLC
250 Grandview Dr.
Fort Mitchell, KY 41017
859/578-3855 (v)
859/578-3869 (f)
rbrueggemann@hemmerlaw.com

*Counsel for Brown Plaintiffs*

s/ William E. Sharp
William E. Sharp
ACLU OF KENTUCKY
315 Guthrie Street, Suite 300
Louisville, KY 40202
(502) 581-9746
sharp@aclu-ky.org

Laughlin McDonald
ACLU Voting Rights Project
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
(404) 500-1235
lmcdonald@aclu.org

Dale Ho*
ACLU Voting Rights Project
125 Broad Street
New York, NY 10004
(212) 549-2693
dale.ho@aclu.org

* Motion for *Pro Hac Vice* admission pending

Ben Carter
BEN CARTER LAW PLLC
455 South Fourth Street, Suite 902
Louisville, KY 40202
ben@bencarterlaw.com
ACLU of KY Cooperating Attorney

*Counsel for Herbert Plaintiffs*

## CERTIFICATE OF SERVICE

      I certify that on July 12, 2013, I electronically filed this Memorandum in Support of Plaintiffs' Joint Motion for Summary Judgment with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Stanton L. Cave
s.cave1@insightbb.com
Jessica A. Burke
jessica@jblawoffices.net

*Counsel for Senate President Robert Stivers*

Pierce B. Whites
piercewhites@aol.com
Anna S. Whites
annawhites@aol.com

*Counsel for House Speaker Greg Stumbo*

Clay A. Barkley
clay.barkley@ag.ky.gov
Matt James
matt.james@ag.ky.gov

*Counsel for Gov. Steve Beshear, Commonwealth of Kentucky*

Laura H. Hendrix
laura.hendrix@lrc.ky.gov
Greg A. Woosley
greg.woosley@lrc.ky.gov

*Counsel for KY Legislative Research Commission*

Lynn Sowards Zellen
lynn.zellen@ky.gov
Noel E. Caldwell
ncaldwell@caldwelllawyers.com

*Counsel for Kentucky State Bd. of Elections, Secretary of State Alison L. Grimes, David Cross, John W. Hampton, Stephen Huffman, Denise May, George Russell, Roy Sizemore, and Maryellen Allen*

                          s/ William E. Sharp
                          *Counsel for the Herbert Plaintiffs*