# Plaintiffs' Exhibit 21

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT
DIVISION I
CASE NO. 2012-CI-00109

JOSEPH M. FISCHER, ET AL.                                      PLAINTIFFS

v.

ALISON LUNDERGAN GRIMES, ET AL.                                DEFENDANTS

### LRC'S ANSWERS TO THE COURT'S QUESTIONS

*May it please the Court*:

The Legislative Research Commission ("LRC"), by counsel, respectfully answers the questions posed by the Court as follows:

1. How many citizens are temporarily disenfranchised by being assigned by House Bill 1 to a legislative district that is represented by a Senator or Representative who has never appeared on the ballot in the districts to which they are assigned under House Bill 1?

**ANSWER:** The answer to the question as literally phrased is "none" because no Kentucky citizen is "disenfranchised" by House Bill 1. The legal requirements for registering and voting are not impacted by House Bill 1 and all citizens of Kentucky continue to be represented in the Senate and House of Representatives. No term of a Senator is either lengthened nor shortened by House Bill 1. *See Anggellis v. Land*, 371 S.W.2d 857 (Ky. 1963).

2. What is the rational basis for assigning the geographic area encompassed in an odd numbered Senate District (former Senate District 13) for which elections are held in 2012 to an even numbered Senate District (new Senate District 4) that will not be on the ballot until 2014?

**ANSWER:** Without conceding that the rational basis test applies to the changing of district boundaries that is inherent in legislative redistricting, one rational basis is that the changes in the location and boundaries of Senate Districts 4 and 13 facilitated achieving the goals of proportionate population between the 38 Senate Districts. Whether or not that allocation was, in the opinion of any particular person, the best means to achieve that goal is not germane to the rational basis test.

3. Is there any rational basis to deny citizens of the former Senate District 13 the right to elect a Senator during the 2012 election cycle in which they would otherwise be entitled to vote for a Senator absent reassignment of that territory to an even numbered District? Does the reassignment of the former territory of Senate District 13 to Senate District 4 constitute special legislation under Section 59 of the Kentucky Constitution?

**ANSWER:** Because members of the Kentucky Senate are elected to four-year staggered terms, and because relative shifts in population between odd-numbered and even-numbered districts occur in each decennial census, every redistricting of the Senate enacted by the General Assembly results in people who previously resided in an even-numbered district thereafter residing in an odd-numbered district and vice versa. The decision as to which residents of districts that would elect a Senator during the 2012 election cycle are moved to a district which would not elect a Senator during the 2012 election cycle does not deny the rights of any voters. *See Anggellis, supra.*

The reassignment of some of the territory of formerly numbered Senate District 13 to a new District numbered as 4, and the relocation of a Senate District formerly numbered 13 to a different geographical area, is only one part of an Act of the General Assembly which redistricts the entire Senate and therefore does not constitute special legislation under Section 59 of the Kentucky Constitution.

4.  What is the constitutional deadline, if any, for the decennial legislative redistricting required by Section 33 of the Kentucky Constitution for the districts that were established in 2002 by 2002 Ky. Acts., c.1, effective Jan. 31, 2002?

**ANSWER:** Because the 2012 General Assembly redistricted both the Senate and the House of Representatives during the first regular session after the decennial census was available, the General Assembly met any constitutional deadline for redistricting. The districts that existed before the enactment of House Bill 1 were out of population balance and subject to legal challenge if left in place for any additional length of time. The 2011 General Assembly did not have the requisite census information. The 2012 General Assembly has the information and it is incumbent upon the General Assembly to reapportion the districts at the first opportunity.

5.  What is the minimum number of counties that must be divided in order to comply with *Fischer v. St. Bd. of Elections*, 879 S.W.2d 475 (Ky. 1994) for the House? And for the Senate?

**ANSWER:** The question of compliance with *Fischer II* is a question of law that will be addressed in LRC's Memorandum of Law.

The factual information which the Court is apparently seeking is the ratio of the counties' population in relation to the quotient resulting from dividing the population of Kentucky by the number of House and Senate districts, respectively. Using that calculation, the information is as follows.

For the House of Representatives, 22 counties are over 105%, 95 counties are under 95%, and 3 counties are between 95% and 105%.

For the Senate, 5 counties are split by House Bill 1, 3 of those exceed 105% and the other 2 exceed 95%.

3

6.  How many Pulaski County residents and voters are included in House District 80?

**ANSWER:**   Residents:         1,882

Registered voters:   1,146

7.  How many Laurel County residents and voters are included in House District 89?

**ANSWER:**   Residents:         13,758

Registered voters:   8,693

8.  What factual or legal problems exist with proposed alternatives to House Bill 1 (e.g. House Floor Amendment #1), concerning compliance with the U.S. Constitution, the Voting Rights Act of 1965, or other federal statutes?

**ANSWER:**   Although it is the position of LRC that the merits or demerits of proposals that were not enacted into law is not germane to the question whether House Bill 1 is constitutional, LRC states that the Speaker of the House distributed a written critique of House Floor Amendment #1 during the debate on that proposal which was attached to the brief for the House leadership *amicus curiae* previously filed with the Court.

Respectfully Submitted,

_____
Sheryl G. Snyder
Frost Brown Todd LLC
400 W. Market St., 32nd Fl.
Louisville, KY 40202
Telephone: (502) 568-0246
ssnyder@fbtlaw.com

and

Laura H. Hendrix
General Counsel
Legislative Research Commission
State Capitol Annex, Room 104
Frankfort, Kentucky 40601
Telephone: (502) 564-8100
Laura.Hendrix@lrc.ky.gov

*Counsel for Intervening Defendant LRC*

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were served by electronic mail on this the 3rd day of February, 2012, on:

Hon. Victor B. Maddox
Hon. John David Dyche
Hon. Jennifer Metzger Stinnett
Hon. Jason M. Nemes
2700 PNC Tower
101 S. Fifth Street
Louisville, KY 40202-3116

Hon. Anita Britton
Britton Osborn Johnson
200 West Vine Street, Suite 800
Lexington KY 40507

Hon. David Tachau
Hon. Dustin Meek
Tachau Meek PLC
3600 PNC Tower
101 South Fifth Street
Louisville KY 40202-3120

Hon. Jack Conway
Attorney General
The Capitol Building
700 Capitol Avenue, Suite 118
Frankfort, KY 40601

Hon. Scott White
Hon. Sarah Mattingly
Morgan & Pottinger
133 West Short Street
Lexington, KY 40601

_____
Counsel for Intervening Defendant LRC

LOULibrary 0000000.0001536 1202518v3