## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### COVINGTON DIVISION

| | | |
|---|---|---|
| **KENNY BROWN, individually and in his official capacity as the Boone County Clerk, et al.,** | ) ) ) ) | **ELECTRONICALLY FILED** |
| **Plaintiffs,** | ) | **Civil No. 2:13-cv-00068** |
| **v.** | ) | **DJB-GFVT-WOB** |
| | ) | |
| **THE COMMONWEALTH OF KENTUCKY, et al.,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |
| **MARTIN HERBERT, et al.** | ) ) ) | |
| **Plaintiffs,** | ) ) | **Civil No. 3:13-cv-00025** |
| **v.** | ) | **DJB-GFVT-WOB** |
| | ) ) | |
| **KENTUCKY STATE BOARD OF ELECTIONS, et al.,** | ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BROWN PLAINTIFFS' 2012 ELECTIONS CLAIMS AGAINST THE LEGISLATIVE RESEARCH COMMISSION UNDER FED. R. CIV. P. 12 FOR LACK OF SUBJECT MATTER JURISDICTION, FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

The Kentucky Legislative Research Commission[1] ("LRC") named in the Brown Plaintiffs'

complaint respectfully moves this Honorable Court to dismiss the Brown Plaintiffs' claims

against it relating to the use of the 2002 maps for redistricting in 2012, for lack of subject matter

---

[1] The LRC's Motion to Dismiss applies **only** to the LRC and not to the Senate President or the Speaker of the House.

jurisdiction, and failure to state a claim upon which relief may be granted, and respectfully submit the following **MEMORANDUM OF LAW** in support of their **MOTION TO DISMISS**. Fed. R. Civ. P. 12.

## I.    INTRODUCTION

These are two lawsuits filed over state legislative redistricting.  Both ask that this court issue a declaratory judgment that the current redistricting statutes are unconstitutional under federal and state law.  They further ask that the court, prospectively, issue an injunction prohibiting the use of the current districts and maps.  However, one lawsuit, brought by the "Brown Plaintiffs" also asks for damages to be assessed for an alleged past "failure to redistrict", a claim that was dismissed by this Court, a declaratory judgment to that effect, and attorneys' fees. This motion deals only with the Brown Plaintiffs' claims against LRC relating to the use of the 2002 maps for redistricting in 2012, which include alleged damages which have been agreed by the Plaintiffs to be baseless, and declaratory judgment and attorneys' fees therefrom.

The Legislative Research Commission, under KRS 7.100, is the administrative service agency for the legislative branch.  The LRC cannot and does not pass laws, but it is part and parcel of the legislative branch.  Neither does it enforce the laws, which is the responsibility of the executive branch. In a very practical sense, there is no present controversy regarding the LRC for this Court to adjudicate with respect to the 2012 redistricting. There is no standing on the part of the Plaintiffs.  In any event, the Plaintiff does not ask for any cognizable relief as against LRC as to the 2012 elections, nor apparently from any other party, and any claims against it arising from the Kentucky Courts' order to use the 2002 maps for the 2012 elections should be formally dismissed from this action, as agreed to in open court by the Brown Plaintiffs.  This court does not have subject matter jurisdiction over these claims as there is no present controversy for this

court to adjudicate, nor any standing on the part of the Brown Plaintiffs to bring this lawsuit against LRC as to the 2012 elections, because it has done nothing to affect them.   Under Kentucky's strict separation of powers provisions, LRC does not enforce the laws, as that authority rests squarely with proper executive branch agencies. See Legislative Research Commission v. Brown, 664 S.W.2d 907 (Ky. 1984).  The General Assembly, as a whole, passed a 2012 redistricting Act that comported with the Equal Protection Clause.   However, the Kentucky Courts enjoined enforcement of that Act on the basis of its interpretations of Section 33 of the Kentucky Constitution's prohibition against county splits.  Plaintiffs do not ask for any cognizable relief.   As to their damages claim, Plaintiffs have agreed that they failed to state a claim upon which relief may be granted, and this claim was dismissed by the Court in its earlier order. Therefore, their claims for relief and any attorneys fees should be formally foreclosed by this court.

Obviously, the LRC has taken no action to administer the laws, nor interpret them, as they have not the power to do so.   Therefore, there is no standing to sue them on a claim relating to the 2012 elections.  Plaintiffs have not stated any legal basis for holding anyone in this case liable for a mere compliance with the Supreme Court's orders with respect to the 2012 elections. This issue was decided over a year ago, and no appeal was taken from the decision of the Kentucky Supreme Court to the U.S. Supreme Court. Plaintiffs do not allege any acts on the part of the LRC that would allow a claim under its theory that the 2002 redistricting act was improperly used for the 2012 Elections, and there is no "failure" on the part of LRC to act. Plaintiffs simply allege that the General Assembly "failed to act."  This is not true, as legislation was passed in both 2002 and 2012 to enact redistricting.  The General Assembly **did** act in the 2012 Regular Session to pass a redistricting bill, 2012 Regular Session House Bill 1, that the

Governor signed into law on January 20, 2012. The text of that law, 2012 Kentucky Acts Chapter 1, may be found at http://www.lrc.ky.gov/Statrev/ACTS2012RS/0001.pdf.   The Legislative Record provides the daily summary of the actions of the General Assembly, and same may be judicially noticed by this Court.  The "Population Summary Report" for the enacted version of 2012 House Bill 1, which is provided to members and the public, may also be judicially noted by this Court.  http://www.lrc.ky.gov/record/12RS/HB1/RS.pdf. The Population Summary Report shows that the overall range of the House Districts under 2012 HB 1 was 10%, and the overall range of the Senate Districts was 9.84%.  Id.  Exhibit 1. This Court can also judicially note that the General Assembly passed redistricting legislation in 2002, 2002 Regular Session House Bill 1, http://www.lrc.state.ky.us/recarch/02rs/HB1.htm.  This bill had an overall range of 10% for the State House, and the State Senate had an overall range of 9.53%. http://www.lrc.state.ky.us/recarch/02rs/HB1/RS.doc.

The Kentucky Supreme Court, in an order dated February 24, 2012, mandated that the 2012 legislative elections would occur under the 2002 law, based on a finding that 2012 House Bill 1 violated Section 33 of the Kentucky Constitution and the Kentucky Supreme Court's previous opinion in Fischer v. State Board of Elections, 879 S.W.2d 475 (Ky. 1994) ("Fischer II").  Legislative Research Commission v. Fischer, 2012 WL 952983 (Order of Kentucky Supreme Court, 2012-SC-091; 2011-SC-092, February 24, 2012).  This Court may also take judicial notice that the Kentucky Supreme Court, not the General Assembly, issued the following order:

> [T]he terms of the injunction entered by the Franklin Circuit Court remain in place as follows:
> 1. The districts as enacted in the 2002 Ky. Acts and codified in KRS 5.200, et seq., remain in place with the election to be conducted with the boundaries in effect immediately prior to the enactment of House Bill 1 (2012).
> 2. The filing deadline for the aforesaid districts was February 10, 2012.

4

Id.   Exhibit 2.   Therefore, it is incorrect to state that the General Assembly imposed the 2002 districts upon the state.   This was done via a Court Order.   There is no allegation that anyone acted outside that Court order with respect to the 2012 elections.

## I.    APPLICABLE LEGAL STANDARDS FOR RULE 12 MOTIONS

Federal courts, as courts of limited jurisdiction, must have a constitutional or statutory basis for exercising that jurisdiction.   Gross v. Hougland, 712 F.2d 1034, 1036 (6th Cir. 1983). Federal courts thus have an independent obligation to decide whether they have subject-matter jurisdiction, and if none exists, the case must be dismissed under Rule 12(b)(1).   Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006); Todd v. Weltman, Weinberg & Reis Co., L.P.A., 434 F.3d 432, 435 (6th Cir. 2006).   The Plaintiff then bears the burden of showing that the court possesses subject matter jurisdiction.   Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).

On a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a court cannot accept as true the plaintiff's legal conclusions or unwarranted factual inferences, and dismissal is required if the court determines that the plaintiff can prove no set of facts that would entitle him to the requested relief against a Defendant.   A complaint must allege sufficient facts to state a claim against a Defendant for relief that is plausible on its face, and must be dismissed if these are not presented.   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

## II.    ARGUMENT

### a.    Plaintiffs Lack Standing to Sue LRC on the 2012 Elections Claims, under Article III Because They Have  Not Alleged an Injury in Fact Traceable to LRC.

Article III of the U.S. Constitution confers judicial power on the Federal Courts only in

"cases and controversies", and persons seeking to invoke the federal jurisdiction must allege an actual case or controversy. <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984). The Plaintiff has the burden of establishing Article III standing, and must show that:

(1)     It has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;
(2)     The injury is fairly traceable to the challenged actions of defendant; and
(3)     It is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).

The Brown Plaintiffs first must assert that the actions of the LRC injured him in some way as to substantially affect his legal interests. The Plaintiffs must show that they personally suffered some actual injury at the hands of LRC. This must be an "injury in fact" that is "distinct and palpable," not "abstract," "conjectural" or "hypothetical", and it must be traceable to the challenged actions of LRC. <u>See Allen v. Wright</u>, 468 U.S. 737 (1984).

Here, the Plaintiff has made no such allegation of injury, as discussed above, with respect to the Kentucky State Courts' decision to run the 2012 elections under the 2002 enacted redistricting. The Brown Plaintiffs agreed that they have no damages claim. However, they did not have any claims to assert in the first place, against the LRC. The Kentucky State Courts made the determination to run the 2012 elections under the 2002 redistricting, in direct contravention of the laws passed by the General Assembly. The only "injury" that Plaintiffs attempt to describe is:

Plaintiffs have suffered vote dilution, inadequate representation in their legislature, and damage as a result of having to undergo an election with unconstitutional boundaries, and confusion as to appropriate districts and voter data as a result of the unconstitutional districts drawn in 2011. … Northern Kentucky, where Plaintiffs live, receive[ ] only a fraction in value of the tax money paid to Frankfort in government services such as infrastructure improvements, services, schools and other areas, which fact only amplifies the damages caused by taxation without representation. The damages are capable of

calculation by the amount of tax revenues Plaintiffs have paid to Frankfort since March, 2011, or a portion thereof, by an equal percentage of mal-apportionment suffered.

Brown Plaintiffs Response to Defendant, Alison Lundergan Grimes, First Set of Interrogatories Directed to the Brown Plaintiffs, page 6 (July 9, 2013) (Exhibit 3). The "Response" also attempts to take the State Board of Elections and Secretary of State to task for running elections under the Court Order of February 24, 2012. Additionally, they assert there was an issue as to the special election held for the House seat in June, although no motion was made to this Court to alter the time table for same, or enjoin it.

### b. The Complaint States No Claims Against LRC for the 2012 Elections as Held Under the 2002 Redistricting Law.

The Complaint states no claim against LRC for the 2012 Elections. First, 42 U.S.C. § 1983 does not permit a claim to be made against the state as an entity or against individuals in their official capacities. In suing LRC as a state agency, Plaintiffs have, in effect, sued the state, which is not a "person" under the Civil Rights Act. The Supreme Court has held that a state agency is not a "person" under 42 U.S.C. § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Therefore, without the underlying claim, there would be no provision for 42 U.S.C. § 1988 attorneys' fees. However, there is no allegation of a claimed violation by LRC of any alleged constitutional rights arising under 42 U.S.C. § 1983. In any event, Brown Plaintiffs have agreed they have no damages claims arising from the 2012 elections. The courts have stated that general ability to enforce a law, without more, does not give rise to a claim. Children's Healthcare is a Legal Duty, Inc. v. Deters, 92 F.3d 1412, 1416 (6th Cir. 1996). In this case, there is not even an ability to "enforce" a law. Therefore, without the underlying claim, there would be no provision for 42 U.S.C. § 1988 attorneys' fees on the basis of the 2012 elections claim.

Additionally, although the Complaint alleges without statutory support, and in a vague and conclusory way, that the Plaintiffs are purporting to sue for "vote dilution," and thus ask for attorneys fees under 42 U.S.C. §1973l(e), they did not state such a claim, nor could they. First, they do not specifically cite 42 U.S.C. §1973(a) in their claim for relief, although they purport to allege an entitlement to attorneys fees for "vote dilution" under 42 U.S.C. §1973l. However, 42 U.S.C. §1973 applies to protect those persons who are members of a protected class of racial and language minorities. Thornburg v. Gingles, 478 U.S. 30, 43 (1986). A claim under this section must include an averment that the right to vote is intentionally denied on the basis of race, color, or status as a language minority. There is no allegation of any such thing. Section 2 of the Voting Rights Act, 42 U.S.C. §1973, premises standing upon a Plaintiff's standing as a member of a minority group. Therefore, unless a Plaintiff alleges that he or she "is a member of a protected minority," that Plaintiff has "filed a claim upon which relief cannot be granted." Perry-Bey v. City of Norfolk, Va., 678 F. Supp. 2d 348, 360 (E.D. Va. 2009). Plaintiffs have made no such claim that they are members of a protected minority.

There is no declaratory judgment claim, either state or federal, stated in the Complaint against LRC for the 2012 elections. Again, the LRC does not enact laws nor enforce them. The Kentucky Courts overruled the actions of the General Assembly as a whole, more than a year ago, and reinstituted the 2002 district lines. A claim that presents no justiciable controversy cannot be considered by a court as against that party. If the claim is under state law, the courts would look to state requirements. Kentucky Courts have said that they decide cases only if an "actual controversy" exists with respect to the rights and duties of the parties. Revis v. Daughtery, 287 S.W.28 (Ky. 1926). Where there is no showing that any action was taken against a party by a Defendant, there is no basis for a declaratory judgment. Commonwealth ex

rel Watkins v. Winchester Water Works, 197 S.W.2d 771 (1946).  The federal courts have stated, for declaratory judgment actions, the injury in fact resulting from the Defendant's action is mandatory.  Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 473 (1982).  There is no allegation that LRC took any action whatsoever with respect to Plaintiffs in running the 2012 elections.  Therefore, there is no declaratory judgment claim against LRC with respect to the 2012 elections.

The Plaintiffs lack standing to sue over the 2012 elections because they have not alleged an injury in fact.  The claims with respect to the 2012 redistricting and elections, as stated by Plaintiffs and enumerated above are vague and speculative, including a claim of "confusion," thus there is no "case nor controversy" for it to decide.  The Plaintiffs must show that they personally suffered some actual or threatened injury.  The courts have to define the "admittedly" imprecise concept of injury by describing it as an "injury in fact" that is "distinct and palpable," not "abstract," "conjectural" or "hypothetical".  See Allen v. Wright, 468 U.S. 737 (1984). Plaintiffs have alleged no injury in fact, as described by the above discussion, where they simply fail to assert facts delineating this injury in any non-hypothetical way.  Mere allegations of "confusion" are not enough to vault these claims into federal court.  However, the Court's order specifically told Plaintiffs what to do with respect to the 2012 elections.

Additionally, two of the Plaintiffs allege that they were candidates in 2012 and may wish to be ones in the future.  They have no rights which were abridged in 2012.  However, there is no standing on the basis of the right to be a candidate.  Clements v. Fashing, 457 U.S. 957 (1982). "The First Amendment does not in terms confer a right to run for public office, and this court has held that it does not do so by implication either."  Carver v. Dennis, 104 F.3d 847, 851 (6th Cir. 1997).  The Kentucky Supreme Court has bluntly stated:

9

> Laws commonly, if not universally, impose upon candidacy geographic or residential restrictions, age and citizenship restrictions, and sometimes educational or experiential restrictions. Such laws effectively control the eligibility for elective office without any abridgment of First Amendment liberty because running for elective office is simply not among the rights secured by the First Amendment.

Cook v. Popplewell, 394 S.W.3d 323, 337 (Ky. 2011).   Additionally, even though Plaintiffs argue they or others wished to vote for particular candidates who might have run from particular districts, the Sixth Circuit has held that "A voter has no right to vote for a specific candidate or even a particular class of candidates."   Citizens for Legislative Choice v. Miller, 144 F.3d 916, 921 (6th Cir. 1998).

Also, the Plaintiffs argue that somehow they are represented by "improperly elected officials" under the 2012 elections as ordered by the Kentucky Supreme Court.   Under Kentucky law, a private citizen cannot maintain an action to declare an election void, even under the legal theory that the election was "unconstitutional," as no person has "any justiciable right to keep from office a person who claims it by virtue of an election."   Witten v. Sternberg, 475 S.W.2d 496, 498 (Ky. 1971).    Therefore, any past injury that they assert with respect to the 2012 elections for legislators is not a cognizable claim.   Also, any such claims would be also subject to the concerns outlined below.   Additionally, under Vieth v. Jubelier, the Supreme Court has stated that the plaintiffs have no standing where all they have alleged is the possibility of political interests possibly being abridged, and no concrete justiciable claims thereunder.   541 U.S. 267 (2004).

Indeed, Kentucky's Supreme Court has rejected this ludicrous idea that Plaintiffs are somehow "unrepresented" in the State Legislature.   The Court has stated that, even where a legislator's existing legislative district is moved from one part of the state to the other, the entire General Assembly represents all the state's residents:

However, as stated in Selzer v. Synhorst, 253 Iowa 936, 113 N.W.2d 724:

'* * * The idea that we are personally represented and represented only by officials for whom we have voted stretches too far the theory of representative government. In some states our incumbent President did not receive a majority vote. In Washington, D. C., the residents did not vote at all. The President however, is still the President of all the people.'

Although a Senator is required by Section 32 of the Kentucky Constitution to be a resident of the district from which he is elected, once he is elected he represents generally all the people of the state and specifically all the people of his district as it exists during his tenure in office. Certainly no one would suggest that a Senator represents only those persons who voted for him.

Anggelis v. Land, 371 S.W.2d 857, 859 (Ky. 1963).

Even though there is an amorphous assertion that somehow people who may or may not be elected to the State House and Senate may need to be "removed from office," or are otherwise "improperly elected" and there would be no redress, this is not true.  Under Sections 38 and 39 of the Kentucky Constitution, the House or Senate could act to rule upon the qualifications of a member elected to the body, via a legislative contest action timely initiated after the election under KRS 120.215.   However, federal courts do not involve themselves in such political disputes.  The U.S. Supreme Court has ruled, in a case construing Kentucky's similar provision for gubernatorial contest actions which are similarly decided by the legislature under Section 90 of the Kentucky Constitution, that federal courts would not interfere with the legislature's solemn determination as to who should serve as Governor:

The highest court of the state has often held, and, in the present case has again declared, that under these constitutional provisions the power of the general assembly to determine the result is exclusive, and that its decision is not open to judicial review

Taylor v. Beckham, 178 U.S. 548 (1900).   The Supreme Court refused to overturn the result of the election as finally determined by the General Assembly and upheld the then-Kentucky Court of Appeals' decision in Taylor v. Beckham, 108 Ky. 278, 56 S.W. 177, 178 (Ky. 1900).  Additionally, each House of the General Assembly, under Section 38 of the Kentucky Constitution, has the final the ability to determine its membership, where a legislative election

has already been held, and courts refuse to entertain a declaratory judgment action of this kind. Raney v. Stovall, 361 S.W.2d 518, 523 (Ky. 1962).

Courts do not get involved in such issues where they allege no injury in fact. Additionally, the claims are political in nature, such as Plaintiffs' claims that they are not receiving "enough tax dollars" as a result of the 2012 elections, and are somehow entitled to a refund on their payments. These are political concerns that Courts do not concern themselves with. It is unclear whether Plaintiffs make these claims as "representatives" of their county governments, i.e. as county officials, or in an individual capacity. However, the Kentucky Courts have held that county officials cannot increase the amount of tax dollars appropriated to their respective counties by suing the state. Additionally, since county governments are essentially subdivisions and subordinate to the state government, they cannot sue to receive more funds or fees from the state. They can only be paid under the provisions of Kentucky law, including appropriations, and counties and officers thereof cannot sue for additional tax dollars. See County Fiscal Courts v. Com., Justice and Public Safety Cabinet, 2009-CA-001710-MR, 2010 WL 3361293 (Ky. App. Aug. 27, 2010). As "the county is but an arm of the state government; it is merely a subdivision of the state formed for administrative convenience," the moneys appropriated by statute to officers thereof is strictly governed by statute, and officers and counties cannot sue for more funds. Holland v. Fayette County, 41 S.W.2d 651, 655 (1931). Clearly, "no officer is entitled to demand or receive for the performance of his public duties more than is authorized by the law. KRS 64.410(2); Smothers v. Washington County Fiscal Court, 294 Ky. 35, 170 S.W.2d 867." Webster County v. Nance, 362 S.W.2d 723, 724 (Ky. 1962).

The Plaintiffs apparently claim that they are entitled to their tax money back. This is clearly

not a viable claim.  Section 230 and 231 of the Kentucky Constitution provide sovereign immunity for any claim that attempts to claw back tax dollars from the Commonwealth. Kentucky state courts and federal courts have stated that there is no claim stated on this basis. Sections 230 and 231, taken together, prohibit suits commanding the General Assembly or the Executive Branch to open up the State Treasury. The General Assembly appropriates funds for stated purposes, and there is no concomitant power in the court to order payments in excess of statutory and budgeted amounts.

Section 230 states, in pertinent part:

> No money shall be drawn from the State Treasury, except in pursuance of appropriations made by law.

Section 231, set forth above, absolutely prevents lawsuits to gain access to the public fisc, and means that the Commonwealth does not waive its sovereign immunity.  Kentucky courts have consistently held that Section 231 "grants the General Assembly exclusive authority to decide when and under what conditions the Commonwealth will allow itself to be subjected to suit." Dept. of Banking and Securities v. Brown, 605 S.W.2d 497, 500 (Ky. 1980).  The General Assembly has not consented to allow either itself, its members, nor the public Treasury, nor executive branch to be sued in this case. Read in tandem, these sections prevent this attempted raid on the Treasury.

The Kentucky Supreme Court, in Fletcher v.Commonwealth, confirmed that the power of the purse rests exclusively with the General Assembly, and not with agencies charged with carrying out these directives.  The Court stated thus:

> We have consistently held that this provision means exactly what it says. Commonwealth ex rel. Armstrong v. Collins, 709 S.W.2d 437, 441 (Ky.1986) ("It is clear that the power of the dollar-the raising and expenditure of the money necessary to operate state government-is one which is within the authority of the legislative branch of government. The Constitution of the Commonwealth so

states and we have so stated."); <u>L.R.C. v. Brown</u>, 664 S.W.2d at 925 ("The budget, which provides the revenue for the Commonwealth and which determines how that revenue shall be spent, is fundamentally a legislative matter."); <u>Ferguson v. Oates</u>, 314 S.W.2d 518, 521 (Ky.1958) ( "[T]he purpose of [Section 230] was to prevent the expenditure of the State's money without the consent of the Legislature.").

<u>Fletcher v. Commonwealth</u>, 163 S.W.3d 852, 863-864 (Ky. 2005). The Court affirmed that

legislative bodies have final control over the level and direction of funding:

> Article I, Section 9, Clause 7 of the United States Constitution contains wording almost identical to that of Section 230, and the United States Supreme Court has consistently given that provision its literal meaning. <u>Cincinnati Soap Co. v. United States</u>, 301 U.S. 308, 321, 57 S.Ct. 764, 770, 81 L.Ed. 1122 (1937) ("It means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress."); <u>Reeside v. Walker</u>, 52 U.S. (11 How.) 272, 291, 13 L.Ed. 693 (1850) ("However much money may be in the Treasury at any one time, not a dollar of it can be used in the payment of any thing not thus previously sanctioned."). Its purpose is to vest in Congress, the branch of government that is most representative of the people, the power to determine how the people's money will be spent. <u>Office of Pers. Mgmt. v. Richmond</u>, 496 U.S. 414, 427-28, 110 S.Ct. 2465, 2473, 110 L.Ed.2d 387 (1990) ( "But the Clause has a more fundamental and comprehensive purpose **.... It is to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants."**); <u>Cincinnati Soap Co.</u>, 301 U.S. at 321, 57 S.Ct. at 770 ("The provision of the Constitution ... that, 'No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law,' was intended as a restriction upon the disbursing authority of the Executive department ....").

<u>Id</u>. (emphasis supplied). The Plaintiffs seek a declaration completely contrary to this holding.

Political questions are not the purview of the courts to resolve, and the courts leave them in the

hands of the political branches to resolve. <u>Fletcher</u>, at 860.

The Kentucky General Assembly determines how much and where the people's money is

spent, and the total amounts that are appropriated for each purpose. <u>Commonwealth ex rel</u>

<u>Armstrong v. Collins</u>, 709 S.W.2d 437 (Ky. 1986). By passing a budget, the General Assembly

has determined the use of that limited pool of funds, as mandated by the Kentucky Constitution.

It sets the Commonwealth's fiscal priorities, which includes appropriations.    However, the proper avenue for an appeal for more tax dollars for county officials is through the political process, not the judicial process.

The separation of powers provisions in Sections 27, 28, and 29 of the Kentucky Constitution also prohibit the counties or other litigants from using the judiciary to compel the legislature to act, or from commanding the executive branch to open up the Treasury.  Courts have held that it is the province of the legislature to determine the proper level of appropriations that were necessary to enable the executive to enforce the laws. See Comm., Cabinet for Health and Family Services v. G.W.F., 229 S.W.3d 596 (Ky.App. 2007) (Holding that court could not force Cabinet to pay for hair follicle testing in absence of specific appropriation from the Legislature).  The courts have said that the General Assembly, in examining the financial condition of the state, can suspend or change previously authorized salaries, transfer funds among various executive departments, and otherwise act to ensure the fiscal solvency of the Commonwealth.  See Collins, supra. If it is alleged that certain county officials need more money to run their operations, such as for elections, Plaintiffs cannot receive additional "reimbursement" out of the Treasury, when same is not appropriated. Hager v. Shuck, 87 S.W. 300 (Ky. 1905).

Also, an alleged claim that tax moneys paid into the State Treasury were somehow "improperly paid" under a theory of unconstitutional "taxation without representation" would also have to involve the State Department of Revenue and the State Treasurer, although they have not been sued in this action.  Therefore, the Plaintiffs have failed to join parties necessary for just adjudication of this particular claim, however, these parties may also be able to assert their immunities from suit.  Additionally, this lawsuit may not be brought in federal court

alleging improper payments of state taxes, under whatever novel theory that Plaintiffs espouse. If Plaintiffs are truly claiming that they or persons they represent are entitled to a refund of their tax revenues for all of Northern Kentucky, they would have to individually sue in state court under KRS 134.590 for that specific refund and adjudicate this through the state court system. Additionally, they would have had to allege that they paid the exact amount of taxes "under protest", and then sue to get it back, and absent that, they would have no claim. They have not stated that Plaintiffs have done so. See Coleman v. Inland Gas Corp., 21 S.W.2d 1030 (Ky. 1929). Additionally, the Kentucky Courts have affirmed that state tax dollars are not "refundable" absent a specific state statute, and state taxpayers have no ability to demand repayment from the government:

> Since a taxpayer has no immunity from taxation, which is not a contractual liability but rather the shared costs of the benefits of government, no fundamental right is involved.

Miller v. Johnson Controls, Inc., 296 S.W.3d 392, 403 (Ky. 2009). Indeed, the Kentucky Courts have held that there is no right to object to taxation on the mere basis that some taxes are used in other parts of the Commonwealth, and specifically rejected a claim that a given method of taxation was, as in the Plaintiffs' words, "taxation without representation":

> The building of citizenship out of and with children in each of the counties and cities of the state of the class of those in appellee's home is not only a purpose of local concern, but is a matter of state-wide importance. It is an essential and important business of all governments. City of Louisville v. Com., 134 Ky. 488, 121 S. W. 411. The pre-eminent purpose and primary duties of the appellee are to rescue delinquent, incorrigible, dependent, neglected, helpless children of the county and city, and to care for and develop them mentally, physically, and morally, in order to afford to them an opportunity for an equal chance in life with the more fortunate. Such work of the appellee is a matter of public concern, not only to Jefferson county and the city of Louisville, but to the entire state, although only children residing in Jefferson county and the city of Louisville are eligible to receive the benefits of the authorized taxation. The Legislature may constitutionally enact such legislation as in its discretion will insure the provisions therefor.

Fox v. Board for Louisville & Jefferson County Children's Home, 244 Ky. 1, 50 S.W.2d 67, 73 (1932).

The federal courts have held that they have no basis for adjudicating mere state tax complaints:

> As the case is brought here from a state court, the construction put by the court below upon the statutes and Constitution of its own state is not open to review here. Southwestern Oil Co. v. Texas, 217 U. S. 114; Brown-Forman Co. v. Kentucky, 217 U. S. 563, 569.  Since the Kentucky Court of Appeals has held that the plaintiff is not entitled under the state law to the relief prayed even if the act of 1918 be deemed invalid, no questions as to the validity of that act under the federal Constitution is presented for decision on this record.

Swiss Oil Corporation v. Shanks, 273 U.S. 407, 411-12 (1927).

### c.  The Tenth and Eleventh Amendments Bar The 2012 Claims As to LRC.

The Tenth Amendment to the United States Constitution provides:

> The powers not delegated to the United States by the Constitution, nor prohibited by it to the State, are reserved to the State respectively, or to the people.

The Eleventh Amendment of the United States Constitution provides as follows:

> The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State.

U.S. Const.amend. XI.

The U.S. Supreme Court has stated that an "unconsenting State is immune from suits brought in federal courts *by her own citizens* as well as by citizens of another State."  Edelman v. Jordan, 415 U.S. 651, 662-63 (1974)(emphasis supplied); see also Alden v. Maine, 527 U.S. 706, 727 (1999) (applying the Tenth and Eleventh Amendments to bar suit);  Tennessee Dept. of Human Services v. U.S. Dept. of Education, 979 F.2d 1162, 1166 (6th Cir. 1992).  The Eleventh Amendment prevents a citizen "from suing his own state in federal court for damages, past debts,

or retroactive relief of any kind." Id. at 1166 (citing Edelman v. Jordan). A claim against LRC would be retroactive.

A state's Eleventh Amendment immunity may only be waived in two ways. First, a state's Eleventh Amendment immunity may be waived by Congressional enactment of a statute, under an "unmistakably clear" and valid exercise of the power of Section 5 of the Fourteenth Amendment. Nevada Dept of Human Resources v. Hibbs, 538 U.S. 721, 726 (2003); Touvell v. Ohio Dept. of Mental Retardation and Developmental Disabilities, 422 F.3d 392, 395 (6th Cir. 2005). Second, a state may effect a waiver of this immunity by consenting to suit in federal court, however, there is no consent here by LRC. Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613, 616 (2002); Nair v Oakland County Community Mental Health Auth., 443 F.3d 469, 474 (6th Cir. 2005).

There is no Congressional act cited by Plaintiff that constitutes a waiver of the state's immunity, as Section 1983, stated above, has been construed to disallow it. Kentucky has not waived its sovereign immunity on its own behalf. Kentucky Constitution Sections 230, 231. The lawsuit purports to sue LRC in its capacity as a part of the state, a state legislative agency. Because the State has not waived its sovereign immunity from suit, Plaintiffs' claims against them are barred by the Eleventh Amendment. Edelman, 415 U.S. at 662-663. Thus, Plaintiffs have failed to state a claim upon which relief may be granted as to the LRC on the 2012 elections claim. They cannot be held liable for Plaintiffs' claims arising from alleged past constitutional violations, particularly where it is not alleged to have done anything with regard to Plaintiffs. Carpenter v. Kentucky, 2008 WL 4999127 (E.D. Ky. Nov. 21, 2008). Accordingly, the 2012 election claims against LRC should be dismissed, as they asked for injunctive or monetary relief against it, as should any pendent state law claims, based upon the 2012 elections. See Pennhurst

State School v. Haldeman, 465 U.S. 89, 100-01 (1984). However, as discussed below, there are no state or federal law claims made relating to the 2012 elections.

Plaintiffs apparently seek to dislodge duly elected representatives on the basis of their allegations that the 2012 elections were somehow "illegal." However, the Supreme Court stated that the states have plenary power over these elections, out of respect for federalism. The U.S. Supreme Court has recently reiterated that the 10th Amendment protects the states' ability to determine their elections. More specifically, " 'the Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment, the power to regulate elections.' " Gregory v. Ashcroft, 501 U.S. 452, 461–462, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (quoting Sugarman v. Dougall, 413 U.S. 634, 647, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973)." Shelby County, Ala. v. Holder, 133 S. Ct. 2612 (U.S. 2013). As a sovereign state, "[e]ach State has the power to prescribe the qualifications of its officers and the manner in which they shall be chosen." Shelby County, Ala. v. Holder, 133 S. Ct. 2612 (U.S. 2013). As noted above, the United States Supreme Court has refused to remove or "oust" duly elected Kentucky state officers. Taylor v. Beckham, 108 Ky. 278, 56 S.W. 177, 178 (Ky. 1900); 178 U.S. 548 (1900). The Sixth Circuit held, in dismissing a challenge to a state's method of electing officers on First and Fourteenth Amendment claims that voters had an interest in electing particular legislators, that the state has an interest in preserving the orderly administration and the finality of its elections, thus:

> our decision rests on the State's sovereign interest in structuring its government. It is an interest recognized by both the text of the Constitution and the spirit of federalism.

Citizens for Legislative Choice v. Miller, 144 F.3d 916, 925 (6th Cir. 1998) (citing Taylor v. Beckham, 178 U.S. 548, 570-571).

### d. Legislative Immunity Bars the 2012 Claims Against LRC.

The Plaintiffs cannot bring the LRC into this suit if it is premised on any legislative activity they have performed or are going to perform.  Any activities that they are alleged to have performed with respect to legislative responsibilities are not the proper subject of a damages, declaratory judgment or injunctive relief claim, or attorney fees award, under legislative immunity.  The courts have held that activities relative to the passage of legislation, or the lack of passage of legislation, cannot give rise to a 42 U.S.C. § 1983 claim for damages, nor may the courts assess prospective or declaratory relief against legislative entities such as LRC.   See Supreme Court of Virginia v. Consumers Union of the United States, 446 U.S. 719, 734 (1980). Therefore, Plaintiffs' claims relating to the use of the 2002 law to hold 2012 elections, even assuming any were properly stated, which they are not, and any prospective or declaratory relief, is not available.

The Kentucky Constitution, like the Constitutions of most other states, contains a provision that protects the immunity and privilege of the legislature to act.  Section 43.  The United States Supreme Court has specifically held that state legislators are absolutely immune from suit under the federal common law for any actions that they take in performing fundamental legislative duties, including the passage or non-passage of legislation.  Tenney v. Brandhove, 341 U.S. 367, 375 (1951).  Legislators may not be "questioned in another place" for their legislative activity, either by being required to defend lawsuits based upon their legislative actions, or by being forced to testify about legislative acts.  This applies to any actors, including legislative staff and others acting within the legitimate legislative sphere.  Eastland v. United States' Servicemen's Fund, 421 U.S. 491, 507 (1975).  It protects legislators and legislative staff against civil suits for their actions within this legislative sphere.  Eastland, at 503, citing Doe v.

McMillan, 412 U.S. 306, 314 (1973).  This clause applies not only to literal speech or debate but any legislative act regardless of where it is performed.  Kraus v. Kentucky State Senate, 872 S.W.2d 433, 440 (Ky. 1994); Wiggins v. Stuart, 671 S.W.2d 262 (Ky.App. 1984).

State legislators and staff have absolute legislative immunity as a matter of federal common law when acting "in the sphere of legitimate legislative activity," even from a civil rights suit under 42 U.S.C. §1983.  Tenney, at 372-373, 376.  This immunity applies to declaratory judgments or injunctive relief.  Supreme Court of Virginia v. Consumers Union of the United States, 446 U.S. 719, 732-733 (1980).  The immunity and privilege applies to legislators and staff acting within this legitimate legislative sphere.  Eastland v. United States' Servicemen's Fund, 421 U.S. 491, 507 (1975).  Courts have said "The question to be resolved is whether the actions of petitioners fall within the 'sphere of legitimate legislative activity.' If they do, the petitioners 'shall not be questioned in any other Place' about those activities since the prohibitions of the Speech or Debate Clause are absolute."  Id. at 501.

The Sixth Circuit recognizes that absolute immunity extends to "legislators and their aides when performing acts of a legislative nature." Cullinan v. Abramson, 128 F.3d 301, 308 (6th Cir. 1997), citing Gravel v. United States, 408 U.S. 606 (1972).  Due process, equal protection, and conspiracy claims are foreclosed against legislators and even state legislative staff.  Porter v. Bainbridge, 405 F.Supp.83, 91-92 (S.D.Ind. 1975).  Speech or debate clause protection extends to legislative activities even if they are not performed within the confines of the legislative hall, and makes them immune to service of civil process and forced inquiries relating to their legislative conduct, and the legislator and staff are to be "treated as one". Gravel v. United States, 408 U.S. 606, 616 (1972).

The Courts have refused to abridge this basic immunity, even in the face of a redistricting

lawsuit, and cannot be used to hold legislators or other legislative actors accountable for or questioning them about enacting a certain redistricting plan or failing to enact an alternative plan. Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292, 299 (D. Md. 1992). Courts have held that all actors within this legislative purview, acting to work on legislative redistricting bills, are immune.  Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292, 300-01 (D. Md. 1992).

Therefore, when LRC was sued over the issue of the use of the 2002 law in the 2012 elections, whether to answer for legislative conduct such as the passage of legislation, or as an attempt to constrain the legislative process, legislative immunity forecloses such a suit against it. Constitutional claims, if there are any, may be adjudicated by the Courts by challenging their enforcement, as against the bodies who enforce the law.  However, they are not properly adjudicated by naming a body that has no enforcement authority, in a mere attempt to hamstring or affect the legislative process.  The LRC is not required to defend a facial challenge to the application of a law which has been adjudicated by the Kentucky Courts to be in force, nor should they be subjected to questioning about internal legislative processes or motivations.  The LRC, since it is made up of legislators and also acts as the administrative body of the General Assembly, also shares this immunity and cannot be sued on the basis of its activities in the legislative process, as it is only exercising legislative powers as "part and parcel" of the legislative branch.  See LRC v. Brown, 664 S.W.2d 907 (Ky. 1984).

### e.  The Claims with Respect to the 2012 Redistricting Are Moot.

An action that is moot also does not present a justiciable case or controversy within the meaning of Article III, nor give rise to any cognizable claims.  Ashcroft v. Mattis, 431 U.S. 171, 172-73 (1977); Church of Scientology Flag Service Org. v. City of Clearwater, 777 F.2d 598,

604 (11th Cir. 1985).  A case is moot when the issues presented are no longer "live."  House Bill 1 enacted in the 2012 Regular Session was prevented from going into effect by the February 24, 2012 order of the Kentucky Supreme Court, as stated above.   The Kentucky Supreme Court mandated that the Senate and House of Representatives elections occur based upon the old law, passed in 2002.  Any claims that were available at that point died with the election of those members to the General Assembly, who were seated by their respective bodies as of January, 2013.   It is unclear what the basis of their claims are that the General Assembly somehow "failed to act" or LRC's responsibility for that alleged failure.

Courts have held that the passage of time prevents even cognizable claims from being asserted as courts uphold a state's interest in proceeding with elections in a timely fashion, and courts would not step in even if it were only 94 days after its passage.  Thus,

> Laches, a reflection of the maxim "equity aids the vigilant," arises when there has been an unwarranted delay which would work a hardship or disadvantage to another. Thus, those courts which have considered comparable claims have in effect balanced the interests of the parties and required that any claims against the state procedure be pressed expeditiously. As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made, and the candidate's and party's claims to be a serious candidate and a serious party who have received a serious injury become less credible by them having slept on their rights.

Libertarian Party v. Davis, 601 F. Supp. 522, 525 (E.D. Ky. 1985).  Thus, any claims relating to the passage of the 2012 House Bill, even if there were any, were moot, and the Plaintiffs sat on their rights and should be barred by laches from asserting any claims.

Mootness is "sufficient ground for denying the convocation of a three-judge court." Barnes v. Tarrytown Urban Renewal Agency, 338 F. Supp. 262, 271 (S.D.N.Y. 1972).  There are no claims with respect to the 2012 elections that are not mooted by the passage of time.   Where the lawsuit involves the alleged lawfulness of an election and persons elected to office thereunder, courts have stated that a failure to bring such a suit until after that election is over

moots the lawsuit, especially where the complainant was only generally asserting a right as a voter. Benton v. Clay, 233 S.W. 1041 (Ky. 1921). Despite an allegation of "unconstitutionality" of the acts, where an allegedly improper Treasury payment had already been made, Kentucky courts have refused to render a declaratory judgment, because it was moot:

> They have been paid, valid or invalid, validated constitutionally or not. The constitutionality of this act cannot possibly affect any further acts on the part of the present appellees, and so its decision is neither necessary nor proper as a guide to them. The case on this aspect presents a purely academic question of law so far as the parties to this appeal are concerned. This court has ever steadily declined to answer such questions.

Coke v. Shanks, 291 S.W. 362, 366 (1927).

A justiciable controversy does not include questions "which are merely advisory, or are academic, hypothetical, incidental or remote, or which will not be decisive of any present controversy." Curry v. Coyne, 992 S.W.2d 858, 860 (Ky.App.1998). Where there is "no more than an academic dispute concerning certain general legislative or executive powers of the defendants" to happen in the future, courts would "not decide speculative rights or duties which may or may not arise in the future, but only rights and duties about which there is a present actual controversy presented by adversary parties, and in which a binding judgment concluding the controversy may be entered." Veith v. City of Louisville, 355 S.W.2d 295, 297 (Ky. 1962), citing Axton v. Goodman, 265 S.W. 806 (Ky. 1924). Specifically, the rights of parties in the future, where there was "no present right to vote on a question" would not be a proper declaratory judgment action. Kelly v. Jackson, 268 S.W. 539 (Ky. 1925). Where there was no present election going on, courts would not adjudicate rights as to the propriety of a possible candidate, as it was merely an "academic exercise". Revis v. Daugherty, 287 S.W.28, 29 (Ky. 1926). Even though the complaint was brought against the Attorney General, the plaintiff:

> may not convert his academic question into a justiciable one by inserting the name of the Attorney General after "v." in the caption of his petition as a defendant therein without

some averment bringing the case within the class of submissions contemplated and required by the statute. …So far as a legal presentation of the question is concerned, the plaintiff had as well made the Governor of the commonwealth or any other officer of the state, or of any county therein, or any individual that might be found therein, a defendant in his alleged petition. As drawn, it is of no more legal efficacy than would have been a letter written to the judge of the court to obtain his opinion upon a purely academic question.

Id.

In this case, the 2012 election has already occurred, and legislators have been sworn into office, and seated by their respective bodies.  There is no claim with respect to the 2012 elections that have not been mooted by the passage of time.

### f.   Plaintiffs' Claims Based on 2012 Redistricting are Barred by the Statute of Limitations.

An action for declaration of rights for an alleged violation of constitutional rights is subject to a one-year statute of limitations.  Hill v. Thompson, 297 S.W.3d 892 (Ky.App. 2009). The Sixth Circuit Court of Appeals has held that "section 1983 actions in Kentucky are limited by the one-year statute of limitations found in section 413.140(1)(a)."  Collard v. Kentucky Bd. of Nursing, 896 F.2d 179, 182 (6th Cir.1990).  The statute of limitations "begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  Id. at 183, citing Sevier v. Turner, 742 F.2d 262, 272 (6th Cir.1984).

Plaintiffs state in their Complaint that they were somehow aggrieved by the passage of 2012 Regular Session House Bill 1, which was passed by the General Assembly and signed into law by Governor Steven Beshear on January 20, 2012.  2012 Regular Session House Bill 1 enacted a redistricting plan for the House and Senate state legislative districts as well as the State Courts. 2012 Ky.Acts Chapter 1.  The bill was challenged on the basis of Section 33 of the Kentucky Constitution and Equal Protection concerns, but plaintiffs believed that county

integrity under Section 33 had priority over Equal Protection considerations. The Kentucky Supreme Court in an order dated February 24, 2012, ordered that the 2012 legislative elections take place under the 2002 law, based on a finding that it violated Section 33's prohibitions on county splits. Legislative Research Commission v. Fischer, 2012 WL 952983 (Ky. February 24, 2012). Exhibit 2. Therefore, any possible claims that these Plaintiffs had against the LRC for any action relating to the passage of 2012 Regular Session House Bill 1, which became law on January 20, 2012, are barred by the statute of limitations. Since the last act of the General Assembly, whom Plaintiffs purport to sue, was passage of this law on January 20, 2012, then the one-year statute of limitations began to run then. Even if this Court considers the statute of limitations as running on February 24, 2012, which is the date that the Kentucky Supreme Court issued its Order mandating that 2012 elections had to be held using the 2002 law, when it enjoined the implementations of the new legislative districts for the 2012 elections, the statute of limitations on their damages claim, even assuming there is one, ran on February 24, 2013.

Additionally, in the discovery materials, Plaintiffs state that they were injured "as a result of the unconstitutional districts drawn in 2011", and they have damages from the amount of tax revenues lost "since March 2011". If this is so, then the alleged claims arose in 2011, which were even earlier than the February 24, 2013 date. Brown Plaintiffs Response to Defendant Grimes First Set of Interrogatories, p. 6. Exhibit 3.

The statute of limitations began to run on the 2012 redistricting claims, even if there were any, at the very latest when the Kentucky Supreme Court issued its order mandating the use of the previous law on redistricting, which was February 24, 2012. Obviously, Plaintiffs knew of the actions of the Kentucky Supreme Court in mandating that candidates run under the old

districts.  They sat on whatever non-existent rights that they had.  Therefore, the statute of limitations has run.

       g.  **Res Judicata and Collateral Estoppel Bar the Claims Regarding the 2012 Elections.**

The issues with respect to the 2012 Redistricting Act, 2012 HB 1 have already been litigated to conclusion by the same parties to this lawsuit.  Therefore, Plaintiffs cannot now bring another lawsuit based on the same issues with respect to the 2012 elections.  On Thursday, January 26, 2012, three members of the Kentucky House of Representatives, House Minority Leader Jeff Hoover (and LRC member), Representative Joseph Fischer, and Representative Kim King, and other citizens, filed a lawsuit in Franklin Circuit Court, 12-CI-109.  They sued the Secretary of State, State Board of Elections, and Maryellen Allen, Interim Director of the State Board of Elections.  The lawsuit alleged that 2012 House Bill 1, with respect to the House Districts, violated Section 33 of the Kentucky Constitution, and the Fourteenth Amendment's Equal Protection Clause because it was "partisan" and "violated the population ranges," that it deprived them of their Federal Freedom of Association rights by penalizing Republican voters and Representatives solely because of their political affiliation and beliefs, and that it violated 42 U.S.C. § 1983.  Senator Kathy Stein and other citizens intervened in the lawsuit as "Intervening Plaintiffs," claiming was that 2012 House Bill 1, with respect to the Senate Districts, violated Section 33 of the Kentucky Constitution, the Fourteenth Amendment's Equal Protection Clause, 42 U.S.C. § 1983, and alleged that the Senate plan could not move one district number to another.  The LRC intervened in the case.

On February 7, 2012, the Franklin Circuit Court issued a temporary injunction against the Secretary of State and State Board of Elections, keeping the same districts in place for the 2012 elections, and enjoining the use of the new districts under 2012 HB 1.  The Legislative Research

Commission, on appeal, asserted that the plan met the primary federal requirement of redistricting--the Equal Protection Clause--while adequately addressing the issue of county splits under Section 33 of the Kentucky Constitution.  Exhibit 4. As stated above, on February 24, 2012, the Kentucky Supreme Court's order upheld the lower court's determination that Section 33 was violated, enjoined the implementation of HB 1, and ruled that the districts as enacted in 2002 would remain in place for the 2012 elections.

The Supreme Court's order of February 24, 2012 in that case adjudicated the same issues with respect to the 2012 redistricting that Plaintiffs seek to raise here.   The court's full opinion delineates the reasons for the Court's previous order.  Legislative Research Commission v. Fischer, 366 S.W.3d 905 (Ky. 2012).  Additionally, as this lawsuit allegedly seeks to join "all the members of the Senate and the House" by virtue of suing the Senate President and the House Speaker, and the LRC, all are therefore parties to this case as well, including the original Plaintiffs in the state court case.   By so doing, the Plaintiffs herein activate the prohibitions of res judiciata and collateral estoppel, and they bar this lawsuit as it seeks to re-litigate the case.

Res judiciata prevents a party from raising a claim that has already been decided.  Four elements are necessary for res judicata to apply: (1) a final judgment; (2) rendered by a court of competent jurisdiction; (3) the parties or those in privity with them must be identical; and (4) the same causes of action.  Gustafson v. Johns, 434 F.Supp. 2d 1246 (S.D. Ala. 2006); aff'd, 213 F. App'x 872 (11th Cir. 2007).   There was an order by the Supreme Court on February 24, 2012 in the case, which required the holding of the 2012 elections under the previous law, and a subsequent opinion.  Legislative Research Commission v. Fischer, supra.  2012 WL 952983 (Order of Kentucky Supreme Court, 2012-SC-091; 2011-SC-092, February 24, 2012);

<u>Legislative Research Commission v. Fischer</u>, 366 S.W.3d 905 (Ky. 2012).   Obviously, the

Kentucky Supreme Court was a "court of competent jurisdiction" to decide the claims.

Federal courts have held that prior court judgments involving the same or substantially

the same plaintiffs in redistricting cases, and involving the same causes of action, operate as res

judicata, and subsequent federal suits may not be brought on the same claims, as they "involve

the same cause of action." <u>Gustafson</u>, at 1255-56.   In <u>Gustafson</u>, the court held that all the

redistricting claims arose from a common nucleus of fact, thus the state court suit was res

judicata as to the federal suit, and it could not be brought, as:

> Causes of action in a second suit are barred if they could have been raised in the first suit.
> See <u>Davila v. Delta Air Lines, Inc.</u>, 326 F.3d 1183, 1187 (11th Cir.2003)*; Olmstead v.*
> <u>Amoco Oil Co.</u>, 725 F.2d 627, 629 (11th Cir.1984) (Res judicata "extends not only to the
> precise legal theory presented in the previous litigation, but to all legal theories and
> claims arising out of the same 'operative nucleus of fact.' ").

> The *Montiel* plaintiffs brought one-person-one-vote claims and racial gerrymandering
> claims based on the Equal Protection Clause and Section 2 of the Voting Rights Act.
> Plaintiffs in this case bring: (1) a one-person-one-vote claim; (2) a partisan
> gerrymandering claim; and (3) a First Amendment freedom of association claim. All of
> these claims arise out of a common nucleus of fact-i.e., the 2001 redistricting. The
> *Montiel* plaintiffs could have brought any of these claims and, in fact, did bring the one-
> person-one-vote claim.

<u>Gustafson</u>, at 1254-55.   Additionally, although the Plaintiffs in that case argued they were not

"the same," the Court held that redistricting lawsuits should not continue ad infinitum, and that

the citizen parties would be considered to be the same parties for purposes of res judicata:

> When plaintiffs have raised an issue of public law, they do not allege that they "have a
> different private right not shared in common with the public." <u>Tyus</u>, 93 F.3d at 457.
> Virtual representation is particularly appropriate for public law issues because the
> number of plaintiffs with standing is "potentially limitless." <u>Id.</u> at 456. If successive
> plaintiffs could continually challenge a public law, such claims "would assume
> immortality." <u>Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.</u>, 750 F.2d
> 731, 741 (9th Cir.1984).

> Redistricting lawsuits are precisely the type of public law issue to which virtual
> representation should be applied. While the Eleventh Circuit has adopted a rather strict

standard for the application of virtual representation in private law cases, it also has noted that there is less preclusion protection for a plaintiff who complains of a public action that "has only an indirect impact on his interests." Equal Employment Opportunity Comm'n v. Pemco Aeroplex, Inc., 383 F.3d 1280, 1289 (11 th Cir.2004) (quoting Richards, 116 S. Ct at 1768).

Redistricting is a public action that has only an indirect impact on a plaintiff's interest. The present lawsuit does not involve the denial of an individual's right to vote. Rather, the lawsuit argues that votes are given unequal weight when they are aggregated by district. The remedy for any individual voter's claim of unequal weighting necessarily affects the rights of all other voters. Indeed, when statewide relief is sought, the rights of all voters are potentially affected. The victory of any plaintiff's lawsuit would deliver the relief sought by all the potential plaintiffs.

Because one plaintiff's case will resolve the issue for all similarly-situated voters, fence-sitting should be discouraged; all parties aggrieved by the redistricting should be encouraged to join in one action. Without virtual representation, there is no limit to the number of potential plaintiffs who could bring successive lawsuits against a state for redistricting. A state should not face an endless stream of lawsuits after each redistricting. Virtual representation is particularly appropriate for a public law issue like legislative redistricting. See, e.g., Tyus, 93 F.3d at 456 (barring a redistricting lawsuit because of res judicata); Robertson v. Bartels, 148 F.Supp.2d at 452 (same); Thompson v. Smith, 52 F.Supp.2d 1364, 1370 (M.D.Ala.1999) (barring several of plaintiff's redistricting claims because of res judicata); McNeil, 828 A.2d at 860-62 (barring a redistricting lawsuit because of res judicata).

Id. at 1257-58.

The parties were the same in both suits, as the Legislative Research Commission was a party, the Legislators who brought the state court suit are purported Defendants herein, and the Secretary of State and State Board of Elections are Defendants, as they were in the state court suit. Any other Plaintiffs in the state court suit, as "citizens," are in privity with the current Plaintiffs, as they alleging the same types of public law questions as were alleged in the 2012 state litigation. These were the exact same issues raised and dealt with by the Supreme Court. Therefore, Plaintiffs are completely precluded from their damages, costs, and injunctive relief claims based on issues that were subsumed in the state court action.

Collateral estoppel would operate to bar the adjudication of any further relief against the LRC based on the 2012 Redistricting, including attorneys fees. All the issues were raised regarding the constitutionality of the 2012 redistricting, and a judgment was made. Therefore, these issues cannot be relitigated in a subsequent lawsuit. Montana v. United States, 440 U.S. 147, 153 (1979); Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). The same issues were raised and resolved in the Kentucky Supreme Court case, and the persons "for whose benefit" a cause of action is litigated are bound by the decision. Montana, at 154.

### h.  The 2012 Claims are Barred by the Rooker-Feldman Doctrine.

The Plaintiffs' complaint with respect to the 2012 redistricting arises from the situation that ensued when the Kentucky Supreme Court ordered the 2012 elections to be held based on the 2002 Kentucky redistricting law. This is the source of their grievance. However, a party aggrieved by a state-court decision cannot attack this decision collaterally by an independent suit in Federal District Court, essentially "appealing" that decision, under the Rooker-Feldman Doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). A party "aggrieved by a state-court decision cannot appeal that decision to a district court, but must instead petition for a writ of certiorari from the United States Supreme Court." DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). Where the Plaintiffs are alleging that the action taken by the state courts caused their injury:

> [T]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.' ") (quoting Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir.1996)); Tropf v. Fid. Nat'l Title Ins. Co., 289 F.3d 929, 937 (6th Cir.2002) (The doctrine "precludes federal court jurisdiction where the claim is a specific grievance that the law was invalidly-even unconstitutionally-applied in the plaintiff's particular case.")

Id.  Therefore, this Court must dismiss the lawsuit.

### i.  If there is no Res Judicata or Collateral Estoppel, or Application of Rooker-Feldman Doctrine as to the 2012 State Court Lawsuit, then this Court Should

**Permit 2012 HB 1 to be Used for Redistricting in 2014, Absent an Enactment
in the 2013 or 2014 Legislative Sessions.**

If it is determined by this Court that there was no res judicata or collateral estoppel effect
of the prior state court lawsuit that determined the rights of the parties, relating to the 2012
redistricting, then this Court, based upon judicially noticeable information, should permit the
elections authorities to utilize the lawfully enacted 2012 Regular Session House Bill 1 districts in
the 2014 Legislative Elections and declare that it is constitutional under the Equal Protection
Clause.

The Kentucky Supreme Court upheld the Franklin Circuit Court's standard for state
legislative redistricting, based upon <u>Fischer II</u>, which required that the provisions of the Equal
Protection Clause remain secondary to the State Constitutional goal of non-division of counties
under Section 33 of the Kentucky Constitution.  While LRC opposed this approach, it is what the
state court decided.  That case is long since over, as stated below, and LRC has no desire to
relitigate it.  However, if the Plaintiffs wish to reargue the constitutionality of 2012 HB 1, then
the LRC would then adopt LRC's previous position, at least for purposes of this motion, that
Equal Protection should be the standard for redistricting of state legislative races and that the
General Assembly should be able to have reasonable discretion in addressing county
subdivisions under Section 33.

It is clear that 2012 Regular Session House Bill 1 met the guidelines for federal Equal
Protection, under the test as stated by Plaintiffs' complaint.   It meets the standard under
<u>Reynolds v. Sims</u>, 377 U.S. 533 (1964), as stated by Plaintiffs, that "equal protection… requires
that legislative districts be roughly equal."

> The federal One–Person, One–Vote standard also applies to state elections and state
> redistricting plans. <u>See Sandusky Cnty. Democratic Party v. Blackwell</u>, 387 F.3d 565,
> 569 (6th Cir.2004). The Supreme Court has tolerated greater population deviations in
> state legislative plans, however, at least when the deviations are justified by legitimate

considerations. *See* <u>Brown v. Thomson</u>, 462 U.S. 835, 850, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983) (O'Connor, J., concurring); <u>Karcher v. Daggett</u>, 462 U.S. 725, 730, 103 S.Ct. 2653, 77 L.Ed.2d 133 (1983). A plan that exhibits population disparities over 10%, however, triggers a *prima facie* One–Person, One–Vote violation and requires an explanation from the state. *See* <u>Brown</u>, 462 U.S. at 850, 103 S.Ct. 2690 (O'Connor, J., concurring).

<u>NAACP v. Snyder</u>, 879 F. Supp. 2d 662, 668 (E.D. Mich. 2012).

This being the standard, then the judicially noticeable facts regarding 2012 House Bill 1 require the dismissal of this claim against LRC, at the very least, because the General Assembly passed a bill meeting that standard in the 2012 Regular Session.  The law that the General Assembly passed is still the law of Kentucky, as it has not been repealed by the General Assembly.  This court could declare that it is in force for the upcoming 2014 elections.  2012 House Bill 1's "Population Summary Report" for the enacted version may be judicially noted by this Court as stated above.  http://www.lrc.ky.gov/record/12RS/HB1/RS.pdf.  Exhibit 1. The Population Summary Report shows that the overall range of the House Districts under 2012 HB 1 was 10%, and the overall range of the Senate Districts was 9.84%.  <u>Id</u>.  The law used the 2010 Census numbers.  KRS 5.010, as amended by 2012 Ky. Acts. Ch. 1.

The issue of political subdivisions was given proper weight in <u>Reynolds</u>:

> it may be feasible to use political subdivision lines to a greater extent in establishing state legislative districts than in congressional districting while still affording adequate representation to all parts of the State. To do so would be constitutionally valid, so long as the resulting apportionment was one based substantially on population and the equal-population principle was not diluted in any significant way. Somewhat more flexibility may therefore be constitutionally permissible with respect to state legislative apportionment than in congressional districting. Lower courts can and assuredly will work out more concrete and specific standards for evaluating state legislative apportionment schemes in the context of actual litigation.

<u>Reynolds v. Sims</u>, 377 U.S. 533, 578 (1964).  The "lower courts" in this District have stated that Section 33's concerns for county integrity are of no moment in federal courts, although a state legislature may recognize them for purposes of legislative decisionmaking.  This position is also

consistent with the historical position of this District.  Although the Complaint also raises Section 33 arguments, to a federal court, these are of secondary importance to the Equal Protection Clause.  In 1971, this Court recognized that Section 33 is unconstitutional under the Equal Protection Clause:

> Although provisions in the Kentucky Constitution disallow multi-member districts it was decided in the District Court case of Upton v. Begley (Docket No. 346, Eastern District of Kentucky at Frankfort) that the prohibition in section 33 of the Constitution against the dividing of counties to make legislative districts was unconstitutional.

Hensley v. Wood, 329 F. Supp. 787, 789 (E.D. Ky. 1971).  Clearly, under the federal standard, the provisions of Section 33 take a backseat to the Equal Protection standard.

This is to say merely that, just as the General Assembly has an interest in doing its best to meet the standards set by the federal courts and the state courts, it also should not be whipsawed by various parties, on the one hand in state court, and in the other hand in federal court, while it only seeks to make a legislative determination as to the districts to be used in the upcoming elections.  This Honorable Court may take judicial notice of the fact that 2012 House Bill 1 is still law, although it was not implemented for the 2012 elections.  There is no reason that this Court could not order that 2012 Regular Session House Bill 1 be used for the 2014 legislative elections, as they comply fully with the Equal Protection standard as set forth in Reynolds v. Sims.

### j.  The Noerr-Pennington Doctrine Precludes this Claim Over the 2012 Elections as Against LRC.

Under federal law, there is no cause of action for "failure to pass a law" or for passing a law or urging the passage of a law, or going to court over a law, even if that law is alleged to be unconstitutional.  Under the Noerr-Pennington doctrine, all persons, whether they are state officials or private citizens, have the right under the First Amendment to the United States Constitution to participate in the process of passing the laws, as all persons may petition their

Government.  The LRC is protected by the Noerr-Pennington doctrine from any judicial redress against it for exercising their fundamental political rights in the political and legislative arena, and in court actions.  Section 1(6) of the Kentucky Constitution and the First Amendment to the U.S. Constitution protects all persons engaged in that process from restrictions upon that right. Fortunately for democracy, none of this conduct alleged is the basis of a lawsuit for damages, under any legal theory, and cannot result in a lawsuit to punish past political conduct nor enjoin future political conduct.   Eastern Railroad Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); Mine Workers v. Pennington, 381 U.S. 657 (1965).

Kentucky and federal courts have held that these acts of interacting within government to redress grievances are protected conduct under the First Amendment, and "every person or group engaged…in trying to persuade [legislative] action is exercising the First Amendment right of petition." Liberty Lobby, Inc. v. Pearson, 390 F.2d 489, 491 (D.C. Cir. 1967).  No one can sue a citizen for damages for a petition, including circulating one for impeachment, as "proceedings in courts of justice, legislative proceedings, and petition and memorials to the Legislature are privileged." Yancey v. Comm., 122 S.W. 123, 125 (Ky.1909). This is a subject matter and jurisdictional issue that may be addressed at any time.  The Sixth Circuit has said that liability for damages may not be assessed if the core of the complaint involves activity before the state legislature or courts:

> Under the *Noerr-Pennington* doctrine, liability may not be assessed under § 1983 or the anti-trust laws except in very limited circumstances, for actions taken when petitioning authorities to take official action, regardless of the motives of the petitioners, even where the petitioning activity has the intent or effect of depriving another of property interests.

Eaton v. Newport Bd. of Educ., 975 F.2d 292, 298 (6th Cir. 1992). Even after a trial and assessment of damages, the Sixth Circuit threw out the verdict and stated that this was a lawsuit

over political free speech.  See also, <u>Wilder v. Hall</u>, 501 F. Supp. 2d 887, 895-96 (E.D. Ky. 2007).

The Kentucky Supreme Court has also applied the Noerr-Pennington doctrine, which derives from these rights of petition, and has held that it immunizes efforts to influence public officials, thus foreclosing claims of intentional interference with contractual relations, constitutional and 42 U.S.C. 1983 claims. <u>Grand Communities, Ltd. v. Stepner</u>, 170 S.W.3d 411, 415 (Ky.App. 2004).   All tort claims are prohibited, including intentional interference with contract, conspiracy, and gross negligence claims, where a legislative body was petitioned. <u>White v. Ashland Park Neighborhood Ass'n,</u>, 2009 WL 1974750 (Ky. App. July 10, 2009). It also applies to claims that legislative actors attempted to influence a state agency, in an individual capacity.  <u>Astoria Entertainment v. Edwards</u>, 159 F. Supp. 2d 303, 324 (E.D. La. 2001) <u>aff'd,</u> 57 F. App'x 211 (5th Cir. 2003).   Conspiracy allegations are also foreclosed. <u>Hopkinsville Cable TV v. Pennyroyal Cablevision</u>, 562 F. Supp. 543, 547 (W.D. Ky. 1982). This applies to efforts to influence all branches of government, including an administrative agency. <u>Potters Med. Ctr. v. City Hosp. Ass'n</u>, 800 F.2d 568, 577-78 (6th Cir.1986).   Courts refuse to delve into the ongoing process of legislation, as this would interfere with the necessary "back and forth" that must occur in our representative democracy.

The core of Plaintiffs' 2012 claim is that the Legislature did not pass the redistricting bill that they wanted, and courts imposed the 2002 districts on the 2012 election, and that they should get damages from this legislative process, and the state court action, and future court involvement or damages based upon that action.  Petitioning, however, does not guarantee that speech "will persuade or that advocacy will be effective."  <u>Smith v. Arkansas State Highway Employees</u>, 441 U.S. 463, 465 (1979).  Plaintiffs cannot concoct a federal tort claim against LRC

for legislative action or actions in court. These generalized and legally unsupported complaints based upon participating in the legislative process are foreclosed as they all related to the passage of the 2012 legislation at issue. However, Courts rightfully decline to interfere. Therefore, the claims based on the use of the 2002 legislation are not viable. Conversely, no person could sue Plaintiffs if they participated in the process of urging passage or defeat of legislation.

## CONCLUSION

For the foregoing reasons, the LRC's motion to dismiss any claims with respect to the 2012 elections should be granted, and the Plaintiffs should be entitled to no monetary relief thereunder, and no attorneys' fees.

Respectfully submitted:

s/Laura H. Hendrix____
Laura H. Hendrix
General Counsel
Legislative Research Commission
State Capitol, Room 104
Frankfort, Kentucky 40601
Telephone: (502) 564-8100
Fax: (502) 564-6543
Email: Laura.Hendrix@lrc.ky.gov
Attorney for Legislative Research Commission

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2013, a copy of the foregoing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and electronic mail. Parties may access this filing through the Court's electronic filing system.

s/Laura H. Hendrix____
Laura H. Hendrix