**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

|  |  |  |
|---|---|---|
| **KENNY BROWN,** *et al.*, | ) | |
| **Plaintiffs** | ) | **Case No. 2:13-cv-00068- DJB-GFVT-WOB** |
| **v.** | ) | |
| **COMMONWEALTH OF KENTUCKY,** *et al.*, | ) | |
| **Defendants.** | ) | |
| **and** | ) | |
| **MARTIN HERBERT,** *et al.*, | ) | |
| **Plaintiffs,** | ) | **(Consolidated Action Case No. 2:13-cv-00025-DJB-GFVT-WOB)** |
| **v.** | ) | |
| **KENTUCKY STATE BOARD OF ELECTIONS,** *et al.*, | ) | |

<u>**RESPONSE OF DEFENDANT SENATE PRESIDENT ROBERT STIVERS TO THE PLAINTIFFS' MOTION TO DISMISS CLAIMS FOR MONEY DAMAGES AND STATE CONSTITUTIONAL CLAIMS, AND PARTIES SPEAKER STUMBO AND SENATE PRESIDENT STIVERS**</u>

Comes Defendant, Senate President Robert Stivers, and for his response to the Plaintiffs'

Motion to Dismiss (1) their claim for money damages; (2) their Count II State Constitutional

claims; and (3) to dismiss Kentucky Speaker of the House Greg Stumbo (and the Kentucky

House of Representatives) and Kentucky Senate President Robert Stivers (and the Kentucky

Senate); all pursuant to FRCP 41(a)(2), without prejudice, submits the following response in opposition to the dismissal of the Plaintiffs' Count II State Constitutional claims and the dismissal of Speaker Greg Stumbo and Senate President Robert Stivers.

## BACKGROUND

On July 11, 2013, the Plaintiffs (hereinafter, "Movants") in case number 2:13-cv-00068-DJB-GFVT-WOB, filed an FRCP 41(a)(2) Motion to Dismiss their claim for money damages and the state constitutional claims set forth in Count II of the Petition without prejudice, and to dismiss as parties Speaker Stumbo and Senate President Stivers.  In Count II of the Petition, the Movants allege that "[b]y failing to conduct constitutional redistricting, Defendants have violated Sections 3, 6, and 33 of the Kentucky Constitution."

Whether to grant a Rule 41(a)(2) motion to dismiss is within the sound discretion of the Court. Due to Senate President Stivers' interest in bringing this redistricting controversy, and all claims and issues therein, to final resolution, he opposes the motion for this Court to relinquish its supplemental jurisdiction over the state constitutional claims and allow the Movants to engage in claim-splitting.  Senate President Stivers furthermore has a sincere interest in being able to continue to participate in any litigation involving the constitutionality of proposed or enacted Senate redistricting plans and therefore also opposes the dismissal of Speaker Stumbo and Senate President Stivers from the litigation.

2

## ARGUMENT

### 1. THE PLAINTIFF'S CLAIMS FOR MONEY DAMAGES SHOULD BE DISMISSED, BUT WITH PREJUDICE.

The claims previously asserted by the Plaintiffs relating to the 2012 elections, specifically the damages claims, have no merit and therefore the claims should be dismissed.  However, these claims should be dismissed *with prejudice*, including any claims for attorneys' fees. The "purpose of Rule 41(a)(2) is to protect the nonmovant ... from unfair treatment." Garland v. Brewer, CIV.A. 3:11-25-DCR, 2012 WL 3306525 (E.D. Ky. Feb. 28, 2012) (citing Bridgeport Music, Inc. v. Universal–MCA Music Publ'g, Inc., 583 F.3d 948, 953 (6th Cir. 2009)). In Garland, the court ruled that dismissal without prejudice is inappropriate when the time and expense to the Defendants would prejudice the Defendants if the claims were dismissed without prejudice. In this case, a without prejudice dismissal of the Plaintiff's money damages claims would substantially prejudice Senate President Stivers.

Senate President Stivers has already expended significant time, effort, and expense in responding to the lawsuit, and in preparation for an eventual trial.  Senate President Stivers has had to incur expenses in answering the complaint, attending the scheduling conference, responding to discovery requests, and filing and responding to numerous motions. Senate President Stivers has expended significant time researching and responding to complex legal issues.  Additionally, Senate President Stivers has had the added burden of both litigating this issue while also performing regular legislative duties and preparing for the upcoming special session.  If these claims are dismissed without prejudice and then reasserted, Senate President Stivers will have to expend much of that time and energy to go through this process a second time.

## 2. THE STATE CONSTITUTIONAL CLAIMS ARE PART OF THE SAME "CASE OR CONTROVERSY" AS THE FEDERAL CONSTITUTIONAL CLAIMS.

This Court has properly exercised supplemental jurisdiction over the state law claims alleged in the Plaintiffs' complaints. Federal district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U. S. C. § 1367(a).

In Kentucky, legislative redistricting must be completed under not only the requirements of the Equal Protection Clause of the United States Constitution that requires that the population of legislative districts be equal, but also under Section 33 of the Kentucky Constitution that has been interpreted by the Kentucky Supreme Court to require the splitting of as few counties as possible. Accordingly, any discussion of the constitutionality of redistricting plans must include consideration of both federal Equal Protection requirements and the requirements of Section 33 of the Kentucky Constitution. To do otherwise is to invite a situation where this controversy is bounced between the federal courts and the Kentucky state courts for an interminable amount of time, each side considering the issues raised here as legal fictions, where any redistricting plan is evaluated as if the only measure of constitutionality was either federal Equal Protection or Section 33 of the Kentucky Constitution. [1]

Operating under those legal fictions will not and cannot lead to a conclusive analysis of the constitutionality of any past or future redistricting plans. Proceeding thusly is further not an efficient use of judicial resources or the resources of the parties involved herein and is not in the best interests of the people of the Commonwealth of Kentucky. Accordingly, it is essential to the

---

[1] This Court has not been asked to evaluate the constitutionality of Section 33 of the Kentucky Constitution.

swift, efficient, and total resolution of the issues at bar here that this Court retain jurisdiction of

the state law claims raised by the Plaintiffs.

3.  **THE KENTUCKY CONSTITUTION AND THE UNITED STATES CONSTITUTION SET FORTH COMPETING PRINCIPLES FOR STATE LEGISLATIVE REDISTRICTING, NECESSITATING RESOLUTION OF ALL ISSUES IN ONE FORUM.**

Section 3 of the Kentucky Constitution states in relevant part that, "all men, when they

form a social compact, are equal[.]"  Section 6 of the Kentucky Constitution states that "all

elections shall be free and equal." Section 33 of the Kentucky Constitution states, in relevant

part, that every ten years "[t]he…General Assembly…shall divide the State into thirty-eight

Senatorial Districts and one hundred Representative Districts, as nearly equal in population as

may be without dividing any county…and the counties forming a district shall be contiguous."

Obviously, there is an inherent tension between equality of population in legislative districts and

maintaining county integrity.  Section 33 of the Kentucky Constitution resolves this conflict by

requiring that the legislative districts be "as *nearly* equal in population as may be without

dividing any county[.]" (Emphasis added).

The county integrity requirement in Section 33, however, also clashes with the Equal

Protection Clause of the Fourteenth Amendment of the United States Constitution. This Equal

Protection guarantee, known as the "one person, one vote" principle, requires that each state

"make an honest and good faith effort to construct districts in both houses of its legislature, as

nearly of equal population as is practicable." *Reynolds v. Sims*, 370 U.S. 533, 577, 80 S.Ct.1362,

1390 (1964).  Recognizing this tension, the Kentucky Supreme Court in *Jensen v. Ky. State Bd.*

*of Elections*, 959 S.W.2d 771, 774 (Ky. 1997), observed that "[w]e have long held that when the

goals of population equality and county integrity inevitably collide, the requirement of

approximate equality of population must control."  In *LRC v. Fischer*, 366 S. W.3d 905, 911 (Ky.2012) (hereinafter, *"Fischer IV"*), the Kentucky Supreme Court noted the following:

> Well before federal "one person, one vote" principles were applied to the states, Kentucky's highest court interpreted section 33 of the Kentucky Constitution to prioritize "substantial equality of representation" over county integrity. (citation omitted). This avoided eventual conflict with, and preemption by, the federal Equal Protection Clause.[2]

Through the decades, the Kentucky Supreme Court has thus created a hierarchy of constitutional principles to guide it to resolve the disconnect between the respective demands of the State and Federal Constitutions, with equality of representation superseding in importance the county integrity requirements.  By dismissing the Movants' state claims without prejudice, the Court would be sacrificing the comprehensive constitutional analysis that is necessary to bring complete resolution to these competing mandates.

### 4. MOVANTS' FRCP 41(a)(2) MOTION TO DISMISS STATE CLAIMS IS AN ATTEMPT AT IMPERMISSIBLE CLAIM-SPLITTING.

In their Memorandum in support of their respective motions, the Plaintiffs devote a lone paragraph to their request for dismissal of state law claims under Count II of their petition.  In this paragraph, the Movants make the curious statement that, "in the present matter, given the posture of the ACLU Plaintiffs, it is also appropriate to withdraw and dismiss, without prejudice, Count II state law claims." Plaintiff's Supporting Memo at 2-3.  Then, in Footnote 1 in Plaintiffs' Supporting Memo, the Plaintiffs' state they "do not wish such withdrawal to be with prejudice -- these claims may need to be litigated in state court, at a later juncture." *Id.,* at 3.

---

[2] The Kentucky General Assembly and courts are certainly not alone among the states in grappling with the competing interests of county integrity and equal protection requirements in state legislative redistricting.  See, for example:  *Bingham Co. v. Idaho Com'n for Reapportionment*, 55 P.3d 863, 871 (Idaho, 2002); *In re Reapportionment of Colorado General Assembly*, 45 P.3d 1237, 1251 (Colo., 2002); *Ater v. Keisling*, 819 P.2d 296, 309 (Or., 1991).

It is presumed that when the Movants refer to the "ACLU Plaintiffs" that they are referring to the Plaintiffs' in *Martin Herbert, et. al. v. Kentucky State Board of Elections, et. al.*, Civil Action No. 3:13-CV-025-GFVT-WOB-DJB, the case that was consolidated with the instant matter by an order entered June 27, 2013. The Plaintiffs in *Herbert* did not name Senate President Stivers as a defendant, and raised no state claims in their petition, only a federal Fourteenth Amendment Equal Protection Clause claim.

Accordingly, it is unclear what the statement regarding the "posture" of the "ACLU Plaintiffs' referred to in the Plaintiffs Motion to Dismiss refers to, or how it is relevant to dismissing the state claims in the instant action. However, it appears that Movants' attempt to dismiss their state constitutional law claims at this stage of the proceedings, while freely admitting that these claims could be raised later in state court, is a transparent attempt at claim-splitting that is prohibited by federal res judicata principles as set forth in *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161 (1st Cir. 1991) (hereinafter, "*Kale*").

In *Kale*, the appellant sued his employer under the federal Age Discrimination in Employment Act (ADEA) following his firing, joined with pendent state law claims, including implied covenant of good faith and fair dealing ("*Kale I*") . *Id.,* at 1163. Although diversity jurisdiction was available to be pled by the appellant, he only pled federal question jurisdiction. When the district court dismissed the federal claim because it was time-barred, the court also dismissed the appended state-law claim without prejudice. *Id.,* The appellant later re-filed his remaining state claim, and other claims, in state court ("*Kale II*"). This suit was removed to federal district court by the appellee due to diversity jurisdiction. *Id.,* at 1164. The appellee then moved to dismiss the action based upon the preclusive effect of *Kale I*. The district court ruled

that the failure to bring the state-law claims under diversity jurisdiction in *Kale I* barred the assertion of those claims in another, later proceeding. *Id.,*

In so ruling, the Court in *Kale* held:

> the doctrine of *res judicata,* in its federal formulation, insists that the decision in *Kale I* must preclude in a subsequent suit (1) all claims which were actually brought in *Kale I* and (2) all related claims, i.e., all claims arising out of the same cause of action.

*Id.,* at 1165.

Continuing, the Court framed and answered the legal question:

> [S]hould the judgment in *Kale I* be accorded preclusive effect with respect to the claims asserted in *Kale II,* inasmuch as those claims could have been prosecuted in *Kale I* had the plaintiff elected to plead an available alternative basis for jurisdiction?

> We answer the question presented in the affirmative, holding that **when a plaintiff pleads a claim in federal court, he must, to avoid the onus of claim-splitting, bring all related state claims in the same lawsuit so long as any suitable basis for subject matter jurisdiction exists.**

*Id.,* (Footnote omitted)(Emphasis added).

The Sixth Circuit Court of Appeals, in an unpublished opinion citing *Kale*, set forth the elements for applying federal res judicata: 1) a final judgment on the merits of the earlier action; 2) identity of the cause of action in both the earlier and later suits; and 3) the identity of the parties or privies in the two suits. *Sherman v. Ludington*, 968 F.2d 1216, 1992 WL 158878 (6th Cir. July 7, 1992) (citation omitted).  The Sixth Circuit Court of Appeals in *Sherman*, again quoting *Kale*, found that the second prong, regarding identity of the cause of action, would be satisfied,

> if the claims asserted in [the two suits], … were sufficiently related, that is if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong, the two suits advanced the same cause of action

8

notwithstanding any differences in remedies sought or theories of recovery pleaded.

*Id.,* at *5.

If and when final judgment in the instant action is reached, the three-pronged *Kale* test for res judicata will be satisfied, and any subsequent suit in state court would be improper. Thus, it would be improper to grant the Movants' motion to dismiss the state claims and set up a situation in which claim-splitting may be attempted in state court.

Moreover, in its June 27, 2013 Memorandum Opinion and Order denying Defendant Stumbo's motion to stay the proceedings, this Court reminded the parties of the following:

> The Kentucky General Assembly has the primary responsibility to enact a constitutional redistricting plan, and this court will not interfere with its ability to carry out these duties. However, the court also has a statutory job to do. As this court is secondarily responsible for timely providing constitutional electoral maps should the legislature fail, a stay would interfere with the Court's duties. Either as a result of Plan A or Plan B, all citizens of the Commonwealth of Kentucky must be fairly represented in the coming elections.

*Id.,* at 8-9.

This Court has pressed the urgency of resolving all outstanding issues either legislatively or judicially, and of concluding all litigation in a timely fashion. By granting Movants' motion to dismiss their state constitutional law claims, the Court would open a claim-splitting controversy and seriously compromise the possibility of securing full resolution of issues in a timely manner. Although impermissible under federal res judicata principles, a state court claim would still entail further delay before being finally resolved.

9

**5. SENATE PRESIDENT STIVERS HAS A SIGNIFICANT INTEREST IN CONTINUING TO PARTICIPATE IN ANY LITIGATION INVOLVING THE CONSTITUTIONALITY OF PROPOSED OR ENACTED SENATE REDISTRICTING PLANS.**

As President of the Kentucky State Senate, Senate President Stivers has a vested and substantial interest in remaining a part of any litigation involving the constitutionality of proposed or enacted Senate redistricting plans. To allow the Plaintiffs' to remove Senate President Stivers from the litigation would be to silence the voice of the Senate in judicial proceedings that will significantly affect an important function and role of the legislature. Accordingly, Senate President Stivers opposes the dismissal of Speaker Stumbo and Senate President Stivers from this litigation.

**CONCLUSION**

Wherefore, for the foregoing reasons, this Court should deny the Plaintiffs' Motion to Dismiss their Count II State Constitutional claims and to dismiss Kentucky Speaker of the House Greg Stumbo and Kentucky Senate President Robert Stivers, retain jurisdiction over all state constitutional law claims, and retain the ability to efficiently and conclusively resolve the issues raised.

Dated: July 25, 2013

Respectfully submitted,

/s/ Stanton L. Cave

_____

Stanton L. Cave, Esq.
LAW OFFICE OF STAN CAVE
P.O. Box 910457
Lexington, KY  40591-0457
Telephone:  (859) 309-3000
Facsimile:   (859) 309-3001
Email:  stan.cave@insightbb.com

*Special General Counsel to Robert Stivers in his Official Capacity as President of the Kentucky Senate*


/s/ Jessica A. Burke

_____

Jessica A. Burke, Esq.
Deputy General Counsel
Kentucky Senate
Office of the President
Room 265 Capitol Annex
Frankfort, Kentucky 40601
Telephone:     (502) 564-3120
Email: jessica.burke@lrc.ky.gov

*Counsel for Defendant, Counter/Cross-claimant Robert Stivers in his Official Capacity as President of the Kentucky Senate*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

/s/ *Jessica A. Burke*

_____

Jessica A. Burke, Esq.
Deputy General Counsel
Kentucky Senate
Office of the President
Room 265 Capitol Annex
Frankfort, Kentucky 40601
Telephone:     (502) 564-3120
Email: jessica.burke@lrc.ky.gov