# DEFENDANT LRC'S EXHIBIT 3

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT
DIVISION I
CIVIL ACTION NO. 12-CI-109



| | |
|---|---|
| JOSEPH M. FISCHER, et al. | PLAINTIFFS |
| and | |
| DAVID B. STEVENS, M.D., et al. | INTERVENING PLAINTIFFS |

V.    **TEMPORARY INJUNCTION
UNDER CR 65.04 AND PARTIAL DECLARATION OF RIGHTS**

| | |
|---|---|
| ALISON LUNDERGAN GRIMES, in her official capacity as Secretary of State for the Commonwealth of Kentucky, et seq. and | DEFENDANTS |
| LEGISLATIVE RESEARCH COMMISSION | INTERVENING DEFENDANT |

This action is before the Court on the motions of the Plaintiffs and Intervening Plaintiffs for a Temporary Injunction under CR 65.04. The Plaintiffs filed this action to challenge the constitutionality of the House re-districting plan adopted by the Kentucky General Assembly in House Bill 1, which was signed into law by the Governor on January 20, 2011. The Court held a hearing on January 30, 2012 at which all original parties were represented by counsel. The Court granted the motion of David Stevens, Jack Stephenson, Marcus McGraw and Senator Kathy Stein to intervene under CR 24.01. The Intervening Defendants raise a similar challenge the provisions of House Bill 1 for re-districting of the Kentucky Senate.

The Court then granted a restraining order under CR 65.03 to preserve the *status quo* pending its decision on the motion for temporary injunction. The Court's restraining order prohibits the Secretary of State for implementing the filing deadline for legislative offices Tuesday, February 7, 2012. After the Court granted the Intervening Plaintiffs the right to participate, the Legislative Research Commission filed a motion to intervene pursuant to KRS

5.005, which the Court also granted. The Court further set this action for an evidentiary hearing and further argument on Monday, February 6, 2012.

The Court heard evidence and argument at the hearing on February 6, 2012, and being sufficiently advised, IT IS ORDERED the motions of the plaintiffs and intervening plaintiffs for a temporary injunction under CR 65.04 is GRANTED for the reasons set forth below.

## DISCUSSION

This action presents a challenge to the new districts that the General Assembly adopted for House and Senate districts in House Bill 1 of the 2012 General Assembly. The Kentucky Supreme Court has established an authoritative interpretation of the requirements of Section 33 of the Kentucky Constitution for redistricting of legislative districts in Fischer v. State Board of Elections, 879 S.W.2d 475 (Ky. 1994)[1]. The Fischer case was subsequently revisited in Jensen v. State Board of Elections, 959 S.W.2d 771 (Ky. 1997), which dealt with the application of Section 33 to the multiple divisions of a single county. Jensen recognized that any plan that maintains county integrity and population equality, as interpreted by the Supreme Court, is bound to result in multiple divisions of some counties. Nevertheless, the central ruling of Fischer II has remained in force, and must be applied by this Court. As the Court held in Jensen, the constitutional mandate of Section 33 requires a redistricting plan "to make full use of the maximum constitutional population variation as set forth herein [plus or minus 5%] and divide the fewest possible number of counties." 959 S.W.2d at 776.

The uncontested evidence before this Court demonstrates that the House and Senate Districts adopted in House Bill 1 fail on both counts. At least one House District and one Senate District exceed the "maximum constitutional population variation" set forth in Fischer II. Both

---

[1] This case or Fischer II, was preceded by Fischer v. State Board of Elections, 847 S.W.2d 718 (Ky. 1992), which dealt with venue questions (Fischer I). See also State Board of Elections v. Fischer, 910 S.W.2d 245 (Ky. 1996) dealing with application of the redistricting rulings to special elections during this time frame (Fischer III).

2

the House and the Senate plans adopted in House Bill 1 divide more counties than "the fewest possible number of counties." Accordingly, this Court is required to apply this binding precedent and hold that the legislative redistricting provisions of House Bill 1 violate Section 33 of the Kentucky Constitution, as construed by the Kentucky Supreme Court.

The Legislative Research Commission has advanced strong arguments that Section 33 of the Kentucky Constitution should be construed in a more flexible manner, to give the legislature greater discretion in the difficult task of balancing the competing, and sometimes inconsistent, constitutional values of population equality and county integrity. Whatever merit those arguments may have, they must be addressed to the Kentucky Supreme Court. This Court remains bound by that Court's decision in Fischer II.

It is apparent that the Supreme Court's ruling in Fischer II has had unintended consequences. In Fischer II, the Supreme Court stated that "We recognize that the division of some counties is probable and have interpreted Section 33 to permit such division to achieve population requirements. However, we can scarcely conceive of a circumstance in which a county or part thereof which lacks sufficient population to constitute a district would be subjected to multiple divisions." Id., 879 S.W.2d 479, fn 5. A short time later, after the legislature struggled to draw a plan that complied with Fischer II, the Court in Jensen was forced to observe that "In fact, what we thought was scarcely conceiveable has been proven to be unavoidable." 959 S.W.2d at 776.

This demonstrates the real tension between the competing values of county integrity and population equality that continues today. It is a concern of this Court that the Fischer II mandate *requires* the legislature to "make maximum use" of the 10% population variance it approved in that case. As a result, each new redistricting plan post-Fischer II must begin the decennial

3

period with a 10% deviation in the population of districts, and this variation is virtually certain to increase with each passing year as a result of normal demographic trends and the movement of people from rural to urban areas. Accordingly, Fischer II seems to guarantee districts that over time will violate the 10% variation standard even more quickly, because it *starts* with a 10% variation.

Likewise, Fischer II is based on the Supreme Court's belief that county integrity and population equality can always be reconciled, but it is apparent from the proceedings in this case that the constitutional value of population equality is significantly impaired by the requirement to preserve county integrity. The Supreme Court's view of the importance of county integrity in Fischer II appears rooted in the history of the county unit, and fails to recognize that at the time of the adoption of the 1891 constitution, the county was the central unit of government for basic government services such as roads, education, mental health, and social welfare. *See e.g.*, Ireland, *The County in Kentucky History* (University Press of Kentucky, 1976), *Little Kingdoms* (University Press of Kentucky, 1977). In today's world of government, all of those functions now reside primarily with state government, rather than county government. All of these considerations militate in favor of giving greater weight to population equality than county integrity when those values clash, as they inevitably do[2]. Those considerations, however, must be addressed to the Kentucky Supreme Court, not to a trial court that is required to apply the binding precedent of Fischer II.

The duty of this Court is to apply the binding precedents that control the application of Section 33. Under the controlling precedents, the provisions of House Bill 1 simply fail to pass constitutional muster.

---

[2] It appears that the text of Section 33 itself requires that greater weight be given to population equality, in that it qualifies the provision on maintaining county integrity with the expressed command that "Provided, in doing so the principle requiring every district to be as nearly equal in population as may be shall not be violated."

4

## FINDINGS OF FACT

1. Under the population data from the 2010 U.S. Census relied upon by the General Assembly in redrawing its district lines in House Bill 1, the ideal district for the House of Representatives would include 43,394 people, and the ideal district for the Senate would include 114,194 people. The ideal district is composed of the total population of Kentucky reflected in the 2010 census, divided by 100 for the House of Representatives and divided by 38 for the Senate.

2. The Districts for the House and Senate established in House Bill 1 contain variations from the ideal population for House and Senate Districts. House District (HD) 24 contains a population of 45,730, a 5.38% variance from the ideal. One Senate District (SD 8) contains a population of 120,498, a variance of 5.52% from the ideal. In the House of Representatives, 15 districts (HD 47, 52, 58, 60, 62, 63, 64, 66, 68, 69, 78, 80, 83, 88, and 100) include a variance of 5%, the maximum variance allowed under Fischer v. State Board of Elections., 879 S.W.2d 475 (Ky. 1994). (*See* Exhibit 3 to the Complaint, LRC Population Summary Report, January 10, 2012).

3. House Bill 1 divides 28 counties in districts for the House of Representatives, and 5 counties for Senate districts.

4. House Floor Amendment 1 to House Bill 1 provides for a redistricting that divides only 24 counties. Senate Floor Amendment 1 to House Bill 1 provides for a redistricting that divides only 4 counties.

5. House Bill 1 provides an overall range of deviation for House Districts of 10%, and an overall range of deviation for Senate Districts of 9.84%. *See* LRC Population Summary Report, *Id.* Plaintiffs have argued that this level of variance between the least populous

district and the most populous district exceeds the constitutional requirements for House Districts. It is undisputed that House Bill 1 sets those variances at, or near, the constitutionally permissible limits for both House and Senate.

6. The Plaintiffs have identified at least one House District, HD 80, that has been designed in such a manner as to raise a substantial question as to whether that district complies with the requirement of Section 33 that "the counties forming a district shall be contiguous." House District 80 contains a one mile wide strip that runs from the Casey County border, through the northwestern corner of Pulaski County, to the Rockcastle County border. This strip of Pulaski County contains only 1882 residents. (*See* LRC's Answers to the Court's Questions, filed 2/6/12).

7. Former Senate District 13, in which Intervening Plaintiffs Stevens, Stephenson, McGaw vote and reside, and which is represented by Intervening Plaintiff Senator Kathy Stein, was located entirely within Fayette County prior to the enactment of House Bill 1, which re-located Senate District 13 to the northeastern Kentucky counties of Bath, Fleming, Harrison, Lewis, Mason, Montgomery, Nicholas and Robertson Counties. The vast majority of the geographic territory that constituted the former SD 13, and almost all the voters who resided there, have been re-assigned by House Bill 1 to SD 4, which formerly was located in Western Kentucky and is represented by Sen. Dorsey Ridley of Henderson.

8. The Fayette county voters of the former SD 13 elected a senator in the election of 2008, and absent the enactment of House Bill 1, would elect a senator in 2012. All odd numbered Senate Districts are on the ballot in 2012, and all even numbered Senate Districts are on the ballot in 2014.

9. By virtue of the enactment of House Bill 1, and the reassignment of the voters in the geographic territory that formerly constituted SD 13 to SD 4, the voters who reside in that territory will be denied the right to vote for and elect a Senator for 2 additional years, from 2012 (when the election would have been held prior to House Bill 1, to 2014 when it would be held if House Bill 1 is allowed to take effect).

10. In Fayette County alone, 113,724 citizens who resided in the former territory of SD 13, were reassigned to SD 4 by House Bill 1. (LRC Exhibit 1, Hearing 2/6/12).

11. House Bill 1 further provides that a statewide total of 351,394 citizens and residents were transferred from odd numbered districts (for which senators were elected in 2008, and for which elections will be held this November) to even numbered districts (for which senators were elected in 2010 and elections will be held in November, 2014). (LRC Exhbit 1, Hearing 2/6/12).

12. In addition to the wholesale reassignment of the voters of former SD 13 to SD 4, House Bill 1 also reassigns the voters of 9 other counties[3] *in their entirety* from odd numbered Senate Districts to even numbered Senate Districts.

13. By virtue of this reassignment, virtually all of the residents and voters of the former SD 13 in Fayette County, and in the other 9 counties that were transferred *en masse*, will be denied the right to vote for and elect a senator to represent them for two additional years, and will be represented for two entire legislative sessions in the Senate by a person not elected by the voters of the district, but assigned to them by legislative fiat.

---

[3] Boyd, Breathitt, Casey, Estill, Gallatin, Johnson, Magoffin, Powell, Pulaski and Russell Counties are all reassigned from odd numbered districts to even number districts. *See LRC Exhibit 1, id.*

## CONCLUSIONS OF LAW

1. The decision of the Kentucky Supreme Court in Fischer v. State Board of Elections, 879 S.W.2d 799 (Ky. 1984) provides that under Section 33 of the Kentucky Constitution, the General Assembly may enact a redistricting plan in which the population variation "does not exceed -5% to +5% from an ideal legislative district." *Id.* at 479.

2. Fischer further provides that the General Assembly is obligated to "formulate a plan which reduces to the minimum the number of counties which must be divided between legislative districts. ... The mandate of Section 33 is to make full use of the maximum constitutional population variation as set forth herein and divide the fewest possible number of counties." *Id.*

3. House Bill 1 fails to comply with the "maximum constitutional population variation" as set forth in Fischer by virtue of the fact that at least one House District and one Senate District have a population variance greater than 5%. The right of the plaintiffs and intervening plaintiffs to proportional representation under Section 33 of the Kentucky Constitution, as construed by the Kentucky Supreme Court in Fisher, *id.*, has been violated by the provisions of House Bill 1.

4. House Bill 1 fails to comply with the mandate of Fischer to "divide the fewest possible number of counties" because the record in this case demonstrates that it is possible to divide as few as 24 counties in the House, and as few as 4 counties in the Senate.

5. The Plaintiffs have raised a substantial issue of law regarding the issue of whether HD 80, and perhaps HD 89, comply with the requirement of Section 33 that "counties

8

forming a district shall be contiguous." There is no controlling case law on this issue, and the issue requires further proof and briefing on the merits before the Court can render a final decision.

6. The Intervening Plaintiffs have raised a substantial issue of law regarding whether their transfer from SD 13 to SD 4 has unconstitutionally impaired their right to vote for and elect a senator. The Court is not aware of, and the parties have not cited, any controlling legal authority on this issue. In <u>Anggelis v. Land,</u> 371 S.W.2d 857 (Ky. 1963), the former Court of Appeals rejected a claim that the Redistricting Act of 1963, dividing the 13th Senate District into two districts (12 and 13), created a vacancy in the office of Senator from the 12th district. No claim was raised that the Act denied or abridged the right of any citizens to vote on the election of their senator. Rather, <u>Anggelis</u> rejected an attempt by the sitting Senator in the 13th district to obtain by mandamus a certificate of nomination "as Democratic nominee, for the office of State Senator from the Twelfth Senatorial District of Kentucky." <u>Id.</u> at 858. Having been moved out of his district, he sought to be re-elected by judicial action rather than standing for election in the newly established district. <u>Anggelis</u> did not challenge the re-districting at all. It appears that the Senator elected by the voters in all of Fayette County for the 13th District continued to serve until the next election for an odd numbered district, and the voters who were re-assigned to an even numbered district were able to elect a new senator at the first election after the 1963 redistricting. Thus no citizen was assigned to be represented by a senator who had never been elected by the voters of that geographic area, nor was the right of any citizen to vote for a senator delayed.

9

7. Senator Stein seeks no such relief here, but rather, she and her constituents maintain that by transferring the geographic territory of former SD 13 (an odd numbered district that will be subject to election this year) to SD 4 (an even numbered district that will not be subject to election until 2014), that House Bill 1 denies and abridges their right to elect a senator, and, as a practical matter extends the term of the Senator representing them from 4 years to 6 years because the last election for senator in that geographic territory was in 2008, and the next election will be held until 2014.

8. The Court has not found, nor have the parties cited, any controlling legal authority that addresses the question of whether an entire senatorial district can be transferred from an odd numbered district to an even numbered district, when such a transfer results in a delay of 2 years in the right of those citizens to elect a senator. The Court concludes that this alleged abridgement of the voting rights of the Intervening Plaintiffs is a substantial question of law that merits a full adjudication on the merits.

9. In deciding whether to grant injunctive relief, this Court is required to weigh the competing equities, including the public interest. Maupin v. Stansbury, 575 S.W.2d 695 (Ky. App. 1978). This balancing of competing interests is also required in connection with cases that allege the impairment of the right to vote. *See, e.g.* Burdick v. Takushi, 504 U.S. 428 (1992). Here, the Court finds that the "character and the magnitude" of the asserted impairment of the right to vote is substantial, and the public interest requires preservation of the *status quo* pending a final judgment.

10. Having found a violation of the rights of the Plaintiffs and Intervening Plaintiffs, the Court must address the question of remedies. Here, the Court recognizes that there are substantial competing interests. The last redistricting completed by the General

10

Assembly was enacted into law in 2002 (*see* 2002 Ky. Acts., c. 1). Accordingly, we are in the 10th year of that plan, and a new census was completed last year, showing that the districts are substantially out of balance. Thus, there is no question that the legislature is under an obligation to complete re-districting as soon as possible. The question before the Court then, is whether the November 2012 elections should be conducted under the district boundaries that preceded the enactment of House Bill 1, or whether the Court should redraw legislative district line, or require the legislature to redraw those lines (and extend all necessary deadlines to do so).

11. The Court finds and concludes that there is no constitutional or statutory deadline that requires that legislative district lines be redrawn prior to the November 2012 election. In fact, the case law on redistricting is replete with cases that demonstrate that the decennial redistricting required by Section 33 has been only loosely observed. *See* Combs v. Matthews, 364 S.W.2d 647 (Ky. 1963), Stiglitz v. Schardien, 239 Ky. 799, 40 S.W.2d 315 (Ky. 1931), Ragland v. Anderson, 125 Ky. 141, 100 S.W. 865 (Ky. 1907).

12. If the Court allows the district lines established in House Bill 1 to take effect immediately, it is uncontested that virtually all of the citizens and voters of the former SD 13 (at least 113,000 citizens) will be represented in not one, but two full annual sessions of the General Assembly (the 2013 and 2014 sessions) by a senator who does not live in the district, and has no political, social, economic or other connection to the community he has been assigned to represent. Those citizens and voters will be represented in the Senate by a Senator from another area of the state who has been politically assigned to this task. Those citizens and voters will be denied the right to

11

select their own senator for another two years, although they otherwise would be able to vote for a senator this November.

13. Likewise it appears that there are hundreds of thousands of citizens and voters who are similarly situated to the Intervening Plaintiffs. LRC Exhibit 1 documents that there are 350,394 persons who have been moved from odd numbered districts to even numbered districts, and thereby will be delayed by 2 years in their right to vote for a senator. It is true that LRC Exhibit 1 indicates that 400,667 persons were moved from an even numbered to an odd numbered district, and thereby will be able to vote for a senator 2 years sooner than they would have if they remained in an even numbered district. But the Court can find no basis for holding that the law allows the General Assembly the right to delay one citizen's right to vote for a senator by advancing the right of other citizens' vote for a senator.

14. The Court can find no basis in law or precedent for the wholesale transfer of virtually an entire Senate District from an odd-numbered district to an even numbered district, in a manner that delays the right of the voters of the district to elect a senator by two years. No such law or precedent has been cited to the Court. The Court recognizes that Senate Districts have been re-assigned to new geographic territory, and that to some degree such re-assignments are necessary to address shifts in population. Such transfers of districts to new territory have been upheld by Opinions of the Attorney General. *See OAG 82-18 and OAG 82-55.* But there are no reported cases in which this issue has been decided, and no prior redistricting legislation in which a challenge has been brought by voters who claim their right to vote for a senator has been impaired. Again, this Court concludes that these issues warrant a full

adjudication on the merits, and it is necessary to maintain the *status quo* pending a final adjudication because in the absence of injunctive relief "the acts of the adverse party will tend to render such final judgment ineffectual." CR 65.04(1). Maupin v. Stansbury, *supra*.

15. In balancing the equities, the Court is mindful that the current districts are out of balance and must be redrawn to comply with the "one person, one vote" mandate of federal and state law. But the question before the Court is one of timing. The Court notes that the uncontested evidence in this case demonstrates that House Bill 1 itself violates with the mandate of Section 33 for proportional representation because it includes districts in both House and Senate that exceed the maximum 5% variation. The Court further finds as yet undisputed evidence that as many as 351,394 persons will be legislatively re-assigned under House Bill 1 from districts that are required to elect a senator this year to districts that will not hold an election until 2014. Those citizens, for two full annual sessions of the General Assembly (2013 and 2014) would be assigned to senators who do not reside in the districts they represent and who have no meaningful ties to those communities. The Court therefore concludes that the redistricting cure of House Bill 1 is worse than the malapportionment disease that it is legally required to remedy, at least for the next two years. In these circumstances, the public interest demands that the Court grant injunctive relief to maintain the *status quo* pending a full adjudication on the merits.

16. The Court finds and concludes that there is no Kentucky case on point deciding whether the impairment of the Intervening Plaintiffs' voting rights reflected in House Bill 1 constitutes a violation of the guarantee of due process and equal protection of

13

the law under Sections 2 and 3 of the Kentucky Constitution. However, the Court notes that other jurisdictions have found equal protection violations in similar circumstances. As explained by a three judge federal District Court in Wisconsin,

> "every new reapportionment plan creates a situation that results in 'holdover' Senators and the temporary disenfranchisement of some residents for a two-year period. ... The temporary disenfranchisement of citizens is constitutionally tolerated under either of two related theories. Due to the complexities of the reapportionment process, a temporary loss of voting rights (the cases speak of a 'delay' in the right to vote) is tolerated when it is an 'absolute necessity' or when it is 'unavoidable.'" Republican Party of Wisconsin v. Election Board, 585 F.Supp. 603 (E.D. Wis. 1984), *vacated and remanded* Wisconsin Elections Board v. Republican Party of Wisconsin, 469 U.S. 1081 (1984).[4]

17. The re-assignment of geographic territory of the former SD 13 to an even numbered district is neither "an absolute necessity" nor "unavoidable." On the record before this Court, it appears to be an arbitrary decision without a rational basis. To the extent that political considerations concerning the political impact of this re-assignment on the majority party are involved, the Court notes that this is a political process and it is appropriate to take political concerns into consideration so long as they do not impair the nonpartisan voting rights of the public. Here, the public's right to elect a senator has been delayed for 2 years, and in conducting the balancing test required under Burdick *supra*, the Court can see no countervailing rational basis or valid reason to re-assign the former SD 13 to an even numbered district, thereby delaying the right of those citizens to vote on the election of their senator. No such rational basis has been advanced thus far in the litigation.

---

[4] The U.S. Supreme Court granted an order staying the lower court's ruling, apparently because of time constraints that would make the mechanics of running the 1984 election difficult or impossible. 469 U.S. 812. After the November election was held under the legislatively adopted plan, rather than the judicially imposed plan, the action became moot, and the Supreme Court vacated the lower court's decision and directed dismissal of the complaint.

## CONCLUSION

For the reasons stated above, IT IS ORDERED AND ADJUDGED as follows:

1. The defendant Allison Lundergan Grimes, in her capacity as Secretary of State of the Commonwealth of Kentucky, and the Kentucky State Board of Elections, and all agents, employees and others acting in concert with them, are hereby ENJOINED under the provisions of CR 65.04 from implementing the districts for the Kentucky House of Representatives and Kentucky Senate that are set forth in House Bill 1, enacted by the 2012 General Assembly;

2. Until the General Assembly passes redistricting legislation that complies with all applicable constitutional requirements to revise the districts in effect under KRS 5.005 (2011), as enacted by 2002 Ky. Acts, c. 1, the elections for the House and Senate shall be conducted with the legislative district boundaries in effect immediately prior to the enactment of House Bill 1 for both the House of Representatives and the Senate.

3. The filing deadline set forth in KRS 118.165 shall be extended through 4:00 p.m. on Friday, February 10, 2012 to allow all candidates and potential candidates the opportunity to make the required candidacy filings under the temporary injunction issued by this Court, with the legislative districts required by this Court's ruling;

4. The motion of the Legislative Research Commission to intervene as a matter of right is GRANTED under CR 24.01 and KRS 5.005(1).

5. This is a final and appealable judgment on the claim set forth in Count I of the Complaint filed by Plaintiffs Fischer, Hoover, King, Todd and Gaydos for violation

of their rights under Section 33 of the Kentucky Constitution regarding the population variance of greater than 5%, and the failure to divide "the fewest possible number of counties." It is also a final and appealable judgment on the claim set forth in Count 1 of the Intervening Complaint filed by Intervening Plaintiffs Stevens, Stephenson, McGraw and Stein for violation of their rights under Section 33 of the Kentucky Constitution regarding the population variance of greater than 5% and the failure to divide "the fewest possible number of counties." Those claims of the plaintiffs and intervening plaintiffs under Fischer v. State Board of Elections, 879 S.W.2d 475 (Ky. 1994) constitute a facial challenge to the constitutionality of House Bill 1 under Section 33 of the Kentucky Constitution, and there is no just cause for delay in the entry of this judgment on the facial challenge to the constitutionality of House Bill 1. *See* CR 54.02

6. The Court RESERVES ruling on all other claims and defenses, pending the filing of Answers, completion of discovery, and briefing on the merits. Accordingly, this Order is an interlocutory order on all other claims of the Plaintiffs[5] and the Intervening Plaintiffs[6].

7. The bond previously set for the issuance of the restraining order under CR 65.03 ($200), which was posted by the Plaintiffs, shall remain in effect and serve as the bond for the temporary injunction.

---

[5] Lack of contiguity under Section 33, State and Federal Equal Protection, State and Federal Freedom of Association, 42 U.S.C. Sec. 1983, and Declaratory and Injunctive Relief under KRS 418.040)
[6] Equal Protection, Freedom of Association, Violation of Term of Office, 42 U.S.C. Sec. 1983, and Declaratory and Injunctive Relief.

16

IT IS SO ORDERED this 7th day of February, 2012, at 3:00 p.m. EST.

PHILLIP J. SHEPHERD, JUDGE
Franklin Circuit Court, Division 1

DISTRIBUTION:

Fultz Maddox Hovious & Dickens
Victor B. Maddox
John David Dyche
Jennifer Metzger Stinnett
Jason M. Nemes
101 S. Fifth Street, 27th Floor
Louisville, KY 40202

Britton Osborn Johnson
Anita Britton
200 West Vine Street, Suite 800
Lexington, KY 40507

Tachau Meek PLC
David Tachau
Dustin Meek
3600 National City Tower
101 S. Fifth Street
Louisville, KY 40202-3120

Pierce Whites
702 Capital Avenue
Annex Room 309
Frankfort, KY 40601

Scott Jones
702 Capital Avenue
Capitol Annex Building, Suite 304
Frankfort, KY 40601

J. Patrick Abell
702 Capitol Ave
Annex Room 304A
Frankfort KY 40601

Hon. Jack Conway

Attorney General
The Capitol Building
700 Capitol Avenue, Suite 118
Frankfort, KY 40601


Sheryl Snyder
400 West Market Street
Suite 3200
Louisville, KY 40202

Laura Hendrix, General Counsel
Legislative Research Commission
Room 300, State Capitol
725 Capital Avenue
Frankfort, KY 40601

Scott White
Sarah Mattingly
Morgan & Pottinger
133 W. Short Street
Lexington, KY 40507