UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, et al.,<br><br>Plaintiffs,<br>v.<br><br>THE COMMONWEALTH OF KENTUCKY, et al.,<br><br>Defendants. | ELECTRONICALLY FILED<br><br>Civil No. 2:13-cv-00068<br>DJB-GFVT-WOB |
| MARTIN HERBERT, et al.<br><br><br>Plaintiffs,<br>v.<br><br><br>KENTUCKY STATE BOARD OF ELECTIONS, et al.,<br><br>Defendants. | Civil No. 3:13-cv-00025<br>DJB-GFVT-WOB |

**DEFENDANT SPEAKER STUMBO'S RESPONSE TO BROWN PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Comes the Speaker of the House of Representatives, Greg Stumbo, by counsel, and in response to the Motion for Summary Judgment filed by Plaintiffs [R. 69], states as follows:

STATEMENT OF RELEVANT FACTS

The Plaintiffs filed this action in an attempt to force the Court to seize control of the legislative redistricting process. Kentucky's legislature periodically redistricts the

Commonwealth in accordance with changes in census data and other relevant information available to it. The prior attempt at legislative redistricting took place in 2012. A Kentucky state court action found the proposed map passed by the House in the 2012 legislative session to be unconstitutional. *LRC v. Fischer*, 366 SW3d 905,908 (Ky. 2012). The parties are aware that continued use of the 2002 census data is not in the best interests of the state and future maps will rely on the 2010 census. The Kentucky House and Senate are preparing for the Extraordinary Session called by the Governor to address redistricting matters.

All parties, including Plaintiffs, have access to the data to be used to draw maps of relevant legislative districts. This data is publically available on the Maptitude system used by the parties. No maps have yet been proposed and no legislative action can take place until the commencement of the Extraordinary Session on August 19th, 2013. Any request for "judgment" on any of the issues pleaded in the Complaints is either barred by res judicia or is not yet ripe for review or decision. The present motion must therefore be denied.

ARGUMENT

I.    PLAINTIFFS HAVE NOT SHOWN A RIGHT TO SUMMARY JUDGMENT

The Plaintiffs have failed to show a right to judgment in their favor in this action. In the Memo In Support of Motion for Summary Judgment, at p. 7, Plaintiffs assert that because earlier districts were allegedly "malformed", they are entitled to a judgment on redistricting maps from this Court. This argument must fail. Following the ruling in state court on the map used in the 2012 session, the legislature is appropriately and reasonably addressing the issue in preparation for the scheduled and pending Extraordinary Session on redistricting. There is no map, there has been no session, and all parties agree that genuine issues of material fact exist regarding the

action to be taken during that session. Until redistricting is accomplished, the Plaintiffs can claim no right to relief.

In this Commonwealth, a party seeking summary judgment must prove there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *Scifres v. Kraft,* 916 SW2d 779, 781 (Ky. App. 1986); CR 56.03. "The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor." *Lewis v. B & R Corp.,* 56 SW3d 432, 436 (Ky. App. 2001), (citing Steelvest, 807 S.W.2d at 480–82); *Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 199 (Ky., 2010).

Fed. R.Civ.P. 56(c) provides that judgment for the moving party is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Browning v. Dept. of Army,* 436 F3d 692, 695 (6th Cir. 2006; *Static Control Components v. Lexmark Intern*., 487 F.Supp.2d 830, 837 (E.D. Ky., 2007). No such showing has been made by the Plaintiffs herein. Genuine issues of fact exist with regard to the claims before this Court barring entry of judgment in their favor. The Motion must be denied.

II.     PLAINTIFFS HAVE NO STANDING TO DEMAND JUDGMENT

In order to support a claim of standing, Plaintiffs must show that they are suffering an injury. That standard has not been met in this case. Relief is not available from the federal courts unless there is a tangible right to be enforced, but if "no comparable common-law right exists and no

3

such constitutional or statutory interest has been created, relief is not available judicially." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 152-153 (1951). Ripeness is a core component of Article III standing and requires that "an injury in fact be certainly impending." *National Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). In addition to these essential constitutional requirements, and even if a case is technically "ripe", prudential considerations counsel judicial restraint. See *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 471 (1982).

Article III of the U.S. Constitution provides that parties seeking federal court jurisdiction must allege an actual case or controversy, and must have sustained or be in immediate danger of sustaining some direct injury that is real and immediate and not "conjectural" or "hypothetical." *Miyazawa v. City of Cincinnati*, 825 F. Supp. 816, 818 (S.D. Ohio 1993), aff'd, 45 F.3d 126 (6th Cir. 1995). In the present case, Plaintiffs assert a "general complaint" that a candidate that they may want to vote for may not be eligible to run for that office. Courts hold that such a speculative argument does not support standing. The Sixth Circuit has expressly stated that under those circumstances plaintiffs have "suffered no harm, nor will [they] suffer any greater harm than that of any other voter . . . that would provide [them] standing herein." *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 127-28 (6th Cir. 1995); *see also Burnette v. Bredesen*, 566 F.Supp.2d 738, 742 (E.D. Tenn. 2008).

Courts have held that a legislature, not the federal court, is the appropriate forum in which to weigh competing interests and political judgments in order to arrive at redistricting decisions. *Perry v. Perez,* 132 S.Ct. 934, 941 (2012). Federal courts consistently hold that the court will not interfere with ongoing redistricting efforts because that is a state function rather than a matter properly addressed in a federal forum. The United States Supreme Court expressly stated that

"in the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative or judicial branch, has begun to address that highly political task itself*." Growe v. Emison*, 507 U.S. 25, 33 (1993). Legislatures redistrict, and unless there is "evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it*." Growe v. Emison*, 507 U.S. 25 (1993). Plaintiffs have presented no such evidence here. In fact, all evidence in the record indicates that the state legislature is preparing for the scheduled Extraordinary Session to timely address redistricting, as called by the Governor.

III.   PLAINTIFFS SHOW NO RIGHT TO DECLARATORY RELIEF

In their Motion, Plaintiffs argue that they are entitled to some prospective relief based on a guess as to future maps and speculative data which they think might be used in such future as yet to be created maps. Memo in Support, pp. 9-11. That unsupported allegation does not rise to the strict standard governing a right to declaratory relief. The Sixth Circuit has instructed district courts to examine five factors to determine whether declaratory relief may be appropriate. These factors are:

(1) whether the judgment would settle the controversy;
(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
(5) whether there is an alternative remedy that is better or more effective.

*Scottsdale ns. Co. v. Roumph,* 211 F3d 964, 968 (6th Cir. 2000). Even if the Court granted the Plaintiffs' demand for partial declaratory relief or judgment in their favor, that ruling would not

5

settle the controversy between the parties. Under such circumstances, the request for judgment must be denied. See: *Travelers Indem. Co. v. Bowling Green Prof'l Assocs.,* 495 F3d 266, 271-72 (6th Cir. 2007). Denial of the request is particularly apparent where, as here, the focus of the inquiry should be whether issuing the requested judgment would settle the "ultimate controversy" in the underlying state-court litigation. *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.,* 565 F. Supp.2d 779, 788 (E.D. Ky. 2008).

This Court has discretion to determine whether to award declaratory relief, but the exercise of that discretion must be based on facts supporting the claim to relief. *AmSouth Bank v. Dale,* 386 F.3d 763, 784 (6th Cir.2004); cited in *Persley v. Lee*, 794 F. Supp. 2d 728, 732-33 (E.D. Ky. 2011). As the United States Supreme Court has consistently noted, federal court intervention is "a serious intrusion on the most vital of local functions." *Miller v. Johnson,* 515 U.S. 900, 915 (1995). In the absence of a showing, not made by Plaintiffs herein, that there is a matter subject to immediate review and issuance of declaratory relief, there can be no judgment entered in their favor.

IV.   PLAINTIFFS HAVE SUFFERED NO EQUAL PROTECTION VIOLATION

Plaintiffs claim that they have suffered an equal protection violation and are entitled to relief on those grounds. This specious claim is wholly unsupported by either fact or law. Redistricting plans for state legislatures require only "substantial" population equality. *Gaffney v. Cummings,* 412 U.S. 735 (1973). Deviations may be necessary to permit states to pursue other legitimate and rational state policies. In *WMCA, Inc. v. Lomenzo,* 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568, the Court treated an apportionment based upon citizen population variations as presenting problems no different from apportionments using a total population measure**.** Courts will not

6

interfere in redistricting decisions unless the choice made is one which the Constitution forbids. *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed2d 675.  No such showing can be made in this case, as the scheduled Extraordinary Session has yet to take place, and the population data used for such redistricting cannot prospectively be considered unconstitutional.  Any equal protection claim is merely hypothetical at this point, and Plaintiffs cannot demand judgment based on speculation alone.

The Fourteenth Amendment to the United States Constitution makes it unconstitutional for any state to "deprive any person of life, liberty, or property, without due process of law" or "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. 14. Section 1983 creates liability of a person for depriving, under color of law, a citizen "of any rights, privileges, or immunities secured by the Constitution ..." 42 U.S.C. § 1983.  Section 3 of the Kentucky Constitution guarantees equal protection of the laws, and it is the equivalent of the equal-protection clause contained in the Fourteenth Amendment to the United States Constitution.  *Roberts v. Mooneyhan,* 902 SW2d 842, 843 (Ky. App. 1995).  No due process claims can be asserted under the current facts in this case.  Again, Plaintiffs merely demand speculative relief, a demand that this Court cannot meet.

V.   PLAINTIFFS HAVE NO RIGHT TO RUN IN A PARTICULAR DISTRICT

While the essence of all of the Plaintiffs' claims is that they desire a right to create and run in a district of their choosing, and that they want that district by a date certain, Plaintiffs cite no case requiring redistricting prior to the one year residency date for legislative office. As the LRC and Secretary of State have asserted, the Plaintiffs' claim that a self-created "deadline" of November 4, 2013 date mandates court involvement, is incorrect. No court or legislature has

ever taken into account the residency requirement as a linchpin of a redistricting timetable. As a matter of law, requiring General Assembly action based upon this imaginary deadline would violate the fundamental right of Kentucky's legislative body to set elections policy for the state under the Tenth Amendment. There is no right to know by November 4, 2013, what any particular district is, so that potential candidates can move to or from those districts. Any person who is a resident of that district as it exists upon the filing date may seek such office, starting on November 6, 2013 and ending January 28, 2014, unless these dates are modified by law.  The action to be taken in this case is solely legislative action, and this Court has no duty or right to intervene in the operation of that process. See, *Philpot v. Haviland*, 880 S.W.2d 550, 553 (Ky. 1994); *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951).

As all parties know and this Court must recognize, there is no right to be a candidate in any particular district. *Clements v. Fashing*, 457 U.S. 957 (1982); *Carver v. Dennis*, 104 F.3d 847, 851 (6th Cir. 1997). Kentucky Courts have held that a candidate has no "right" to run in a particular numbered district.  *Anggelis v. Land*, 371 S.W.2d 857 (Ky. 1963). Where a candidate lives and can therefore run is purely a political consideration, of which the courts properly take no notice.

VI. THE FISCHER CASE IS RES JUDICATA WITH REGARD TO THE CLAIMS

The Plaintiffs ask for a declaration that the 2002 maps are "unconstitutional."   This has already been litigated to conclusion by the same parties or privies in a lawsuit over the same issues. See:  *Legislative Research Commission v. Fischer*, 366 S.W.3d 905 (Ky. 2012). The Full Faith and Credit statute requires the federal court to observe the finality of that opinion. No action should be taken by this Court with regard to any issues resolved previously in *Fischer*.

8

An attempt to re-litigate those conclusively determined issues would violate the Rooker Feldman doctrine. The law provides that a party cannot attack a final state law determination collaterally by an independent suit, essentially "appealing" that decision to a sister court. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). A party "aggrieved by a state-court decision cannot appeal that decision to a district court, but must instead petition for a writ of certiorari from the United States Supreme Court." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). No such appeal was timely taken and therefore, the state court ruling is binding on the parties. Any attempt by this Court to rule on matters addressed in the prior state court action serves only to increase friction between the state and federal courts and can have no permissible legal effect. Under such circumstances, this Court should decline to enter such judgment. *Scottsdale Ins. Co. v. Flowers,* 513 F3d 546, 560 (6th Cir. 2008).

## CONCLUSION

For the foregoing reasons, the Speaker of the House asks that the Motion for Summary Judgment be DENIED.

                                          Respectfully submitted,

                                          s/Anna S. Whites/
                                          _____
                                          Anna Stewart Whites
                                          600 East Main Street
                                          Frankfort KY 40601
                                          (502) 352-2373
                                          AnnaWhites@aol.com

                                          Pierce Whites
                                          2374 Switzer Road
                                          Frankfort KY 40601
                                          (502) 564-3000
                                          Pierce.Whites@lrc.ky.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2013, a copy of the foregoing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and electronic mail. Parties may access this filing through the Court's electronic filing system.

                                        s/Anna S. Whites/
                                        Anna Whites