# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION (AT COVINGTON)

| | | |
|---|---|---|
| **KENNY BROWN,** *et al.*, | : | |
| | : | |
| Plaintiffs, | : | **Case No. 2:13-CV-68-WOB-GFVT-DJB** |
| | : | |
| v. | : | |
| | : | |
| **COMMONWEALTH OF KENTUCKY,** *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

| | | |
|---|---|---|
| **MARTIN HERBERT,** *et al.*, | : | |
| | : | |
| Plaintiffs, | : | **Case No. 3:13-CV-25-WOB-GFVT-DJB** |
| | : | |
| v. | : | |
| | : | |
| **KENTUCKY STATE BOARD OF ELECTIONS,** *et al.*, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM IN OPPOSITION TO THE LEGISLATIVE RESEARCH COMMISSION'S MOTION TO DISMISS

**I.    INTRODUCTION**

Time and again the judicial branch has proven indispensable to Kentucky's legislative redistricting. Previously, intervention by Kentucky's courts would cajole our legislature to do its constitutional duty. Unfortunately, however, even that has proved ineffective. Two years ago, both the Franklin Circuit Court and Kentucky Supreme Court ruled that the 2012 redistricting map enacted by the General Assembly to be unconstitutional. The Legislative Research Commission ("LRC") intervened in that litigation, which is now known as "*Fischer IV*." (See

1

LRC Memo, [Doc. 68-1], at p. 27, ¶ 3.)  Despite that intervention, and despite years of opportunity since then, the General Assembly has still not performed its Constitutional duty. Thus, Plaintiffs in *Brown, et. al. v. Commonwealth, et. al.*, 2:13-CV-68-WOB-GFVT-DJB ("Plaintiffs") have turned to this Court.  The LRC has filed a Motion to dismiss claims related to the 2012 election – curiously, however, the only claim that Plaintiffs made in relation to the 2012 election was for money damages, and that claim was withdrawn over a month ago.  Even more curious is what the LRC has ***not sought*** – namely dismissal of claims against it for declaratory relief related to the continued use of the 2002 maps, injunctive relief related to the continued use of the 2002 maps, or attorney fees in relation to the declaratory relief or injunctive relief related to the continued use of the 2002 maps – or, more specifically, the LRC has declined to move to dismiss the only claims that remain.

## II.     ARGUMENT

The LRC's Motion should be denied for several reasons.  First, the LRC's Motion, and most of the argument in its Memorandum, addresses issues that are moot or were never raised by Plaintiffs.  Second, the actions proposed and positions advanced in the LRC's Memorandum are contradicted by its own arguments. Finally, after acknowledging that it intervened in the *Fischer IV* litigation, the LRC argues immunity from this Court on one hand, while asking it to impose the 2012 maps for the next election on the other.  The LRC's intentions, of course, are to sit back, without exposure to declaratory or injunctive relief, and fire shots – an intention best demonstrated in the LRC's response to Plaintiff's Motion to Dismiss the LRC pursuant to FRCP 41(a)(2).  (See LRC Response, Doc.#73]).  The LRC cannot on one page assert immunity in this action and on another page press the Court to impose a proffered outcome in the litigation.  This proverbial desire to have its cake and eat it too simply is not permitted.  It waives its immunity,

or it does not. And, in this case, the LRC has made clear the answer is that "it does not." To quote the Sixth Circuit, in a case involving a desire by a state agency to assert immunity claims, while receiving the benefits of participating in a suit: "[the state agency] asks if it can have its cake and eat it, too. We conclude that it cannot." *In re Hood*, 319 F.3d 755 (6th Cir. 2003).

### A. The LRC's Motion to Dismiss Claims and Damages Relating to the 2012 Elections should be denied because the LRC's Motion is moot or it addresses issues not even raised.

The LRC uses much ink and paper arguing about matters previously resolved, or not even at issue. First, a brief recitation of the specific claims in Plaintiffs' Complaint is necessary. Plaintiffs' only claims related to the 2012 elections were in relation to money damages, not declaratory relief, and not attorney fees. (*See* Pl.'s Compl., [Doc. #1], Prayer for Relief, ¶ B). As for declaratory relief, Plaintiffs sought a declaration that "the current maps … are unconstitutional." Plaintiffs further sought injunctive relief, seeking this court to "prohibit… the use of current unconstitutional districts and maps," allowing Defendants an opportunity to enact maps, and, if they fail to do so, for "this Court [to] draw and impose appropriate legislative districts for the 2014 Kentucky House and Senate primary and general elections and such additional elections until Defendants enact constitutional maps and legislative districts." (*See* Pl.'s Compl., [Doc. #1], Prayer for Relief, ¶ C). The prayer for relief is the guidepost for the relief sought. *Crosby v. Bowater Inc.*, 382 F.3d 587 (6th Cir. 2004) (looking to prayer for relief to determine what relief Plaintiffs were seeking). The specific claims related to the 2012 elections in the Complaint dealt only with money damages, not with declaratory and prospective relief and not with attorney fees – those claims all dealt with continued use of the 2002 maps for the 2014 elections and beyond. (*See* Pl.'s Compl., [Doc. #1], Prayer For Relief; ¶¶ 65, 72). The LRC attempts to argue that the Complaint asked for other relief, other than damages – but the

3

Complaint did no such thing. To read the complaint any other way would suggest that the *defendant*, not the Plaintiffs, is "the master of [their] complaint." *NicSand, Inc. v. 3M Co*., 507 F.3d 442, 458 (6th Cir. 2007). The law holds otherwise. *Id.* And the money damages were withdrawn.

With this backdrop in mind, the LRC spends nearly thirty pages pressing this Court to do what has already been done. See LRC Memo [Doc. No. 68-1], at pp. 1- 31 (arguing for the dismissal of claims and damages arising from the use of 2002 maps during the 2012 elections that the *Brown* Plaintiffs averred was unconstitutional under the one person one vote standard). These issues are moot many times over. *Kroll v. Incline Vill. Gen. Improvement Dist.*, 598 F. Supp. 2d 1118, 1122 (D. NV 2002) (motion to dismiss is moot on withdrawn claims). First, and most importantly, this Court recited the dismissal of these claims in various Orders already entered. *See* the Order denying Speaker Stumbo's Motion to Stay, [Doc. No. 48], at p. 3, fn. 1 ("At the hearing, the constitutionality of the 2012 elections seemed to be a point of concern for the Plaintiffs. However, the *Brown* Plaintiffs have now withdrawn their claim for damages based on past constitutional violations.") *See also* the Order of Consolidation finding that the cases brought by both the *Brown* Plaintiffs and *Herbert* Plaintiffs present "common questions of law and fact" and noting that, "[t]he dismissal by the *Brown* plaintiffs of their claims for damages during oral argument on Friday, June 21, 2013, brings the cases further into alignment." (Order, [Doc. No. 47], at pp. 1-2.)

As the Court's Orders clearly show, Plaintiffs have already voluntarily dismissed these claims. That this occurred is aptly demonstrated in the transcript at the hearing on June 21, 2013:

> MR. WIEST: We are more, frankly, concerned, my clients are more concerned with the 2014 election process. **The past damages or anything else, we are willing**

4

>     -- in fact we indicated in a filing late yesterday that we are willing, frankly, to forego certain claims because we really want to make sure that -- that what this -- **what this action is all about is conducting 2014 elections in a timely and orderly manner with constitutional maps**. We would prefer the defendants perform their constitutional duty, enact constitutional maps."

(Tr. Hearing, June 21, 2013, [Doc. No. 50], p. 34; emphasis added.)

>     MR. WIEST: Your Honor, we are willing to withdraw it, and that's what I am telling you.
>
>     THE HONORABLE JUDGE BERTELSMAN: You are willing to withdraw it right now, let's strike it.
>
>     MR. WIEST: Absolutely.
>
>     THE HONORABLE JUDGE BERTELSMAN: That's a claim without prejudice as you request.
>
>     MR. WIEST: Thank you, Your Honor, yes, we would.
>
>     THE HONORABLE JUDGE BERTELSMAN: That gets rid of that issue."

(Tr. Hearing, June 21, 2013,[Doc. No. 50], p. 36-7.)

Additionally, the *Brown* Plaintiffs' counsel agreed in email correspondence to an agreed order of dismissal that was worked out with counsel for the Commonwealth's Secretary of State.

Aside from the mootness, the LRC misstates the underlying basis for the *Brown* Plaintiffs' concerns with regard to the 2012 elections and the voluntary agreed dismissal. *See* LRC Memo, [Doc. No. 68-1], at p.3-4 ("The General Assembly, as a whole, passed a 2012 redistricting Act that comported with the equal protection clause.") Of course, that map did not comport with the Kentucky Constitution, resulting in the 2002 maps being used for the 2012 elections. And worse yet, through both the 2012 and 2013 legislative sessions this constitutional violation was never remedied. The gravamen of the *Brown* Plaintiffs case is—and has always been—obtaining Constitutional redistricting well before November 4, 2013. Plaintiffs sought a declaration that continued use of the 2002 maps is unconstitutional, and likewise seek to enjoin

5

the use of those same unconstitutional 2002 maps in future elections.  (Pl.'s Compl.¶ 65).

Moreover, in addition to being moot, much of the LRC's arguments are based solely on mistaken assumptions.  *See* LRC Memo, [Doc. No. 68-1], at p. 12, erroneously stating that "The Plaintiffs *apparently* claim that they are entitled to their tax money back." (Emphasis added.) Not so—and no damages claims are pending.  The issue was ***the use of 2002 maps*** in 2012 despite the population change.  The LRC also quotes out of context the *Brown* Plaintiffs' discovery responses made to the Secretary of State concerning the potential of damages. (LRC Memo, [Doc. No. 68-1], at p. 26.)  But the LRC omits Plaintiffs' statements in the same discovery response concerning their voluntary withdrawal of claims under state law and damages.[1]  Regardless however, the claim has been withdrawn and is, therefore, moot (as is any sorts of claims related to damages to candidates from improperly identified districts during the 2012 election).  Just as there is no need for discovery on issues voluntarily resolved, there is no need to further thresh through the moot issues raised by the LRC.

---

[1] "**5.  Please enumerate any and all money damages that you claim in numerical paragraph 66 of the Complaint you continue to suffer as a result of the alleged constitutional violations that are the subject of this lawsuit.**

**RESPONSE: Objection.  This interrogatory is overly broad, unduly burdensome, and not likely to lead to the discovery of relevant information.  Further objecting, this interrogatory is inappropriate and irrelevant given Plaintiffs' withdrawal of their claims for money damages.  Finally, this Interrogatory calls for information that is protected by the attorney-client and/or work product doctrine.  Without waiving these objections and in the spirit of cooperation envisioned under the Civil Rules, Plaintiffs state that:**

Plaintiffs no longer have a claim in this Action for money damages, but have retained their claims for attorney fees.  Answering further without waiving the foregoing objections, Plaintiffs have suffered vote dilution, inadequate representation in their legislature, and damage as a result of having to undergo an election with unconstitutional boundaries, and confusion as to appropriate districts and voter data as a result of the unconstitutional districts drawn in 2011. Without waiving the foregoing objections and further answering, Northern Kentucky, where Plaintiffs live, receive only a fraction in value of the tax money paid to Frankfort in government services such as infrastructure improvements, services, schools and other  areas, which fact only amplifies the damages caused by taxation without representation.  The damages are capable of calculation by the amount of tax revenues Plaintiffs have paid to Frankfort since March, 2011, or a portion thereof, by an equal percentage of mal-apportionment suffered.  Further answering and subject to the foregoing objections, Plaintiffs also have claims for attorney fees – which although not treated as damages but costs under 42 USC § 1988 and 42 USC § 1973l – those fees continue to increase every day, indeed the fees are escalating in part due to Plaintiffs having to propound discovery to Defendants to prove straightforward facts such as population data, or in responding to discovery requests that do not significantly advance the merits of the case to its conclusion."

6

Finally, the *Brown* Plaintiffs had submitted a Motion under FRCP41(a)(2) regarding the damages claim and any other claims relating to the 2012 elections (and state law claims) to clean up the record. (*See* Plaintiffs' Motion, [Doc. No. 64].) Plaintiffs also submitted an amended complaint that removes these claims. Despite this fact, the LRC devotes pages and pages discussing the amount of damages in a hypothetical (*i.e.* "capable of calculation") and whether or not the response was the same as an assertion of those damages. If Plaintiffs were asserting damages, Plaintiffs would conduct discovery and respond with specificity and certainty. Plaintiffs are not required to calculate, present, or put on a case for claims previously and voluntarily withdrawn. In any event, even if the quantification of the money damages could not be reasonably calculated, the existence of nominal damages was nevertheless available to the *Brown* Plaintiffs. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299,106 S. Ct. 2537; 91 L. Ed. 2d 249 (1986). Again, the entire discussion, however, is moot because these claims were withdrawn.

    **B.   The LRC's Motion should be denied because the positions it advanced are contradicted by its own arguments.**

On pages 27 through 31, the LRC argued that *res judicata* and collateral estoppel apply to bar claims litigated in, or outcomes from, *Fischer IV*, a case in which the LRC intervened. (LRC Memo, [Doc. No. 68-1], at p. 27, ¶ 3.) The LRC insists that:

> The Supreme Court's order of February 24, 2012 in that case adjudicated the same issues with respect to the 2012 redistricting that Plaintiffs seek to raise here. . . . By so doing, the Plaintiffs herein activate the prohibitions of res judicata and collateral estoppel, and they bar this lawsuit as it seeks to re-litigate the case.
>
> Res judiciata [sic] prevents a party from raising a claim that has already been decided. . . . *Id*., at p. 28, ¶ 2.

As the LRC acknowledges, it argued in *Fischer IV* that the 2012 maps passed in HB1 were acceptable. (LRC Memo, [Doc. No. 68-1], at p. 28, ¶ 1.) There is no dispute that the

7

Kentucky Supreme Court rejected the LRC's position and found the 2012 maps to be unconstitutional. (*Id.*, and at p. 27, ¶.) In the words of the LRC, "[a]ll the issues were raised regarding the constitutionality of the 2012 redistricting, and a judgment was made." (LRC Memo, [Doc. No. 68-1], at p. 31, ¶ 1.) The chief outcome of *Fischer IV* was that the 2012 maps were unconstitutional. *Id.* The LRC concedes that, ***"[w]hile the LRC opposed this approach, it is what the state court decided***." (*Id.*, at p. 32, ¶ 2.) Despite these admissions and arguments by the LRC, it then proceeds to argue that this Court should impose the 2012 maps for the 2014 elections. The LRC's own arguments show the 2012 maps are irrevocably unconstitutional. Those same arguments foreclose LRC's proposed remedy for the current unconstitutional maps (reinstating the maps the Kentucky Supreme Court struck down)– under the doctrines of *res judicata, Rooker-Feldman,* and the host of other arguments raised by the LRC in support of their Motion to Dismiss. Therefore, the LRC's Motion should be denied.[2]

### C. Given the LRC's filing of its Motion to Dismiss, and its reliance on the Eleventh Amendment and Legislative Immunity, it is appropriate to completely dismiss the LRC from this matter.

Legislative immunity is an affirmative defense which can be waived or forfeited, and, unless raised, does not affect the power of a federal court to adjudicate. *See, e.g., Kingman Park Civic Ass'n v. Williams,* 358 U.S. App. D.C. 295, 348 F.3d 1033, 1039 (D.C. Cir. 2003) (mayor

---

[2] The LRC raises various other defenses and arguments, which were moot when the LRC filed its motion and deserve no more than a cursory response. The LRC argues that the 2012 redistricting is moot – but there were no claims with respect to the act of redistricting in 2012, the claim for money damages dealt with the conducting of elections, and the continued conducting of elections, under the 2002 maps. Nor would there be a statute of limitations problem – general elections were held in November, 2012, using unconstitutional maps. Again, the response to these claims deserves no more than a footnote, since all claims related to the 2012 elections were withdrawn. Nor does *res judicata* bar any of the Plaintiffs' claims. Plaintiffs did not sue over the use of 2012 HB 1. Plaintiffs sued over the continued use of 2002 maps, given 2010 census data. There is no identity of claims; there is no identity of parties. Nor did the Kentucky Supreme Court declare that such maps should be used beyond the 2012 census. *Rooker-Feldman* is not applicable, since the claims that remain in this case deal not with the conducting of elections in 2012, but instead the continued use of those maps into 2013 and beyond. Nor does *Noer-Pennington* apply to the claims in this case – since the claims in this case all deal with the use and implementation of an unconstitutional, mal-apportioned map. Again, the LRC has moved to dismiss claims related to the 2012 elections, but those claims were withdrawn.

8

waived legislative immunity by expressly disavowing it in the district court); *Powell v. Ridge,* 247 F.3d 520, 531 (3d Cir. 2001) (Roth, J., concurring) ("legislative immunity may be waived"); *Fraternal Order of Police v. City of Hobart,* 864 F.2d 551, 554 (7th Cir. 1988) (by failing to invoke legislative immunity in the district court, members of city council waived that defense). Indeed, sometimes legislators who are sued decide to forego legislative immunity and defend on the merits. *See, e.g., Martinez v. Bush,* 234 F. Supp. 2d 1275, 1278 (S.D. Fla. 2002) (involving a three-judge panel in a Florida redistricting case).

Eleventh Amendment immunity can likewise be waived. *Lapides v. Bd. of Regents,* 535 U.S. 613, 152 L. Ed. 2d 806, 122 S. Ct. 1640 (2002). "A state can waive an Eleventh Amendment immunity defense through a voluntary appearance in litigation against it in federal court." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 365 (3d Cir.1997) aff'd, 527 U.S. 666, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999). However, the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Id.* at 675. Generally, waiver of sovereign immunity through litigation conduct only happens when the state "voluntarily invokes" federal court jurisdiction. *See Gunter v. Atlantic C. L. R. Co.*, 200 U.S. 273, 284, 26 S. Ct. 252, 50 L. Ed. 477 (1906), stating that "where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." The LRC has plainly and unambiguously indicating that it is not waiving these defenses: "there is no consent here by LRC." (LRC Memo [Doc. 68-1] at 18). The LRC cannot have it both ways. If it advances defenses of sovereign immunity or legislative immunity, it cannot remain a party and cannot later intervene.

KRS § 5.005 permits the LRC to intervene as a matter of right in actions seeking to

9

challenge legislative districts. In fact, as previously stated, the LRC intervened in the litigation before the state courts in *Fischer IV*. Although the LRC has used much ink to advance the position that it is immune from suit in this Court, it never asked for outright dismissal as a party from this Action. In fact, it has made clear that it does not wish to be dismissed. (See LRC Response, Doc.#73]). It must be either in or out. Having asserted immunity, the LRC cannot remain in to defend the use of the 2002 maps, or propose the 2012 maps, or defend any maps that may come out of the upcoming legislative session. If it is the LRC's position that it is immune, then it should be dismissed outright. But such dismissal must remove it as a party and estop it from any future attempt to intervene following the pending special legislative session. Or, as the Sixth Circuit said succinctly "[the state agency] asks if it can have its cake and eat it, too. We conclude that it cannot." *In re Hood*, 319 F.3d 755 (6th Cir. 2003).

There is a strong argument to be made that the LRC, through its litigation posture in this case, has waived its Eleventh Amendment and legislative immunity due to its opposition to being dismissed from this suit altogether. (*See* LRC Response to FRCP 41(a)(2) Motion [Doc #73]). In fact, it appears that the LRC is, through its opposition to being dismissed, "voluntary appear[ing] in litigation against it in federal court." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 365 (3d Cir.1997) aff'd, 527 U.S. 666, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999)." This is a classic example of waiver of the immunity.

Finally, the LRC is judicially stopped from relying on Eleventh Amendment Immunity and Legislative Immunity in seeking to dismiss Plaintiffs' claims (even though those claims were already dismissed), but then seeking to continue to participate as if those defenses do not apply to the remaining claims: Judicial estoppel seeks "to preserve 'the integrity of the courts,'" *Browning v. Levy,* 283 F.3d 761, 776 (6th Cir. 2002) (citation omitted), by "generally

prevent[ing] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (citation omitted).[3]

This suit was, and continues to be, about the use of the 2002 maps for the 2014 election cycle and at long last achieving constitutional redistricting maps for Kentucky. The LRC does not seek dismissal of those claims for declaratory or injunctive relief (or associated attorney fees related to those claims). Plaintiffs have standing to assert such claims, *Gray v. Sanders*, 372 U.S. 368, 375 (1963) ("any person whose right to vote is impaired ... has standing to sue").

Finally, the entirety of the remaining arguments of the LRC are moot, and involve claims that have already been dismissed and withdrawn, since they relate to the 2012 elections, and, if this Court should be of the view that clarity in the record is necessary, such claims can be appropriately disposed of by granting the FRCP 41(a)(2) Motions regarding the LRC and dismissal of state claims as well as money damage claims. However, given that LRC is asserting legislative and Eleventh Amendment immunity, to the extent the LRC has not waived such immunity through its continued participation and litigation maneuvering, the LRC must be **completely** dismissed from this matter – it should not be permitted to "have its cake and eat it too." *In re Hood*, 319 F.3d 755 (6th Cir. 2003).

---

[3] The LRC, once dismissed, should be precluded from later intervening. Intervention generally contemplates that the proposed intervenor will align itself either as a plaintiff or as a defendant. *See, e.g. Hubner v. Schoonmaker*, 1990 U.S. Dist. LEXIS 13035, 1990 WL 149207, at 7 (E.D.Pa.); *Kamerman v. Steinberg*, 681 F. Supp. 206, 211 (S.D.N.Y. 1988). Accordingly, intervention requires that the intervenor present a "claim or defense," see Fed. R. Civ. P. 24(c), related to the existing litigation, which the intervenor wishes to assert as part of the existing litigation rather than in a separate action, *see Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) ("The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved.") (*citing Reich v. Webb*, 336 F.2d 153, 160 (9th Cir.1964), cert. denied, 380 U.S. 915, 13 L. Ed. 2d 800, 85 S. Ct. 890 (1965)). Specifically, Rule 24(c) requires that all motions to intervene "shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Given that LRC has asserted an immunity defense, and should be dismissed as a consequence of assertion of that defense, it should not be permitted to later enter the case and participate – it is out.

### III. CONCLUSION

For the foregoing reasons, the LRC's Motion should be denied – it seeks dismissal of money damages claims that were already withdrawn, and otherwise seeks dismissal of claims never made, but, given the LRC's desire to assert immunity, the LRC should be dismissed completely as a party from this action.

                                              Respectfully Submitted,

                                              /s/Christopher D. Wiest
Christopher D. Wiest (KBA 90725)
Chris Wiest, AAL, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859/486-6850 (v)
859/495-0803 (f)
513/257-1895 (c)
chriswiestlaw@yahoo.com

  /s/Richard A. Brueggemann
Richard A. Brueggemann (90619)
E. Jason Atkins (88044)
Hemmer DeFrank, PLLC
250 Grandview Dr.
Fort Mitchell, KY 41017
859/578-3855 (v)
859/578-3869 (f)
rbrueggemann@hemmerlaw.com

*Counsel for Plaintiffs in Brown, et. al. v. Commonwealth, et. al.*

### CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon counsel for Defendants and Plaintiffs in the consolidated *Herbert* case, this 26th day of July, 2013, via the Court's CM/ECF system.

                                              /s/Christopher Wiest