UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | | |
|---|---|---|
| KENNY BROWN, *et al.*, | ) | |
| Plaintiffs | ) | Case No. 2:13-cv-00068- DJB-GFVT-WOB |
| v. | ) | |
| COMMONWEALTH OF KENTUCKY, *et al.*, | ) | |
| Defendants. | ) | |
| and | ) | |
| MARTIN HERBERT, *et al.*, | ) | |
| Plaintiffs, | ) | (Consolidated Action Case No. 2:13-cv-00025-DJB-GFVT-WOB) |
| v. | ) | |
| KENTUCKY STATE BOARD OF ELECTIONS, *et al.*, | ) | |

### RESPONSE OF SENATE PRESIDENT ROBERT STIVERS TO THE PLAINTIFFS' JOINT MOTION FOR SUMMARY JUDGMENT

Comes Defendant, Senate President Robert Stivers, through counsel, and for his response to the Plaintiffs' Joint Motion for Summary Judgment submits the following response in opposition.

## BACKGROUND

On July 12, 2013, the Plaintiffs (hereinafter, "Movants") in case number 2:13-CV-00068-DJB-GFVT-WOB, filed a Joint Motion for Summary Judgment. Specifically, Movants seek (1) a declaration that the use of the 2002 legislative maps violates the Fourteenth Amendment's Equal Protection Clause; and (2) permanent injunctive relief barring the 2002 maps' use in future Kentucky elections.

## ARGUMENT

### I. SUMMARY JUDGMENT IS NOT PROPER BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE

The Plaintiff's are correct that summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *Birgil v. Board of Comm'rs*, 125 F.3d 948, 950 (6th Cir. 1997), *cert. denied*, 522 U.S. 1109 (1998). The Plaintiff's are further correct that the burden of establishing the absence of a genuine issue of material fact lies with the moving party and that courts must view all evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th cir. 2003). However, the Plaintiffs are unequivocally incorrect in their position that they have met this high burden of showing that there are no genuine issues of material fact at dispute in this matter. Here, there are several complex and significant factual allegations made by

Plaintiffs that are in dispute. When issues of material fact are disputed, courts do not entertain summary judgment. Accordingly, summary judgment is inappropriate.

## II. THE USE OF THE 2002 MAPS FOR THE 2012 OR ANY SUBSEQUENT ELECTIONS IS NOT VIOLATIVE OF THE EQUAL PROTECTION CLAUSE

Plaintiffs ask for a declaration that the 2002 maps ordered by the Kentucky Supreme Court violate the Fourteenth Amendment. However, determining whether a particular redistricting plan comports with the requirements of the Fourteenth Amendment's Equal Protection Clause requires nuanced and in depth consideration that is not suited to a summary judgment action.

Although Plaintiffs argue that "plans with a total deviation of greater than 10 percentage points create a prima facie case of an Equal Protection violation and are presumptively invalid," this is not the case. Such an assertion ignores the fundamental precept of the state legislature as an independent body, as "legislative reapportionment is primarily a matter for legislative consideration and determination." Reynolds v. Sims, 377 U.S. 533, 586 (1964). Reynolds only requires "some reasonable plan for periodic revision of their apportionment schemes.… In substance, we do not regard the Equal Protection Clause as requiring daily, monthly, annual or biennial reapportionment, so long as a State has a reasonably conceived plan for periodic readjustment of legislative representation." Id. At 583.  Kentucky has engaged in that periodic readjustment, and is still in this process.

Plans for state legislatures require only "substantial" population equality. Gaffney v. Cummings, 412 U.S. 735 (1973). Deviations may be necessary to permit states to pursue other legitimate and rational state policies. See Reynolds, 377 U.S. at 577–81; see also Mahan v. Howell, 410 U.S. 315, 321–22 (1973). These policies include "making districts compact, respecting municipal boundaries, preserving the cores of prior districts, and avoiding contests

3

between incumbent Representatives." Karcher v. Daggett, 462 U.S. 725, 740 (1983). Plans may have a greater total deviation in excess of ten percent, and it is reversible error not to consider whether a valid state interest exists in preserving political subdivision boundaries. Voinovich v. Quilter, 507 U.S. 146 (1993) (district court erred in concluding state legislative districts with population deviations in excess of 10% from ideal invalid without first determining whether deviation necessary to preserve political subdivision boundaries). The U.S. Supreme Court upheld an 89% maximum deviation from equality and 16% average deviation to maintain integrity of political subdivisions and permit compact contiguous districts. Brown v. Thomson, 462 U.S. 835 (1983). The inquiry focuses on whether:

> the legislature's plan "may reasonably be said to advance [a] rational state policy" and, if so, "whether the population disparities among the districts that have resulted from the pursuit of this plan exceed constitutional limits."
>
> Brown v. Thomson, 462 U.S. 835, 843 (1983). The legislature has flexibility in constructing

legislative districts. Strict mathematical equality among district populations has never been required. Mahan v. Howell, 410 U.S. 315, 322 (1973). Instead, the standard has been referred to as the "goal of substantial equality." Brown, at 845.

In this case, Kentucky's courts ruled that use of the 2002 plan for the 2012 legislative elections was necessary to satisfy the requirements of an interpretation of Section 33 of the Kentucky Constitution. Section 33 requires that as few counties as possible be split among legislative districts. The Kentucky Courts were fully aware of the 2010 Census data when they ordered that the 2002 maps be used. The Kentucky Courts were fully aware that the General Assembly had devised and enacted a redistricting plan that created legislative districts with much more substantial population equality than the 2002 maps and in fact the Kentucky courts were urged to use those more substantially equal districts until a new redistricting plan could be

enacted.[1] Accordingly, the Kentucky Courts' ordering that the 2002 legislative districts be used in the 2012 legislative elections was unarguably a result of the Kentucky Courts' determination that respecting county boundaries as required under Section 33 of the Kentucky Constitution was a "rational state policy" that justified greater population variance in the districts used for the 2012 elections. As such, under current jurisprudence, the use of the 2002 legislative districts is not violative of the Fourteenth Amendment.

### III.     PLAINTIFFS HAVE NO STANDING TO BRING THIS ACTION

Article III of the U.S. Constitution provides that parties seeking federal court jurisdiction must allege an actual case or controversy, and must have sustained or be in immediate danger of sustaining some direct injury that is real and immediate and not "conjectural" or "hypothetical." Miyazawa v. City of Cincinnati, 825 F. Supp. 816, 818 (S.D. Ohio 1993), aff'd, 45 F.3d 126 (6th Cir. 1995).

The Plaintiffs want to rush the process of redistricting, and allege that such haste is justified due to their erroneous and legally unsupported allegation that redistricting must take place prior to November 4, 2013.  However, no court has mandated that the General Assembly undertake redistricting on a particular timetable in Kentucky, and Plaintiffs cite no case where a Kentucky state or federal court has ruled that the redistricting must occur before the residency date for the legislature. While potential candidates who meet candidacy requirements certainly have the right to be candidates for legislative office, potential candidates do not have the right to be a candidate

---

[1] The 2012 General Assembly enacted a legislative redistricting law, 2012 Regular Session House Bill 1, that the Governor signed into law on January 20, 2012.  2012 Ky. Acts Ch. 1; http://www.lrc.ky.gov/Statrev/ACTS2012RS/0001.pdf. The Legislative Record provides the daily summary of the actions of the General Assembly, and may be judicially noted just as the Act above. 2012 House Bill 1's "Population Summary Report" for the enacted version, which is provided to members and the public, may also be judicially noted. http://www.lrc.ky.gov/record/12RS/HB1/RS.pdf. The Population Summary Report shows that the overall range of the House Districts under 2012 HB 1 was 10%, and the overall range of the Senate Districts was 9.84%. Id. The law used the 2010 Census numbers. KRS 5.010, as amended by 2012 Ky. Acts. Ch. 1.

for legislative office in a particular district. Accordingly, although the window for filing to be a candidate for legislative office is currently set to open on November 16, 2013, there is no requirement that a legislative redistricting plan be in place on that date.

The General Assembly has plenary power over elections deadlines and responsibilities of elections officers, under Section 153 of the Kentucky Constitution. Plaintiffs have no "right" to accelerate the legislative redistricting process. The November 4, 2013 alleged "deadline" is a false flag hoisted by the Plaintiffs. Indeed, courts have held that legislatures, not federal courts, are the proper forums to weigh particular interests, political judgments and arrive at decisions. Perry v. Perez, 132 S.Ct. 934, 941 (2012). The County Clerk alleges that he will have to work to meet any possibly changed deadlines, but ministerial election officers must execute the laws as they are passed as part of their duties. Potter v. Campbell, 160 S.W. 763 (Ky. 1913). It is speculative, as a new law may be passed that may alleviate any such concerns, as has been done in the past.

There is no allegation of injury with respect to the State Courts' decision to run the 2012 elections under the 2002 law. Plaintiffs agree that they have no damages. Kentucky's courts held that the 2012 elections should operate using 2002 redistricting, in direct contravention of the laws passed by the General Assembly. The only "injury" that Plaintiffs attempt to describe is amorphous, alleging "confusion" and "not receiving enough tax moneys." Brown Plaintiffs' Response to Defendant Grimes' First Set of Interrogatories, page 6 (Exhibit 1). This is not sufficient "injury" to confer standing to bring this action.

IV. **PLAINTIFFS DO NOT MEET THE STANDARD FOR DECLARATORY JUDGMENT OR INJUNCTIVE RELIEF**

The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995). Courts look at four factors in declaratory judgment actions:

(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata;*" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

Grand Trunk W. R.R. Co. v. Consol. Rail Corp., 746 F.2d 323, 326 (6th Cir.1984). Additionally, no declaratory relief is available where it impinges on the legitimate legislative activities of a sovereign legislative body or its members. See Supreme Court of Virginia v. Consumers Union of the United States, 446 U.S. 719, 734 (1980).

This Court's stated goal in this litigation is to ensure that a constitutional redistricting plan is in place prior to the 2014 legislative elections. However, this Court has been unequivocal in stating that it is highly desirable that the plan be the product of the legislative process. A declaratory judgment at this point in this litigation would obviate this goal.  Further, a declaratory action will not settle the controversy over which plan will be passed next, and will serve only to infringe upon the legitimate legislative actions of the General Assembly.

Kentucky's courts have already decided the issue of the constitutionality of using the 2002 legislative districts in light of the 2010 Census data. Kentucky's courts mandated the use of the 2002 legislative districts for the 2012 elections even though those courts had full knowledge

7

of and access to the 2010 Census data. To decide contrary to that result would be to re-adjudicate that dispute and cause friction. There is no basis to do so, as the next legislative elections do not occur until 2014. The General Assembly can either redistrict in 2013 or 2014, this is the remedy, and there is simply no need for this declaration. There is a reasonably conceived plan for periodic readjustment of legislative representation in Kentucky, and that legislative process is ongoing.

Plaintiffs also do not meet the injunctive relief standard. No injunctive relief may be given as against a legislative body, because of legislative immunity, nor against legislators. See Supreme Court of Virginia v. Consumers Union of the United States, 446 U.S. 719, 734 (1980). The Sixth Circuit recognizes that absolute immunity extends to "legislators and their aides when performing acts of a legislative nature." Cullinan v. Abramson, 128 F.3d 301, 308 (6th Cir. 1997), citing Gravel v. United States, 408 U.S. 606 (1972). However, Plaintiffs wish for the injunctive relief to apply to statutes enacted by the General Assembly in 2002, and ask that they not be used in the future. However, "as the Court concluded in Younger, 'the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it,' especially absent "any showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." Fieger v. Thomas, 74 F.3d 740, 750 (6th Cir. 1996) (quoting Younger v. Harris, 401 U.S. 37 (1971).

### V. RES JUDICATA MANDATES AGAINST A FINDING OF UNCONSTITUTIONALITY IN A DECLARATORY JUDGMENT ACTION

This issue of the whether the use of the 2002 legislative districts is unconstitutional has been addressed by the Kentucky Supreme Court[2] and under the doctrine of res judicata[3] those issues are not properly subject to relitigation.[4] If this Court wishes to rule that the decision of the Kentucky Supreme Court is not subject to the strictures of res judicata as to all the issues presented in the state court, then this Court should also consider whether the Kentucky Supreme Court was incorrect under federal law in "overruling" prior federal rulings, and abridging state separation of powers, to mandate a strict mathematical standard that begins redistricting at the outer limits of the Equal Protection Clause by placing primacy on county integrity.

This Court has not to this point been asked to rule upon the constitutionality of Section 33 of the Kentucky Constitution, but could hold that the Supreme Court's rulings in *Fischer II* and *LRC v. Fischer* impermissibly disregarded federal court rulings, in violation of the Supremacy Clause. The Eastern District for Kentucky has previously addressed that issue. In *Hensley v. Wood*, 329 F.Supp. 787, 789 (1971), the Court noted that a prior Eastern District court, in an unpublished opinion, found that the Section 33 prohibition on county splitting was

---

[2] Legislative Research Commission v. Fischer, 366 S.W.3d 905 (Ky. 2012).

[3] Res judicata prevents a party from raising a claim that has already been decided. Four elements are necessary for res judicata to apply: (1) a final judgment; (2) rendered by a court of competent jurisdiction; (3) the parties or those in privity with them must be identical; and (4) the same causes of action. Gustafson v. Johns, 434 F.Supp. 2d 1246 (S.D. Ala. 2006); aff'd, 213 F. App'x 872 (11th Cir. 2007). There was an order by the Supreme Court on February 24, 2012 in the case, which required the holding of the 2012 elections under the previous law, and a subsequent opinion. Legislative Research Commission v. Fischer, supra. 2012 WL 952983 (Order of Kentucky Supreme Court, 2012-SC-091; 2011-SC-092, February 24, 2012); Legislative Research Commission v. Fischer, 366 S.W.3d 905 (Ky. 2012).

[4] Additionally, as this lawsuit sought to join "all the members of the Senate and the House" by virtue of suing the Senate President and the House Speaker, and the LRC, all are therefore parties to this case as well, including the original Plaintiffs in the state court case. The Plaintiffs activate the prohibitions of res judicata and collateral estoppel, and those principles bar this requested relief.

unconstitutional. The *Hensley* court did not discuss this ruling, but did not question it and appears to treat it as the law to be applied.

If this court wishes to make a declaratory judgment, then Senate President Stivers would submit that the General Assembly's 2012 legislation met the equal protection provisions as applied by this Court in Upton and Hensley, and therefore the actions taken by the General Assembly more than comported with the substantial population equality standards of Reynolds.[5] The use of the 2002 legislative districts, even if found unconstitutional under federal law, was the result of the actions of the Kentucky courts, not the General Assembly.

### VI. FINDING THE USE OF THE 2002 DISTRICTS UNCONSTITUTIONAL WOULD VIOLATE THE ROOKER-FELDMAN DOCTRINE.

Plaintiffs' complaint with respect to the 2012 redistricting arises from the Kentucky Supreme Court order that the 2012 elections be held based on the 2002 law. This is the source of their grievance. However, a party aggrieved by a state-court decision cannot attack this decision collaterally by an independent suit here, essentially "appealing" that decision, under the Rooker-Feldman Doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). A party "aggrieved by a state-court decision cannot appeal that decision to a district court, but must instead petition for a writ of certiorari from the United States Supreme Court." DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). Where the Plaintiffs are alleging that the action taken by the state courts caused their injury, and the injury "resulted from the state court judgment", this doctrine "precludes federal court jurisdiction where the claim is a specific grievance that the law was invalidly-even unconstitutionally-applied." Id.   The Plaintiffs to this action are in privity with the Plaintiffs in

---

[5] *See* Footnote 1, supra.

the Fischer action in 2012 as stated above and are bound by its result. Com. ex rel. Dummit v. Jefferson County, 189 S.W.2d 604, 606 (1945); citing Tait v. Western Maryland Railway Co., 289 U.S. 620 (1933).

### VII. PLAINTIFFS' CLAIMS BASED ON THE 2012 REDISTRICTING ARE BARRED BY THE STATUTE OF LIMITATIONS

An action for declaration of rights for an alleged violation of constitutional rights is subject to a one-year statute of limitations. Hill v. Thompson, 297 S.W.3d 892 (Ky.App. 2009). "Section 1983 actions in Kentucky are limited by the one-year statute of limitations found in section 413.140(1)(a)." Collard v. Kentucky Bd. of Nursing, 896 F.2d 179, 182 (6th Cir.1990). The statute of limitations "begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." Id. at 183, citing Sevier v. Turner, 742 F.2d 262, 272 (6th Cir.1984). Plaintiffs state in their Complaint that they are aggrieved by the passage of 2012 Regular Session House Bill 1, which was passed by the General Assembly and then signed into law on January 20, 2012, and the subsequent use by the Kentucky courts of the previous law from 2002. 2012 Ky.Acts Chapter 1. The Kentucky Supreme Court in an order dated February 24, 2012, ordered that the 2012 legislative elections take place under the 2002 law, based on a finding that it violated Section 33. Legislative Research Commission v. Fischer, 2012 WL 952983 (Ky. February 24, 2012) (Order of Kentucky Supreme Court, 2012-SC-091; 2011-SC-092, February 24, 2012). Therefore, any possible claims that Plaintiffs have for any action relating to the passage of 2012 Regular Session House Bill 1, which became law on January 20, 2012, is barred by the statute of limitations. Since the last act of the General Assembly was passage of this law on January 20, 2012, then the one-year statute of limitations began to run then. Even if this Court gives Plaintiffs the benefit of the doubt and

11

considers the statute of limitations as running on February 24, 2012, which is the date that the Kentucky Supreme Court issued its Order mandating that 2012 elections had to be held using the 2002 law, when it enjoined the implementations of the new legislative districts for the 2012 elections, the statute of limitations on their damages claim, even assuming there is one, ran on February 24, 2013. Obviously, Plaintiffs knew of the actions of the Kentucky Supreme Court in mandating that candidates run under the old districts. The statute of limitations has run.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' Summary Judgment Motion.


Dated: July 26, 2013                                    Respectfully submitted,

                                                        */s/ Stanton L. Cave*
                                                        _____
                                                        Stanton L. Cave, Esq.
                                                        LAW OFFICE OF STAN CAVE
                                                        P.O. Box 910457
                                                        Lexington, KY  40591-0457
                                                        Telephone:  (859) 309-3000
                                                        Facsimile:   (859) 309-3001
                                                        Email:  stan.cave@insightbb.com

                                                        *Special General Counsel to Robert Stivers in his Official Capacity as President of the Kentucky Senate*


                                                        */s/ Jessica A. Burke*
                                                        _____
                                                        Jessica A. Burke, Esq.
                                                        Deputy General Counsel
                                                        Kentucky Senate
                                                        Office of the President
                                                        Room 265 Capitol Annex
                                                        Frankfort, Kentucky 40601
                                                        Telephone:     (502) 564-3120
                                                        Email: jessica.burke@lrc.ky.gov

*Counsel for Defendant Robert Stivers in his Official Capacity as President of the Kentucky Senate*

## CERTIFICATE OF SERVICE

    I hereby certify that on July 26, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

/s/ *Jessica A. Burke*
_____
Jessica A. Burke, Esq.
Deputy General Counsel
Kentucky Senate
Office of the President
Room 265 Capitol Annex
Frankfort, Kentucky 40601
Telephone:    (502) 564-3120
Email: jessica.burke@lrc.ky.gov