## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, *et al.*, | |
| Plaintiffs, | Case No. 2:13cv00068 |
| v. | **Electronically filed** |
| COMMONWEALTH OF KY, *et al.*, | |
| Defendants. | |
| MARTIN HERBERT, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 3:13cv00025 |
| KENTUCKY STATE BOARD OF ELECTIONS, *et al.*, | |
| Defendants. | |

## REPLY IN SUPPORT OF *BROWN* PLAINTIFFS' FRCP 41(a)(2) MOTIONS

The *Brown* Plantiffs, by and through counsel, reply as follows in support of their FRCP 41(a)(2) Motions [DE#64; DE#69] to Dismiss the President of the Senate/Kentucky Senate Robert Stivers ("Stivers"), the Speaker of the Kentucky House of Representatives/Kentucky House ("Stumbo"), the Kentucky Legislative Research Commission ("LRC") (collectively the "Legislative Defendants") and certain claims involving money damages (which were already withdrawn), and state constitutional claims.

### 1.  Dismissal of the Money Damage Claims, without prejudice

The *Brown* Plaintiffs have already withdrawn the claims for money damages, without prejudice, as has been previously noted in various Orders of this Court.  *See* the Order denying Speaker Stumbo's Motion to Stay, [DE#48], at p. 3, fn. 1 ("At the hearing, the constitutionality of the 2012 elections seemed to be a point of concern for the Plaintiffs. However, the *Brown* Plaintiffs have now withdrawn their claim for damages based on past constitutional violations."); *See also* the Order of Consolidation finding that the cases brought by both the *Brown* Plaintiffs and *Herbert* Plaintiffs present "common questions of law and fact" and noting that, "[t]he dismissal by the *Brown* plaintiffs of their claims for damages during oral argument on Friday, June 21, 2013, brings the cases further into alignment."  (Order, [DE#47], at pp. 1-2.).  The transcript from the June 21, 2013 scheduling conference was likewise clear in this regard.  Tr. Hearing, June 21, 2013, [DE#50], pp. 34; 36-37). By their FRCP 41(a)(2) Motion, Plaintiffs sought to formally confirm in a distinct order from the Court what already occurred.  Plaintiffs defer to this Court with respect to whether such clarification is needed.

### 2.  Dismissal of the Legislative Defendants without Prejudice is Appropriate

FRCP 41(a)(2) provides in relevant part that:

> an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

In terms of whether to dismiss the matter without prejudice, the request hinges on "whether a 'without prejudice' dismissal would cause [Defendant's] to suffer plain legal prejudice." *Grover by Grover v. Eli Lilly and Co.*, 33 F.3d 716 (6th Cir. 1994)  Importantly, "[t]he mere prospect of having to face a second lawsuit does not satisfy this standard." *Id.*  The factors in assessing

whether to grant a FRCP 41(a)(2) motion to dismiss without prejudice are: (1) the defendant's effort and expense of preparation for trial; (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action; (3) insufficient explanation for the need to take a dismissal; and (4) whether a motion for summary judgment has been filed by the defendant." *Id.* at 718.

The *Grover* case did not pertain to dismissal of a case on legislative or Eleventh Amendment immunity grounds. Instead, it dealt with litigation that had been pending for five years, including certification of a legal question to the Ohio Supreme Court, which plaintiffs in that case recognized was dispositive. Only after the certified question came back adverse to the plaintiffs, did they attempt dismissal without prejudice. That is certainly not the case here. It is early in this litigation, and there is no legal prejudice to the Legislative Defendants from dismissal without prejudice.

Context is important: the *Brown* matter was filed April 26, 2013. [DE#1]. The LRC and Speaker Stumbo answered May 20, 2013. [DE#16; DE#17]. President Stivers answered June 10, 2013. [DE#28]. The FRCP 41(a)(2) were filed July 11 and July 12, 2013. [DE#64; DE#69]. At the request of the Legislative Defendants, this Court postponed preparations for trial, including final discovery, until after the special legislative session in order to allow the General Assembly opportunity to perform its Constitutional duty. [DE#49]. The Legislative Defendants argue that they have incurred expenses in answering the complaint, attending a scheduling conference, responding to initial discovery requests, and filing motions. [DE#73' DE#74; DE#75]. However, this contention is belied by the fact that they ***want*** to be in this litigation. *See* Tr. Proceedings, p. 64 (Speaker Stumbo prepared to intervene in *Herbert* to seek a stay); *see also* Stivers Opposition to FRCP 41(a)(2),[DE#74], p.2 ("Senate President Stivers furthermore has a

sincere interest in being able to continue to participate in any litigation"); *and see* LRC's Opposition to FRCP 41(a)(2), [DE#73-1], p.4 ("the LRC wishes to remain in this action for the present time for the limited purpose of bringing … matters to the Court's attention").  It is without question that these parties would have sought to intervene had they not been joined.[1] Aside from the fact that the Legislative Defendants want to be parties to this suit, invariably answers will almost always have been filed when a FRCP 41(a)(2) motion is brought.  Were it otherwise, *i.e.*, had Defendants not answered, Plaintiffs could dismiss the case unilaterally under FRCP 41(a)(1).  Approximately one month had elapsed since the filing of President Stivers Answer, which is extremely early in the litigation.  Furthermore, all of the costs or expenses incurred insofar as discovery is concerned are directly attributable to these same Legislative Defendants refusing to concede mal-apportionment.  The Legislative Defendants certainly could have avoided this.  Plaintiffs had to proceed with discovery as a result.

Nor has there been any excessive delay and lack of diligence on the part of the Plaintiffs in prosecuting the action – Plaintiffs propounded discovery within five days of this Court's scheduling order, and responded to discovery within a week of it being propounded upon them. Furthermore, the Legislative Defendants have asserted Eleventh Amendment and Legislative Immunity.  As a consequence, the Legislative Defendants should be dismissed as parties.  It also

---

[1] Intervention generally contemplates that the proposed intervenor will align itself either as a plaintiff or as a defendant. *See, e.g. Hubner v. Schoonmaker*, 1990 U.S. Dist. LEXIS 13035, 1990 WL 149207, at 7 (E.D.Pa.); *Kamerman v. Steinberg*, 681 F. Supp. 206, 211 (S.D.N.Y. 1988).  Accordingly, intervention requires that the intervenor present a "claim or defense," see Fed. R. Civ. P. 24(c), related to the existing litigation, which the intervenor wishes to assert as part of the existing litigation rather than in a separate action, *see Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) ("The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved.") (*citing Reich v. Webb*, 336 F.2d 153, 160 (9th Cir.1964), cert. denied, 380 U.S. 915, 13 L. Ed. 2d 800, 85 S. Ct. 890 (1965)).  Specifically, Rule 24(c) requires that all motions to intervene "shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought."  Given that Legislative Defendants have asserted an immunity defense, they should be dismissed as a consequence of assertion of that defense, and should not be permitted to later enter the case and participate.

remains true that, although the LRC has filed a Motion to Dismiss, no summary judgment motion was filed by any of the Legislative Defendants. Thus, under the factors outlined in Grover, dismissal without prejudice is appropriate. 33 F.3d 716.

These immunity questions go to the heart of this Court's continued jurisdiction over these Defendants. Eleventh Amendment immunity, unless waived, is a limitation on this Court's subject matter jurisdiction. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381 (1998). The same is true for legislative immunity. *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23 (D.DC. 2001). Any dismissals on subject matter jurisdictional grounds are dismissals without prejudice. *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005) (dismissal under subject matter jurisdictional grounds not an adjudication on the merits and therefore without prejudice); *B.J. Alan Co. v. United Parcel Service*, 1991 U.S. App. LEXIS 2975 (6th Cir. 1991) (same); *Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (same). The Legislative Defendants suffer no legal prejudice, because the grounds upon which their dismissal is based are not adjudications on the merits, and therefore would be without prejudice in any event.

Contrary to the arguments of the Legislative Defendants, dismissing the Legislative Defendants would not result in the "loss of an absolute legal defense," such as a statute of limitations, at play here.[2] The only defenses that the Legislative Defendants raise that have merit

---

[2] The *Brown* Plaintiffs recognize that the LRC raised a statute of limitations defense. That defense is devoid of merit. Plaintiffs' claims seek a declaration that the 2002 maps are now unconstitutionally mal-apportioned. And that Equal Protection claim is based upon the continued use of the mal-apportioned districts — a violation that renews itself each time an election is held. *See Blackmoon v. Charles Mix County*, 386 F. Supp. 2d 1108 (D. SD 2005); Furthermore, there is a generally recognized principle that statute of limitations that are ordinarily applicable to a legal right do not apply to an equitable remedy — in this case injunctive and declaratory relief. *Environmental Defense Fund, Inc. v. Alexander*, 614 F.2d 474, 478 (5th Cir. 1980); *Equal Employment Opportunity Commission v. Dresser Industries, Inc.*, 668 F.2d 1199, 1201 (11th Cir. 1982). Even assuming *arguendo* that a one year statute of limitations applied to Plaintiffs' claims seeking declaratory relief, those claims accrued when the Plaintiffs could "file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384 (2007). In this case, that occurred when Plaintiffs first suffered vote dilution as a result of the mal-apportioned maps, *i.e.* the May 22, 2012 primaries. The

are Eleventh Amendment and legislative immunity – and, while those defenses can be waived, they apparently have not been since they are being asserted.  These defenses go to the subject matter jurisdiction of this Court, warranting a dismissal *without prejudice*. In effect, the Legislative Defendants seek to assert these immunity defenses, while at the same time seeking to remain in the case.  Or, as the United States Court of Appeals for the Sixth Circuit stated in a similar immunity case in the bankruptcy context: "[the state agency] asks if it can have its cake and eat it, too. We conclude that it cannot."  *In re Hood*, 319 F.3d 755 (6th Cir. 2003).

The Secretary of State and Kentucky State Board of Elections argue that the Legislative Defendants "are directly interested in the subject matter of this litigation and may be necessary parties to the extent any relief ordered by the court might require their participation."  *See* Response, [DE#78], at p.3.  However, under *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), only those parties involved in enforcing the legislation are properly before the Court and necessary for injunctive or declaratory relief.[3]  They include the Governor, as the Chief Executive of the State, as well as his role in oversight, appointment, and removal of the members of the Kentucky State Board of Elections.  Ky. Const. Sec. 69; Ky. Const. Sec. 81; K.R.S. 117.015; K.R.S. 63.080.  Also included are the Secretary of State, as Chief Elections Officer, the members of the Kentucky State Board of Elections, and the Executive Director of the Kentucky State Board of Elections.  K.R.S. 117.015; K.R.S. 117.025.

---

*Brown* Plaintiffs filed suit on April 26, 2013, and the *Herbert* Plaintiffs filed suit on May 10, 2013, both within the one year statute of limitations.

[3] House Speaker Stumbo makes the statement that Plaintiffs made a "blatantly false and ridiculous statement that the Speaker and the House 'are not involved with the implementation of any new lines that may be drawn." [DE#79] at p.2.  The fact is that the Speaker and the House <u>are not involved in the</u> **implementation** of the lines – they are involved in the enactment and drawing of the lines.  The implementation and enforcement falls to the executive branch – in this case the Governor, Secretary of State, the members of the Kentucky Board of Elections, and its Executive Director.

The equities in dismissing the Legislative Defendants also warrant their dismissal. They have raised the immunity defenses and in the next breath request to remain a party. They *cannot have their cake and eat it too. See In re Hood*, 319 F.3d 755 (6th Cir. 2003).[4]

### 3. <u>Dismissal of the Kentucky Constitutional Claims, Without Prejudice, is Appropriate</u>

At present, the same essential facts govern both the federal and state claims. That being so, it would be efficient to have all of the claims adjudicated in the same manner. However, Plaintiffs do recognize that Defendants' assertion of Eleventh Amendment sovereign immunity as to the Kentucky Constitutional questions would pose a problem in doing so. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). Under *Pennhurst*, "federal courts lack[] jurisdiction to enjoin … state institutions and state officials on the basis of … state law." *Id.* at 124-125.[5] The fact of the matter is that the federal forum and federal claims provide sufficient relief to declare the continued usage of the 2002 maps unconstitutional and enjoin their further use for the federal questions, and, unless necessary, Plaintiffs will not be re-asserting their claims in state court.

---

[4] Speaker Stumbo makes a number of other statements that are without support – such as the fact that Plaintiffs are trying to "seize the mapping duties from the elected representatives" or that Plaintiffs seek to "leapfrog" over the legislative process. These statements make for interesting political theater, but have no basis in fact. It is the sincerest desire of Plaintiffs that the General Assembly enact constitutional maps. But, as this Court noted, there is no guarantee they will do so, and this Court must be in a position to act swiftly if they fail to enact any maps or fail to enact constitutional maps. *See* Order Denying Stay, [DE#48].

[5] There is split case law on whether or not declaratory relief is foreclosed by *Pennhurst*. *Allstate Ins. Co. v. Serio*, 261 F.3d 143 (July 23, 2001) (declaratory relief not foreclosed under *Pennhurst*); *George-Khouri Family L.P. v. Ohio Dep't of Liquor Co.*, 2005 U.S. App. LEXIS 9807 (6th Cir. 2005) (there is no authority that suggests declaratory relief available after *Pennhurst*); *Cotton v. Mansour*, 863 F.2d 1241 (6th Cir. 1988) (declaratory relief possibly available when injunctive relief is not, but it is a matter of discretion for the court); *but see Amick v. Ohio Dep't of Rehab. & Corr.*, 2010 U.S. Dist. LEXIS 134404 (SD Ohio 2010) (declaratory relief barred under *Pennhurst*).

The Legislative Defendants argue that this results in claim splitting[6] but this exact approach was acknowledged to be the appropriate approach in *Pennhurst*:

> [i]t may be that applying the Eleventh Amendment to pendent claims results in federal claims being brought in state court, or in bifurcation of claims. That is not uncommon in this area.  Under the abstention doctrine, unclear issues of state law commonly are split off and referred to the state courts. *Id.* at 124.

As the proposed dismissal of state law claims is likewise based on Eleventh Amendment grounds, which involve questions of subject matter jurisdiction, the dismissal should be without prejudice.  *Schacht*, 524 U.S. 381; *Ernst*, 427 F.3d 351 (dismissal under subject matter jurisdictional grounds not an adjudication on the merits and therefore without prejudice).  And, if the Kentucky General Assembly fails to pass a redistricting law, or fails to pass a law that comports with the federal constitution, the federal forum, and claims, provides sufficient relief.  Plaintiffs hope that the General Assembly will pass maps that comply with federal standards, while not doing violence to the Kentucky Constitution.

However, it is possible that the Kentucky General Assembly will enact legislation that comports with the Equal Protection Clause's requirements of "one person, one vote," and other associated standards developed through federal case law, but that otherwise violates the

---

[6] Moreover, putting aside the *Pennhurst* considerations for a moment, Defendants' arguments regarding claim splitting is without merit under Kentucky law.  This rule "limits all causes of action arising out of a single 'transaction' to a single suit rather than proceeding piecemeal in multiple actions." *Watts v. K, S & H*, 957 S.W.2d 233, 235, 44 11 Ky. L. Summary 37 (Ky. 1997).  Put another way, "the actions must both involve the same parties and the "relitigation of the same facts and issues." *Id.* at 237.  The rule is "a subsidiary of the doctrine of res judicata." *Id.* at 235.  The rule is an "equitable one." *Id.*  Furthermore, "even successive suits between the same parties concerning the same instrument were not necessarily forbidden by the rule against splitting causes of action." *Id.* at 237.  Moreover, it does not apply where one cause of action is ripe but another is not, and "the defense cannot be used to cut off a cause of action before it accrues." *Id.*  Here, any state law claims against new maps are not yet ripe; and the actions are different than the claims brought in federal court.  Furthermore, under *Pennhurst*, the claims cannot have been brought in federal court absent a waiver of Eleventh Amendment immunity.

Kentucky Constitution. This potential requires that dismissal be without prejudice on these claims.

As the Court stated in *Cuesnongle v. Ramos*, 835 F.2d 1486 (1st Cir. 1987), "[t]here are two options for a post-*Pennhurst* plaintiff who wishes to bring a claim for injunctive relief against state officials under alternative federal and state theories: either to litigate both federal and state claims in state court, or to bifurcate the litigation so that the state claims are heard in state court and the federal claims are heard in federal court." *Id.* at 1496. The *Ramos* Court continued noting that:

> [i]f the plaintiff wishes the federal court to address the federal claims, bifurcation will be the only option. In that circumstance, the federal cause of action will be grounded exclusively on federal law, even where state law causes of action might be dispositive. The federal court cannot, after *Pennhurst*, resolve the case on the basis of those state law questions. Therefore, in those cases where it cannot use Pullman abstention, the court must reach the federal constitutional questions, in violation of the Siler principle. *Id.* at 1497.[7]

In *Ramos*, however, the Court held that certification of the question to the state supreme Court avoided the dual jurisdiction problem inherent in *Pennhurst*. *Id.* at 1500, fn12. The Court likewise noted that "the plaintiffs remained free to seek federal relief if the state court declaration proved ineffective in vindicating their rights." *Id.* The court continued: "[c]ertification thus worked in spite of *Pennhurst*. Indeed, in a procedurally similar case in which the only 'relief' obtained was the state's voluntary compliance with the state court's answers to certified questions, we noted that '*Pennhurst* encourages by implication the very certification procedure the district court employed here.'" *Id., citing Exeter-West Greenwich Regional School Dist. v.*

---

[7] Of course, Eleventh Amendment immunity can be waived. *See Pennhurst*, 465 U.S., at 99 ("the Court consistently has held that a State may consent to suit against it in federal court."). Were the Defendants collectively to waive such immunity as to the State Constitutional claim, Plaintiffs would withdraw their FRCP 41(a)(2) Motion as to the dismissal of this claim. But it is clear that, at present, Defendants have no desire or inclination to do so.

*Pontarelli*, 788 F.2d 47, 51 (1st Cir. 1986). The *Ramos* Court noted that it could not envisage the state agency "ignoring the pronouncement of the [state] supreme court" and that such opinion "would be binding on the parties." *Id. See, also, Arizonans for Official English v. Arizona*, 520 U.S. 43, 76-80, 137 L. Ed. 2d 170, 117 S. Ct. 1055 (1997) (one way to avoid an unnecessary federal decision on a question of state law that vitally affects the operation of a state or local public agency is to certify that issue to the state's highest court).

If the General Assembly passes a map that comports with the Eleventh Amendment, but not with the Kentucky Constitution, certification to the Kentucky Supreme Court can be sought. If the Kentucky Supreme Court declares the legislation unconstitutional under Kentucky's Constitution, which is within its power (but not this Court's power), then the redistricting law from the special session (if there is such a law) will be a nullity. *LRC v. Fischer IV*, 366 F.3d at 917 ("House Bill 1 is null and void. The Bill no longer exists and cannot be implemented … [it is] wholly void and ineffective for any purpose … from the time of its enactment."). Dismissal of the state law claims without prejudice would not foreclose certification. Certification would be necessary only if the map enacted by the General Assembly violates the Kentucky Constitution. In that case, certification could clarify whether or not any law passed by the General Assembly is constitutional under the Kentucky Constitution – because – if the answer is that it is not – then the law would be a nullity, and the federal claims, and this Court's imposition of "Plan B" would be necessary.[8] These eventualities are solely in the hands of the Kentucky General Assembly, but Plaintiffs must be left in a position to remedy them.

---

[8] If the General Assembly passes an unconstitutional map under the Kentucky Constitution, this Court certifies the question, and the Kentucky Supreme Court declines the certified question, then Plaintiffs should be allowed to seek a declaration by the Franklin Circuit Court that the maps are unconstitutional under the Kentucky Constitution. If the maps are struck down, again leaving the 2002 maps in place, which violates the Equal Protection Clause, then Plaintiffs may need to return to this Court. If that were the case, a stay of this matter would likely be sought.

4.  **Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that their FRCP 41(a)(2)

Motions [DE#64; DE#69] to Dismiss the President of the Senate/Kentucky Senate Robert Stivers

("Stivers"), the Speaker of the Kentucky House of Representatives/Kentucky House ("Stumbo"),

the Kentucky Legislative Research Commission ("LRC") (collectively the "Legislative

Defendants") and certain claims involving money damages (which were already withdrawn), and

state constitutional claims be granted without prejudice.

Respectfully Submitted,


/s/Christopher D. Wiest
Christopher D. Wiest (KBA 90725)
Chris Wiest, AAL, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859/486-6850 (v)
859/495-0803 (f)
513/257-1895 (c)
chriswiestlaw@yahoo.com


/s/Richard A. Brueggemann
Richard A. Brueggemann (90619)
E. Jason Atkins (88044)
Hemmer DeFrank, PLLC
250 Grandview Dr.
Fort Mitchell, KY 41017
859/578-3855 (v)
859/578-3869 (f)
rbrueggemann@hemmerlaw.com

*Counsel for Plaintiffs in Brown, et.*
*al. v. Commonwealth, et. al.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have served a copy of the foregoing upon counsel for Defendants and

Plaintiffs in the consolidated *Herbert* case, this 1st day of August, 2013, via the Court's CM/ECF

system.

_____/s/Christopher Wiest_____