UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | | |
|---|---|---|
| **KENNY BROWN, individually and in his official capacity as the Boone County Clerk, et al.,** | ) ) ) ) | **ELECTRONICALLY FILED** |
| Plaintiffs, | ) | Civil No. 2:13-cv-00068 |
| v. | ) | DJB-GFVT-WOB |
| **THE COMMONWEALTH OF KENTUCKY, et al.,** | ) ) ) ) | |
| Defendants. | ) | |
| **MARTIN HERBERT, et al.** | ) ) ) | |
| Plaintiffs, | ) | Civil No. 3:13-cv-00025 |
| v. | ) | DJB-GFVT-WOB |
| **KENTUCKY STATE BOARD OF ELECTIONS, et al.,** | ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BROWN PLAINTIFFS' 2012 ELECTIONS CLAIMS AGAINST THE LEGISLATIVE RESEARCH COMMISSION**

Comes the Legislative Research Commission ("LRC") by counsel and states for its Reply to the Brown Plaintiffs' Response to LRC's Motion to Dismiss:

The Brown Plaintiffs do not provide any substantive law to overcome LRC's Motion. Instead, they state they are not asking this Court for relief for the 2012 elections, even though the claims are listed in their Complaint, and they still allege, in discovery, "damage as a result of having to undergo an election with unconstitutional boundaries". They assert that they are not

1

seeking damages now, or a declaratory judgment, even though the Amended Complaint that they have asked for leave of court to file still alleges there is "liability" under 42 U.S.C. 1983. Their open-ended demand for relief in the Amended Complaint, belies the assertion in their Response that they have "voluntarily dismissed these claims." They assert alleged transgressions and alleged "unconstitutionality" of the 2014 elections in the Complaint, and Amended Complaint. Since the Amended Complaint has not yet been filed by leave of the Court, the original Complaint states that they are entitled to declaratory relief based on the use of the 2002 maps for the 2012 election, and attorneys fees. However, the judicial admission that there is no merit to any assertions, and the Plaintiffs' representations that they are not seeking any remedies for the 2012 elections should be the basis of a dismissal of these claims with prejudice.

Plaintiffs ask the court to deny LRC the ability to have those unmeritorious claims dismissed with prejudice. This is necessary for finality and is only fair, and required by the law. They stated no cognizable claims in their original complaint with respect to the 2012 elections. Despite their assertions that they are not alleging anything with respect to the 2012 elections now, their Amended Complaint reasserts the same underlying conclusions as "fact", and gives an open-ended invitation to this Court to find some type of relief on an alleged 42 U.S.C. 1983 claim, due to the wording of the claim for relief, "E" on the final page of their Amended Complaint.

Having made allegations that the entire legislative process and the election was somehow held "unconstitutionally", and Defendants are supposedly "abus[ing] the authority of their respective offices," and having alleged that there are 42 U.S.C. 1983 claims against the LRC based on the 2012 elections, Plaintiffs assert that, no, they really are not in fact alleging anything other than future relief going forward on the other issues in this case. If that is so, then they will

not be harmed by a definitive dismissal that sets this out under the clearly applicable law set forth in LRC's Motion. Plaintiffs cite no caselaw in response to LRC's motion. Also, Plaintiffs state that the LRC is "without exposure to declaratory or injunctive relief", if that is the case, these claims should be dismissed with prejudice by this Court.

> I. **THE PLAINTIFFS MISTAKE LOGICAL ALTERNATIVE ARGUMENT AND "IF-THEN" STATEMENTS FOR CONCESSIONS**

Plaintiffs appear to be confused by "if-then" statements. In other words, *if* the Plaintiffs are attempting to dredge up the issues relating to the use of the 2002 law for the 2012 elections, as directed by the Kentucky Supreme Court, *then* these claims are barred by res judicata, Rooker-Feldman, statute of limitations and all the other arguments asserted in LRC's motion, and they must be dismissed with prejudice. In the alternative, however, *if* the Plaintiffs are either: (1) allowed to rehash the finality of that state court action by making it a basis for their claims, or (2) allowed to press for relief going forward based upon the conclusion that there was some "improper" action based on the 2012 elections, *then* LRC would argue the basis of that judgment that allowed the 2002 law to be used, on Equal Protection grounds, i.e. the law passed in 2012, House Bill 1, was constitutional on Equal Protection grounds. This of course leads to the uncontested result that the 2012 law, 2012 House Bill 1, is constitutional on federal Equal Protection grounds. The result would be the same, as the General Assembly acted in a manner consistent with federal Constitutional law to pass a redistricting bill in 2012 that met Equal Protection. In either case, the applicable law requires dismissal for failure to state a claim, under all the law cited in the LRC's Memorandum and not contravened in substance with any citations to caselaw from the Brown Plaintiffs.

> II. **THE BROWN PLAINTIFFS HAVE STATED NO CASELAW IN RESPONSE TO THE MOTION TO DISMISS THE CLAIMS**

3

Bereft of any caselaw to cite in response to the LRC's Motion, Plaintiffs choose to instead attack the LRC for asserting the applicable law. The footnote on page 8 of the Response contains all the response given, with no caselaw. Additionally, the LRC has a right to request dismissal of the claims on the basis of the applicable caselaw. The passage of laws, or the failure to pass a law is not a cognizable claim. Clearly, decisions to pass or not to pass legislation are legislative acts. <u>Yeldell v. Cooper Green Hosp.</u>, 956 F.2d 1056, 1063 (11th Cir. 1992). With respect to legislative acts, absolute immunity bars both injunctive and monetary relief, as well as declaratory relief, on the issues of the 2012 elections, and there should be a dismissal with prejudice.

Plaintiffs complain because the LRC properly asserts the correct legal standards governing the past claims about the 2012 elections. However, they cite no caselaw in support. Plaintiffs cite only <u>In Re Hood</u>, 319 F.3d 755 (6th Cir. 2003). However, this case only applies a standard rule about cases in bankruptcy. This exception does not eat up the rule of 11th Amendment immunity. The U.S. Supreme Court, in the <u>Hood</u> case, on appeal from the 6th Circuit, determined that bankruptcy matters, which involve a specific *in rem* jurisdiction premised on a state's status as a "creditor", are of a different type than other actions, such that the Congress has been deemed to waive 11th Amendment immunity to the limited extent of allowing states to be treated as other creditors would be treated. In bankruptcy, " 'the court's jurisdiction is premised on the debtor and his estate, and not on the creditors.' <u>Tennessee Student Assistance Commission v. Hood</u>, 541 U.S. 440, 447. As such, its exercise does not, in the usual case, interfere with state sovereignty even when States' interests are affected." <u>Central Virginia Community College v. Katz</u>, 546 U.S. 356, 370, (2006). Additionally, a separate provision of the U.S. Constitution, Article I, § 8, cl. 4,

4

provides that Congress shall have the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States. Id. at 359. As explained later:

> The United States Supreme Court recently carved out an exception to the general rule that Congress must expressly abrogate states' sovereign immunity.

St. Charles County, Mo. v. Wisconsin, 447 F.3d 1055, 1058 (8th Cir. 2006); citing Central Virginia.

Obviously, a Motion to Dismiss on the basis of immunity does not waive immunity. Otherwise, it would serve no purpose. LRC did not make itself a party to this suit, it was named as one, so it did not "voluntarily invoke the court's jurisdiction." The Lapides v. Board of Regents case cited by Plaintiffs only applies where the state has affirmatively removed a case to federal court, so it is inapposite. 535 U.S. 613 (2002). Additionally, Eleventh Amendment defenses to particular claims may be raised at any point, as recognized by the court in a case cited by Plaintiffs, even up to and including appeal, "because the immunity issue 'sufficiently partakes of the nature of a jurisdictional bar,' Edelman v. Jordan, 415 U.S. at 678 it is an issue that may be raised at any time during the pendency of the case." College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 131 F.3d 353, 365 (3d Cir. 1997) aff'd, 527 U.S. 666 (1999).

As stated by a member of this panel, the Eleventh Amendment bars such claims:

> While '§ 1983 provides a federal forum to remedy many deprivations of civil liberties, ... it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits.' Will v. Mich. Dept. of State Police, 491 U.S. 58, 66 (1989). Because KSP is a subdivision of the state, it is also protected by the Eleventh Amendment and Broskys' federal claims against Farris in his official capacity are dismissed.

Brosky v. Farris, CIV. 11-308-GFVT, 2012 WL 4601283 (E.D. Ky. Sept. 28, 2012). As stated by the Western District of Kentucky:

> Under the Eleventh Amendment to the United States Constitution, this court retains no jurisdiction over claims asserted directly against the Commonwealth or its instrumentalities for monetary remedies.

Yoder v. University of Louisville, 3:09-CV-00205, 2012 WL 1078819 (W.D. Ky. Mar. 30, 2012) aff'd, 12-5354, 2013 WL 1976515 (6th Cir. May 15, 2013).  Also, this case involves discrete claims, which have been bifurcated by this Court. These claims fail as a matter of federal subject matter jurisdiction, as noted in the LRC's motion.

Additionally, legislative immunity would apply to claims for declaratory, injunctive, and prospective relief, relating to the 2012 elections claims, is not waived even if it is not asserted in an answer, and is not limited to being asserted as an affirmative defense, and is a functional federal common law immunity that protects the legislative acts, regardless of who performs them.  Scott v. Taylor, 405 F.3d 1251, 1253-54 (11th Cir. 2005), citing Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 732 (1980).  Additionally, participation in litigation, including submission of information to the court such as an affidavit, does not waive the legislative privilege or immunity.  Greenburg v. Collier, 482 F. Supp. 200, 203 (E.D. Va. 1979).

### III. THE CLAIMS WITH RESPECT TO THE 2012 ELECTIONS SHOULD BE DISMISSED WITH PREJUDICE

A voluntary renunciation of claims, while perhaps being "without prejudice" to the Plaintiff, still has significant legal prejudice to the LRC.  Even if those claims were "voluntarily" withdrawn, upon the Court's apparent recognition that they were baseless and without merit, it is clear that Plaintiffs attempt to bootstrap these "claims" into an argument that the Court must act now, or to continue to conclusorily allege damage, or to seek damages or attorneys fees against the state treasury. A dismissal "without prejudice" would create significant legal prejudice for the LRC.  This should not be permitted, especially when the claims as stated were barred from

6

the outset. Also, the Amended Complaint that the Plaintiffs filed on July 12, 2013 still has statements indicating that they have not dropped this idea of "liability" for the 2012 elections.

If the Plaintiffs are arguing that "these issues are moot many times over," then they should have no problem in agreeing that the elections held in 2012 were dispositive of that issue. The mootness occurred by operation of law. It is necessary to the finality of the electoral process that elections, once decided, be certain. The Kroll v. Incline Village case Plaintiffs cite is inapposite, as the Plaintiffs in that case also omitted the dropped claims from their Amended Complaint, which is not the case here, as seen below. 598 F.Supp. 2d 1118 (D. Nev. 2002).

Also, it would be unfair:

> At the point when the law clearly dictates a result for the defendant, it is unfair to subject him to continued exposure to potential liability by dismissing the case without prejudice.

Grover by Grover v. Eli Lilly and Co., 33 F.3d 716, 719 (6th Cir. 1994). This Court clearly realized that the claims, such as declaratory judgment and damages claims, were completely barred by the law, and the law "dictated a result for the defendant." Although this Court stated it was without prejudice at that point, it is apparent that the Court realized that there was no merit to Plaintiffs' assertions. Under the Federal Civil Rules, it would not have dismissed the claims with prejudice at that point, without notice and opportunity for the Plaintiffs to respond. This is that notice and opportunity. In the Crosby v. Bowater Inc. case, cited by Plaintiffs, the Court found, as this court should find, that the Plaintiff never had a justiciable claim under the statute under which he sued, thus "federal subject matter jurisdiction is lacking in such a situation." Crosby v. Bowater Inc. Retirement Plan, 382 F.3d 587, 597 (6th Cir. 2004).

The Plaintiffs fail to give the entire exchange with the Court as to the question of liability for damages, or the concept of declaratory relief, in the Court's hearing of June 21, 2013. The Court was clear that there was no cognizable claim for damages or declaratory relief, under the

7

law. Even though the Plaintiffs cite the specific portion of the hearing in which the Court indicated that it would dismiss the claims if the Plaintiffs were so requesting it, Plaintiffs still assert that the "2012 elections were unconstitutional" and that they intended to assert "liability." Plaintiffs stated that a declaratory judgment was sought on that issue, despite the Response's claim that the only claim that Plaintiffs made in relation to the 2012 election was for money damages and "not with declaratory and prospective relief":

> We think that at a minimum we are entitled to declaratory judgment that the 2012 elections were unconstitutional.

Christopher Wiest statement, page 35, Transcript of Scheduling Hearing, June 21, 2013 (Exhibit 1). Even after Plaintiffs' counsel stated that he was withdrawing the damages claim, he still stated that Plaintiffs wanted a declaration as to liability. Although he somewhat backed off after the Court pointed out there would be immunity, a dismissal with prejudice is still warranted under the uncontested weight of the law as cited in LRC's Motion, the substance of which Plaintiffs have chosen not to address. The entire exchange follows:

> THE HONORABLE JUDGE VAN TATENHOVE: One of the things, my question was actually very specific, it was about '14 as I recall. You are looking for damages for what occurred in 2012.
>
> MR. WIEST: Or at least, Your Honor, *a declaration that was an unconstitutional act*. I don't know that -- you know, we are willing to treat --
>
> THE HONORABLE JUDGE VAN TATENHOVE: Well, hasn't the Supreme Court of Kentucky already addressed that issue?
>
> MR. WIEST: Well, Your Honor, they – they addressed the 2012 maps, but they didn't address – in fact, the Supreme Court of Kentucky ordered essentially that an unconstitutional map from 2002 be used in the 2014 election. I mean, I think that's a fundamental problem, and we cannot have this 2000 map -- 2002 map used again in 2014.
>
> *We think that at a minimum we are entitled to declaratory judgment that the 2012 elections were unconstitutional.*

8

We are more, frankly, concerned, my clients are more concerned with the 2014 election process. The past damages or anything else, we are willing -- in fact we indicated in a filing late yesterday that we are willing, frankly, to forego certain claims because we really want to make sure that -- that what this -- what this action is all about is conducting 2014 elections in a timely and orderly manner with constitutional maps. We would prefer the defendants perform their constitutional duty, enact constitutional maps. But we don't have a lot of faith that they will necessarily do that, and we feel like we need to be in a position and this court needs to be in a position to act in the event that they fail to do that.

THE HONORABLE JUDGE BERTELSMAN: So you want to do discovery -- you want to do discovery between now and then.

MR. WIEST: Your Honor, we may be able to resolve most of those issues by stipulation. I mean, I don't --

THE HONORABLE JUDGE BERTELSMAN: If they can't, what do you want to do?

MR. WIEST: Well, we are going to need to conduct some discovery on those issues.

THE HONORABLE JUDGE BERTELSMAN: Again, to damages, I don't understand that claim because this is a Federal Court. We are precluded by the Eleventh Amendment from awarding damages against the state. As far as damages against the judges of the Supreme Court of Kentucky, they are protected by absolute judicial immunity. As far as damages against the legislators as individuals, they are protected by absolute legislative immunity. I don't really see anybody left for you to get damages from.

MR. WIEST: Well, Your Honor --

THE HONORABLE JUDGE BERTELSMAN: That's not to say attorneys fees can't be awarded.

MR. WIEST: Right, but --

THE HONORABLE JUDGE BERTELSMAN: But I don't see anybody talking about liability and damages. I don't see any liability and damages.

MR. WIEST: Well, Your Honor, there are the individual Board of Elections members who conducted that election and administered that election and --

THE HONORABLE JUDGE BERTELSMAN: They would probably have qualified immunity of some sort.

MR. WIEST: And we recognize that there are some challenges to that. That's, frankly, one of the reasons why we are willing to forego or withdraw that, and we did submit an order to that effect.

THE HONORABLE JUDGE BERTELSMAN: Yeah, I saw that, so why are we talking about --

MR. WIEST: Your Honor, we are willing to withdraw it, and that's what I am telling you.

THE HONORABLE JUDGE BERTELSMAN: You are willing to withdraw it right now, let's strike it.

MR. WIEST: Absolutely.

THE HONORABLE JUDGE BERTELSMAN: That's a claim without prejudice as you request.

MR. WIEST: Thank you, Your Honor, yes, we would.

THE HONORABLE JUDGE BERTELSMAN: That gets rid of that issue. Now, you would like us to allow you to do some discovery pending the special session; is that correct?

MR. WIEST: That, Your Honor, and obviously that an entry be put on as to liability, and I think with those two issues --

THE HONORABLE JUDGE BERTELSMAN: When you say liability, you mean the declaration that the 2002's are unconstitutional.

MR. WIEST: That the 2002 maps are unconstitutional, that's correct.

THE HONORABLE JUDGE BERTELSMAN: That's --well, I don't think there has been any liability as to declarations, but I see what you mean. You just admitted it, so we get rid of that issue.

MR. WIEST: Right. Your Honor, I think with those issues, I mean, as long as there is a process for discovery and a process to get the evidence before this court, I think we can all react, depending on what the legislature does in August, you know, making sure that we are allowing the process to move forward in the meantime so that we are not engaged in a complete federal fire drill on August 23rd

Transcript, pages 34-39 (Exhibit 1) (emphasis supplied).

Again, this belies their claims that they "never asked for declaratory relief on the 2012 elections", and these claims should be dismissed with prejudice.

### IV. THE BROWN PLAINTIFFS' DOES NOT UNEQUIVOCALLY DROP CLAIMS AS TO THE 2012 ELECTIONS

10

Additionally, the Amended Complaint contains all the same issues alleged, with the sole exception of the more specific claim for relief, however, the "catch-all" claim for relief belies their assertion that they have "dropped" these claims. Record Entry 66, Exhibit 2. The Plaintiffs are still stating that the 2012 elections were somehow "unconstitutional", as evidenced by their Amended Complaint that was filed after the Scheduling Hearing of June 21, 2013. The Amended Complaint still says that "Defendants…therefore subjected themselves to liability under 42 U.S.C. 1983." (p. 16-17), and ask in their catch-all claim of relief for "such other relief as this Court shall deem just and proper." Although the Brown Plaintiffs allege that they have dropped any claims related to the 2012 elections, their Amended Complaint makes claims that hinge on findings related to the 2012 elections, and they affirmatively claim:

> Defendants, using their respective offices and acting under color of state law, have deliberately failed to constitutionally redistrict, which has deprived Plaintiffs, who are citizens of the United States of the Equal Protection of Laws, in violation of the Fourteenth Amendment of the U.S. Constitution, which rights are clearly established, and therefore subjected themselves to liability under 42 U.S.C. Sec. 1983, injunctive relief, and declaratory relief under 28 U.S.C. Sec. 2201.

Brown Plaintiffs' Amended Complaint, p. 16-17 (Exhibit 2). They state that "Defendants abused the authority of their respective offices and, while acting under color of state law and with knowledge of Plaintiffs' established rights, used their offices to violate their rights to equal protection under the law, equal access to vote and equal right to vote and representation." Id. They also ask for "such other relief as this Court may adjudge and deem proper." Id. at 18. This is not a clear and definitive renunciation of a damages or declaratory judgment claim based on the past election. Contrary to their stated aim of just getting rid of that claim, the underlying conclusory "facts" are the same in the Amended Complaint as in the original.

Even though the Plaintiffs assert that "specific claims related to the 2012 elections in the Complaint dealt only with money damages, not with declaratory and prospective relief and not

11

with attorney fees," this was not the case, as shown above, and their Amended Complaint still the same allegations for the 2012 elections. They still assert that the 2012 elections were "unconstitutional". The Amended Complaint, filed July 12, 2013, still alleges the same issues with respect to the 2012 elections in the original Complaint:

- "Intentional, purposeful violations by Defendants of the constitutional rights of the Plaintiffs" (p. 5);

- "the failure to conduct constitutional redistricting represents a contrived effort on the part of certain incumbent legislators to hold their State House and State Senate seats and refuse to enact constitutional redistricting" (p. 5);

- "The population of each Kentucky House District and Kentucky State Senate District, as currently drawn, was in force for the 2012 primary and general elections, held in May and November, 2012, respectively." (p. 12);

- "In January, 2012, the General Assembly passed a redistricting plan-the plan for the Kentucky House of Representatives, which was the most egregious of the two houses, split 28 counties and 246 precincts…" (p. 14);

- "Suit was subsequently brought in the Franklin Circuit Court following the January, 2012 redistricting, which struck down the January, 2012 redistricting plan, ruling only on the unconstitutional (under the Kentucky Constitution) House plan, and striking down the Senate plan due to a lack of a severability clause in the legislation." (p. 14);

- "The Franklin Circuit Court stayed the implementation of the January, 2012 redistricting plan forcing the earlier plan as set forth in KRS 5.100 et seq and KRS 5.200 et seq to remain in effect for the 2012 elections. Thus, significant voter dilution ***occurred for the 2012 elections*** in contravention of the 'one person one vote'

principle of equal protection in the United States Constitution as determined by the United States Supreme Court in Reynolds v. Simms [sic], 377 U.S. 533 (1964), as well as similar provisions in the Kentucky Constitution." (p. 14) (emphasis supplied);

- "Given the failure of the Kentucky General Assembly to pass a constitutional and lawful map in the 2011, 2012, or 2013 sessions*, including allowing a primary and general election cycle to occur with an unconstitutional map in 2012*, it is substantially certain that such condition will continue through November 4, 2013 and into and through the 2014 session without judicial intervention." (p. 15) (emphasis supplied);

- "Plaintiffs will suffer an even greater injury … with their votes ***again*** significantly diluted in violation of the Equal Protection Clause." (p. 16);

- "COUNT I- VIOLATION OF EQUAL PROTECTION…(60) Defendants, using their respective offices and acting under color of state law, have ***deliberately failed to constitutionally redistrict***, which has deprived Plaintiffs, who are citizens of the United States, of the Equal Protection of the Laws, in violation of the Fourteenth Amendment of the U.S. Constitution, which rights are clearly established, and ***therefore subjected themselves to liability under 42 U.S.C. 1983***, injunctive relief, and declaratory relief under 28 U.S.C. 2201." (p. 16-17) (emphasis supplied);

- "Defendants abused the authority of their respective offices and, while acting under color of law and with knowledge of Plaintiffs' established rights, used their offices to violate their rights to equal protection under the law, equal access to vote and equal right to vote and representation." (p. 17);

- "Plaintiffs therefore seek declaratory relief, and prospective injunctive relief" (p. 17);

- "Therefore, Plaintiffs demand judgment as prayed for, including: … E. Such other relief as this Court shall deem just and proper." (p. 18).

Additionally, one of the Plaintiffs, Cathy Flaig, asserted in the Amended Complaint, as in the Complaint, that she "ran in the 2012 Primary Election for the 66th Kentucky House District." Amended Complaint, p. 7.

The only material change to the Amended Complaint was the omission of the more specific demand paragraph; however, the "catch-all" language might be relied upon by Plaintiffs in the future. Other litigants have asserted in Section 1983 actions that language such as the Plaintiffs' "boilerplate" "such other relief that the Court deems necessary and appropriate" language as appears in the Complaint and Amended Complaint, would permit the court to allow them to press for damages, nominal or compensatory, or other relief.  See <u>Youngstown Publishing Co. v. McKelvey</u>, 189 F. App'x 402, 407 (6th Cir. 2006).  Also, parties have attempted to amend their complaint to assert nominal damages and other claims. Although courts may decline to permit this, this is yet another reason for this Court to dismiss these claims as a matter of law, to ensure finality.

## **CONCLUSION**

Therefore, for the foregoing reasons, this Court should grant the LRC's Motion.

Respectfully submitted:

s/Laura H. Hendrix
Laura H. Hendrix
General Counsel
Legislative Research Commission
State Capitol, Room 104
Frankfort, Kentucky 40601
Telephone:  (502) 564-8100
Fax: (502) 564-6543
Email: Laura.Hendrix@lrc.ky.gov
Attorney for Legislative Research Commission

14

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 2, 2013, a copy of the foregoing Reply was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by electronic mail. Parties may access this filing through the Court's electronic filing system.

                                      s/Laura H. Hendrix___
                                      Laura H. Hendrix