UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | | |
|---|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, et al., | ) ) ) ) | ELECTRONICALLY FILED |
| Plaintiffs, | ) | Civil No. 2:13-cv-00068 |
| v. | ) ) | DJB-GFVT-WOB |
| THE COMMONWEALTH OF KENTUCKY, et al., | ) ) ) ) | |
| Defendants. | ) | |
| MARTIN HERBERT, et al. | ) ) ) ) | |
| Plaintiffs, | ) | Civil No. 3:13-cv-00025 |
| v. | ) ) ) | DJB-GFVT-WOB |
| KENTUCKY STATE BOARD OF ELECTIONS, et al., | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT SPEAKER STUMBO'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ALTER, AMEND OR VACATE JUDGMENT**

Comes the Defendant, Speaker of the Kentucky House of Representatives Greg Stumbo, by counsel, pursuant to Fed. R. Civ. Pro. 59 and 60, and in support of his Motion to Alter, Amend or Vacate would show this Honorable Tribunal as follows:

This Court issued a twenty eight (28) page Order at 4:45 pm on Friday, August 16th, in advance of an Extraordinary Session of the Kentucky General Assembly scheduled to commence on Monday, August 19th at noon. The Order will have a dramatic, and no doubt unintended, effect upon the looming Extraordinary Session. In holding that the 2002 state legislative electoral

1

districts are unconstitutional and enjoining any further use of these districts, (Order, pp. 2; 28), the Court has effectively required the Kentucky General Assembly to pass any legislation in the upcoming Extraordinary Session with an Emergency Clause effectuating immediate application of any new law, so as to avoid a "gap" in controlling law.

The Kentucky Constitution provides that new laws go into effect ninety (90) days after passage unless the law contains an Emergency Clause making the effective date earlier or immediate. Ky. Const. § 55.  A proposed law containing an Emergency Clause requires additional votes to pass.  For this reason, the practical effect of the Court's Order is that any legislation must pass with 51 votes (the **Constitutional majority** required for an Emergency Clause), rather than the 40 votes required for passage of an ordinary bill (a **simple majority** of those voting and at least 2/5 of the full body. See: Kentucky Constitution, Section 46, which provides "No bill shall become a law unless, on its final passage, it receives the votes of at least two-fifths of the members elected to each House, and a majority of the members voting.").

In short, this Court has effectively ruled that eleven (11) more votes are needed to pass a redistricting plan on the very eve of the Extraordinary Session. This surely was not the intent of this Honorable Tribunal. **It is quite possible that this additional eleven (11) vote requirement will be the deciding factor in whether a redistricting plan is passed or not.**

Fortunately, the matter is easily remedied. The Court need only add a simple modification to its Order making plain that the existing districts will remain in place for the ninety day period in which newly passed laws are not yet effective.  This would address the situation in which a Special Election might be held after passage of the bill, but before it has become law.

The Speaker assures the Court that this Motion is not made for any improper purpose. In fact, the question of whether an Emergency Clause is needed has been debated by House Leadership and staff in recent days. The specific scenario under discussion was whether a Special Election occurring after passage of the law, but before its effective date, required the Emergency Clause. It had been counsel's advice that no Emergency Clause was needed, since the ruling of the Kentucky Supreme Court made plain that in such an event, the election would simply be conducted under the 2002 district lines. This Court's Order obviously negates that analysis.

This Court's stated sole purpose in issuing its Order was to "prevent the General Assembly from falling back on lines that will be over a decade old if they fail." Order, p. 2. The requested minor modification of the Order will in no way undercut the Court's goal, since it would only provide for a continuation of legally cognizable precinct lines *in the event that a new redistricting plan is passed.* (See: Proposed Order, tendered herewith.)

No doubt this Honorable Tribunal was not considering the possibility of a Special Election shortly following the passage of a redistricting plan, and did not know that this very topic was a matter of significant import in planning for the impending Extraordinary Session. Now that the matter has been brought to the Court's attention, however, it will surely act with alacrity to remove any unauthorized and unintended effect of the Order by adopting Speaker Stumbo's simple suggested modification.

It is worth noting that one Special Election has already taken place under the 2002 district lines during the pendency of this action. The 56th district conducted an election on June 25th, 2013. This Court properly took no action to interfere with that process. The same procedure must

be followed regarding any possible Special Election during the "gap" between a new law's passage and its effective date.

The Court's Order actually supports the requested minor modification. The Court expressly stated that an election should be conducted under an admittedly flawed redistricting plan where the "proximity of the forthcoming election" is an issue. Order at p. 10, quoting *Reynolds v Sims,* 377 US 533, at 585. Obviously, a Special Election, if any, would be "imminent" as discussed in *Reynolds*, supra.  Importantly, the critical factor in this analysis is whether the Court's ruling would constitute a "disruption to the election process," as discussed in the Court's Order at pp. 10-11. It is surely undeniable that the lack of any redistricting lines whatsoever would be enormously "disruptive" should a Special Election fall within the gap between passage of a redistricting plan and its effective date.

Additionally, the Court's Order recognizes that the Plaintiffs in this case are "concerned with the 2014 election process....what this action is all about is conducting 2014 elections in a timely and orderly manner with constitutional maps." Order, p. 25, fn. 11, quoting counsel for *Brown* Plaintiffs. Clearly, a possible Special Election in the near future is not the focus of this litigation, so the requested relief is entirely appropriate. The Court cited the above language in support of its efforts to ensure that no one construed the Court's Order as an attack upon the propriety of the 2012 elections. Indeed, the Court could well have included assurances about the propriety of the 2013 election, since the aforementioned Special Election in the 56th District was, of course, conducted under the 2002 district lines.

The simple request made here is that similar assurances be made for any Special Election which might be conducted between passage and the effective date of any new redistricting plan.  The fact that this Court has already allowed such a Special Election to

4

proceed under the existing 2002 lines plainly demonstrates that the requested relief is entirely appropriate.

This Tribunal's own summation of its motives in issuing the Order offers the most eloquent argument for granting the present motion:

> [B]y its decision herein the court does not in any way seek to enjoin the Kentucky General Assembly from accomplishing its stated goal of enacting a constitutional plan of reapportionment in the August 19, 2013 special legislative session. In fact, the clear motivations of the court in issuing this opinion in advance of the General Assembly's special legislative session is to articulate the requirements of the Equal Protection Clause and conclusively determine whether the 2002 electoral lines constitute a viable fallback option if the General Assembly were to be unsuccessful in agreeing on a new plan for apportionment. *Reynolds*, 377 US at 556. After all, the most desirable outcome in this case for all parties is for the Kentucky General assembly to enact a constitutional plan for state legislative apportionment, thereby accomplishing the admittedly difficult task primarily allocated to them (sic) as the state legislative body. The court's approach is sufficiently restrained to allow the General Assembly to do just that.

Order, p. 26.

In order to actually assure that this Court's approach is "sufficiently restrained", it is necessary that the minor modification requested by Speaker Stumbo be granted. Otherwise, this Court might be in the unfortunate position of having seemed to require the casting of eleven (11) additional "Yea" votes in order for an effective redistricting plan to be passed. This was certainly not the Court's intention, and promptly saying so will ensure the smooth course of the impending Extraordinary Session. Failure to make this plain, in contrast, will undermine the Court's goal of seeing "the most desirable outcome."

As a Kentucky Federal District Court wisely noted *Granzeier v. Middleton*, 955 F.Supp. 741, 750 (E.D. Ky., 1997), the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people. See: Tenth Amendment to the Constitution of the United States. The Court's ruling, as outlined in the Order

5

at issue, inadvertently infringes on the bright line of separation required by the Kentucky and Federal constitutions.

Movant regrets the need for an **immediate ruling**, but points out that the issuance of the Order late on Friday before commencement of the Extraordinary Session on noon Monday simply permits no other option. This Court's Scheduling Order directs that a flurry of activity commence on Friday, August 23rd, evidently with the goal of encouraging legislative action in the shortest Constitutionally permissible time, which is five (5) days. (The Court characterizes this as "following the special legislative session," Order at p. 6, but it is more accurately described as "during the legislative session.")

In order to keep to the stringent schedule imposed by this Honorable Tribunal, the Speaker must introduce the redistricting bill on Monday. Unfortunately, the Court's new Order creates great uncertainty as to whether or not that bill must contain an Emergency Clause. Prompt, (which is to say immediate), issuance of the requested clarifying order will enable the General Assembly to keep to the time table clearly favored by this Court.

It is therefore requested that the attached Order be immediately issued.

        Respectfully submitted,

        /s/  Anna Stewart Whites
        **ANNA STEWART WHITES**
        600 E. Main Street
        Frankfort KY 40601
        (502) 352-2373/FAX 352-6860
        AnnaWhites@aol.com

        **PIERCE WHITES**
        Office of the Speaker
        Capitol Building, Rm. 309
        Frankfort KY 40601
        (502) 564-3366
        pierce.whites@LRC.KY.GOV

## CERTIFICATE OF SERVICE

      I hereby certify that on August 17, 2013 a copy of the foregoing Reply was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

                                        s/Anna Stewart Whites_____