## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION AT COVINGTON

KENNY BROWN, individually and in his
official capacity as the Boone County Clerk,
*et al.*,

                              Plaintiffs,

v.

COMMONWEALTH OF KY, *et al.*,

                              Defendants.

Case No. 2:13cv00068

**Electronically filed**

MARTIN HERBERT, *et al.*,

                              Plaintiffs,

v.

KENTUCKY STATE BOARD OF
ELECTIONS, *et al.*,

                              Defendants.

Case No. 3:13cv00025

## PLAINTIFFS' JOINT RESPONSE OPPOSING SPEAKER STUMBO'S MOTIONS TO ALTER AND STAY THE JUDGMENT

The *Brown* and *Herbert* Plaintiffs oppose Speaker Stumbo's motions seeking to alter and

stay this Court's judgment. [DE#98; DE#99]. Speaker Stumbo asks this Court to permit the

continued use of Kentucky's unconstitutional district maps at least into 2014 (and possibly

beyond for the Senate map) for any special elections that *might occur*, and he likewise seeks to

stay this Court's judgment, potentially interfering with the 2014 election cycle. In seeking this

extraordinary relief, what he seeks to do is potentially forestall the effective date of any

redistricting map to, at this point, the end of November, 2013, at the earliest – a date after the

start of the qualification period for running for office in the 2014 election cycle.  K.R.S. 118.165. Even more troubling, of course, is the continued use of 2002 maps that are and have been unconstitutional.

### 1. The judgment will not result in "manifest injustice" as required under FRCP 59(e)

Requests to alter or amend judgments under Fed.R.Civ.P. 59(e) "may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. American Intern. Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)(internal citations omitted). Notably, however, "[a] motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)(citing *FDIC v. World Univ. Inc.,* 978 F.2d 10, 16 (1st Cir.1992)).

Here, Speaker Stumbo's motion is not based on the notion that the Court made a clear error of law. Nor is it based on newly discovered evidence or an intervening change in controlling law. Instead, Defendant Stumbo claims that the Court must amend its decision to prevent a manifest injustice from occurring.  Specifically, Speaker Stumbo asserts that the court's August 16 ruling, if not amended, will result in "manifest injustice" because: 1) the General Assembly *might not* be able to muster sufficient votes to include an "emergency" clause in any newly-adopted maps [RE 98-1, 2 (stating that it is "possible" that the additional votes necessary may determine whether a new plan is adopted)]; 2) any special elections "*which may occur* prior to the 2014 elections" would be disrupted. [RE #104, 2 (emphasis added).] But nowhere in the Speaker's initial motion to alter or amend the judgment [RE #98] or in his supplement to that motion [RE #104] does he offer any evidence, testimonial or otherwise, to indicate that either situation will actually

materialize.[1] Instead, he asks this court to grant the requested relief (immediately) on the basis of nothing more than generalized and unsubstantiated concerns about what might (or might not) transpire in the future. Such unsubstantiated assertions are, without more, insufficient to establish the existence of manifest injustice under Rule 59(e). *See McDaniel v. Am. Gen. Fin. Servs., Inc.,* No. 04–2667B, 2007 WL 2084277, at *2 (W.D.Tenn. July 17, 2007)(citing *Torre v. Federated Mutual Ins. Co.,* 906 F.Supp. 616, 619 (D.Kan.1995)(unsubstantiated assertion could not lead to a finding of manifest injustice)).

Moreover, granting Defendant Stumbo's motion would not prevent a manifest injustice; rather, it would cause one. The Court has already held that the 2002 maps are unconstitutional, yet Speaker Stumbo asks the Court to perpetuate an unconstitutional and manifestly unjust situation. The Court does not need to do this. Instead, the Court may deny Defendant Stumbo's motion and allow any (as yet unknown and purely speculative) special elections to occur under either a) constitutional maps passed during the Kentucky legislature's Special Session or b) a Court-approved redistricting plan. No manifest injustice flows from this Court's opinion. Indeed, just the opposite is true.

Defendant Speaker's motion to amend the judgment should also be denied because the claimed harms asserted by Speaker Stumbo are of the General Assembly's own creation, in that it has failed to thus far enact constitutionally permissible legislative districts despite having two years to do so. Speaker Stumbo cannot now benefit from the General Assembly's failure to exercise due diligence in completing that constitutionally required task by claiming that the consequences of this court's judgment will result in manifest injustice. *See Fox v. Am. Airlines, Inc.*, 389 F.3d 1291,

---

[1] In fact, recent media reports indicates that Speaker Stumbo, himself, now acknowledges that he likely has sufficient votes to pass the proposed House map with an "emergency clause." Beth Musgrave, *Kentucky House Panel Advances Redistricting Plan*, Lex. Herald-Leader, Aug. 20, 2013, at http://www.kentucky.com/2013/08/20/2776696/kentucky-house-panel-advances.html (last visited 8/20/13)

1296 (D.C. Cir. 2004)(finding no abuse of discretion where district court declined to vacate judgment of dismissal where claimed manifest injustice "might have been avoided through the exercise of due diligence"); *see also Ciralsky v. C.I.A.*, 355 F.3d 661, 673 (D.C. Cir. 2004)(upholding denial of Rule 59(e) motion because movant's request based on unsubstantiated assertion of harm, and because movant "knew, or should have known" claimed harm might flow from the adverse ruling). Because Speaker Stumbo has not presented any information to substantiate that the claimed harms will (or even are likely to) occur, the court cannot conclude that its August 16 judgment will result in manifest injustice. Thus, Speaker Stumbo's motions should be denied.

### 2.  <u>Speaker Stumbo has not met the requirements for a stay</u>

The requirements and framework for a stay in redistricting suits was addressed in *Larios v. Cox*, 305 F. Supp. 2d 1335, 1336 (ND Ga. 2004).  In that case, after the three-judge panel struck down the state's redistricting plan (a plan that involved a deviation of over 9% but under 10%, and almost identical in every material respect to the one now being proposed by Speaker Stumbo and his colleagues in the Kentucky House of Representatives), the state sought a stay.  The *Larios* Court noted that "stays are not commonly granted in redistricting, or any other type of litigation." *Id.*  It likewise noted that "[a] stay is considered 'extraordinary relief' for which the moving party bears a 'heavy burden.'" *Id. Winston-Salem/Forsyth County Bd. of Educ. v. Scott,* 404 U.S. 1221, 1231, 92 S. Ct. 1236, 1241, 31 L. Ed. 2d 441 (1971) (same).

The *Larios* Court noted that "[a]s with other types of cases, district courts evaluating redistricting challenges have generally denied motions for a stay pending appeal." *Id.* (citing *United States v. Hays,* 515 U.S. 737, 742, 115 S. Ct. 2431, 2435, 132 L. Ed. 2d 635 (1995); *McDaniel v. Sanchez,* 452 U.S. 130, 136, 101 S. Ct. 2224, 2229, 68 L. Ed. 2d 724 (1981); *Roman*

*v. Sincock,* 377 U.S. 695, 703, 84 S. Ct. 1449, 1454, 12 L. Ed. 2d 620 (1964); *Lodge v. Buxton,* 639 F.2d 1358, 1362 (5th Cir. 1981); *Seals v. Quarterly County Court of Madison County, Tenn.,* 562 F.2d 390, 392 (6th Cir. 1977);  *Cousin v. McWherter,* 845 F. Supp. 525, 528 (E.D. Tenn. 1994); *Latino Political Action Committee, Inc. v. City of Boston,* 568 F. Supp. 1012, 1020 (D. Mass. 1983);  *see also Wilson v. Minor,* 220 F.3d 1297, 1301 n.8 (11th Cir. 2000) (denying motion to stay district court's order implementing new plan pending appeal)).

A stay requires demonstration of four factors:  (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies.  *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.  Ct. 2113, 95 L. Ed. 2d 724 (1987).

### a.  Speaker Stumbo is unable to show any likelihood of success on the merits.

As was the case in *Larios*:  "[t]he state in this case is unable to show either a substantial likelihood of success on appeal or even a substantial case on the merits." *Larios*, 305 F. Supp. 2d 1335, 1337.  The same is true here and this Court's conclusion is clear: "[t]he 2002 state legislative electoral districts, which are currently in place in the Commonwealth of Kentucky, are DECLARED Unconstitutional under the Equal Protection Clause of the Fourteenth Amendment." [DE#97, Order, at p.28].

### b.  Speaker Stumbo has made an insufficient showing of irreparable injury.

Speaker Stumbo seemingly argues that the irreparable injury prong is met (though he does not use the term irreparable injury) because of (1) the 60 day gap if an emergency clause is not utilized; (2) the possibility of a special election; and (3) the difficulties he may have in obtaining a Constitutional majority of 51 votes in the Kentucky House to enact an emergency clause.  None

5

of these arguments has merit.  The specifics of his arguments will be addressed below.  However, similar facts can be found in *Larios*.  305 F. Supp. 2d 1335.

Concerning the *Larios* stay applicant's arguments on irreparable injury, the Court in that case summed up a simple response that is particularly appropriate in this case: "[w]hile it may be inconvenient for the state to comply with the court's order, the deficiencies in the current plans were entirely the result of the State of Georgia's own actions."  *Id.* at 1341.  The Court continued, noting that "it would seem elementary that a party may not claim equity in his own defaults."  *Id.* The *Larios* Court likewise noted "the irreparable harm to the plaintiffs, and to all voters in Georgia who have had their votes unconstitutionally debased, outweighs the harm the state may encounter by being unable to resolve an appeal of this decision prior to the 2004 elections."  *Id.* at 1343.

Because a stay is an equitable remedy, the "unclean hands" maxim comes into play. *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 65 S. Ct. 993; 89 L. Ed. 1381 (1945).  "[H]e who comes into equity must come with clean hands."  It "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief…"  Speaker Stumbo, and his colleagues, elected not to correct unconstitutional districts ***to date***, despite numerous opportunities to do so.  There is no guarantee that he, or the General Assembly will pass constitutional maps, and, a significant question about whether they

6

will do so.[23] He does not come to this Court with clean hands.  Instead, he comes to this Court seeking to continue to use the 2002 maps, which are grossly mal-apportioned, in 2014.

        c.    <u>The harm to others is extreme.</u>

The *Larios* Court noted the incredible harm to others in granting a stay: "the plaintiffs and many other citizens in Georgia will have been denied their constitutional rights in *two* of the five elections to be conducted under the 2000 census figures." *Id.* at 1344.  Granting Speaker Stumbo's request for a stay invariably interferes with and potentially threatens, the 2014 election cycle.  The *Larios* Court further noted that "[t]his case does not involve an imminent, impending election where the state's election machinery is already in progress." *Id.*  Speaker Stumbo has made

---

[2] The *Brown* Plaintiffs have not yet fully analyzed the maps proposed by the Kentucky House or viewed at all any proposed by the Kentucky Senate.  However, based upon what these Plaintiffs have seen of Speaker Stumbo's proposed maps, there is currently a substantial concern.  Speaker Stumbo has introduced a map that is just shy of a 10% deviation between districts.  Those districts appear to be both heavily partisan and punitive (weighted towards Democrats).  The end result on this map would be 76 majority Democratic districts and 24 majority Republican districts.  Of the 24 majority Republican districts, 79.16% of the Republican districts are over the ideal population, while only 42% of the Democratic districts are over the ideal population.  As the deviation goes further up, or down, the contrast becomes even starker:  58% of the Republican districts are over 2.5% from ideal – while 26% of Democratic districts are over 2.5% from ideal.  Significantly, 50% of the Republican districts are over 4% from ideal, compared to 13.16% of Democratic districts.  Only one Republican seat (4.1%) is less 2.5% from ideal – and one may speculate that this district was so drawn only because it is surrounded by districts that make it politically un-advantageous for the Speaker to overpopulate it, meanwhile 35.5% (27 seats) of Democratic seats are -2.5% from ideal population.  Similarly, no Republican seats are less than 4% from ideal (or lower), while 32.89% (25 seats) of Democratic seats are less than 4% or lower from ideal.  This is an almost identical scenario to the maps struck down in *Larios v. Cox*, 300 F. Supp. 2d 1320 (ND Ga 2004), and affirmed in *Cox v. Larios*, 542 U.S. 947, 124 S. Ct. 2806; 159 L. Ed. 2d 831 (2004).  *Cox* involved a less than 10% total deviation, but still found the maps unconstitutional because there was "an intentional effort to allow incumbent Democrats to maintain or increase their delegation, primarily by systematically underpopulating the districts held by incumbent Democrats, by overpopulating those of Republicans." Stevens J., concurring.  Just like this case, *Cox* involved population deviations at the borderline of the establishment of *prima facie* constitutional population deviations of 9.98%.  Speaker Stumbo has presented a difference of 9.98% between districts, coupled with strictly partisan considerations for these wide variations.  In *Cox*, 50% of the Republican minority districts had deviations of over 4.5% -- the map proposed by Speaker Stumbo has 50% of the Republican minority districts with deviations of over 4%.  The only difference is that in *Cox*, insult was added to injury where, in addition to almost 10% population deviation (as Speaker Stumbo proposes), coupled with political one-sidedness in deviations below the ideal (as Speaker Stumbo proposes), the majority party also pared a number of incumbents of the minority party together in one district.  However, the lack of pairing of incumbents of only one party does not cure the unconstitutional one-sidedness.  In addition to a *Cox* issue, Plaintiffs also have other concerns.  These issues demonstrate all the more why a stay of judgment is wholly inappropriate.  Once the *Brown* Plaintiffs have an opportunity to fully analyze these maps, they will, as this Court has provided in its Order, assert a formal position.

[3] The *Herbert* Plaintiffs have not yet had an opportunity to review the proposed maps and take no position on them at this time.

absolutely no showing that such an election is pending or imminent – instead, he seeks relief on the basis that a special election could arise.

If the Speaker's goal is to start the 2014 election process on November 6, 2013, for the 2014 election cycle, with the now-enjoined maps to be utilized (which is the practical effect of what he seeks), which it appears is exactly the relief he seeks – that request should be denied.

       d.   The public interest is served in denying Speaker Stumbo's request for stay.

As was the case in *Larios*, "[t]he public interest in this case is nearly indistinguishable from that of the plaintiffs." *Id.* at 1344. The Court continued, noting that "[e]very citizen who voted in what is currently an underrepresented district suffered an injury in the 2002 elections by having his or her vote count less than the votes of those who lived in overrepresented districts." *Id.* The Court then noted that "we find that the public interest will be disserved if we grant a stay, thereby requiring still another election under plans that are clearly unconstitutional." *Id.*

The same is true here – granting a stay is inappropriate given that the public interest is not met and the continued use of unconstitutional lines is inappropriate.

**3.  Speaker Stumbo's Motions are not Ripe**

"[A] federal court normally ought not resolve issues 'involving contingent future events that may not occur as anticipated, or indeed may not occur at all." *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996). Federal courts should not undertake matters that are not ripe for review. *Reno v. Catholic Soc. Servs.,* 509 U.S. 43, 57-58, 113 S. Ct. 2485, 125 L. Ed. 2d 38 and n.18 (1993). There is no actual evidence that a special election will occur. In fact, there are currently no vacancies. Nor is there any evidence before the Court that any such special elections are pending or imminent.

4.  **The U.S. Supreme Court has been clear that the injunctive relief awarded by this Court is appropriate, and should remain in place.**

The U.S. Supreme Court, in *Reynolds v. Sims*, 377 U.S. 533, 84 S. Ct. 1362; 12 L. Ed. 2d 506 (1964) provides ample guidance for the questions raised by Speaker Stumbo.  In Reynolds, the U.S. Supreme Court was clear that "once a State's legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to **insure that no further elections are conducted under the invalid plan**." *Id.* at 585 (emphasis added).  The Supreme Court, in *Reynolds* noted that "under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid." *Id.*

There is no evidence that "an impending election is imminent," and no evidence that the Commonwealth's "election machinery is already in progress."  As such, there is no cause to modify or stay this Court's injunction.  Nor do the other hypothetical concerns raised by Speaker Stumbo serve as a basis to modify or stay this Court's judgment under any of the grounds set forth in *Reynolds*.  Were they, federal courts would never enjoin the use of unconstitutional maps, since these considerations invariably would be present in every redistricting case.

5.  **This Court's Summary Judgment and Injunction does not require an emergency clause to be inserted or interfere with the legislative process; what it does prohibit is continued use of unconstitutional maps**

Speaker Stumbo complains that he may not be able to muster a majority of the Kentucky House of Representatives to support his plan – which would enable him to include an emergency clause.  There is no evidence that supports that contention – and Speaker Stumbo's comments to

9

the press indicate the contrary.[4]  It is troubling that Speaker Stumbo raises hypotheticals to cajole this Court to change granted relief, when he makes statements to the press that there is no likelihood of that occurrence happening.  Nothing in this Court's orders require that an emergency clause be inserted.  If Speaker Stumbo deems it appropriate to do so, that is his prerogative.  What this Court's order confirms, however, are that unconstitutional maps not be used.

This Court has made clear – on more than one occasion -- that constitutional maps will be in place prior to the start of the 2014 election cycle.  Speaker Stumbo appears to seek to ensure that unconstitutional maps be in place for the start of that cycle.  A stay of this Court's injunction creates just that result.

6.  **Proposed approach to the hypotheticals raised in Speaker Stumbo's Motions**

Plaintiffs propose that this Court, consistent with the mandate in *Reynolds*, address any issues that arise at the point that "an impending election is imminent," where the Commonwealth's "election machinery is already in progress."" *Reynolds*, 377 U.S. 533, 585, 84 S. Ct. 1362; 12 L. Ed. 2d 506.[5]  Until that point it time, it would be premature, and, consistent with the dictates of

---

[4] *See* footnote 1, *supra*. (last visited 8/20/2013)

[5] Plaintiffs respectfully suggest that *Fischer III* and *Fischer IV*, when read in conjunction with each other, command the use of at large districts until constitutional maps are enacted and in force or imposed by a court.  In *LRC v. Fischer* (*Fischer IV*), 366 S.W.3d 905 (2012), the Kentucky Supreme Court affirmed the declaration of 2012 HB1 as being unconstitutional, and noted that "[a]s an unconstitutional statute, House Bill 1 is null and void … [it] no longer exists and cannot be implemented … [it] is wholly void and ineffective for any purpose … unconstitutionality dates from the time of its enactment and not merely from the date of the decision so branding it." *Id.* at 917.  *Fischer IV* did not, as the Speaker suggests, endorse the continued use of the 2002 maps – they were resorted to because the election cycle had begun and were weeks away.  Importantly, no one brought a lawsuit or claim in *Fischer IV* regarding the use or continued use of the 2002 maps, and those maps were not declared unconstitutional in that litigation, as they have been in this case.  This Court has declared the use of the 2002 maps unconstitutional, and therefore similarly null and void, rendering them, under *Fischer IV*, "ineffective for any purpose."  And, as the Court noted in *State Board of Elections v. Fischer* (*Fischer III*), 901 S.W.2d 245 (1995), once the 1991 act was declared unconstitutional, "there is no legal theory whereby it or any portion of it could be used to establish a district for the purpose of filling a district," concluding that, as a consequence, there are "no legislative districts as that concept is normally understood," instead there was "but a single House district and a single Senate district comprising the whole of the Commonwealth of Kentucky." *Id.*  However, this Court need not, and should not, weigh in on such a hypothetical.  It is still possible for Defendants to pass constitutional maps – and it is the sincerest desire of Plaintiffs that they do so -- and it is possible that such maps may yet contain an emergency clause.

*Reynolds*, "it would be the unusual case in which a court would be justified in not taking appropriate action to **insure that no further elections are conducted under the invalid plan**." *Id.*

### 7.  Conclusion

For the foregoing reasons, the Speaker's Motions should be denied.

Respectfully submitted,

s/ Christopher D. Wiest
Christopher D. Wiest (KBA 90725)
Chris Wiest, Atty at Law PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859-486-6850
513-257-1895 (v)
chriswiestlaw@yahoo.com

Rick Brueggemann (90619)
E. Jason Atkins (88044)
Hemmer DeFrank, PLLC
250 Grandview Dr.
Fort Mitchell, KY 41017
859/578-3855 (v)
859/578-3869 (f)
rbrueggemann@hemmerlaw.com

*Counsel for Brown Plaintiffs*

s/ William E. Sharp (by cdw with permission)
William E. Sharp
ACLU OF KENTUCKY
315 Guthrie Street, Suite 300
Louisville, KY 40202
(502) 581-9746
sharp@aclu-ky.org

Laughlin McDonald
ACLU Voting Rights Project
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
(404) 500-1235
lmcdonald@aclu.org

Dale Ho
ACLU Voting Rights Project
125 Broad Street
New York, NY 10004
(212) 549-2693
dale.ho@aclu.org

Ben Carter
BEN CARTER LAW PLLC
455 South Fourth Street, Suite 902
Louisville, KY 40202
ben@bencarterlaw.com
ACLU of KY Cooperating Attorney

*Counsel for Herbert Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on August 20, 2013, I electronically filed this Plaintiffs' Joint Motion for Summary Judgment with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Stanton L. Cave
s.cave1@insightbb.com
Jessica A. Burke
jessica@jblawoffices.net

*Counsel for Senate President Robert Stivers*

Pierce B. Whites
piercewhites@aol.com
Anna S. Whites
annawhites@aol.com

*Counsel for House Speaker Greg StumbO*

Clay A. Barkley
clay.barkley@ag.ky.gov
Matt James
matt.james@ag.ky.gov

*Counsel for Gov. Steve Beshear,*

Laura H. Hendrix
laura.hendrix@lrc.ky.gov
Greg A. Woosley
greg.woosley@lrc.ky.gov

*Counsel for KY Legislative Research Commission*

Lynn Sowards Zellen
lynn.zellen@ky.gov
Noel E. Caldwell
ncaldwell@caldwelllawyers.com
Jonathan T. Salomon
jsalomon@tachaulaw.com

*Counsel for Kentucky State Bd. of Elections, Secretary of State Alison L. Grimes, David Cross, John W. Hampton, Stephen Huffman, Denise May, George Russell, Roy Sizemore, and Maryellen Allen*

s/ *Christopher D. Wiest*
*Counsel for the Brown Plaintiffs*