UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, et al., | ELECTRONICALLY FILED |
| Plaintiffs, | Civil No. 2:13-cv-00068 |
| v. | DJB-GFVT-WOB |
| THE COMMONWEALTH OF KENTUCKY, et al., | |
| Defendants. | |
| MARTIN HERBERT, et al. | |
| Plaintiffs, | Civil No. 3:13-cv-00025 |
| v. | DJB-GFVT-WOB |
| KENTUCKY STATE BOARD OF ELECTIONS, et al., | |
| Defendants. | |

**DEFENDANT SPEAKER STUMBO'S REPLY IN SUPPORT OF MOTIONS TO ALTER, AMEND, VACATE AND STAY**

Comes the Defendant, Speaker Stumbo, by counsel, and in support of his Motions to Alter, Amend, Vacate and Stay, would show this Court as follows:

In yesterday's telephonic conference (8/19/13), counsel for the Plaintiffs suggested that this Court leave its August 16, 2013 Order in place and simply require a statewide election in the event a special election was required. In the *Plaintiffs' Joint Response to Speaker Stumbo's Motions* (DE #106), the Plaintiffs characterize the request for the minimal modification of the Order as "interfering with the 2014 election cycle." Id., p. 1. Not only is that claim unsupported by the Record, but it seeks to distract the Court from the sole purpose of the Emergency Hearing

of August 19, 2013, that being ensuring that this Court did not inadvertently cost the state millions of taxpayer dollars by mandating unnecessary statewide elections or unlawfully disenfranchise voters in violation of the Voting Rights Act .

Both the parties and the Court acknowledge the distinct possibility of a need for a special election due to a wide variety of potential causes.  Plaintiffs' argument, at pp. 8 and 11 of the *Joint Response*, that this situation might not arise and therefore should not be addressed until it does, is without merit. The Plaintiffs' argument ignores the fact that special elections occur with some frequency.  Any number of developments, including resignation, death or disability, can require a special election.  Such an eventuality may well arise through no fault or intentional act of any individual.  Speaker Stumbo would point out that this alone constitutes more than ample grounds to grant the reasonable and simple relief requested.

The Speaker advocates an alteration or amendment to the language in the Court's Order so as to protect both the individuals represented in current districts and the public coffers in the event that a special election is required.  By holding that the 2002 lines may be used for special elections occurring prior to the 2014 general election, this Court will avoid eviscerating the requirements of the Kentucky Constitution, and will ensure that Kentucky voters are not deprived of the protections of the federal Equal Protection clause and the Voting Rights Act (VRA),  as more fully discussed herein.

In so ruling, the Court will avoid imposing a massive financial burden upon Kentucky by requiring any special election to be run statewide. Several parties spoke in favor of this "fallback" position, and the Court may have been receptive to it. Upon inquiry, it appears that such a statewide election would compel Kentucky taxpayers to expend in excess of $7 million

dollars for the sole purpose of holding a single special election. See the **Local Mandate Fiscal Impact Estimate** created by the Secretary of State in the regular course and scope of the business practices of that office, attached hereto as Exhibit 1. Currently there are 3,584 precincts, with an average cost per precinct of $2,118.55 per statewide election. This would result in a total of at least $7,592,883 of Kentucky taxpayer dollars simply to conduct one election. That is truly an unnecessary and wholly avoidable cost. Plaintiffs complain that the 2002 lines are not optimal, but wholly fail to explain how this proposal is in any way a better public policy.

The $7 million estimate reflected in Exhibit 1 includes only the cost of establishing polling places and paying election workers, but does not include the cost to the offices of County Clerks, nor does it account for the lost productivity and work time which unavoidably accompanies the practice of state government and civic minded private employers in allowing time off for employees to exercise their right to vote. In short, the cost of the Court's proposed course of action is indefensible. Electing a single member of the General Assembly has never approached the stratospheric costs associated with this Order.

The evidence before the Court shows a massive cost associated with conducting a statewide election. Leaving aside the elitist effects of denying a candidate the option of visiting each potential voter's home or place of work, as is still the common custom in this Commonwealth, the Court's Order would allow only the exceptionally financially secure and politically connected politician to mount an effective statewide race. This is not in the nature of the Kentucky General Assembly, nor is it the structure of our government as laid out in our guiding Constitution and laws. In short, it is an unwarranted intrusion upon time honored and

legally required political practice of allowing all interested and qualified citizens the right to run for office in a localized district.

Even more importantly, any statewide special election caused by the failure of this Court to remedy its faulty Order would run a massive risk of violating the VRA. See: 92 ALR Fed 824, **"At-large" elections as violation of § 2 of Voting Rights Act of 1965 (42 U.S.C.A. § 1973),** outlining concerns with statewide special elections and the impact on voter's rights. Included in this annotation are the following case summaries demonstrating that a special election held in one of Kentucky's majority/minority districts would necessarily violate the VRA, as the population of such a district is massively underrepresented statewide, and would have its electoral power thoroughly diluted in a statewide election.

Case summaries contained in the annotation explain the potential damages. In *Benavidez v. City of Irving, TX,* 638 F. Supp.2d 709 (N.D. TX 2009), the city's at-large scheme for electing its mayor and council members impermissibly diluted city's Hispanic vote in violation of Voting Rights Act; city's Hispanic population was sufficiently large and geographically compact to constitute a majority in a single-member district, Hispanic population was politically cohesive and majority population voted sufficiently as a bloc to defeat Hispanic-preferred candidates. Voting Rights Act of 1965, § 2, 42 USCA Section 1973. *U.S. v. Euclid City School Bd.,* 632 F.Supp.2d 740 (N.D. Ohio, 2009), holds that liability under the anti-dilution provision of the Voting Rights Act (VRA) is established when a plaintiff can demonstrate the existence of racial bloc voting and a court then finds that, based on a totality of the circumstances, minorities have been denied equal opportunity to participate in the political process. Voting Rights Act of 1965, § 2, 42 USCA Section 1973.

Failure to make the requested modifications to the Court's Friday Order will also cause VRA violations in any Kentucky district requiring a special election which is NOT a majority/minority district. This is due to the huge diluting effect of imposing a pool of statewide voters upon a single district. The ideal district size for a House seat is about 43,000 people. The Commonwealth contains more that 4 million inhabitants. A more overwhelming case of vote dilution than that occasioned by the Court's Friday order is difficult to imagine. Clearly, the invitation to confusion, expense, and further litigation is unwarranted and unwise. This Court should strive to limit such violations of the VRA and the 10th Amendment to the United States Constitution by granting the Speaker's requested relief.

The Constitutional infirmities of the Court's action in leaving its Friday order unaltered do not end there. Under Section 31 of the Kentucky Constitution, the candidates for the General assembly must come from the "Senatorial District" or "Representative District" holding the election. This section, read in conformity with Kentucky Constitution Sections 32 and 33, means that a member of the General Assembly must reside in the district for which he is elected. See: *Grantz v. Grauman*, 302 SW2d 364 (Ky 1957).

Left unmodified, the court's order wholly abrogates these three Constitutional requirements. Surely this cannot be this Court's intention. The Court's Order would apparently allow anyone across the Commonwealth to seek election in a statewide race for a single seat in the General Assembly, without regard to the protected rights of the voters. The Order must properly be modified so as to prevent such an unwarranted negative effect.

The Kentucky Supreme Court succinctly stated the Court's duty to protect the rights of the citizenry by delaying the effect date of this type of determination in *Fischer III*, holding:

> We recognize that immediate effectiveness of this opinion would disrupt the orderly process of electing Representatives and Senators in 1994. We also recognize that by virtue of Section 31 of the Constitution of Kentucky, no member of the General Assembly may be deprived of his or her seat by virtue of reapportionment after the member is elected, and that regardless of changes in district composition which may occur subsequent to an election, a Senator or Representative is entitled to serve for and during the term for which he or she was elected and to represent the numerical district from which elected. *Anggelis v. Land,* 371 SW2d 857 (Ky. 1963). With the foregoing in mind, we deem it appropriate to postpone the effective date of this decision, though not the finality of this opinion, until January 3, 1995, at which time the 1991 Reapportionment Act, KRS Chapter 5, shall be invalid. As we said in *Ragland v. Anderson, "T*o hold it void would be to throw the government into chaos; and this no court is required to do. It is now too late to question its validity. The next Legislature must be elected under it, and then we have no doubt the members, impelled by their sense of duty, the obligations of their oath of office, together with that spirit of justice which is the heritage of the race, will redistrict the state as the Constitution requires."

*Id.*, 879 SW2d at 480.

Just as in *Fischer III*, the immediate, albeit unintended, effect of the Court's Order here has "disrupted the orderly process" of state government. Speaker Stumbo suggests that the Court engage in an immediate modification of its Order to ensure that no further harm occurs.

This case offers a stark lesson in the unintended consequences of a Federal court becoming embroiled in the machinery of a state's election procedures. Federal courts are expected to execute their limited oversight duties with a light touch. By issuing a sweeping and lengthy Order on the eve of session, this Court has caused extensive turmoil and confusion in what was expected to be a straightforward and brief Extraordinary Session. The Court cannot now undo the harm it has caused, but can at least mitigate some of the continuing disruptions still extant by modifying its Order, as is fully set out in the motions filed by the Speaker.

Plaintiffs show that they misunderstand the critical concerns before this Court, claiming at p. 8 of the *Joint Response*, that the Speaker is requesting that elections for the 2014 cycle be run under the 2002 maps. In fact, counsel for the Speaker was clear in stating that only elections

for seats unexpectedly vacated prior to the representative's term expiring be filled using the same map that filled that seat in the first place. This avoids the very real concern that elections simply cannot be effectively run at all in the complete absence of any district lines at all, which is the sole alternative offered.

Plaintiffs provide two novel theories under which they assert that voters could be protected in the event of a special election. *Joint Response*, p. 3. As this Court has surely noted, neither "alternative" is supported by precedent or law. Plaintiffs simply contend that special elections could occur under an as-yet-nonexistent "map" created by either the legislature or the Court. Of course, as extensively argued during the Emergency Hearing, such a ruling would both improperly disrupt established procedures under which unexpectedly vacant seats for unexpired terms are filled using the district which originally voted for the representative or senator, and would disenfranchise voters. More importantly, such a procedure would defy the time honored meaning ascribed to Kentucky Constitution Section 156, which requires that the remainder of any unexpired term be subject to an election in the identical geographic area. Significantly, such an approach would require the drafting of novel provisions for inclusion in a new redistricting plan, which seems markedly unwise under the present circumstances. Kentucky does not need new and untested redistricting plan language. It also does not need to extend the expensive Extraordinary Session so that new (and presently undrafted) laws can be crafted, debated, and possibly, eventually, passed. What Kentucky needs is rapid passage of the agreed upon plans without further delay or interference.

Thus it is clear that the relief requested by the Speaker is precisely adequate to the remedy required. By holding that the 2002 lines may be used for special elections occurring prior

to the 2014 general election, this Court will avoid eviscerating the requirements of the Kentucky Constitution, and will ensure that Kentucky voters are not deprived of the protections of the federal Equal Protection clause. It is therefore respectfully requested that this Honorable Tribunal issue the relief requested by Speaker Stumbo.

Plaintiffs make much of the fact that the Court's Order, as it stands now, may require the addition of an Emergency Clause to protect the rights of voters to adequate representation. *Joint Response*, p. 2. Plaintiffs miss the central point in the Speaker's argument. The concern is not only that one party or another might lack the votes to pass a law which included an Emergency Clause, but rather that the Court's Order unintentionally affected and changed the procedures of a separate branch of government, an action that is both unlawful and improper. Production of a plan is hardly evidence that the process was not disrupted, only evidence that the General Assembly survived the disruptions. More importantly, this argument misses the point that an Emergency Clause is wholly irrelevant to the imposition of massive costs due to statewide elections instead of simple local special elections. This redistricting plan is just like every other plan ever passed: It applies only to the next election, which is in 2014. It does not establish immediately effective lines, and no redistricting plan ever has.

The Plaintiffs also misunderstand the purpose of the Speaker's request for a stay, in that the movant (and the citizens of this Commonwealth) would be both financially and constitutionally harmed by the failure to grant the requested relief. It may well be that full relief may be afforded by properly amending the judgment, in which case a stay is not necessary. But it is clear that the requested relief protects the Plaintiffs, as well as all other citizens, and therefore cannot be said to "substantially injure" any party. Certainly the public interest lies in protecting

taxpayer money and the voter's rights.  The Plaintiffs assertions to the contrary (*Joint Response*, pp. 4-6), should be taken for naught.

Plaintiffs address *Cox v. Larios* at numerous places in the *Joint Response* (pp. 7-9).  As this Court plainly stated during the Emergency hearing, that is an unrelated matter and one which must be raised at a separate time and by separate motion.  Speaker Stumbo denies each assertion relating to this argument, and asks that the Court take same for naught. Speaker Stumbo expressly reserves the right to address those issues when they are brought before the Court appropriately.

Respectfully submitted,

/s/  Anna Stewart Whites_____
**ANNA STEWART WHITES**
600 E. Main Street
Frankfort KY 40601
 (502) 352-2373/FAX 352-6860
AnnaWhites@aol.com

**PIERCE WHITES**
Office of the Speaker
Capitol Building, Rm. 309
Frankfort KY 40601
(502) 564-3366
pierce.whites@LRC.KY.GOV

# CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2013 a copy of the foregoing Response was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's electronic filing system.

s/Anna Stewart Whites_____