```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF KENTUCKY
 2                    COVINGTON/FRANKFORT DIVISION

 3  KENNY BROWN, ET AL.,        . Docket No. CV 13-68 (Cov)

 4        Plaintiff,            . Lexington, Kentucky
                                . August 19, 2013
 5           v.                 . 4:00 p.m.
                                .
 6  COMMONWEALTH OF KENTUCKY,   . Telephone Conference
        ET AL.,                 .
 7                              .
    AND                         .
 8                              .
    MARTIN HERBERT, ET AL.,     . Docket No. CV 13-25 (Fkt)
 9                              .
             v.                 .
10                              .
    KENTUCKY STATE BOARD OF     .
11      ELECTIONS, ET AL.,      .
                                .
12        Defendant.            .
    . . . . . . . . . . . . . .

13
                       TRANSCRIPT OF PROCEEDINGS
14         BEFORE THE HONORABLE WILLIAM O. BERTELSMAN
                  AND GREGORY F. VAN TATENHOVE
15             UNITED STATES DISTRICT JUDGES
           AND DANIEL J. BOGGS, SIXTH CIRCUIT JUDGE

16
    APPEARANCES:
17
    For the Plaintiffs:  Mr. Christopher David Wiest
18  Kenny Brown          25 Town Center Blvd.
                         Crestview Hills, KY 41017
19
                         Mr. Richard A. Brueggemann
20                       Hemmer DeFrank PLLC
                         250 Grandview Avenue
21                       Suite 500
                         Ft. Mitchell, KY 41017
22

23

24

25
```

```
 1  APPEARANCES (Continued):

 2  Martin Herbert           Mr. William Ellis Sharp
                             ACLU of Kentucky
 3                           315 Guthrie Street
                             Suite 300
 4                           Louisville, KY 40202

 5                           Mr. M. Laughlin McDonald
                             ACLU Voting Rights Project - GA
 6                           230 Peachtree Street, NW
                             Suite 1440
 7                           Atlanta, GA 30303

 8                           Mr. Dale E. Ho
                             ACLU Voting Rights Project - NY
 9                           125 Broad Street
                             New York, NY 10004
10
    For the Defendants:      Mr. Pierce B. Whites and Ms. Anna
11  Greg Stumbo                 S. Whites
                             Whites & Whites
12                           2374 Switzer Rd.
                             Frankfort, KY 40601
13
    Steve Beshear            Mr. Clay A. Barkley
14                           Office of Attorney General - KY
                             700 Capital Avenue
15                           Suite 118
                             Frankfort, KY 40601
16
    Kentucky Legislative     Ms. Laura Hromyak Hendrix
17  Research Commission      Legislative Research Commission
                             700 Capital Avenue
18                           300 Capitol Building
                             Frankfort, KY 40601
19
    The Kentucky State       Mr. Jonathan T. Salomon
20  Board of Elections/      Tachau Meek PLC
    Secretary of State       101 S. Fifth Street
21                           3600 National City Tower
                             Louisville, KY 40202-3120
22

23

24

25
```

```
 1  APPEARANCES (Continued):

 2  Robert Stivers          Mr. Stanton L. Cave
                            Law Office of Stanton L. Cave &
 3                            Associates, P.S.C.
                            P.O. Box 910457
 4                          Lexington, KY 40503

 5                          Ms. Jessica Ann Burke
                            J. Burke Law Offices, PLLC
 6                          8000 John Davis Drive
                            #2710
 7                          Frankfort, KY 40601

 8  ALSO PRESENT:           Tom Loftus - Courier-Journal

 9                          Jonathan Meador - WFPL News

10                          Kevin Wheatley - State Journal

11                          Beth Musgrave - Herald-Leader

12                          Bruce Schreiner - Associated
                              Press
13
                            Ronnie Ellis - CNHI News
14
                            Scott Wartman - Kentucky Enquirer
15
                            Nick Storm - cn2 Pure Politics
16
                            Peter Wattson - Employee of
17                            Speaker Stumbo

18  Court Reporter:         K. Ann Banta, RPR, CRR
                            101 Barr
19                          Lexington, KY 40507
                            (502) 545-1090
20
    Proceedings recorded by mechanical stenography,
21  transcript produced by computer-aided transcription.

22

23

24

25
```

```
 1                              Monday afternoon session,
 2                              August 19, 2013, 4:00 p.m.
 3                        - - -
 4            THE HONORABLE JUDGE VAN TATENHOVE:  Judge
 5  Bertelsman, this is Judge Van Tatenhove.  I am on.
 6            THE HONORABLE JUDGE BERTELSMAN:  Okay.  Who
 7  else, Judge Boggs, are you on?
 8            THE HONORABLE JUDGE BOGGS:  Yep, I got it.  I
 9  am on.
10            THE HONORABLE JUDGE BERTELSMAN:  All right, I
11  am advised there are 14 people on here.
12            I would like to get them identified.  For
13  your information, I believe Judge Van Tatenhove has a
14  court reporter.
15            So starting with let's say the representative
16  of Mr. Stumbo, the attorney for Mr. Stumbo, let's have
17  sort of a roll call.
18            This is a little difficult with all these
19  people on the conference call.
20            THE HONORABLE JUDGE VAN TATENHOVE:  Judge
21  Bertelsman?
22            THE HONORABLE JUDGE BERTELSMAN:  Yes.
23            THE HONORABLE JUDGE VAN TATENHOVE:  This is
24  Judge Van Tatenhove.
25            I'm sorry to interrupt you.  I believe our
```

1 court reporter is Miss Banta.

2        Maybe she could identify herself to make sure

3 we are on the record.

4        THE HONORABLE JUDGE BERTELSMAN:  Okay.

5        THE COURT REPORTER:  I am here --

6        THE HONORABLE JUDGE BERTELSMAN:  Is she with

7 you?

8        THE COURT REPORTER:  This is --

9        THE HONORABLE JUDGE BERTELSMAN:  Is she -- is

10 she with you?

11        THE COURT REPORTER:  I am -- I am in

12 Lexington, Your Honor, this is Ann Banta.

13        THE HONORABLE JUDGE BERTELSMAN:  Okay.

14        THE HONORABLE JUDGE VAN TATENHOVE:  Thank

15 you.

16        MR. WHITES:  Yes, this is counsel for Speaker

17 Stumbo, lead counsel Anna Whites and general counsel

18 Pierce Whites.

19        THE HONORABLE JUDGE BERTELSMAN:  All right.

20 Now, you are one participant or two participants?

21        MR. WHITES:  Your Honor, we are here

22 together.

23        THE HONORABLE JUDGE BERTELSMAN:  Okay,

24 let's -- let's go around.

25        People are going to have to speak up because

1   I don't know who's on here.

2          MR. BARKLEY:  Your Honor, this is Clay

3   Barkley representing the Governor.

4          THE COURT:  Okay.

5          MR. SALOMON:  Your Honor, John Salomon for

6   the Secretary of State and Board of Elections.

7          THE HONORABLE JUDGE BERTELSMAN:  Okay.

8          MS. HENDRIX:  Your Honors --

9          MR. WIEST:  Your Honor --

10         MS. HENDRIX:  Oh, sorry.  Your Honors --

11         MR. WIEST:  Rick Brueggemann -- I'm sorry.

12         MS. HENDRIX:  Your Honors, this is Laura

13  Hendrix, LRC counsel.

14         MR. WIEST:  Your Honor, Chris Wiest and Rick

15  Brueggemann for the Brown plaintiffs.

16         THE HONORABLE JUDGE BERTELSMAN:  All right.

17         MR. SHARP:  Your Honor, this is William Sharp

18  with the ACLU of Kentucky on behalf of the Herbert

19  plaintiffs.

20         THE COURT:  Okay.

21         MR. MCDONALD:  And Your Honor, this is

22  Laughlin McDonald also with the ACLU representing the

23  Herbert plaintiffs.

24         THE HONORABLE JUDGE BERTELSMAN:  All right.

25         MS. BURKE:  Your Honor, Jessica Burke on

1  behalf of President Robert Stivers.

2           MR. CAVE:  Stan Cave on behalf of Senate

3  President Robert Stivers.

4           THE HONORABLE JUDGE BERTELSMAN:  Anybody

5  else?

6           MR. LOFTUS:  Your Honor, this is Tom Loftus

7  of the Louisville Courier-Journal.

8           THE HONORABLE JUDGE BERTELSMAN:  All right.

9  Anyone -- glad to have you, sir.  Anybody else?

10           MR. MEADOR:  Yes, this is Jonathan Meador

11  with WFPL News.

12           THE COURT:  Okay.

13           MR. WHITES:  And there are other reporters

14  here in the Capitol Annex as well if you would like

15  them to be identified, sir.

16           THE HONORABLE JUDGE BERTELSMAN:  Are you all

17  in one room?

18           MR. WHITES:  A number of them are.

19           THE HONORABLE JUDGE BERTELSMAN:  Okay, well,

20  yes, it would probably help to have their identities.

21           (People speaking unintelligibly.)

22           THE COURT REPORTER:  I'm not -- I'm not

23  understanding these names, I'm sorry.

24           MR. WHITES:  Let's start over and go a little

25  louder.

```
 1            MR. WHEATLEY:  Kevin Wheatley with the State
 2  Journal.
 3            MS. MUSGRAVE:  Beth Musgrave with the
 4  Herald-Leader.
 5            MR. SCHREINER:  Bruce Schreiner with the
 6  Associated Press.
 7            MR. ELLIS:  Ronnie Ellis, CNHI News.
 8            MR. WARTMAN:  Scott Wartman with the Kentucky
 9  Enquirer.
10            MR. STORM:  Nick Storm, cn2 Pure Politics.
11            MR. WHITES:  And that's everyone on this
12  end.
13            I believe these are Speaker Stumbo's motions
14  if you would like for us to speak to them, Judge.
15            THE HONORABLE JUDGE BERTELSMAN:  Yes, I just
16  want to be sure we have everyone identified for the
17  record.  Is everybody identified now?
18            MR. HO:  One more, Your Honor, Dale Ho of the
19  ACLU also for the Herbert plaintiffs.
20            THE HONORABLE JUDGE BERTELSMAN:  Okay, anyone
21  else?
22            MR. WATTSON:  Your Honor, one more listener,
23  Peter WATTSON, an employee of Speaker Stumbo.
24            THE HONORABLE JUDGE BERTELSMAN:  Okay, all
25  the parties are represented, and so I want to say my
```

1  next thing on my agenda was to call on the attorney

2  for the Speaker to present the motion.

3          Now I see we have a new motion here just in

4  the last couple of hours or perhaps even minutes.

5          I just came off the bench, and it was handed

6  to me by my law clerk.

7          MR. WHITES:  Yes, Your Honor, we apologize

8  for that short notice on the new motion.

9          THE HONORABLE JUDGE BERTELSMAN:  I am not

10  sure we have read that.

11          MR. WHITES:  But it was actually raised in a

12  bipartisan conference at the Speaker's podium during

13  session today.

14          THE HONORABLE JUDGE BERTELSMAN:  Okay.

15          MR. WHITES:  So it just came up, and it does

16  seem to fit into answering some of the questions that

17  Judge Van Tatenhove has posed to us.

18          So we took that opportunity to at least

19  partially answer those questions in this new motion.

20          We also have some additional statements that

21  we would like to read into the record.

22          THE HONORABLE JUDGE BERTELSMAN:  Okay, it

23  wasn't just he, it was the court.

24          He was -- we kirmished about it, and he

25  currently reduced the feelings of the court to writing

1 and filed the order.

2          MR. WHITES:  Very good, sir.

3          THE HONORABLE JUDGE BERTELSMAN:  Well, why

4 don't you go ahead.

5          You are going to abandon the previous motions

6 and go ahead and proceed with this one?

7          MR. WHITES:  Actually if you would notice the

8 previous motion asked that the 2002 redistricting

9 lines be kept in effect during the so-called gap

10 between the enactment of any regular legislation and

11 the effective date of that legislation.

12          Upon a bipartisan conference today during the

13 session, it emerged that something, frankly, I should

14 have seen before.

15          We have situations in which a special

16 election can occur at any time up until the next

17 scheduled regular election, and there is -- has been

18 in the past dispute and difficulties relating to what

19 the geographic lines are for the special election.

20          And we have found great guidance in the case

21 of Brumleve v. Ruth, and that is the path that the

22 General Assembly has followed.

23          And it makes plain that the district lines

24 that apply to a special election must be the same

25 geographic lines that were in effect for the election

1 before because remember, a special election is simply

2 for the remainder of an unexpired term.

3           So the way it is thought of is this is the

4 same voters electing a representative to the same

5 district simply filling out the term for which the

6 election was originally held, and that's made very

7 plain in Brumleve which says from the beginning the

8 construction of Section 152, that's of the Kentucky

9 Constitution, has been that it places a limitation not

10 only at the time but as a territory.

11          The regular election must be in territory of

12 the same boundary or contain the entire district to

13 which the office being filled belongs, and we quote

14 that in our motion.

15          And then if you read down a little further, I

16 wish I had included the next line quoting other cases,

17 and it indicates that the phrase in Section 152 of the

18 Kentucky Constitution contains the idea not only of

19 time but of territory making plain the importance of

20 the geographic lines being in place and being certain

21 so that an election can be effectively conducted.

22          As the court knows, the current order which

23 was issued Friday afternoon permanently enjoins both

24 the Secretary of State, Alison Grimes, and the

25 Kentucky Board of Elections from using the 2002

1 geographic lines for any purpose whatsoever.

2          So it is difficult to imagine how we could

3 possibly have a special election at any time between

4 now and the regularly scheduled elections in 2014.

5          THE HONORABLE JUDGE BERTELSMAN:  We --

6          MR. WHITES:  This injunction is actually

7 expanding upon our prior one and saying don't just

8 hold the 2002 lines effective for the next few months

9 but hold them effective solely for the purpose of

10 special elections until the next regularly scheduled

11 elections in 2014.

12          And I would point out to the court that there

13 have been no fewer than 16 Attorney General opinions

14 citing this specific language in Brumleve in response

15 to citizen requests about how do we run these

16 elections, not just at the state level but at the

17 local level.

18          So this is a well developed and well known

19 piece of Kentucky law that analyzes and applies one of

20 our basic constitutional principles.

21          And, again, I apologize for not bringing it

22 to the court's attention earlier, but I think that it

23 clearly counsels strongly in favor of recognizing

24 these lines so that we do not have a situation where

25 we have no guidance and no way to hold a special

1 election because remember, a special election can

2 arise any number of ways.

3          It may be a resignation, it may be death, it

4 may be disability, God forbid, but these things

5 regularly happen.

6          We have 138 members, so it seems prudent to

7 take notice of this reality and to provide some system

8 whereby we do not have one of our most fundamental and

9 basic laws, that is the one establishing districts

10 simply being nonexistent.

11          THE HONORABLE JUDGE BERTELSMAN:  Okay, well,

12 I was working through this at the noon hour and at the

13 break in my other case trying to visualize various

14 eventualities.

15          And I frankly could not see the arguments

16 that you were making before about the emergency

17 clause, etc., because I reached roughly the same

18 conclusion you did by saying if there were a vacancy

19 you could not take some -- a vacancy from the old

20 districts and hold an election under the new plan

21 because you might have a different number of

22 representatives in the county.

23          The old county might not -- the old district

24 might not be the same shape as the new district.

25          But you would have to use the 2002, and I

1  have not had a chance to confer with the other judges

2  about this.

3          I don't know if they have even seen your

4  motion, frankly, this latest one because I just now

5  came off the bench.

6          But I -- I -- what you are saying, as I

7  understand it, is that we just amend this and make an

8  exception for special elections, we could fix it all

9  up; is that right?

10          MR. WHITES:  Yes, sir.

11          THE HONORABLE JUDGE BERTELSMAN:  Okay, that's

12  a brief answer.

13          Let me ask the other judges, we haven't had a

14  chance to confer.  Have you seen this latest motion?

15          THE HONORABLE JUDGE BOGGS:  This is Judge

16  Boggs.  I have seen it.

17          At first blush it does seem reasonable, and I

18  am thinking about circumstances in other jurisdictions

19  where you have had a special election and a general

20  election on the same day on different lines for

21  exactly the reasons counsel gave.

22          I would say at first blush in drafting some

23  kind of an order, I don't think you would want to say

24  that the old lines can remain in effect for special

25  elections in perpetuity.

1           THE HONORABLE JUDGE BERTELSMAN:  No, no, they

2    are not asking that as I understand it.

3           THE HONORABLE JUDGE BOGGS:  It's for special

4    elections to fill vacancies that occur in seats that

5    were elected in 2012 or 2010 as the case may be.

6           THE HONORABLE JUDGE BERTELSMAN:  As I

7    understand it, that's what he is suggesting.

8           THE HONORABLE JUDGE BOGGS:  Okay, I just

9    wanted -- I just pulled up Fischer III which does talk

10   about special elections, and I haven't really compared

11   that as to whether that would cause any problem.

12          I think not, but I haven't had a chance to

13   read the two together yet.

14          MR. WHITES:  Well, that would be the court's

15   question B, I believe, asking if Fischer III applies

16   in this case.

17          And I thought that was a very perspective

18   question, and indeed if one reads only the head notes

19   in that case -- and we have all been a little rushed.

20          Let me just quickly quote that, "Legislative

21   Reapportionment Act declared unconstitutional could

22   not be used as a basis for establishment of district

23   for purposes of filing -- of filling vacancy due to

24   resignation."

25          So yes, it would seem to apply by its own

1  express terms to this case.

2          And certainly if you look at Fischer IV

3  wherein the Kentucky Supreme Court quite recently said

4  that the '02 legislative districts are the only

5  legislative districts capable of implementation at

6  this juncture.

7          In fact that was cited in the order at page

8  4.

9          I think it becomes very plain that we need

10  some fall-back position and that would have to be the

11  '02 line.

12          THE HONORABLE JUDGE BERTELSMAN:  Judge Van

13  Tatenhove, did you have a chance to see this latest

14  amendment to the motion?

15          THE HONORABLE JUDGE VAN TATENHOVE:  I have,

16  Judge Bertelsman, thank you.  Let me ask a couple of

17  questions --

18          THE HONORABLE JUDGE BERTELSMAN:  Yes, please.

19          THE HONORABLE JUDGE VAN TATENHOVE:  -- if I

20  could -- if I could.

21          THE HONORABLE JUDGE BERTELSMAN:  Yes.

22          THE HONORABLE JUDGE VAN TATENHOVE:  I think,

23  Mr. Whites, what you are saying is there is a sense in

24  which the entire state legislature right now is

25  serving in districts that are constitutionally infirm,

1  and that will be the case until the new elections take

2  place which will take place in 2014, presumably one

3  way or the other, under constitutionally appropriate

4  legislative districts.

5         MR. WHITES:  Well, I am not sure that I would

6  put it that way.

7         I would say that the Kentucky legislature is

8  serving under the lines that were thought by the

9  Kentucky Supreme Court to be the only appropriate

10 lines, and if we take away the only appropriate lines

11 as -- currently as I understand the court's order we

12 have done, then the Kentucky legislature is serving

13 with no lines.

14        THE HONORABLE JUDGE VAN TATENHOVE:  Mr. --

15 Mr. Whites, I understand you may disagree with this

16 court's finding that the 2002 lines are

17 unconstitutional but --

18        Mr. WHITES:  No, I think I agreed with that

19 in oral arguments, sir.

20        But the point is we need some lines, and the

21 court found that --

22        THE HONORABLE JUDGE VAN TATENHOVE:  Well --

23        MR. WHITES:  The high court of Kentucky found

24 that it is preferable to have these admittedly flawed

25 lines rather than no lines.  I think that's the

1  choice.

2          THE HONORABLE JUDGE VAN TATENHOVE:  Yes, and

3  that's the -- that's the import of my question

4  actually, which is you are really asking for nothing

5  more than to allow the current lines to stay in place

6  in the event that there is a -- a vacancy that then

7  gets filled only until 2014 when the new lines go in

8  place.

9          MR. WHITES:  That is precisely the requested

10  relief.

11          THE HONORABLE JUDGE VAN TATENHOVE:  Okay,

12  would you identify the current vacancies, please?

13          MR. WHITES:  There are no current vacancies.

14          THE HONORABLE JUDGE BERTELSMAN:  I gather one

15  is anticipated from the --

16          MR. WHITES:  I suppose it would go to

17  question A which asks if the parties are aware of a

18  special election pending.

19          Let me just say that I am aware of no

20  authority which would permit the court to make an

21  inquiry into specific political plans of individual

22  members.

23          But more importantly than that, it's the aim

24  of every officer of this court to render all the

25  assistance we can.

1          But it would be difficult if not impossible
2  for counsel to obtain this kind of information in a
3  form that could be relied upon by a Federal Court.
4          The nature of politics is fluid.  Any
5  possible plan or theoretical development which might
6  require a special session to be conducted would of
7  necessity be only a possibility, albeit a distinct
8  one.
9          I mean, it might be that members would have
10  certain plans of which we may or may not be aware.
11          But I think the more important overriding
12  consideration is a member may resign, and that may
13  happen at any point and we would be unaware of it, a
14  member may pass away, a member may become
15  incapacitated.
16          I certainly don't think it's necessary or
17  indeed appropriate for us to discuss what possible
18  political plans may be had by one member or another.
19          THE HONORABLE JUDGE BERTELSMAN:  Well, we can
20  -- we can guess.
21          So let me ask you another question.  Do you
22  think it would be advisable to -- in the making of
23  this amendment, which I am inclined to make it in some
24  form, to say special elections may be allowed with --
25  on application to the court?

1           MR. WHITES:  I think that would be

2   unconstitutional.

3           I think that would violate federal or state

4   comity.  I don't think that would be enforceable.

5           THE HONORABLE JUDGE BERTELSMAN:  All right.

6   All right, let's see what other -- any other parties,

7   we have 14 people on here.

8           Do any other parties want to be heard on

9   these motions -- actually it's down to one motion now,

10  in this last motion.

11          MR. WIEST:  Your Honor, Chris Wiest for the

12  Brown plaintiffs.

13          THE HONORABLE JUDGE BERTELSMAN:  Uh-huh.

14          MR. WIEST:  A few thoughts.  First of all, it

15  seems to us that the relief that the Speaker asks,

16  this stay which, by the way, I think this is now the

17  fourth or fifth time that he has asked for a stay in

18  this case, all of which have been denied by this

19  court.

20          It seems to us that it -- that it renders an

21  issue that might not be ripe, may never come to

22  ripeness, frankly.

23          I mean, if there is a special election that

24  occurs, at that point that can be dealt with.

25          The -- the other issue that we would -- we

1  would raise, is that it appears to us --

2          THE HONORABLE JUDGE BERTELSMAN:  Let me

3  interrupt you.

4          His last tendered order here doesn't ask for

5  a stay.

6          Maybe you don't have it.  When was this --

7  when was this filed, this last one?

8          MR. WHITES:  Just an hour or two ago, I

9  believe.

10          THE HONORABLE JUDGE BERTELSMAN:  I don't

11  think everybody has it.

12          Let me just read, in the last one, he

13  proposes an order that says, "The 2002 Kentucky

14  redistricting lines shall stay in effect for purposes

15  of defining the geographic boundaries of any special

16  election that may arise prior to the conduction of the

17  regularly scheduled 2014 elections."

18          Says, "This order is required so that effect

19  may be given to controlling Kentucky law."

20          So he is not asking for a stay, he is asking

21  us just to say -- which to me made sense after I

22  thought about it awhile -- to -- that you can't take a

23  piece from the old sort of jigsaw puzzle and put it

24  into the new jigsaw puzzle.

25          If there is a vacancy in the incumbent now it

1  would have to be replaced.

2       The special election would have to be held

3  under the existing plan because the new district might

4  be a different shape.

5       MR. WIEST:  Well, Your Honor, I think this

6  gets back to what happened Friday, and let's be

7  clear.

8       This court confirmed what we all knew, which

9  is that the continued use of the 2002 maps given the

10 Senate malapportionment was wholly unconstitutional

11 because when we read the plain and unambiguous

12 language of Secretary -- or the State Board of

13 Elections v. Fischer colloquially and uncolloquially

14 known as Fischer III, there is very, very clear

15 language in the Kentucky Supreme Court about what

16 happens not in the typical ordinary sense of a special

17 election, which is the authority that Mr. Whites

18 filed, but what happens in the instance when we have

19 got unconstitutional districts.

20       And in that instance, the Kentucky Supreme

21 Court was very, very clear under Kentucky law what is

22 to happen.

23       And I am going to read from that opinion,

24 and -- oh, we are at 246, "There is no legal theory

25 whereby it or any portion of it could be used to

1 establish a district for the purpose of filling a

2 vacancy.

3         As of January 3rd, 1995 there were no

4 legislative districts as that concept is normally

5 understood.

6         There was but a single House district in a

7 single district in the whole of the Commonwealth of

8 Kentucky."

9         They are very, very clear, the Kentucky

10 Supreme Court commands in this instance what happens,

11 and that is that as our elections are held, until a

12 constitutional -- a constitutional reapportionment

13 plan is had -- and that frankly, you know, gets us to

14 another issue.

15         We necessitate based on what we have seen so

16 far coming out of Frankfort, you know, there is a huge

17 Cox v. Larios issue in the House plan.  We have not

18 seen the Senate plan yet.

19         THE HONORABLE JUDGE BERTELSMAN:  What kind of

20 an issue did you say there was in the House plan?

21         MR. WIEST:  Your Honor, there is a -- there

22 is a -- there is the issue that was -- all this

23 identically raised in the Cox case where you have got

24 plus or -- you know, the deviations coupled with parts

25 of the considerations with the underapportioned

1 districts and overapportioned districts.

2        And frankly, fortunately from where we sit

3 right now it looks like this court could end up at

4 least having to draw the House map.

5        MR. WHITES:  Matt, we did not exceed

6 deviation.

7        THE HONORABLE JUDGE BERTELSMAN:  All right,

8 fellows, we will have to -- we will have to sort that

9 out later.

10        Now we are talking about the special

11 elections.

12        Well, what is -- what is your thought for the

13 Brown plaintiffs --

14        MR. WIEST:  Your Honor, we don't --

15        THE HONORABLE JUDGE BERTELSMAN:  That would

16 unfortunately be a gap in the people now serving under

17 the 2002 plan.

18        MR. WIEST:  Your Honor, Fischer III makes

19 clear that -- that you have got to do outliers

20 elections, and again, there was an objection raised,

21 well, in that instance they won't represent us.

22        And the Kentucky Supreme Court was very clear

23 in responding to that that they said no, every

24 representative really acts on the whole and the good

25 of the entire Commonwealth and all of the citizens

1  therein.

2          So, you know, that was the answer from the

3  Kentucky Supreme Court in Fischer III, and we think

4  that it is right on point with the facts of this case.

5          MR. WHITES:  Well, Fischer IV addressed it

6  too, and obviously Fischer IV came later.

7          And Fischer IV said the 2002 lines should be

8  kept in place presumably for just such a situation as

9  this.

10          And this court, this honorable tribunal, the

11  order that was issued Friday made very wise

12  observations regarding Reynolds v. Sims and a host of

13  cases decided thereunder that you can have an

14  admittedly flawed redistricting plan as the 2002 plan

15  is currently.

16          But where there is the possibility of a

17  forthcoming election that will be disrupted if you

18  don't rely on the plan, you should do it.

19          The Supreme Court of the United States has

20  said that repeatedly, district courts across this

21  nation have said that repeatedly.

22          And where the Kentucky Supreme Court said you

23  should use the '02 plans, it would be unthinkable that

24  this court would not then say, fine, we will use them

25  for a very limited purpose.

1           We disapprove of them.  They are out of
2  proportion.  They are unconstitutional.
3           However, in light of well-established federal
4  precedent, they can be used for this very limited
5  purpose because if we don't do that, we are not going
6  to have any lines and we can't have any special
7  elections and that would be worse.
8           And if we wait as you suggested earlier and
9  address this whenever it might come up, then that just
10  -- that violates every precept of judicial economy.
11          It invites forum shopping, it invites
12  uncertainty, and it would certainly disrupt
13  elections.
14          And I thought that was the number one rule of
15  a Federal Court stepping into this matter was to avoid
16  disruption whenever possible.
17          We have suggested a very simple,
18  straightforward, easy fix, and we have suggested it
19  and --
20          THE HONORABLE JUDGE BERTELSMAN:  Let's see if
21  anybody else wants to be heard.  Does anybody else
22  want to be heard?
23          MR. SHARP:  Your Honor, this is William Sharp
24  with the ACLU of Kentucky on behalf of the Herbert
25  plaintiffs.

1          THE HONORABLE JUDGE BERTELSMAN:  Yes.

2          MR. SHARP:  If I may, first off this

3 situation is readily distinguishable from Fischer IV

4 because at the time that the Kentucky Supreme Court

5 authorized the continued use of the 2002 maps it had

6 before it then impending presidential primaries in

7 2012.

8          That's not the situation here.  Speaker

9 Stumbo's counsel repeatedly refers to the possibility

10 of special elections or the prospect of.

11          What they are really asking this court to do

12 is to amend its Friday ruling based upon speculative

13 -- a speculative future contingency which may never

14 occur.

15          It's inappropriate to grant a request under

16 59(b) on unsubstantiated allegations.

17          Those simply don't rise to the level of

18 manifest injustice as the District of Kansas stated in

19 1995 in Torre v. Federated Mutual Insurance Company.

20          THE HONORABLE JUDGE BERTELSMAN:  What do you

21 think we should do?

22          MR. SHARP:  Your Honor, I think the court

23 should deny the motion unless and until, you know,

24 when and if it becomes apparent that the General

25 Assembly is in session or the Governor pursuant to KRS

1 118.730 has to actually assign a date for special

2 election.

3           There is more than enough time for the

4 defendants to bring that issue back before the court

5 at that time if it moves to seek an amendment to the

6 court's ruling.

7           As Kentucky law requires, if a special

8 election becomes necessary with regards to the General

9 Assembly, 118.730 authorizes the General Assembly to

10 actually set that date if it's in session; and if it's

11 not in session, the Governor.

12           And the June 2013 special election that was

13 referenced in Speaker Stumbo's pleadings was actually

14 set and roughly sixty days in advance by the

15 Governor.

16           So the claim, you know, that it would be

17 impractical to bring this issue back before the court

18 is simply misplaced given the history of the

19 timeliness with which they can set those dates in

20 advance.

21           MR. WHITES:  Well, if we don't have any

22 special elections arise, what's the harm in going

23 ahead and making the modification?  It will simply

24 never kick in.

25           But if we do have special sessions -- special

1  elections arise under the statute just cited by the

2  ACLU, if you look at some of the gloss on that, you

3  will see that the Governor is entitled to immediately

4  issue a writ of election.

5          And are we to think that we are going to be

6  in another hurry, hurry, rush, rush situation with the

7  Governor signing writs of election and the court

8  deciding what can and cannot be done and what lines we

9  should use?

10          Why would we invite that kind of confusion

11  when we can solve the problem now, and if there is a

12  special election, fine, it's taken care of.

13          And if there is not, what did we do, waste a

14  little ink?

15          THE HONORABLE JUDGE VAN TATENHOVE:

16  Mr. Whites, Mr. Whites, this is Judge Van Tatenhove.

17          Let me -- let me ask this question because

18  you raised an important point.

19          This is kind of a procedural anomaly, and

20  while I don't think you have effectively distinguished

21  Fischer III, it's not the only precedent that's

22  guiding us in terms of how to proceed.

23          What realistically is the timing here?  I

24  mean, this court clearly is inclined to try to address

25  this as thoroughly as we can.

1          There was an initial flurry over the weekend

2    that suggested that we were being asked to decide

3    something within roughly a 24-hour period, but it does

4    seem that a thoughtful response could unfold over the

5    next days or weeks in terms of how to go forward with

6    regard to the eventuality, I suppose, of a special

7    election.

8          MR. WHITES:  Well, I don't think the facts or

9    the law are going to change in the next few weeks,

10   Your Honor.

11          I think it's pretty plain what the choices

12   are, and if we are going to simply wait and see what

13   happens in the special elections, well, this case

14   might be over.

15          THE HONORABLE JUDGE VAN TATENHOVE:  That

16   wasn't my question.

17          Mr. Whites, Mr. Whites, that wasn't -- I

18   wasn't suggesting we wait until a special election

19   occurs.

20          I am simply asking you to give us a realistic

21   view of what the timing of this issue from the

22   perspective of your client.

23          MR. WHITES:  I think sooner is far better

24   than later.

25          I think the issue is plain.  I think the

1  necessity of having some district lines as opposed to

2  no district lines is self-evident; and that choice is

3  not going to change.

4         THE HONORABLE JUDGE VAN TATENHOVE:  The

5  plaintiffs in this case make it very clear that the

6  issue is not as plain as you -- you want to

7  characterize it.

8         They have not even had a chance to have any

9  briefing on this issue.

10        MR. WHITES:  This portion of the issue is

11  very plain.

12        As the Kentucky Supreme Court said, there is

13  only one set of redistricting lines capable of

14  implementation at this juncture.

15        And I fail to see what harm would result from

16  putting the only lines capable of implementation in

17  place in the event that they are needed.

18        It is a very minor modification to a very

19  major order.

20        THE HONORABLE JUDGE BOGGS:  Mr. Whites, this

21  is Judge Boggs.  If I could ask a question.

22        MR. WHITES:  Yes, sir.

23        THE HONORABLE JUDGE BOGGS:  I have two

24  things, one just factually.

25        Do I read the Kentucky statutes correctly

1  that 56 days need to elapse from the issuance of the

2  writ to the special election.

3          But there is no explicit timing as to the

4  issuance of the writ, that is if a vacancy occurred

5  tomorrow or next week, the writ might be issued ten

6  days, thirty days later and then the election would be

7  56 days after the writ; is that correct?

8          MR. WHITES:  Well, it is -- as I just stated

9  a few moments ago, the writ might be issued

10 immediately by the Governor.

11         I think that's OAG 93-81, if anyone wants the

12 cite to that.

13         So certainly the Governor could immediately

14 issue a writ.

15         One has to wonder whether the Governor of the

16 Commonwealth of Kentucky would do so if he knew that

17 there were no legislative lines.

18         So I suppose one could ask the question

19 reasonably whether at that point the court's order

20 would not only be interfering with legislative

21 prerogatives but with executive branch prerogatives as

22 well.

23         THE HONORABLE JUDGE BOGGS:  I was asking a

24 specific question which you are sort of answering,

25 that is the Governor could issue it immediately or he

1 could wait some period of time.  Is that legally

2 correct?

3          MR. WHITES:  Yes, the Governor would exercise

4 his hopefully discretion.

5          THE HONORABLE JUDGE BOGGS:  Thank you, I have

6 a second question, which is we do seem to have this

7 controversy or contradiction between the very

8 reasonable position that special elections are held in

9 the same territory as the vacancy that is being

10 filled, and we have the contrary principle of not

11 acting under unconstitutional lines.

12          My question -- I am trying to see how those

13 two play out.  My question is this.

14          If you have a Senator -- for the House it's

15 easy, but if you have a Senator who was elected in

16 2012 and a vacancy occurs somewhere down the road

17 before 2016, would you fill -- under your principle,

18 would you fill that vacancy in the old lines even if

19 it was going to serve beyond 2014?

20          MR. WHITES:  Well, I could not answer for the

21 Senate, sir.

22          THE HONORABLE JUDGE BOGGS:  Okay, but as a

23 matter of -- but do you see what I am saying that

24 there is a contradiction in those principles because

25 you quoted the Brumleve case, and I think if you take

1  that -- and that's your best case -- if you take that

2  at full value, it would say that even a vacancy in

3  2015 would have to be under those old lines for a

4  Senator elected in 2012 because it would still be that

5  term.

6           So that's the question I am putting to you.

7  It's not a question of the prerogatives of the Senate,

8  it's a question of Kentucky law, and you are one of

9  the experts on Kentucky law.

10          MR. WHITES:  Well, I have been representing

11 the House and putting the House's position forward.

12          I do not have advice for how the Senate might

13 want to handle that issue.

14          Yeah, I don't know.  I know how it affects

15 the House certainly, and that is what we would ask you

16 to do here.

17          And I think getting to the heart of your

18 question about how these unconstitutional plans,

19 admittedly unconstitutional plans should interact with

20 the need to hold elections in an orderly fashion, I

21 think those questions are well answered in Reynolds v.

22 Sims and its progeny; and I think this court

23 recognized that in its order.

24          And I think a little time spent reviewing

25 that and in fact just the cases that you cited would

1 make very plain that the rule is fairly universal that

2 where an election is going to be adversely affected in

3 any way it is far superior to act upon an admittedly

4 -- act under an admittedly flawed plan than to try to

5 act with no plan.

6         The courts universally recognize that you

7 can't conduct an election without a plan, and that's

8 what we are looking at here.

9         So, again, I think that the -- the question

10 is quite simple.

11         I don't think I am oversimplifying it to say

12 the choice is between the 2002 districting lines or no

13 lines.  I have heard no one suggest an alternative.

14         THE HONORABLE JUDGE BERTELSMAN:  Okay,

15 anybody else want to be heard?  Going once.

16         THE HONORABLE JUDGE VAN TATENHOVE:  Judge

17 Bertelsman --

18         THE COURT:  Yes.

19         THE HONORABLE JUDGE VAN TATENHOVE:  -- this

20 is Judge Van Tatenhove.

21         I just want to be clear again in terms of the

22 timing because this began with a sense of urgency,

23 Mr. Whites, in terms of the special session, and we

24 are certainly very mindful of that and want to be

25 deferential as appropriate to the work that the state

1 legislature is doing this week.

2          But there was talk of an emergency clause,

3 there was talk of needing extra votes.

4          MR. WHITES:  Yes.

5          THE HONORABLE JUDGE VAN TATENHOVE:  And we

6 were being schooled in the intricacies of that

7 process.

8          MR. WHITES:  Yes, let's address that.

9          THE HONORABLE JUDGE VAN TATENHOVE:  Is that

10 still the case?

11          MR. WHITES:  Well, yes, it is.  In fact today

12 we dropped in House Bill 1, and we are sitting here

13 wondering do we have to try to amend this bill which

14 we had hoped very much to avoid doing.

15          But obviously this court's decision has some

16 impact on whether or not we think we have to amend

17 this bill in an emergency clause which then would

18 require constitutional majority of 51 votes rather

19 than a simple majority of votes that would be --

20 otherwise be required for passage of House Bill 1 as

21 it exists now.

22          So certainly this court's action has a real

23 and meaningful impact on what we are doing here today

24 and what we are doing here this week, and that is why

25 we have asked and we ask again now for this court to

1  act swiftly and with dispatch so that we can continue

2  to conduct our legislative business in the time

3  honored and standardized practice here.

4          This is -- this is a huge change that the

5  court is potentially imposing upon the legislature.

6          MR. SHARP:  Your Honor --

7          THE HONORABLE JUDGE VAN TATENHOVE:

8  Mr. Whites, if I could just follow up, please.

9          So you are saying that if we were to allow,

10  for example, the plaintiffs some time to -- in a very

11  short order to file briefs and do -- and have the

12  advantage you have had as it relates to filing paper

13  on this and creating a record and we were to decide at

14  the -- after the special session has taken place, then

15  your only choice, what you will -- what will happen is

16  that the emergency clause will be included in the

17  legislation?

18          MR. WHITES:  I am unaware of any advantage

19  that I have had vis-a-vis any other party in this

20  action.

21          I received the court's 28-page order at 4:43

22  on Friday the same as everyone else, and I believe

23  that there is a plain choice to be made here.

24          I believe that making that decision now and

25  making it the way the Speaker has urged will -- will

1 lessen the chance that the Federal Court actions have

2 a disruptive effect upon the legislative duties of the

3 General Assembly, and I urge you to make that order

4 promptly.

5          THE HONORABLE JUDGE VAN TATENHOVE:

6 Mr. Whites, are you choosing not to answer my

7 question, or are you simply not able to?

8          MR. WHITES:  Please ask your question again,

9 I must not have understood it.

10          THE HONORABLE JUDGE VAN TATENHOVE:  Okay, my

11 question is very simple, is if we act next week after

12 the special election has taken place, is it the case

13 that the emergency clause, the only choice you have is

14 to add the emergency clause and so it will require the

15 extra 11 votes?

16          MR. WHITES:  I assume you meant to say

17 special session rather than special election, and the

18 answer is failure of this court to make a prompt

19 determination will affect the decision on whether or

20 not to have an emergency clause.

21          Whether or not we have an emergency clause

22 means an 11-vote difference in passage, and that's a

23 big difference.

24          THE HONORABLE JUDGE VAN TATENHOVE:  It

25 certainly is, but I guess you are not able to answer

1 the question whether --

2          MR. WHITES:  I must not understand the

3 question, sir.

4          THE HONORABLE JUDGE VAN TATENHOVE:  Well, I

5 think it's pretty clear.  I'm sorry if it's not.  Let

6 me try it one more time.

7          Is there any scenario in which we don't act

8 this week and we act next week and there is no

9 emergency clause?

10          MR. WHITES:  Well, certainly it could be

11 passed without an emergency clause, and then we will

12 face the same problems that we are talking about

13 facing now.

14          We are asking that we avoid those problems by

15 the simple expediency of adopting a very minor

16 modification to a very major order.

17          MR. SHARP:  Your Honor, if I may, this is

18 William Sharp on behalf of the Herbert plaintiffs.

19          It's -- the point that bears noting here that

20 Speaker Stumbo's counsel is demanding that this court

21 take swift action when in fact the General Assembly's

22 past conduct with regard to redistricting has brought

23 us to this point in the first place.

24          It seems disingenuous for the General

25 Assembly to abdicate its constitutional obligations

1  only then to demand that the Federal Court dispatch

2  its obligations under the timetable set by the General

3  Assembly.

4          The plaintiffs, both the Brown plaintiff and

5  the Herbert plaintiffs, have been inundated with

6  Speaker Stumbo's filings today and over the weekend,

7  grappling obviously with these issues.

8          It remains the case that all of the claimed

9  harms that Mr. Whites brings before the court both in

10 terms of possible special elections as well as the --

11 the prospect of the General Assembly's inability to

12 pass this map or the House's inability to pass this

13 map with the required additional 11 votes are both

14 purely speculative at this point and has been

15 presented with no supporting information to establish

16 the likelihood that they can or will occur.

17         MR. WHITES:  What is not speculative is that

18 this court's actions have a very real and practical

19 effect upon the workings of the General Assembly.

20         THE HONORABLE JUDGE BERTELSMAN:  Let me

21 interrupt you there.

22         Let me ask you this, do the other parties

23 want time to file briefs, or are you satisfied that we

24 can take it as it is?  We can give you a few days

25 probably.

 1         MR. SHARP:  Yes, sir, we would like a few
 2 days.
 3         THE HONORABLE JUDGE BERTELSMAN:  Okay.
 4         MR. WHITES:  Your Honor --
 5         THE HONORABLE JUDGE BERTELSMAN:  I won't do
 6 it now, I want to consult with the other judges.
 7         The judges will get together after the
 8 conference call in general is over, but it's --
 9         MR. WHITES:  Well, this is a five-day
10 session, so I don't see how you can grant a few days
11 and it not mean that we are going to, what, extend the
12 session at a cost of $60,000 a day?
13         THE HONORABLE JUDGE BERTELSMAN:  I don't
14 think you have to extend the session.
15         Based on the order that you have asked for
16 this afternoon, I don't think you have to extend the
17 session.  We can do it after the session.
18         MR. WIEST:  Your Honor, cognizant of the
19 timing considerations, we would just ask for 24 hours
20 to brief if the court so orders, and frankly, we don't
21 think it would involve extending the session.
22         Certainly House floor amendments, House
23 committee substitutes are all permissible means.
24         This thing, this bill could have three
25 readings anyways.

1          There is no extension of the session that I
2   think is at issue here.
3          And we would like at least 24 hours to brief
4   and put forth all the authority before the court just
5   so we can be heard before the court, you know, frankly
6   modifies an injunction involving, you know, key
7   constitutional issues for millions of Kentucky
8   residents.
9          THE HONORABLE JUDGE BERTELSMAN:  Right.
10          MR. WHITES:  This bill is going to the floor
11   on Wednesday.
12          We have five days under the Constitution.
13   It's the quickest we can pass a bill.
14          It has to get out of this House on
15   Wednesday.
16          THE HONORABLE JUDGE BERTELSMAN:  It seems to
17   me -- just a moment.
18          It seems to me in light of your latest filing
19   that the emergency clause issue is moot.
20          MR. WHITES:  That is not correct.
21          THE HONORABLE JUDGE BERTELSMAN:  All right.
22          MR. WHITES:  It is in addition, and I think I
23   have said that in my most recent motion.
24          THE HONORABLE JUDGE BERTELSMAN:  All right.
25          MR. WHITES:  This is in addition.  We are

1   asking for an expansion.

2        We have previously suggested that the court

3   could solve this problem simply by either alter,

4   amending and vacating the order, or as we said on

5   Sunday, a simple stay would have worked if the only

6   issue was the gap, the gap between passage and

7   effective date.

8        However, that is not the only issue.  The

9   remaining issue is any special election up to the next

10  scheduled election.

11       That would require a modification of the

12  order, a simple stay won't do it.

13       However, the same issue is present both in

14  the gap and after the gap up to the time of the next

15  regularly scheduled elections.  I want to be very

16  plain about that.

17       THE HONORABLE JUDGE BERTELSMAN:  Okay.  Well,

18  unless somebody has something else to offer, I think

19  the judges are ready to sign off and discuss it.

20       Anybody -- anybody got anything?  All right,

21  thank you for your participation in this call.

22       I think you have all been very well prepared,

23  and speaking on behalf of the court, we appreciate

24  your attendance on such short notice.

25       So I think the judges are going to stay on,

```
 1  and the rest of you I think can sign off.

 2           ATTORNEYS SIMULTANEOUSLY:  Thank you, Your

 3  Honor.

 4           (The further hearing in this matter was

 5  concluded at 4:45 p.m.)

 6                         - - -

 7                      CERTIFICATE

 8           I certify that the foregoing is a correct

 9  transcript from the record of proceedings in the

10  above-entitled matter.

11  s/  K. Ann Banta                8-30-13
    K. Ann Banta, RPR, CRR          Date
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```