**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

| | | |
|---|---|---|
| **KENNY BROWN, individually and in his official capacity as the Boone County Clerk, et al.,** | ) ) ) ) | **ELECTRONICALLY FILED** |
| Plaintiffs, | ) | **Civil No. 2:13-cv-00068** |
| v. | ) ) | **DJB-GFVT-WOB** |
| **THE COMMONWEALTH OF KENTUCKY, et al.,** | ) ) ) | |
| Defendants. | ) | |
| **MARTIN HERBERT, et al.** | ) ) ) ) | |
| Plaintiffs, | ) | **Civil No. 3:13-cv-00025** |
| v. | ) ) | **DJB-GFVT-WOB** |
| **KENTUCKY STATE BOARD OF ELECTIONS, et al.,** | ) ) ) ) | |
| Defendants. | ) ) | |

## THE LEGISLATIVE RESEARCH COMMISSION'S COMBINED REPLY / RESPONSE BRIEF SUPPORTING ITS MOTION TO DISMISS AND OPPOSING PLAINTIFFS' JOINT MOTION FOR FINAL JUDGMENT

Defendant, Kentucky Legislative Research Commission ("LRC"), by counsel, hereby submits this combined reply / response brief supporting its motion to dismiss and opposing the joint motion for final judgment filed by the *Brown* and *Herbert* Plaintiffs (collectively "Plaintiffs"). Because the 2002 state legislative districts that the Plaintiffs challenged have been repealed and replaced, and because the Plaintiffs have not presented any issues for the court to adjudicate, the case is moot and there is no longer an active case or controversy before the court, and therefore the Plaintiffs' claims must be dismissed.

**I.     Introduction**

The Plaintiffs assert that entry of a final judgment is necessary to prevent the continued use of the 2002 state legislative district lines in future elections. They support this assertion by referencing arguments made by individual defendants prior to the Kentucky General Assembly enacting House Bill 1 in the 2013 First Extraordinary Session, in which new districts were established, and by the unsupported statement that without entry of a final judgment and continued application of the court's previously entered injunction, "special elections will be held under the unconstitutional 2002 lines." [R.E. #118 at 12].

However, Plaintiffs' arguments ignore the Kentucky General Assembly's plenary power to construct the elections framework in the Commonwealth of Kentucky, and the Plaintiffs further ignore the stated intent by the General Assembly, as the Commonwealth's legislative body, that the new legislative districts established by House Bill 1 be given immediate effect as to elections. Simply put, the Kentucky Constitution gives the Kentucky General Assembly, acting as a body, the authority to govern elections, and by enacting House Bill 1, the Kentucky General Assembly affirmatively expressed its intent that all future elections after the effective date of the Act would utilize the districts established therein.

The Plaintiffs' arguments regarding the continuing jurisdiction of this Court to enforce its injunction are without merit, and the enactment of House Bill 1, combined with the Plaintiffs' stated intent to not challenge the new districts [R.E. #118 at 3], results in this case being moot and there no longer being a live case or controversy before this Court.

**II.    Argument**

    **A.     The 2002 Districts Have No Continuing Legal Effect And Cannot Be Used In Any Future Elections**

2

The Kentucky Constitution gives the Kentucky General Assembly plenary authority to redistrict the state into Senatorial and Representative Districts.  KY. CONST. § 33.  Additionally, the General Assembly is given the authority to establish the elections framework for the Commonwealth of Kentucky.  KY. CONST. § 153.  The General Assembly acts as a body and its intent is construed by reference to the plain language used in the Acts that it enacts.  <u>See</u>, <u>e.g.</u>, <u>Jefferson County Bd. Of Educ. v. Fell</u>, 391 S.W. 3d 713, 718 (Ky. 2012) (summarizing the basic principles of statutory construction used by the courts of Kentucky) (citation omitted).  In the present case, the General Assembly expressed its intent in House Bill 1 that the 2002 legislative districts would have no continuing legal effect after the effective date of the Act and that those districts would not be used in any future elections.

In enacting House Bill 1, the General Assembly did not simply pass a new set of legislative district lines to accompany the then existing 2002 district lines.  Rather, every section of Chapter 5 of the Kentucky Revised Statutes that contained the 2002 districts was "repealed and reenacted."  <u>See</u>, <u>e.g</u>., Acts 2013 (1st Ex. Sess.), ch. 1, sec. 1, available at: http://www.lrc.ky.gov/statrev/tables/13ss/actsmas.pdf.  Additionally, the General Assembly stated its intent as to how the new districts should be used for elections in an emergency clause, where it was stated:  "Whereas the districts established by this Act shall be effective for all elections held after the date of enactment of this Act . . . ."  <u>Id</u>. at sec. 143.  And, by that emergency clause the "Act [took] effect upon its passage and approval by the Governor or upon its otherwise becoming law."  <u>Id</u>.  When the Kentucky Governor, Steven L. Beshear, signed the Act on August 23, 2013, the 2002 districts were effectively repealed, and those districts had no continuing effect as a matter of law.  Further, the new legislative districts were then immediately

effective for all elections after that date, as expressly intended by the General Assembly.[1]

Therefore, Plaintiffs' stated necessity for entry of a final judgment and for the court's continued jurisdiction to enforce the injunction is erroneous as a matter of state law.

### B. The Enactment Of House Bill 1 Renders This Case Moot

As soon as the General Assembly repealed the 2002 districts and replaced them with the new state legislative districts in House Bill 1, the Plaintiffs' claims became moot. "'The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties . . . .'" McPherson v. Michigan High School Athletic Ass'n, Inc., 119 F.3d 453, 458 (6th Cir. 1997) (citing Crane v. Indiana High Sch. Athletic Ass'n, 975 F.2d 1315, 1318 (7th Cir. 1992)) (internal quotation marks omitted). In McPherson, the Sixth Circuit determined that the question of whether a person should be allowed to compete during the 1995 basketball season was moot because, as observed in an earlier case, "the season is over, and there are no more games to be played." Id.

The Plaintiffs' claims regarding the 2002 districts have been extinguished by the repeal of those districts, and no further action by the court can "make a difference to the legal interests of the parties." Additionally, the redistricting process, like the basketball season in McPherson, is over, and absent any claims regarding the districts enacted in House Bill 1, there are no additional "games" to be played over the 2002 districts, and as in McPherson, the Plaintiffs' claims are therefore moot.

---

[1] It should also be noted that the Governor has the authority to issue a writ of election when a vacancy exists in either house of the General Assembly and when the General Assembly is not in session. KRS 118.730. In the case of the vacancy in the 7th House District created by former Representative John Arnold's recent resignation, Governor Beshear has stated the election will be held in the new 7th District as constituted under House Bill 1. See http://mycn2.com/politics/in-wake-of-arnold-s-resignation-questions-about-probes-persist-while-parties-scramble-for-candidates and the Governor's direct statement to the media on the election at http://www.youtube.com/watch?feature=player_embedded&v=ZlTPcZ-alZg (last accessed September 23, 2013).

### C. The Plaintiffs Present No Live Case Or Controversy For The Court to Adjudicate

Not only does enactment of House Bill 1 render the case moot, but the Plaintiffs have admitted they have no claims to adjudicate following that enactment. In both their motion for entry of final judgment and their combined reply / response, the Plaintiffs have affirmatively stated that they do not object to the new legislative districts enacted by the General Assembly in House Bill 1. Counsel for the *Brown* Plaintiffs further stated at the beginning of this litigation that: "what this action is all about is conducting 2014 elections in a timely and orderly manner with constitutional maps. We would prefer the defendants perform their constitutional duty, enact constitutional maps." [R.E. #50 at 35:18-35].

As noted above, the Kentucky General Assembly has indeed enacted new legislative districts, which the Plaintiffs have stated they will not challenge in this Court. In the Plaintiffs own words, because the General Assembly has "performed their constitutional duty" and established a process that will ensure that the "2014 elections [will be conducted] in a timely and orderly manner with constitutional maps" the Plaintiffs present no live case or controversy for this Court to adjudicate, and therefore, the court no longer has jurisdiction over this case. See Kentucky Right to Life, Inc. v. Terry, 108 F.3d 637, 644 (6th Cir. 1997) ("Legislative repeal or amendment of a challenged statute while a case is pending on appeal usually eliminates this requisite case-or-controversy because a statute must be analyzed by the appellate court in its present form."). This is no different at the district court level, as "[t]he mootness inquiry must be made at every stage of a case . . . ." McPherson, 119 F.3d at 458.

Because the Plaintiffs currently present no live case or controversy, and because this analysis must be made at every stage of a case, the Plaintiffs' claims have been rendered moot by

the enactment of House Bill 1 and this Court no longer has subject matter jurisdiction over Plaintiffs' claims.

### D.  Dismissal Is The Appropriate Remedy

When a case is rendered moot and there is no longer a live case or controversy before a federal court, the appropriate remedy is dismissal.  Id.; see also Kremens v. Bartley, 431 U.S. 119, 128-29 (1977) ("The fact that the Act was passed after the decision below does not save the named appellees' claims from mootness . . . [t]hus the enactment of the new statute clearly moots the claims of the named appellees . . . .").  Although many redistricting cases that reach similar points as this case are dismissed by agreed order or stipulations, and thus written opinions or orders are difficult to obtain, the federal reports and appendix, via Westlaw, do contain several orders or opinions indicating that enactment of new districts, or the analogous preclearance process in the case of jurisdictions covered by Section 5 of the Voting Rights Act of 1965, counsels in favor of a federal court dismissing the actions as moot upon the enactment or preclearance.  See, e.g., Terrazas v. Slagle, 821 F. Supp. 1162, 1166 (W.D. Tex. 1993) ("Since the plaintiffs challenged only H.B. 150, and failed to challenge the current house plan as embodied in H.B. 1, their claims are moot and we dismiss without prejudice the house action."); Puerto Rican Legal Def. and Educ. Fund, Inc., v. Gantt, 796 F. Supp. 698 (E.D.N.Y. 1992) (dismissing action as moot after state adopted new congressional redistricting plan to replace the prior decade's plan); Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1, 831 F. Supp. 1453, 1461 (E.D. Ark. 1993) ("Now that the PCBE has adopted a new districting scheme, the plaintiffs' allegations that the 1986 plan violated the Voting Rights Act have become moot."); Turcotte v. LePage, 2011 WL 6057844 at *2 (D. Me. 2011) (dismissing claims against officials as moot following adoption of congressional redistricting plan by state legislature);

Hancock Cnty. Bd. Of Sup'rs v. Ruhr, 2013 WL 4483376 (S.D. Miss. 2013) (dismissing case as moot following election under local malapportioned districts); Georgia v. Holder, 748 F. Supp. 2d 16, 17 (D.D.C.) ("Thus, once the Department of Justice grants administrative preclearance, any pending judicial preclearance action becomes necessarily moot." (citing Morris v. Gressette, 432 U.S. 491 (1977))).

As the federal court in Turcotte stated in dismissing the plaintiffs claims: "The deed is done and the requested relief is impossible to achieve." Turcotte, 2011 WL 6057844 at *2. In the present case, dismissal is an even more appropriate remedy here because not only is the deed (state legislative redistricting) done, the Plaintiffs are not even requesting any relief. Consequently, the LRC's Motion to Dismiss should be granted and the Plaintiffs' Motion for Entry of Final Judgment should be denied.

### III. CONCLUSION

For the foregoing reasons, the LRC's Motion to Dismiss should be granted, the Plaintiffs' Motion for Entry of Final Judgment should be denied, and the Plaintiffs should be entitled to no further relief herein.

Respectfully submitted,

s/ Gregory A. Woosley
Gregory A. Woosley
Assistant General Counsel
Legislative Research Commission
Capitol Annex, Room 170
Frankfort, Kentucky 40601
Telephone: (502) 564-8100
Fax: (502) 564-6543
Greg.woosley@lrc.ky.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 23, 2013, a copy of the foregoing combined Reply / Response brief was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail or electronic mail. Parties may access this filing through the Court's electronic filing system.

                                                s/ Gregory A. Woosley