UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| **KENNY BROWN, individually and in his official capacity as the Boone County Clerk, et al.,** | ELECTRONICALLY FILED |
| Plaintiffs, | Civil No. 2:13-cv-00068 |
| v. | DJB-GFVT-WOB |
| **THE COMMONWEALTH OF KENTUCKY, et al.,** | |
| Defendants. | |
| **MARTIN HERBERT, et al.** | |
| Plaintiffs, | Civil No. 3:13-cv-00025 |
| v. | DJB-GFVT-WOB |
| **KENTUCKY STATE BOARD OF ELECTIONS, et al.,** | |
| Defendants. | |

**DEFENDANT SPEAKER STUMBO'S REPONSE TO THE STATEMENT CONCERNING CONSTITUTIONALITY**

Comes Defendant, Kentucky Speaker of the House Greg Stumbo, by counsel, and submits this response to the *Statement of Senator Robert Stivers Concerning the Constitutionality of the Senatorial District Plan in HB 1,* (R 116).

**I.    The Kentucky Supreme Court Interprets the Kentucky Constitution**

The Senate President asks this Court to rule that the Senate redistricting plan with a deviation of -6.7% meets all requirements of the Kentucky Constitution. See: *Statement Concerning Constitutionality* (R 116), at p. 7. This claim is problematic because, as this Court is

1

aware, the Kentucky Supreme Court has very recently struck down Senate and House plans which contained deviations of only 5.52% and 5.38%, respectively. See: *LRC v Fischer*, 366 SW3d 905 (Ky. 2012), herein *"Fischer IV"*. The Kentucky Supreme Court could not have been clearer in holding that the Kentucky Constitution provides this protection, *regardless of the federal rule*, holding:

> Independent of the federal standard under the Fourteenth Amendment, Section 33 [of the Kentucky Constitution] imposes a dual mandate that Kentucky's state legislative districts be substantially equal in population and preserve county integrity. A reapportionment plan satisfies these two requirements by (1) maintaining a population variation that does not exceed the ideal legislative district by −5 percent to +5 percent and (2) dividing the fewest number of counties possible. **Our holding that House Bill 1 is unconstitutional is based not upon federal law, but upon Section 33 of the Kentucky Constitution.**

Id., at p 911, footnotes deleted, emphasis supplied.

It would be manifestly improper for this Honorable Tribunal to now rule that an even greater deviation is somehow permissible under the Kentucky Constitution. It would be a severe breach of federal/state comity for this Court to summarily announce what public policy considerations are paramount under Kentucky's own Constitution, especially where no party is challenging the Senate plan here. Quite simply, no case or controversy is presented. Clearly, a three-judge district court may act only when justiciable case or controversy is shown to exist, and absent a justiciable case or controversy, is required to dismiss action for lack of jurisdiction. *Long v. District of Columbia,* 469 F2d 927, (C.A.D.C. 1972). An issue cannot be resolved where, as here, the parties lack standing to raise the issue. See: *American Commuters Ass'n v. Levitt,* 279 F. Supp. 40 (S.D. N.Y. 1967), affirmed, 405 F2d 1148.

No showing has been made that any voter with standing is even a party to this suit. Under such circumstances, standing cannot be assumed. The Senate has devised a plan presumptively depriving voters of Equal Protection of the law, but no representative of those

deprived voters is before this Court. In fact, all parties in this action have affirmatively stated that they will NOT contest the validity of the redistricting plans. Because no such affected voter is a party, there is nobody to raise the issue of whether another plan that avoids violating Section 33 of the Kentucky Constitution was available to the Senate, no one to assert that protecting incumbents is a poor substitute for Equal Protection of the law, and no one to argue that the right to an equal voice in state government outweighs political expediency. In fact, no one will argue the converse of the Senate's position in this matter at all. In the absence of this fundamental requirement of a "case or controversy", it is difficult to see how the requested relief can appropriately be granted.

This Court's special session-eve Order of August 16th, 2013 (R 97) sets out with admirable clarity this Tribunal's position on the elasticity of federal protections for Kentucky's voters. Any new ruling would presumably reiterate the existing Order in this regard. But the Order is much less clear on deviation allowance under Section 33 of the Kentucky Constitution. This is understandable, since this is a question exclusively for the Kentucky courts. This case presents exactly the sort of fundamental public policy issues appropriate only for state resolution.

Finally, the Senate's argument that its plan is somehow less suspect because it *under represents* Kentucky voters in the affected district rather than *over representing* them is clearly without merit. (See: *Statement Concerning Constitutionality*, at p. 3). **A redistricting plan is presumptively unconstitutional whether the 5% limit is exceeded positively or negatively**, as the above excerpt from *Fischer IV* makes plain. The violation of Equal Protection is just as objectionable whether it dilutes the vote of the district residents or dilutes the vote of everyone else in the Commonwealth. This argument should be taken for naught.

**II.     Advisory Opinions are not permitted**

All parties have agreed that dismissal is now the only option available to this Court. This is not surprising, since no party is challenging the newly drawn redistricting plans. Yet the Senate now asserts, for the first time, that this Court should formally rule that the Senate plan (and only the Senate plan) is consistent with the Kentucky Constitution. In essence, the Senate asks that this court establish precisely what public policies underlie the Kentucky Constitution, and subvert the role of the Kentucky judiciary in interpreting the foundational law of the Commonwealth.

This course of action is inappropriate for a litany of reasons. Caselaw arising under the statute authorizing the creation of this highly unusual tribunal makes clear that no such advisory opinion can be rendered. Instead, this matter must be dismissed on grounds of mootness. An action regarding legislative redistricting must be dismissed when the facts change in a way that renders the controversy moot. See generally Erwin Chemerinsky, Federal Jurisdiction § 2.5, at 109-10 (1989). Once a controversy is resolved, a court loses jurisdiction to decide the matter and its ruling on the merits of the resolved action constitutes an advisory opinion. U.S. Const. art. III, § 2; *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 395-96 (1980).

The law is clear in holding that claims raised in the federal action regarding legislative redistricting became moot once a state adopts a legislative redistricting plan. Further action by the federal court does not resolve any pending claims and constitutes an advisory opinion, which must be vacated if entered. See, e.g., *United States Dep't of Treasury v. Galioto,* 477 U.S. 556, 559-60 (1986) (amendment of statute rendered action moot); *Kremens v. Bartley,* 431 U.S. 119, 128-29 (1977).

This Court must recognize that it would be highly inappropriate to rule on the Senate's belated request because no party has challenged the redistricting plans in this action. Certainly, any such ruling would have little practical effect given the decisive role played by Kentucky's Constitution in the Senate's request. Whether the Kentucky judiciary would sacrifice Equal Protection for the purpose of protecting incumbent Senators is an interesting question, but one not answerable by this Court. (See: *Statement Concerning Constitutionality* at p. 6, claiming that protection of incumbents supports the presumptively unconstitutional deviation.) It is notable that no Kentucky case is cited by the Senate in support of this controversial assertion. Obviously, it is immaterial whether a federal court would so rule, the issue is whether Kentucky Courts would recognize this as an essential public interest outweighing the protections of the Kentucky Constitution.

### III. Abstention is Appropriate Here

The record shows clearly that this Court has no continuing jurisdiction over this matter. Even if the Court had jurisdiction, (which is specifically denied), it should abstain from ruling on the argument presented. This Court advised the Speaker and President, on the eve of the Extraordinary Session, that the federal Constitution endorses deviations in excess of 16%. The pending *Statement Concerning Constitutionality* heavily depends upon that advice. (Id, at p. 5). Perhaps this federal guidance encouraged passage of the plan now being unilaterally proffered by the Senate for review. The House, for its part, steadfastly resisted the temptation to produce a presumptively unconstitutional plan which exceeded the 5% deviation. Instead, the House recognized its duty under the Kentucky Constitution, as recently delineated by the Kentucky Supreme Court, to adhere to the controlling limits on vote dilution.

Reliance upon federal cases permitting sizable distortions of equal voting rights sheds absolutely no light upon the protections afforded Kentucky voters by the Kentucky Constitution. Federal courts must abstain where important or novel state policies must be decided by state courts. In *Burford v. Sun Oil,* 319 U.S. 315 (1943), the United States Supreme Court observed that abstention "further[s] the harmonious relation between state and federal authority," and that federal courts "should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford,supra.,* 319 U.S. at 318, 322.

> The Sixth Circuit has summarized *Burford* and its progeny as follows:
>
> The upshot of what has come to be known as ***Burford*** **abstention is this: When a case presents an unanswered question of state law "bearing on policy problems of substantial public import whose importance transcends" the case at hand and when conflicting state and federal rulings on the question "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern,"** ***Burford*** **says that a district court should stay its hand until the state courts have had an opportunity to weigh in on the matter ... The** ***Burford*** **doctrine thus tells federal courts when to exercise discretion (by considering whether a federal ruling might wreak havoc on a sensitive yet indeterminate area of state policy) and how to exercise that discretion (by avoiding immediate resolution of the state law issue).**

*Gray v. Bush,* 628 F.3d 779, 784 (6th Cir. 2010), (emphasis supplied, citation omitted). Thus, "*Burford* abstention is a method by which federal courts may defer to the pending decision of a state agency when "the state's interests are paramount and . . . [the] dispute would best be adjudicated in a state forum." *Brown v. Cassens Transport Co.,* ⸺ F.3d ⸺, ⸺, 2012 WL 1139059 at *6 (6th Cir.2012) quoting *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 728 (1996). In the present case, the Senate has long had the option of simply submitting its questionable plan to Kentucky courts for a prompt and timely declaration as to its constitutionality. For whatever reason, the Senate has decided to forego that option and instead

6

ask this Court to take actions beyond its power by usurping the role of the Kentucky judiciary. The Court must decline to take such action.

## Conclusion

For the foregoing reasons, it is plain that this Court must decline to rule upon the propriety of the Senate redistricting plan under the Kentucky Constitution.

Respectfully submitted,

/s/  Anna Stewart Whites_____
**ANNA STEWART WHITES**
600 E. Main Street
Frankfort KY 40601
 (502) 352-2373/FAX 352-6860
AnnaWhites@aol.com

**PIERCE WHITES**
Office of the Speaker
Capitol Building, Rm. 309
Frankfort KY 40601
(502) 564-3366
pierce.whites@LRC.KY.GOV

### CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2013 a copy of the foregoing Response was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's electronic filing system.

s/Anna Stewart Whites_____