# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, et al., | ) ) ) ) | |
| Plaintiffs, | ) | Civil No. 13-cv-68 |
| V. | ) | DJB-GFVT-WOB |
| | ) | |
| THE COMMONWEALTH OF KENTUCKY, et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| MARTIN HERBERT, et al., | ) ) | |
| Plaintiffs, | ) ) | Civil No. 13-cv-25 DJB-GFVT-WOB |
| V. | ) ) | |
| KENTUCKY STATE BOARD OF ELECTIONS, et al., | ) ) ) | |
| Defendants. | ) ) | |

## <u>DEFENDANT'S, GOVERNOR STEVEN L. BESHEAR'S, IN HIS OFFICIAL CAPACITY, RESPONSE TO JOINT MOTION TO ENTER FINAL JUDGMENT</u>

Comes the Defendant, Steven L. Beshear, by counsel, in his official capacity as Governor of Kentucky, and responds to Plaintiffs' Joint Motion to Enter Final Judgment [R. 110]. Defendant agrees that no final judgment need be entered, as no case or controversy remains between the parties.  The Governor further states that attorneys fees cannot be obtained against him as: 1) The Governor's role in redistricting is limited and thus he retains 11th Amendment immunity; 2) Plaintiffs are not a prevailing party as against the Governor because there was no

1

change in the legal relationship between the parties as a result of the Court's August 16 order [R. 97]; 3) Plaintiffs are not a prevailing party because they did not tender proposed maps; and 4) The Governor independently called an extraordinary session of the General Assembly and the Kentucky Legislature independently passed redistricting maps.

## I.    No Case or Controversy and the Case Should Be Dismissed as Moot

Article III of the U.S. Constitution confers judicial power on the Federal Courts only in "cases and controversies" and requires persons seeking to invoke the federal jurisdiction to allege an actual case or controversy. *Allen v. Wright,* 468 U.S. 737, 750 (1984). The legislative district lines enacted in Acts 2013 (1st Ex. Sess.), ch. 1 meet the requirements of the United States Constitution, the Kentucky Constitution, and any other applicable law. The Plaintiffs have acknowledged such in their Motion to Enter Final Judgment, where they assert that they do not offer any objections to the legislative districts enacted during the 2013 First Extraordinary Session, that there are no unresolved substantive legal issues between the parties, and that they will not seek any other relief from the Court regarding the new legislative districts. *See* Motion to Enter Final Judgment [R. 110], p. 2. Because of the enactment of new legislative districts, and because the Plaintiffs have asserted they no longer seek any relief from the Court, all of the Plaintiffs' claims are now moot and there is no live case or controversy for this Court to adjudicate. Therefore, the Court has lost subject matter jurisdiction and the Plaintiffs' claims should be dismissed as moot.

## II.    The Governor Retains 11th Amendment Immunity

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to Eleventh Amendment immunity in which it "does not bar certain actions against state officers for injunctive or declaratory relief." *Alden v. Maine*, 527 U.S. 706, 757 (1999). However, the officer must have some connection with the relief sought. In order to be a proper party, Governor

2

Beshear must have some connection with the conduct of elections; his authority as chief executive officer is insufficient. The Supreme Court provided:

> If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws.

*Ex parte Young*, 209 U.S. at 157. The Supreme Court explicitly rejected this theory. "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.*[1]

Here, Governor Beshear has no direct connection to the relief sought, *i.e.* the creation of constitutionally adequate legislative districts. The only executive authority that might remotely bear on this issue is his authority to call an extraordinary session of the legislature pursuant to KY. CONST. §80 and his veto power under KY. CONST. §88. Because a federal court cannot require a Governor to use either power, he has and always has had limited connection to the subject matter of this suit. Redistricting is committed to the General Assembly, and the conduct of elections is committed to the Secretary of State and Board of Elections by law. KY. CONST. §33 provides that "the General Assembly shall then, and every ten years thereafter, redistrict the State according to this rule." KRS 14.025(2) provides that the Division of Administration in the Department of State "shall be responsible for . . . elections," and KRS 117.015(1) provides that "there shall be a State Board of Elections which shall administer the election laws of the state

---

[1] *See also McCrimmon v. Daley*, 418 F.2d 366, 368 (7th Cir. 1969) ("It has long been held that before a state officer . . . may properly be made a party defendant to a suit to enjoin the enforcement of an act alleged to be unconstitutional, he must have some connection with the enforcement of the act").

and supervise registration and purgation of voters within the state." The Governor has little legal authority relating to redistricting or the conduct of elections. Governor Beshear cannot declare maps unconstitutional, forbid the use of unconstitutional maps, or prepare redistricting plans, which is the declaratory and injunctive relief Plaintiffs sought. Accordingly, Plaintiffs' claims for attorneys fees against Governor Beshear should be dismissed.

**III.    Brown Plaintiffs are not Prevailing Parties**

Reasonable attorneys fees are awardable to "prevailing parties" in section 1983 actions. 42 U.S.C § 1988. A plaintiff is a "prevailing party," if he or she succeeds on any significant issue in the litigation which achieves "actual relief on the merits of his claim [which] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby* 506 U.S. 103, 110, 111-12 (1992).

The Herbert Plaintiffs have never sued the Governor and, as such, are not a party in litigation against the Governor, much less a prevailing party. The Brown Plaintiffs are also not a prevailing party against the Governor because: 1) There was no change in the legal relationship between the parties as a result of the Court's August 16 order [R. 97]; 2) They did not tender proposed maps; and 3) The Governor independently called an extraordinary session of the General Assembly.

**A.  There Was No Change in the Legal Relationship Between the Parties**

Again, a plaintiff is a "prevailing party," if he or she succeeds on any significant issue in the litigation which achieves "actual relief on the merits of his claim [which] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby* 506 U.S. 103, 110, 111-12 (1992). There was no change in the legal relationship between the Brown Plaintiffs and the Governor as a result of the

4

Court's August 16 order [R. 97]. The order simply declared that the 2002 legislative maps were unconstitutional and could not be used during 2014 elections. KRS 14.025(2) provides that the Division of Administration in the Department of State "shall be responsible for . . . elections," and KRS 117.015(1) provides that "there shall be a State Board of Elections which shall administer the election laws of the state and supervise registration and purgation of voters within the state." The Governor has little legal authority relating to redistricting or the conduct of elections. As such, the Court's order did not change the legal relationship between the Brown Plaintiffs and the Governor because the order had no application to the Governor.

### B. The Brown Plaintiffs did not Tender Proposed Maps – Maps Were Passed Independently by the Kentucky Legislature

"[I]n the redistricting context the touchstone for whether a party 'prevails' is simply whether that party's map (or the map the party ultimately embraces) is ultimately adopted." *Hastert v. Illinois State Bd. of Election Comm'rs*, 28 F.3d 1430, 1443 (7th Cir. 1993), *cert. denied*, 513 U.S. 964 (1994). No court accepted the Brown Plaintiffs' maps because the Kentucky Legislature passed new maps entirely independently of the Brown Plaintiffs' requests.[2] The Brown Plaintiffs never even provided prospective legislative maps to the Court. Nevertheless, they seek judgment to be entered despite never having proposed any new legislative maps. Because only maps produced by the Kentucky legislature, not the Brown Plaintiffs, were adopted, the Brown Plaintiffs cannot be a "prevailing party."

Finally the Governor independently called a special session of the Kentucky Legislature, which independently passed new, constitutional redistricting maps. Even, assuming *arguendo* that the Brown Plaintiffs' actions did play some limited role in passing of maps that they appear to dislike, the "catalyst theory" for determination of "prevailing party" status has been rejected

---

[2] *See* Acts 2013 (1st Ex. Sess.), ch. 1

by the United States Supreme Court. *See Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.,* 532 U.S. 598, 604 (2001).

**CONCLUSION**

For the foregoing reasons, this Court should dismiss all of Plaintiffs' claims against Steven L. Beshear, in his official capacity as Governor of Kentucky.

Respectfully Submitted,
Jack Conway, Attorney General

/s/ Clay A. Barkley
**Clay A. Barkley**
Assistant Attorney General
Office of the Attorney General
700 Capital Ave. Suite 118
Frankfort, KY  40601
502-696-5300

## CERTIFICATE OF SERVICE AND NOTICE OF ELECTRONIC FILING

I hereby certify that on September 23, 2013, the foregoing was filed with the clerk of the

Court by using the CM/ECF system, which will send a notice of electronic filing to all parties.


Jack Conway,
Attorney General

/s/ Clay A. Barkley
**Clay A. Barkley**
Assistant Attorney General
700 Capital Ave.  Suite 118
Frankfort, KY  40601
502-696-5300