# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### COVINGTON DIVISION

| | |
|---|---|
| **KENNY BROWN,** *et al.,* ) | |
| ) | |
| **Plaintiffs** ) | **Case No. 2:13-cv-00068- DJB-GFVT-WOB** |
| ) | |
| ) | |
| **v.** ) | |
| ) | |
| **COMMONWEALTH OF** ) | |
| **KENTUCKY,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| **and** ) | |
| ) | |
| **MARTIN HERBERT,** *et al.,* ) | |
| ) | |
| **Plaintiffs,** ) | **(Consolidated Action Case No.** |
| ) | **3:13-cv-00025-DJB-GFVT-WOB)** |
| ) | |
| **v.** ) | |
| ) | |
| **KENTUCKY STATE BOARD OF** ) | |
| **ELECTIONS,** *et al.,* ) | |
| ) | |

**DEFENDANT, SENATE PRESIDENT ROBERT STIVERS',
REPLY TO THE RESPONSE BY DEFENDANT, HOUSE SPEAKER
GREG STUMBO [DOC. 122], IN FURTHER SUPPORT OF SENATOR
STIVERS' CONTENTION REGARDING THE CONSTITUTIONALITY
OF THE 2013 SENATORIAL DISTRICTING PLAN IN HB 1 [DOC. 116].**

Comes defendant, Senate President Robert Stivers ("Senator Stivers"), by counsel, and

tenders hereby his reply to the response of defendant, House Speaker Greg Stumbo [Doc. 122,

hereinafter "Speaker's Response at ___"], to Senator Stivers' statement concerning the

constitutionality of the 2013 senatorial districting plan contained in HB 1 (the "Senatorial Districting Plan") [Doc. 116].

## I.    INTRODUCTION

Defendant, House Speaker Greg Stumbo's ("Speaker Stumbo"), response to Senator Stivers' statement of contention as to the constitutionality of the Senatorial Districting Plan is somewhat perplexing. Having previously opined that the Senatorial Districting Plan was constitutional and having voted in favor of the Plan during the 2013 Extraordinary Session of the General Assembly, Speaker Stumbo is now contesting the constitutionality of the Senatorial Districting Plan. A copy of the recorded vote on HB 1 on August 23, 2013, is attached as **Exhibit A**.

Comments concerning the permissiveness of political discrimination in redistricting processes unapologetically enunciated by Speaker Stumbo's counsel during the status conference in these cases on June 21, 2013, validated concerns about Speaker Stumbo's intentions with respect to redistricting. In an attempt to restore some degree of credibility to the redistricting process, Senator Stivers made a public presentation of the Senate's proposed districting plan prior to the special session being convened. This afforded interested parties, such as Speaker Stumbo, with an opportunity to question or comment on the anticipated Senate districting plan. Speaker Stumbo publically commented then that he believed the Senate districting plan to be constitutional.[1] The Senatorial Districting Plan did not materially change from the draft plan which was presented prior to the special session and on which Speaker Stumbo commented.[2] The

---

[1] See *https://twitter.com/BGPolitics/status/368418453629468672*. ("Stumbo said he believes that the special session will only last five days because both Senate and House plans are constitutional.")

[2] Minor technical modifications were made to the final Senatorial Districting Plan to precincts in Jefferson and Fayette counties, none of which had or have any effect on the number of county splits or on district populations exceeding the +/- 5% standard deviation.

Speaker's Response to Senator Stivers' contentions is not credible and, moreover, does not conform to the good faith pleading requirements of the Federal Rules.

## II.    REPLY

### A.    Senator Stivers' statement of contention concerning the constitutionality of the Senate plan in HB 1 was filed in conformity with the June 27, 2013, Order of this Court.

This Court entered a Scheduling Order on June 27, 2013 [Doc. 49], which provided that "[t]he Parties shall have until Thursday, September 5, 2013, to file any final statements on contentions regarding plans passed during the Extraordinary Legislative Session scheduled to commence on August 19, 2013." Senator Stivers complied by timely filing his statement of contention. In so doing, Senator Stivers provided a summary explanation of the constitutionality of the Senatorial Districting Plan as he had done prior to the special session. [Doc. 116]. Speaker Stumbo filed no such statement on behalf of the House of Representatives. Instead, ignoring the invitation for all the parties to present their contentions on the respective plans, Speaker Stumbo argues that the Senator Stivers is attempting to subvert the authority of the Kentucky Supreme Court on state law issues. Speaker's Response at 7. His characterizations are belied, however, by the direction of this Court in the Scheduling Order, the guidance in the Opinion and Order granting summary judgment for the plaintiffs [Doc. 97], applicable state and federal case law precedent in redistricting cases and the stated purpose in Senator Stivers' contentions.

Speaker Stumbo also failed to take in account count two of the complaint in *Brown v. Commonwealth of Kentucky, et al.,* 2:13-cv-00068-DJB-JGFVT- WOB [Doc.1] in which the *Brown* plaintiffs allege state law claims consisting of violations of Sections 3, 6 and 33 of the Kentucky Constitution. Even though the *Brown* plaintiffs moved to voluntarily dismiss their state law claims pursuant to Fed. R. Civ. Proc. 41(a)(2), their motion remains pending. [Doc. 64].

Speaker Stumbo may have forgotten that, in his response to the *Brown* plaintiffs' motion to dismiss, he asked that the plaintiffs' motion be denied. [Doc.79]. Thus, it was not only prudent to include state issues in Senator Stivers' contentions, it was arguably required.[3]

**B.    The Senate districting plan complies with state and federal constitutional requirements.**

**1.    Federal decisions are relevant to the state constitutional analysis.**

Because one Senate district is outside the ±5% deviation, Speaker's Response suggests that the Senate districting plan is constitutionally suspect under the Kentucky Supreme Court's interpretation of Section 33 of the Kentucky Constitution in *LRC v. Fischer*, 366 S.W.3d 905 (Ky.2012)(hereinafter, "*Fischer IV*"). Stating that "this is a question exclusively for the Kentucky courts," Speaker Stumbo goes on to argue that federal decisions in comparable redistricting cases are not relevant to analyzing Kentucky's Constitution. Speaker's Response at 2-3. Speaker Stumbo's representation in this regard is contrary to the actual language of *Fischer IV* addressing Section 33 of the Kentucky Constitution and population deviation:

> When a reapportionment plan exceeds the plus-or-minus 5 percent variance, the legislature has the burden of proving that the plan consistently advances a rational state policy. The Supreme Court stated in *Brown v. Thomson* [462 U.S. 835, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983)], "The consistency of application and the neutrality of effect of the nonpopulation criteria must be considered along with the size of the population disparities in determining whether a state legislative apportionment plan contravenes the Equal Protection Clause." [Id. at 845-46, 103 S.Ct. 2690]. This is equally true with regard to Section 33 of the Kentucky Constitution. A rational state policy only justifies a population variance greater than 5 percent if it is both consistently applied throughout the redistricting plan and has a neutral effect.

---

[3]Senator Stivers is aware that this Court might decline to rule upon the state constitutional issues in this case pursuant to the United States Supreme Court's interpretation of the Eleventh Amendment to the federal Constitution in *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 117, 104 S.Ct. 900, 917 (1984); however, the language in *Fischer IV* cannot be ignored.

4

> There are also limitations to acceptable population variance. Redistricting plans cannot pursue other rational policies at the total expense of population equality. This would violate Section 33 of our Constitution and the Equal Protection Clause of the Fourteenth Amendment. For example, a redistricting plan that divides no counties but results in large population inequality would be unconstitutional. When districts exceed plus-or-minus 5 percent population variance from the ideal district, the ultimate question is whether the plan consistently advances a rational state policy and, if so, whether the population disparities among the districts that have resulted from the pursuit of this plan exceed constitutional limits.

*Id.* at 915. Clearly, in its own enunciation of the parameters of acceptable population deviation, the Kentucky Supreme Court cited federal precedent from the United States Supreme Court in *Brown v. Thomson*. Contrary to Speaker Stumbo's characterization, based on the same analysis by the Kentucky Supreme Court in *Fischer IV*, *supra*, it was certainly appropriate for Senator Stivers to cite federal court precedent in his statement of contention.

### 2.    The Senate districting plan satisfies the *Fischer IV* criteria.

"A rational state policy only justifies a population variance greater than 5 percent if it is both consistently applied throughout the redistricting plan and has a neutral effect." *Fischer IV* at 915. Further, a "redistricting plan that divides no counties but results in large population inequality would be unconstitutional." *Id.* As explained in Senator Stivers' contentions, the small population deviation in the Senatorial Districting Plan facilitates the rational policy of not pairing incumbents while simultaneously splitting the fewest number of counties. It is consistently applied and has the neutral effect of pairing no incumbents of either political party. With an overall deviation of 11.41%, the Senate plan does not even approach the "large population inequality" prohibited by *Fischer IV*. *Id.* The United States Supreme Court has approved a plan with a maximum deviation of 16.4% in order to respect political boundaries, and another federal court has described a .92% deviation above 10% as "slight."  See *Mahan v Howell*, 410 U.S. 315 (1973), and *Deem v. Manchin*, 188 F.Supp.2d 651, 656 (N.D.W.Va. 2002).

5

In *Fischer IV* the Kentucky Supreme Court struck down 2012 HB 1 as violating Section 33 of the Kentucky Constitution because neither the House nor the Senate reapportionment plan divided the fewest number of counties mathematically possible and the basis for a population deviation in excess of ±5% was not consistently applied throughout the reapportionment plan as a whole in the House plan. *Fischer IV* at 915.  Specifically, while the Legislative Research Commission argued in *Fischer IV* that the House reapportionment plan exceeded a ten percent deviation to prevent division of LaRue County, the Court noted that alternative conforming plans revealed that "greater population inequality … is not a necessary consequence of pursuing county integrity." *Id.* It is thus a complete misreading of *Fisher IV* for Speaker Stumbo to make the summary statement that the "Kentucky Supreme Court has very recently struck down Senate and House plans which contained deviations of only 5.52% and 5.38%, respectively," as if that were the crux of the Court's analysis. Speaker's Response at 2. Quite clearly, that was not the case.  In sum, the constitutional flaws and extreme partisanship which existed in the 2012 HB 1 districting plans in *Fischer IV* are not present in the Senatorial Districting Plan.

### C.    Senator Stivers does not seek an "advisory opinion".

The contentions filed by Senator Stivers do not call for an "advisory opinion" of the Court as claimed by Speaker Stumbo.  The Speaker's Response incorrectly alleges that "the Senate now asserts…that this Court should formally rule that the Senate plan (and only the Senate plan) is consistent with the Kentucky Constitution." Speaker's Response at 4. Senator Stivers' contention complies with the requirements of the June 27th Scheduling Order permitting parties to "file any final statements on contentions regarding plans passed during the Extraordinary Legislative Session." Should this Court be inclined to address the contentions, that

6

is certainly the prerogative of the Court; however, as the Speaker's Response now makes clear, sufficient controversy exists which removes the question from the category of being advisory.

### III.    CONCLUSION

Based on the foregoing, the Speaker's Response is not credible. In it, he purports to contest the constitutionality of the Senatorial Districting Plan he voted to approve and which he publically stated was constitutional. Confident of both its constitutionality and fairness, Senator Stivers offered the Senatorial Districting Plan prior to and during the 2013 Extraordinary Session of the General Assembly. The Senatorial Districting Plan was appended to the House redistricting plan as a committee amendment, was reported out of the Senate State and Local Government Committee on August 22, 2013, by a vote of 11-0, passed the full Senate on August 23, 2013, by a vote of 35-2 and was concurred in by the House of Representatives by a vote of 83-17.  No competing floor amendments were presented and no objections were raised to the Senatorial Districting Plan by members of the Senate. While Speaker Stumbo's response certainly strikes a bitter partisan tone, it is quite simply without merit.

Respectfully submitted,

*/s/ Stanton L. Cave*
_____
Stanton L. Cave, Esq.
LAW OFFICE OF STAN CAVE
P.O. Box 910457
Lexington, KY 40591-0457
Telephone: (859) 309-3000
Facsimile: (859) 309-3001
Email: stan.cave@insightbb.com
*Special General Counsel to Senate
President Robert Stivers in his Official
Capacity*

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2013, the foregoing was served via the Court's CM/ECF electronic filing and service system.

*/s/ Stanton L. Cave, Esq.*

_____

Stanton L. Cave, Esq.