**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COMMONWEALTH OF KY, *et al.*, <br><br> Defendants. | Case No. 2:13cv00068 <br><br> **Electronically filed** |
| MARTIN HERBERT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KENTUCKY STATE BOARD OF ELECTIONS, *et al.*, <br><br> Defendants. | Case No. 3:13cv00025 |

**PLAINTIFFS' COMBINED REPLY/RESPONSE BRIEF SUPPORTING THEIR JOINT MOTION FOR FINAL JUDGMENT,
OPPOSING THE LEGISLATIVE RESEARCH COMMISSION'S MOTION TO DISMISS, AND RESPONDING TO SENATE PRESIDENT ROBERT STIVERS'S STATEMENT CONCERNING CONSTITUTIONALITY**

The *Brown* Plaintiffs and the *Herbert* Plaintiffs (collectively "Plaintiffs") in the above-styled consolidated actions hereby jointly submit this combined reply/response brief supporting their joint motion for final judgment [R.E. #110], opposing the Legislative Research Commission ("LRC")'s motion to dismiss [R.E. #115], and responding to Senate President

1

Robert Stivers's Statement Concerning Constitutionality [R.E. #116].[1] Because the Plaintiffs prevailed when the Court found Kentucky's then-operative legislative districts unconstitutional and enjoined their further use in elections, and because that injunction still has both a practical and legal effect, Plaintiffs' motion for the entry of a final judgment should be granted and the LRC's motion to dismiss should be denied.

I.   PROCEDURAL HISTORY

In these consolidated actions, the Plaintiffs challenged, under the Fourteenth Amendment's Equal Protection Clause, Kentucky's then-operative legislative districts as contrary to the "one person, one vote" mandate. Plaintiffs specifically sought a declaration that the 2002 maps were unconstitutional, and they further sought the entry of a permanent injunction barring the official capacity defendants from using those maps in future Kentucky elections. After an expedited discovery phase, the Plaintiffs sought summary judgment on their claims regarding the 2002 maps and the parties fully briefed that issue.

On August 16, 2013, this Court granted Plaintiffs' Joint Motion for Summary Judgment [R.E. #67], finding that Kentucky's 2002 legislative map violated the Fourteenth Amendment [R.E. #97]. The Court granted Plaintiffs' requested declaratory relief and permanently enjoined the Secretary of State and the official capacity Kentucky State Board of Elections defendants

---

[1] In addition to the arguments below, Plaintiffs also note that despite the Speaker's assertion that he conceded that the "2002 maps were unconstitutional for use in any future election," no other defendant did so. [R.E. #50 at 66:14-68:20 (Secretary of State refused to concede), 69:7-23 (Governor refused to concede), 70:3-75:1 (President Stivers refused to concede).] Moreover, the Speaker later repudiated that apparent concession by filing a ten-page response in opposition to the Motion for Summary Judgment, which included his argument that continued use of the 2002 maps did not result in any Equal Protection violation. [R.E. #84 at 6-7.] He also argued that *Legislative Research Commission v. Fischer*, 366 S.W.3d 905 (Ky. 2012), gave the legislature the right to continue to use the 2002 maps. [R.E. #84 at 8-9.] President Stivers filed a similar response, taking the same position [R.E. #86 at 3-6, 9], as did the LRC. [R.E. #75 at 9-21, 33-38].

from "administering further elections pursuant to those districts." [*Id*. at 28.] The Court ruled on the merits of this case only *after* extensive briefing by all of the parties, including Speaker Stumbo and the LRC, both of whom argued, *inter alia*, that the 2002 maps did not violate Plaintiffs' rights under the Fourteenth Amendment. [R.E. #84 at 6-7; R.E. #75-1 at 9-11.] Moreover, the Court also retained continuing jurisdiction over the case "to follow the process previously set forth in its Scheduling Order, which shall ensure that, whether by legislatively enacted maps of the Kentucky General Assembly or remedial action of this court, the votes of the citizens of the Commonwealth of Kentucky shall all carry equal weight for the elections of 2014." [R.E. #97 at 28.]

After entry of the declaratory and injunctive relief, Speaker Stumbo moved to amend the Court's permanent injunction to allow the use of Kentucky's 2002 legislative maps for any special elections that might be conducted before the operative date of any newly-adopted maps. [R.E. #98.] Speaker Stumbo then moved to amend the injunction to allow the use of the 2002 maps to conduct any special elections that might need to occur prior to the next Regular Session. [R.E. #104.] Both efforts to amend the previously-entered permanent injunction, however, were unsuccessful. [R.E. #108.]

Following the General Assembly's enactment of new legislative districts, Plaintiffs reviewed those maps and ultimately concluded that they did not intend to file any objections to them — a fact communicated to the Court in writing when Plaintiffs moved for entry of a final judgment. [R.E. #110.] Speaker Stumbo, however, opposes Plaintiffs' motion asserting that entry of a final judgment is inappropriate. [R.E. #114.] According to the Speaker, Plaintiffs' motion should be denied and, instead, these actions dismissed with prejudice because "there remain no issues subject to judicial decision." [*Id*. at 4.] Similarly, the LRC's motion to dismiss also seeks

3

dismissal of these consolidated actions with prejudice because, according to it, this Court now lacks subject matter jurisdiction and Plaintiffs' claims are moot. [R.E. #115 at 1; R.E. #115-1 at 3.]

## II.   ARGUMENT

### A.   This Court Has Jurisdiction To Enter A Final Judgment

In seeking dismissal of these actions with prejudice, the LRC asserts that dismissal is necessary because the Court lacks subject matter jurisdiction. [R.E. #115; R.E. #115-1.] According to the LRC, the Court lacks jurisdiction to enter a final judgment because the Plaintiffs do not intend to file any objections to Kentucky's newly-adopted legislative maps; thus, according to the LRC, there is no case or controversy. [R.E. #115; R.E. #115-1.] This argument, however, is premised upon a fundamental misapplication of jurisdictional principles.

Of course, federal courts lack subject matter jurisdiction over matters that do not rise to the level of a case or controversy. *Allen v. Wright*, 468 U.S. 737, 750 (1984). But here, the Court clearly possesses jurisdiction over these actions. In fact, the Court adjudicated Plaintiffs' claims regarding the 2002 maps after extensive briefing by the parties. The Court granted summary judgment to Plaintiffs on those claims, and it also awarded Plaintiffs the entirety of the relief they sought — declaratory and injunctive relief barring future use of the 2002 maps. But that ruling did not conclusively resolve the litigation because the legislature had not yet enacted new legislative districts to replace the unconstitutional 2002 maps. Thus, the Court retained jurisdiction over these cases in order to adjudicate any claims that may arise with the newly-enacted maps and, if necessary, adopt judicially-drawn maps. [R.E. #97 at 28 (ordering continuing adherence to Scheduling Order to "ensure that, whether by legislatively enacted maps of the Kentucky General Assembly *or remedial action of this court*, the votes of the citizens of the Commonwealth of Kentucky shall all carry equal weight for the elections of 2014." (emphasis

4

added).] But, once the General Assembly enacted new maps and the Plaintiffs expressed their intention not to assert new or additional claims regarding those maps, the Court did not lose its ability to enter a final judgment consistent with its early rulings regarding the 2002 maps, nor did the creation of new maps prevent the Court from conferring finality on that earlier judgment retroactively.

Specifically, there is a long-recognized power of courts of equity to effectuate their decrees by injunctions or writs of assistance and thereby avoid relitigation of questions once settled between the same parties. *See Root v. Woolworth*, 150 U.S. 401, 411-412 (1893); *Hamilton v. Nakai*, 453 F.2d 152 (9th Cir. 1971), *cert. denied*, 406 U.S. 945 (1972). This equitable power has been codified by Congress in the All Writs Act, 28 U.S.C. § 1651. *Hamilton*, 453 F.2d at 157. The All Writs Act gives federal courts the power to issue injunctions in aid of their jurisdiction. In addition, courts hold that despite its express language referring to "aid of . . . jurisdiction," the All Writs Act also empowers federal courts to issue injunctions to protect or effectuate their judgments. *See Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 985 F.2d 1067, 1069 (11th Cir. 1993); *Kinnear-Weed Corp. v. Humble Oil & Ref. Co.*, 441 F.2d 631, 637 (5th Cir. 1971), *cert. denied*, 404 U.S. 941 (1971); *Ward v. Pa. N.Y. Cent. Transp. Co.*, 456 F.2d 1046, 1048 (2d Cir. 1972); *Olin Corp. v. Ins. Co. of N. Am.*, 807 F. Supp. 1143, 1152 (S.D.N.Y. 1992). And when a court issues an injunction, it automatically retains jurisdiction to enforce it. *See*, *e.g., Suntex Dairy v. Bergland*, 591 F.2d 1063, 1068 (5th Cir. 1979); *Plaquemines Parish Comm. Council v. United States*, 416 F.2d 952, 954 (5th Cir. 1969) ("Generally, a district court retains jurisdiction to enforce its prior orders."); *United States v. Fisher*, 864 F.2d 434, 436 (7th Cir. 1988); *McCall-Bey v. Franzen*, 777 F.2d 1178, 1183 (7th Cir.

5

1985); *cf.* 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2961, at 391-92 (2d ed. 1995).

Here, the Court awarded summary judgment to Plaintiffs on their claims relating to the 2002 maps, and it granted the entirety of Plaintiffs' requested declaratory and permanent injunctive relief on those claims. That order had all of the hallmarks of a final judgment. *See Clevenger v. Oak Ridge Sch. Bd.*, 848 F.2d 189, No. 87-5314, 1988 WL 56726, at *4 (6th Cir. 1988) (unpublished) ("[A] final judgment is one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness, for giving effect to the judgment and leaves nothing to be done in the cause save to superintend, ministerially, the execution of the decree.") (quoting *City of Louisa v. Levi*, 140 F.2d 512, 514 (6th Cir. 1944)). The mere fact that the court retained jurisdiction to account for a possible future contingency that never arose does not render invalid that previous ruling, nor does it otherwise divest this Court of jurisdiction to enter a final judgment or the ability to confer finality upon that earlier ruling. *See, e.g.*, *Dowty v. Pioneer Rural Elec. Coop., Inc.*, 770 F.2d 52, 56 (6th Cir. 1985) (remanding with instructions "to enter final judgment *nunc pro tunc*"); *see also Riverdale Cotton Mills v. Ala. & Ga. Mfg. Co.*, 198 U.S. 188, 195 (1905) (a court has inherent power to enforce its own judgment); *accord Cooper v. Aaron*, 358 U.S. 1 (1958). All that remains is the mere formality of officially recognizing the practical effect of this Court's summary judgment ruling, with the entry of a final judgment.

6

B.  **Mootness Does Not Apply here and Entry of a Final Judgment is Appropriate**

1.  This case is not moot, because this Court has already adjudicated the constitutional violation.

Speaker Stumbo opposes Plaintiffs' motion for entry of a final judgment because "there remain no issues subject to judicial decision." [R.E. #114 at 4.][2] Similarly, the LRC seeks dismissal of this action with prejudice on the basis of mootness. [R.E. #115; R.E. #115-1.] They both apparently maintain that these consolidated actions are now moot because: 1) the General Assembly enacted new legislative maps to replace the 2002 maps, and 2) Plaintiffs have indicated that they do not intend to challenge the newly-enacted maps. [R.E. #114; R.E. #115-1 at 2-3.] But both Speaker Stumbo and the LRC err regarding the import of Plaintiffs' decision not to object to the newly enacted maps, and they further err in construing the relevant decisions regarding mootness.[3]

---

[2]     Instead of citing any legal authority for his position that the case should be dismissed, Speaker Stumbo instead devotes his response to arguing why, he thinks, Plaintiffs are not prevailing parties in this litigation. Plaintiffs are, of course, prevailing parties because they succeeded on the primary issue in this litigation — whether the 2002 maps violated the Fourteenth Amendment's "one person, one vote" mandate — that resulted in a court-ordered change in the parties' legal relationship, benefitting Plaintiffs. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 789 (1989); *Buckhannon Bd. & Care Home, Inc., v. W. Va. Dep't of Health & Human Servs.*, 532 U.S. 598, 605 (2001). Plaintiffs more fully articulate the reasons why they are prevailing parties in Section II.D. below.

[3]     It must be noted that even though Plaintiffs will not file any objections to the newly-adopted maps, it does not mean others will not (or cannot) do so, particularly those intent on filing a state court challenge under the Kentucky Constitution. Plaintiffs relied upon many factors in reaching their decision, and others who undertake a similar analysis might reach a different conclusion. For example, the Senate map exceeds the +/-5% deviation standard articulated by the Kentucky Supreme Court, and the House map appears to have many Democratic districts with populations approaching the -5% deviation, with many Republican districts towards the +5% deviation. Without predicting the outcome of any such claims, those variances are such that others may be able to articulate non-frivolous claims in state court alleging violations under the Kentucky Constitution. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) (federal courts lack authority to enjoin state officials from future violations of state law). While the possibility of future state court challengers may contribute to

7

At the outset, Speaker Stumbo and the LRC must meet a "heavy" burden in establishing mootness. *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). This case is not moot, as Plaintiffs have prevailed on the merits, entitling Plaintiffs to prevailing party status and the recovery of their costs and reasonable attorneys' fees. Specifically, Plaintiffs' suits challenged Kentucky's 2002 maps. The parties fully litigated the validity of those maps, and this Court entered its judgment awarding summary judgment to Plaintiffs and issuing the requested declaratory and permanent injunctive relief. That ruling conclusively resolved Plaintiffs' only asserted claims and rendered Plaintiffs prevailing parties. The ruling only lacks formal finality due to the prospect of additional or different claims should the parties litigate further, either relating to newly-adopted maps or the need to adopt judicially-drawn maps. As noted in Section II.A. above, the absence of further litigation does not now render moot the action such that the Court cannot enter a final judgment regarding its earlier ruling.

By contrast, if the Court had not ruled regarding the 2002 maps prior to the General Assembly's adoption of new maps, then the LRC's argument regarding mootness could have greater weight because repeal of a challenged statute typically results in mootness. *Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 875 (9th Cir. 2006) ("Where intervening legislation has settled a controversy involving only injunctive or declaratory relief, the controversy has become moot." (quoting *Bunker Ltd. P'ship v. United States*, 820 F.2d 308, 311 (9th Cir. 1987)). Here, however, the enactment of new legislation did not occur as an "intervening" event, but rather as an after-the-fact event following Plaintiffs' attainment of a

---

the Speaker's (and LRC's) desire to see this case dismissed with prejudice, Plaintiffs maintain that the potentially preclusive effect of such a ruling, in fact, weighs in favor of avoiding that measure, *even if* the Court were inclined to agree that dismissal in some form were appropriate.

permanent injunction. Thus, it does not now render moot entry of a final judgment conclusively resolving this litigation.

> 2. This case is not moot, because continuation of this Court's injunction prevents special elections from occurring using unconstitutional districts, demonstrating a need for the injunction to remain in place.

Even if Plaintiffs were not already prevailing parties on the merits and entitled to a final judgment on that basis, the enactment of the recent redistricting legislation does not make *this* particular litigation moot under its facts. Although "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by *any* continuing, present adverse effects,'" *Renne v. Geary*, 501 U.S. 312, 320-21 (1991) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (emphasis added)), dismissal of a case "on grounds of mootness would be justified only if it were *absolutely clear* that the litigant no longer had *any* need of the judicial protection that it sought." *Adarand Constructors, Inc., v. Slater*, 528 U.S. 216, 224 (2000) (emphasis added).[4]

"The Supreme Court has instructed that a case becomes moot only when it is 'impossible for the court to grant *any* effectual relief whatever to a prevailing party.'" *In re Boodrow*, 126 F.3d 43, 46 (2d Cir. 1997) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)) (emphasis in *Boodrow*). Therefore, as long as a party "retains some interest in the case, so that a decision in its favor will inure to its benefit," the case is not moot. *New England*

---

[4] The Supreme Court has emphasized that the doctrine of mootness is more flexible than other strands of justiciability doctrine. In *Friends of the Earth, Inc., v. Laidlaw Environmental Services, Inc.*, the Court stated that "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing [at the time the case is brought], but not too speculative to overcome mootness." 528 U.S. 167, 190 (2000). The Court explained the practical reasons behind the flexibility of the mootness doctrine: "by the time mootness is an issue, the case has been brought and litigated, often (as here) for years. To abandon the case at an advanced stage may prove more wasteful than frugal." *Id.* at 191-92.

*Health Care Emps. Union v. Mount Sinai Hosp.*, 65 F.3d 1024, 1029 (2d Cir. 1995) (holding that repeal of challenged legislation did not moot suit where plaintiff sought redress for collateral injury suffered when legislation was in effect).

Here, Plaintiffs have an ongoing "need of the judicial protection that [they have] sought." *Adarand*, 528 U.S. at 224. As Speaker Stumbo noted in his August 19 pleading, there remains a possibility of special elections which, he maintains, would need to be conducted using the 2002 districts. [R.E. #104]. Specifically, Speaker Stumbo argued that "no fewer than 16 Attorney General Opinions" supported his argument that the 2002 maps would need to be used to conduct any special elections, irrespective of the adoption of any new maps. [R.E. #111 at 12:13-15 (citing *Brumleve v. Ruth*, 195 S.W.2d 777 (Ky. 1946))]. Speaker Stumbo further maintained that under existing Kentucky law, "the district lines that apply to a special election *must be the same geographic lines that were in effect for the election before*." [R.E. #111 at 10:23-11:1 (emphasis added)]. It seems evident, therefore, that there remains a credible threat that, absent a final judgment incorporating the permanent injunction barring further use of the 2002 maps, that any special elections will be conducted 2002 lines. In fact, Mr. Whites, counsel for the Speaker, plainly and simply acknowledged the ongoing legal effects of the injunction (and, by implication, that there were such legal effects): "The remaining issue is any special election up to the next scheduled election. . . . That would require a modification of the order, a stay won't do it." [R.E. #111 at 43:8-12]. And in light of former Representative John Arnold's recent resignation, the possibility of such a special election occurring prior to the 2014 elections seems even more likely. [5]

---

[5]   *See* Tom Loftus, *Kentucky state Rep. John Arnold resigns in wake of sexual harassment allegations*, The Courier-Journal (Louisville, Ky.), Sept. 14, 2013, http://www.courier-journal.com/article/20130913/NEWS01/309130128/Kentucky-state-Rep-John-Arnold-resigns-

This Court likewise noted this possibility, in denying the various emergency motions filed by the Speaker [R.E. #108], concluding that the Kentucky Supreme Court, in construing state law in *State Bd. of Elections v. Fischer*, 910 S.W.2d 245, 246 (Ky. 1995), did not permit a vacancy to be filled by special election using unconstitutional lines. Yet, if this Court were to grant the dismissals sought by the LRC and Speaker Stumbo, this is exactly what the result would be: the injunction would be dissolved, giving Defendants free reign to proceed with their announced intention to return to the 2002 district lines in the event of a special election.

Thus, Defendants have failed to carry their heavy burden and establish mootness, as the enactment of new redistricting plans has not "completely . . . eradicated the effects of the alleged violation." *Lamar Adver. of Penn, LLC, v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004) (citations and internal quotation marks omitted). The 2002 redistricting plans continue to

---

wake-sexual-harassment-allegations (last visited September 17, 2013); Kevin Wheatley, *Rep. John Arnold, Accused of Sexually Harassing LRC Employees, Resigns*, The State Journal (Frankfort, Ky.), Sept. 13, 2013, http://www.state-journal.com/latest%20headlines/2013/09/13/lawmaker-accused-of-sexual-harassment-resigns (last visited September 17, 2013); Jonathan Meador & R.G. Dunlop, *Kentucky Statehouse Staffers Accuse Rep. John Arnold of Sexual Harassment, Assault*, 89.3 WFPL News (Louisville, Ky.), Aug. 21, 2013, http://wfpl.org/post/kentucky-statehouse-staffers-accuse-rep-john-arnold-sexual-harassment-assault (last visited September 17, 2013). The allegations include that Arnold "inappropriately touched them and made lewd and vulgar comments in numerous incidents over several years." [Meador & Dunlop.] Defendant Stumbo was, by his own admission, aware of rumors of the harassment, which apparently began in 2010, and chose to ignore the rumors rather than investigate them – though some accounts attribute direct knowledge to him. Stu Johnson, *Top House Democrat Claims No Direct Knowledge Of Sexual Misconduct*, WEKU 88.9 (Richmond, Ky.), Aug. 21, 2013, http://weku.fm/post/top-house-democrat-claims-no-direct-knowledge-sexual-misconduct (last visited September 17, 2013); *cf.* John David Dyche, Op-Ed., *Stumbo: Cover Up and Stonewall*, WDRB TV (Louisville, Ky.), Aug. 30, 2013, http://www.wdrb.com/story/23292136/dyche (last visited September 17, 2013). The allegations included statements that the sexual harassment claims were brought to "people responsible for establishing the laws" and included reports being made to "members of the Legislative Research Commission, high-ranking Democratic representatives and a member of the Kentucky State Police." [Meador & Dunlop.]. Furthermore, LRC attorney Hendrix and Executive Director Sherman apparently met with the women who made the allegations. *Id.*

11

have "continuing, present adverse effects," necessitating ongoing judicial protection. *Renne*, 501 U.S. at 320-21. Namely, without the injunctive relief remaining in force until the current terms of legislators expire, special elections will be held under the unconstitutional 2002 lines. There are therefore ongoing, legally significant effects of the 2002 plan necessitating the continuation of judicial relief. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1194 (9th Cir. 2000) (requiring that "interim relief or events have *completely and irrevocably* eradicated the effects of the alleged violation" (emphasis added) (quoting *Davis*, 440 U.S. at 631)); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101 & n.4 (1983) ("Intervening events have not irrevocably eradicated the effects of the alleged violation." (citation omitted)).[6]

Finally, the fact that future contingencies may render a case moot in the future does not merit dismissal. Absent the continued force of this Court's injunction, in the event of a special

---

[6]   Furthermore, the enactment of new redistricting plans does not entitle Defendants to a finding of mootness based on voluntary cessation of the challenged conduct. The U.S. Supreme Court has been clear that a defendant's voluntary change in conduct moots a case only if it is "absolutely clear" that alleged wrongdoing is unlikely to recur. *Friends of the Earth*, 528 U.S. at 189. Voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of that practice "if the conduct *might* reasonably be expected to recur." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 982 (6th Cir. 2012) (emphasis added) (citations omitted). "The *heavy burden* of persaud[ing] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth*, 528 U.S. at 189 (citations and internal quotation marks omitted) (emphasis added). A case is not rendered moot where, as here, "the defendant's repeal of the objectionable [statute] would not preclude it from reenacting precisely the same provision if [an earlier] judgment were vacated." *Ne. Fla. Chapter of Assocd. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (citation and internal quotation marks omitted).

Regardless, in the event of a special election, it is Plaintiffs' position that this Court would have wide latitude in crafting appropriate equitable relief, and, consequently, this Court would have several options, including ordering that such special elections occur under the districts recently passed by the General Assembly, and perhaps waiving the one-year residency requirement under the Kentucky Constitution for candidates, insofar as they cover candidates who lived within the old districts and move to any new district prior to the special election. It is premature to resolve these issues at this point. However, if the injunction does not remain in place, the 2002 lines, by Speaker Stumbo's own admissions, will be used for such elections, as a matter of state law, notwithstanding the fact that they have been declared unconstitutional.

election, the 2002 lines *will* be used again, with Plaintiffs – and millions of other Kentuckians – having their votes diluted, despite the U.S. Supreme Court's pronouncement in *Reynolds v. Sims* that courts should "insure that no further elections are conducted under the invalid plan." 377 U.S. 533, 585 (1964). Plaintiffs have elected not to challenge 2013 SS HB1. However, that enactment does not mean that the prior harm of malapportionment and the specter of a special election using malapportioned districts is resolved *until* the current terms of the General Assembly expire due to the special election issue which, under Kentucky law, would otherwise require the use of the 2002 lines for the special elections.

### C. Dismissal with prejudice is inappropriate

Neither the LRC nor Speaker Stumbo cites any authority for their novel proposition that this Court enter a dismissal with prejudice. Case law indicates, however, that such a dismissal, even if entered, should be without prejudice. *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005). And even assuming the LRC's contention is correct that this Court now lacks subject matter jurisdiction — a proposition with which the Plaintiffs disagree — dismissals for lack of jurisdiction should generally be made without prejudice. *See Bauer v. RBX Indus., Inc.*, 368 F.3d 569, 581 (6th Cir. 2004) (vacating a district court's judgment for lack of jurisdiction and concluding (in reliance on *Costello v. United States*, 365 U.S. 265 (1960)) that the "district court should have dismissed the [statutory] claim without prejudice"); *Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001) ("Dismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice.").

### D. Plaintiffs are prevailing parties

Because Speaker Stumbo's response opposing entry of a final judgment relies primarily upon his argument that Plaintiffs are not prevailing parties, Plaintiffs reply to that contention.

13

In order to be a "prevailing party" and thus entitled to recover attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, a plaintiff must succeed "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Tex. State Teachers Ass'n*, 489 U.S. at 789 (citation and internal quotation marks omitted). "The touchstone of the prevailing party inquiry [is] the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.* at 792-93.

"A material alteration [in the parties' legal relationship] requires that '[t]he plaintiff [] obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement.'" *DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 670 (6th Cir. 2006) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)). This change in the parties' legal relationship must be court-ordered, and it must directly benefit the plaintiff "at the time of the judgment or settlement." *DiLaura*, 471 F.3d at 670 (internal quotation marks omitted); *see also Buckhannon*, 532 U.S. at 605. Moreover, the requisite court-ordered change in the parties' legal relationship can take the form of preliminary injunctive relief. *See McQueary v. Conway*, 614 F.3d 591 (6th Cir. 2010).

Cases are clear that legislative change that follows declaratory and preliminary injunctive relief which indicates probable success on the merits is sufficient to cross the threshold of prevailing party status. *Lux v. Judd*, 868 F. Supp. 2d 519, 527 n.5 (E.D. Va. 2012) (declaratory relief plus permanent injunction made plaintiff prevailing party, notwithstanding subsequent repeal by state legislature and noting that "since extrinsic events did not render this case 'moot before judgment issued,' the 'catalyst theory' rejected by the Supreme Court in *Buckhannon* is inapposite"); *Nat'l Black Police Ass'n v. D.C. Bd. of Elections*, 168 F.3d 525, 335 U.S. App.

D.C. 17 (D.C. Cir. 1999) (repeal of challenged law following injunctive and declaratory relief being granted did not change the fact that the plaintiff was a prevailing party); *Nat'l Rifle Ass'n of Am., Inc., v. City of Chicago*, 646 F.3d 992 (7th Cir. 2011) (same); *Dearmore v. City of Garland*, 237 F.R.D. 573 (N.D. Tex. 2006) (same); *Palmetto Props., Inc., v. Cnty. of Dupage*, 375 F.3d 542 (7th Cir. 2004) (same); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1355-56 (11th Cir. 2009) (same); *see also McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010) (requiring courts to conduct a "contextual and case specific inquiry" to determine whether preliminary injunctive relief sufficient to confer prevailing party status)..

Here, Plaintiffs obtained a merits-based *permanent* injunction that materially altered the parties' legal relationship in that it barred the official capacity defendants from using the 2002 maps in any future elections. And despite Speaker Stumbo's further efforts (which continue to this day) to amend that injunction to allow the continued use of the 2002 maps for any special elections prior to the 2014 Regular Session, the categorical injunction barring the 2002 maps' use remained. As such, there can be no reasonable dispute that the Plaintiffs prevailed on the central claim in these cases: whether Kentucky's 2002 maps violated the Fourteenth Amendment's Equal Protection Clause. Not only did Plaintiffs prevail on the merits of their claims, they also attained the entirety of the relief they sought: a declaratory judgment *and* court-ordered injunctive relief barring the official capacity defendants from using those maps in future Kentucky elections. Thus, because Plaintiffs obtained court-ordered relief on the central issue in this litigation, and because the relief Plaintiffs obtained directly benefitted them and materially altered the parties' legal relationship, Plaintiffs are prevailing parties in this litigation.

### E. Response to Senate President Robert Stivers' Statement Concerning Constitutionality

Plaintiffs take no position on the constitutionality of 2013 SS HB1 – they have not elected to challenge it, nor do they join in Senate President Stivers' Statement. Again, this Court need not and should not resolve this issue, but instead should simply enter final judgment as requested. Other parties, possibly in other courts, can bring any appropriate challenges if they so choose.

### III. CONCLUSION

Because both Speaker Stumbo and the LRC premise their respective arguments upon fundamental misapplications of settled jurisdictional and procedural precedents, and because the Plaintiffs are otherwise entitled to a final judgment memorializing the Court's August 16th rulings, Plaintiffs' motion for a final judgment should be granted and the LRC's motion to dismiss should be denied.

Respectfully submitted,

s/ Christopher D. Wiest
Christopher D. Wiest (KBA 90725)
Chris Wiest, Atty at Law PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513-257-1895 (v)
chriswiestlaw@yahoo.com

s/ William E. Sharp (by cdw w/ permission)
William E. Sharp
ACLU of Kentucky
315 Guthrie Street, Suite 300
Louisville, KY 40202
(502) 581-9746
sharp@aclu-ky.org

Rick Brueggemann (90619)
E. Jason Atkins (88044)
Hemmer DeFrank, PLLC
250 Grandview Dr.
Fort Mitchell, KY 41017
859/578-3855 (v)
rbrueggemann@hemmerlaw.com

*Counsel for Brown Plaintiffs*

Laughlin McDonald
ACLU Voting Rights Project
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
(404) 500-1235
lmcdonald@aclu.org

Dale Ho
ACLU Voting Rights Project
125 Broad Street
New York, NY 10004
(212) 549-2693
dale.ho@aclu.org

Ben Carter
BEN CARTER LAW PLLC
455 South Fourth Street, Suite 902
Louisville, KY 40202
ben@bencarterlaw.com
ACLU of KY Cooperating Attorney

*Counsel for Herbert Plaintiffs*

## CERTIFICATE OF SERVICE

      I certify that on September 18, 2013, I electronically filed this Plaintiffs' Joint Motion to Enter Final Judgment with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Stanton L. Cave
s.cave1@insightbb.com
Jessica A. Burke
jessica@jblawoffices.net

*Counsel for Senate President Robert Stivers*

Clay A. Barkley
clay.barkley@ag.ky.gov
Matt James
matt.james@ag.ky.gov

*Counsel for Gov. Steve Beshear, Commonwealth of Kentucky*

Lynn Sowards Zellen
lynn.zellen@ky.gov
Noel E. Caldwell
ncaldwell@caldwelllawyers.com
Jonathan T. Salomon
jsalomon@tachaulaw.com

*Counsel for Kentucky State Bd. of Elections, Secretary of State Alison L. Grimes, David Cross, John W. Hampton, Stephen Huffman, Denise May, George Russell, Roy Sizemore, and Maryellen Allen*

Pierce B. Whites
piercewhites@aol.com
Anna S. Whites
annawhites@aol.com

*Counsel for House Speaker Greg Stumbo*

Laura H. Hendrix
laura.hendrix@lrc.ky.gov
Greg A. Woosley
greg.woosley@lrc.ky.gov

*Counsel for KY Legislative Research Commission*

                                            s/ Christopher Wiest
                                            *Counsel for the Brown Plaintiffs*