**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COMMONWEALTH OF KY, *et al.*, <br><br> Defendants. | Case No. 2:13cv00068 <br><br> **Electronically filed** |
| MARTIN HERBERT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KENTUCKY STATE BOARD OF ELECTIONS, *et al.*, <br><br> Defendants. | Case No. 3:13cv00025 |

### *BROWN* PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS

The *Brown* Plaintiffs, pursuant to this Court's Order, dated October 31, 2013 [R.E. #127], submit this memorandum in support of their motion for an award of attorneys' fees and costs under 42 U.S.C. § 1988 in the above captioned matter. This request is supported by the attached Declarations of Richard Brueggemann, Christopher Wiest, and Benjamin Dusing, with supporting documentation seeking a total award of $114,651.42, of which $113,135.00 is attributable to attorney fees and $1,516.42 to costs/out of pocket expenses. The requested fees and costs are from April 16, 2013 through November 18, 2013. Counsel have documented their

1

hours and have attached declarations seeking a total award of $114,651.42, of which $113,135.00 is attributable to attorney fees and $1,516.42 to costs/out of pocket expenses.

## PROCEDURAL HISTORY

On April 26, 2013, Plaintiffs filed this action, seeking redress under the Fourteenth Amendment's Equal Protection Clause, Kentucky's then-operative legislative districts as contrary to the "one person, one vote" mandate. [R.E.#1]. Plaintiffs specifically sought a declaration that the 2002 maps were unconstitutional, and they further sought the entry of a permanent injunction barring the official capacity defendants from using those maps in future Kentucky elections. After an expedited discovery phase, the Plaintiffs sought summary judgment on their claims regarding the 2002 maps and the parties fully briefed that issue.

On August 16, 2013, this Court granted Plaintiffs' Joint Motion for Summary Judgment [R.E. #67], finding that Kentucky's 2002 legislative map violated the Fourteenth Amendment [R.E. #97]. The Court granted Plaintiffs' requested declaratory relief and permanently enjoined the Secretary of State and the official capacity Kentucky State Board of Elections defendants from "administering further elections pursuant to those districts." [*Id*. at 28.] The Court ruled on the merits of this case only *after* extensive briefing by all of the parties, including Speaker Stumbo and the LRC, both of whom argued, *inter alia*, that the 2002 maps did not violate Plaintiffs' rights under the Fourteenth Amendment. [R.E. #84 at 6-7; R.E. #75-1 at 9-11.] Moreover, the Court also retained continuing jurisdiction over the case "to follow the process previously set forth in its Scheduling Order, which shall ensure that, whether by legislatively enacted maps of the Kentucky General Assembly or remedial action of this court, the votes of the citizens of the Commonwealth of Kentucky shall all carry equal weight for the elections of 2014." [R.E. #97 at 28.]

After entry of the declaratory and injunctive relief, Speaker Stumbo moved to amend the Court's permanent injunction to allow the use of Kentucky's 2002 legislative maps for any special elections that might be conducted before the operative date of any newly-adopted maps. [R.E. #98.] Speaker Stumbo then moved to amend the injunction to allow the use of the 2002 maps to conduct any special elections that might need to occur prior to the next Regular Session. [R.E. #104.] Both efforts to amend the previously-entered permanent injunction, however, were unsuccessful. [R.E. #108.]

After additional litigation, this Court entered final judgment in favor of Plaintiffs, preventing the future use of the 2002 maps. [R.E. #127]. Given the contentious nature of this litigation – and perhaps the redistricting process in Kentucky generally, this case created an incredible 127 docket entries to date – in the matter of approximately 7 months. [R.E.]

## ARGUMENT

### I. PLAINTIFFS ARE PREVAILING PARTIES

In order to be a "prevailing party" and thus entitled to recover attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, a plaintiff must succeed "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Tex. State Teachers Ass'n*, 489 U.S. at 789 (citation and internal quotation marks omitted). "The touchstone of the prevailing party inquiry [is] the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.* at 792-93.

"A material alteration [in the parties' legal relationship] requires that '[t]he plaintiff [] obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement.'" *DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 670

3

(6th Cir. 2006) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)). This change in the parties' legal relationship must be court-ordered, and it must directly benefit the plaintiff "at the time of the judgment or settlement."  *DiLaura*, 471 F.3d at 670 (internal quotation marks omitted); *see also Buckhannon*, 532 U.S. at 605. Moreover, the requisite court-ordered change in the parties' legal relationship can take the form of preliminary injunctive relief. *See McQueary v. Conway*, 614 F.3d 591 (6th Cir. 2010).

Cases are clear that legislative change that follows declaratory and preliminary injunctive relief which indicates probable success on the merits is sufficient to cross the threshold of prevailing party status. *Lux v. Judd*, 868 F. Supp. 2d 519, 527 n.5 (E.D. Va. 2012) (declaratory relief plus permanent injunction made plaintiff prevailing party, notwithstanding subsequent repeal by state legislature and noting that "since extrinsic events did not render this case 'moot before judgment issued,' the 'catalyst theory' rejected by the Supreme Court in *Buckhannon* is inapposite");  *Nat'l Black Police Ass'n v. D.C. Bd. of Elections*, 168 F.3d 525, 335 U.S. App. D.C. 17 (D.C. Cir. 1999) (repeal of challenged law following injunctive and declaratory relief being granted did not change the fact that the plaintiff was a prevailing party); *Nat'l Rifle Ass'n of Am., Inc., v. City of Chicago*, 646 F.3d 992 (7th Cir. 2011) (same); *Dearmore v. City of Garland*, 237 F.R.D. 573 (N.D. Tex. 2006) (same); *Palmetto Props., Inc., v. Cnty. of Dupage*, 375 F.3d 542 (7th Cir. 2004) (same); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1355-56 (11th Cir. 2009) (same); *see also McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010) (requiring courts to conduct a "contextual and case specific inquiry" to determine whether preliminary injunctive relief sufficient to confer prevailing party status).

Of course, here, this Court ordered a permanent injunction.  [R.E.#127; R.E.#128].  The U.S. Supreme Court has been clear that this is clearly sufficient to confer prevailing party status

4

on Plaintiffs. *Lefemine v. Wideman*, 133 S. Ct. 9, 184 L. Ed. 2d 313 (2012) ("an injunction or declaratory judgment, like a damages award, will usually satisfy [the prevailing party test]").

## II. ATTORNEY FEES ARE TO BE COMPUTED BY THE LODESTAR METHOD

Computation of a prevailing party's fee award under § 1988 is by the lodestar method – multiplying the number of hours "reasonably expended on the litigation" by the reasonable hourly rate. *Wayne v. Village of Sebring*, 36 F.3d 517 (6th Cir. 1994); *Perdue v. Kenny A.*, 559 U.S. 542, 130 S. Ct. 1662; 176 L. Ed. 2d 494 (2010); *Anderson v. Wilson*, 357 F.Supp.2d 991, 995 (E.D. Ky. 2005). In computing the amount, the "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "If the fee applicant carries the burden of showing that the proposed hours and rate are reasonable, the proposed fee 'is presumed to be the reasonable fee contemplated by § 1988.'" *Anderson*, 357 F.Supp.2d at 955.

### A. The Hours Claimed Are Reasonable.

The claimed hours submitted by Plaintiffs were reasonably spent in the successful pursuit of a merits based permanent injunction, vindicating the right of millions of Kentuckians to "one person, one vote" – fending off attempts by various elected officials, particularly those of the legislative branch, to keep in place mal-apportioned districts.

The hours, in the attached declarations and time entries that they authenticate, were contemporaneously recorded and constitute time entries that demonstrate that they were actually spent working on the various issues in Plaintiffs' case. *Webb v. Bd. of Educ. Of Dyer County*,

5

471 U.S. 234, 238 (1985) ("[c]ontemporaneously recorded time sheets are the preferred practice.").[1]

The Supreme Court has instructed that "the most critical factor" governing the reasonableness of a fee award "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). In cases when "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. Accordingly, the Sixth Circuit has explained that "a reduction in attorney fees [awarded to a prevailing plaintiff] is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Isabel v City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005). Specifically, a court should not measure a plaintiff's success simply by using a ratio of successful claims to claims raised. *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 421 F.3d 417, 423 (6th Cir. 2005). Indeed, the Sixth Circuit has "repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.'" *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 554 (6th Cir. 2008) (quoting *Deja Vu*, 421 F.3d at 423). Instead, "[w]hen claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Deja Vu*, 421 F.3d at 423 (internal quotation marks omitted). This is because when several claims arise from a common core of facts, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." *Hensley*, 461 U.S. at 435.

---

[1] These contemporaneous entries have been typed to assist the Court in its review – and constitute entries into each attorneys' billing system. This is also consistent with widely accepted practice. *United State Football League v. National Football League*, 704 F.Supp. 474 (S.D.N.Y. 1989).

6

The decision to staff this matter with, primarily, two counsel, Mr. Wiest and Mr. Bruegemann, was likewise justified and reasonable. *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281 (9th Cir. 2004) (noting case's "complexity" and "tremendous importance" as factors supporting reasonableness of decision to assign a lead counsel and two junior attorneys to work on case and looking to staffing of defense counsel as a guidepost for reasonableness). Each Defendant in this case had at least two counsel assigned – some had even more than that. Furthermore, the time entries reveal no overlap or duplication of effort or work. (Declaration Wiest; Declaration Brueggemann; Declaration Dusing). Labor was divided – typically with one primary drafter of documents and one reviewer. (Declaration Wiest; Declaration Brueggemann; Declaration Dusing). Furthermore, counsel made the decision to even further streamline the work and hours expended by filing documents with the *Herbert* Plaintiffs. (Declaration Wiest; Declaration Brueggemann; Declaration Dusing).

The total number of hours expended on this matter by Christopher Wiest is 313.2 hours. (Declaration Wiest). The total number of hours on this matter by Richard Bruegemann is 98.2 hours. (Declaration Bruegemann).

A few points are in order on the amount of hours involved: first, each Defendant elected not to stipulate to the fact that the 2002 districts were mal-apportioned at the initial hearing on this matter. [R.E. #50 at 66:14-68:20 (Secretary of State refused to concede), 69:7-23 (Governor refused to concede), 70:3-75:1 (President Stivers refused to concede); R.E. #84 at 6-7 (Speaker refused to concede); R.E. #86 at 3-6, 9 (President Stivers refusal to concede); R.E. #75 at 9-21, 33-38 (LRC refused to concede)]. Had they, discovery and significant motion practice would have been avoided. Furthermore, Plaintiffs offered a stipulation between the parties as to population data from the Census. (Declaration Wiest). This, too, was rejected by Defendants.

(*Id.*). Had they accepted this stipulation, significant discovery could have been avoided. (*Id.*). Defendants filed motion after motion, raising issue after issue, and, even after losing certain motions, re-raised issues in subsequent "emergency" filings. (*Id.*). This, too, raised the amount of hours expended.

Of Mr. Wiest's 313.2 hours, at least 240 hours of Mr. Wiest's attorney time (76.6%) was related to Defendants' refusal to concede that the district lines were mal-apportioned. Of Mr. Brueggeman's 98.2 hours, at least 65 hours (66%) of the time Mr. Brueggemann spent on the case, could have likewise been avoided.

While Defendants spent this case contesting every possible issue, usually more than once, Plaintiffs saved significant time and avoided duplication of work by working with the *Herbert* Plaintiffs' Counsel – it is an understatement to say that at least a hundred hours of attorney time was saved by this approach. And, of course, the consolidation of cases allowed the *Brown* Plaintiffs to litigate with the more contentious Defendants – the LRC, Speaker Stumbo, and President Stivers, instead of both sets of Plaintiffs doing so.

### B. The Hourly Rates Are Reasonable

Fee awards under § 1988 are generally "to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Glover v. Johnson*, 934 F.2d 703, 716 (6th Cir. 1991) (market rate established by proving that rates sought are similar to those charged "by lawyers of comparable skill, experience, and reputation"). "A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). The prevailing market rate is "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

8

A district court is permitted to "rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. & Cas. Ins. Co*., 436 F. App'x 496, 499 (6th Cir. 2011); *see Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 447 (6th Cir. 2009).

Plaintiffs seek $275 per hour for both Mr. Wiest and Mr. Brueggemann. This rate is consistent with, and even lower than, other rates awarded in the Eastern and Western Districts of Kentucky. *Maxwell's Pic-Pac, Inc. v. Dehner*, 2013 U.S. Dist. LEXIS 34596 (WD Ky. 2013) ($342 an hour reasonable); *Bench Billboard Co., Inc. v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:05-CV-172-H, 2007 U.S. Dist. LEXIS 71137 (W.D. Ky. filed Sept. 25, 2007) (awarding $305 and $275 per hour); *Am. Canoe Ass'n v. City of Louisa*, 683 F. Supp. 2d 480 (EDKY 2010) (awarding $300 per hour); *Say v. Adams*, 2009 U.S. Dist. LEXIS 23863 (WD KY 2009) ($300 an hour appropriate for attorney with several years of federal court litigation experience).

Similarly, this particular matter was filed in the Northern Division of the Eastern District of Kentucky – which is essentially the greater Cincinnati area. Rates approved by the Southern District of Ohio's Western Division are similarly supportive of the claimed rates. *Hunter v. Hamilton County Bd. of Elections*, 2013 U.S. Dist. LEXIS 141297 (Sept. 30, 2013) (looking at "Rubin" rates of $299 for attorneys with 8 years' experience and approving rates up to $400 per hour).

Furthermore, the fact of the matter is that Mr. Wiest actually charges more than this rate to certain of his clients, and the requested rate is less than the $350 per hour agreed to by Plaintiffs in their engagement agreements with counsel. (Declaration, Wiest). This rate is also supported by the Declaration of the Hon. Benjamin Dusing, a litigator in Northern Kentucky,

9

who has provided testimony regarding the market rates in Northern Kentucky, where the *Brown* case was brought. (Declaration Dusing).

Thus, Mr. Wiest has spent 313.2 hours on this case, and Mr. Brueggemann 98.2, for a total of 411.4 hours X $275/hour, for a total of $113,135.00. Incidentally, these fees are not unlike those fees incurred in *Fischer IV*, where $186,855 was ordered to be paid by the Defendants in that redistricting case – which did not involve as many issues as this case did.[2]

### C. The Out of Pocket Costs Are Reasonable

The costs include the filing fees for this matter ($350), costs for process service ($230), an out of town lunch to attend the scheduling conference/hearing in this matter ($18), costs to purchase data from the Kentucky Board of Elections to determine whether to continue the challenge ($461.50), costs for the transcript ($39.60), mileage to attend the scheduling conference/hearing in this matter ($91.80), postage ($25.52), and the expert costs for Dr. McDonald ($300), for a total of $1,516.42. (Declaration Wiest; Declaration Brueggemann).[3]

## III.  CONCLUSION

Plaintiffs in the *Brown* matter have demonstrated that they are prevailing parties. Using the lodestar method, as required, they have further documented their entitlement to $113,135.00 in attorney fees, and $1,516.42 in costs.

---

[2] http://blogs.courier-journal.com/politics/2012/11/29/lrc-preparing-to-pay-redistricting-suits-lawyer-fees/ (last visited 11/20/2013); http://www.kentucky.com/2012/11/15/2409036/legislature-must-pay-186000-legal.html (last visited 11/20/2013).

[3] Certain of these expenses are included on the Bill of Costs, submitted also herewith.

Respectfully submitted,

s/ Christopher D. Wiest
Christopher D. Wiest (KBA 90725)
Chris Wiest, Atty at Law PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513-257-1895 (v)
chriswiestlaw@yahoo.com

Rick Brueggemann (90619)
E. Jason Atkins (88044)
Hemmer DeFrank, PLLC
250 Grandview Dr.
Fort Mitchell, KY 41017
859/578-3855 (v)
rbrueggemann@hemmerlaw.com

*Counsel for Brown Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on November 20, 2013, I electronically filed this Brown Plaintiffs' Motion for Attorney Fees with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Stanton L. Cave | Pierce B. Whites |
| s.cave1@insightbb.com | piercewhites@aol.com |
| Jessica A. Burke | Anna S. Whites |
| jessica@jblawoffices.net | annawhites@aol.com |
| *Counsel for Senate President Robert Stivers* | *Counsel for House Speaker Greg Stumbo* |
| | |
| Clay A. Barkley | Laura H. Hendrix |
| clay.barkley@ag.ky.gov | laura.hendrix@lrc.ky.gov |
| Matt James | Greg A. Woosley |
| matt.james@ag.ky.gov | greg.woosley@lrc.ky.gov |
| | |
| *Counsel for Gov. Steve Beshear, Commonwealth of Kentucky* | *Counsel for KY Legislative Research Commission* |

11

Lynn Sowards Zellen
lynn.zellen@ky.gov
Noel E. Caldwell
ncaldwell@caldwelllawyers.com
Jonathan T. Salomon
jsalomon@tachaulaw.com

*Counsel for Kentucky State Bd. of Elections, Secretary of State Alison L. Grimes, David Cross, John W. Hampton, Stephen Huffman, Denise May, George Russell, Roy Sizemore, and Maryellen Allen*

William E. Sharp
Laughlin McDonald
Dale Ho
Ben Carter
ACLU of Kentucky
315 Guthrie Street, Suite 300
Louisville, KY 40202
(502) 581-9746
sharp@aclu-ky.org

*Counsel for ACLU*

s/ Christopher D. Wiest
*Counsel for the Brown Plaintiffs*