UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, *et al.*, <br><br>                          Plaintiffs, <br><br> v. <br><br> COMMONWEALTH OF KY, *et al.*, <br><br>                          Defendants. | Case No. 2:13cv00068 <br><br> **Electronically filed** |
| MARTIN HERBERT, *et al.*, <br><br>                          Plaintiffs, <br><br> v. <br><br> KENTUCKY STATE BOARD OF ELECTIONS, *et al.*, <br><br>                          Defendants. | Case No. 3:13cv00025 |

**MEMORANDUM IN SUPPORT OF *HERBERT* PLAINTIFFS' MOTION
FOR AWARD OF ATTORNEYS' FEES AND COSTS**

The Plaintiffs in *Herbert, et al. v. Kentucky State Board of Elections, et al.*, Case No. 3:13cv00025 ("*Herbert* Plaintiffs"), by counsel, submit this memorandum in support of their motion for an award of attorneys' fees and costs in the above-styled action.  The requested fees and costs are attributable to work spent preparing, filing, and litigating this matter, and for the present fees motion. The accompanying declarations establish counsels' time, requested hourly rates, and the amount of costs incurred to date.

**Procedural History**

On December 11, 2012, the ACLU of Kentucky sent a letter to House and Senate leadership in Kentucky's General Assembly urging them to enact new legislative districts in the then-impending 2013 Regular Session. [RE #67-19: ACLU Letter.] The ACLU of Kentucky highlighted the constitutional necessity for redistricting in light of the fact that Kentucky's legislative districts (that were enacted in 2002) were grossly mal-apportioned in violation of the Fourteenth Amendment's "one person, one vote" mandate, and it further explained that failure to enact new legislative districts during the 2013 Regular Session would likely trigger legal challenges and result in "costly litigation expenses." [*Id*. at 2-3.][1] Unfortunately, the General Assembly disregarded the ACLU's admonition and failed to enact new legislative maps.[2]

Following the General Assembly's failure to enact constitutionally permissible state legislative districts in 2012 *and* its failure to enact new maps during the 2013 Regular Session, the *Herbert* Plaintiffs filed this action in the Eastern District of Kentucky on May 10, 2013, seeking: 1) a declaration that, in light of the 2010 Census data, the 2002 maps violate the Fourteenth Amendment's Equal Protection Clause; and 2)

---

[1]  The Kentucky General Assembly did enact new maps during its 2012 Regular Session, but those maps were soon invalidated because they violated Section 33 of the Kentucky Constitution. *Joseph Fischer, et. al. v. Kentucky Legislative Research Commission*, No. 12-CI-0109 (Franklin Cir. Ct.), *aff'd in Legislative Research Comm'n v. Fischer ("Fischer IV")*, 366 S.W.3d 905 (Ky. 2012). The General Assembly's failure to enact lawful maps in 2012 resulted in the Commonwealth continuing to operate under its 2002 maps.

[2]  The General Assembly's failure to enact new legislative districts during its 2013 Regular Session was consistent with the advice it received from Kentucky Governor Steve Beshear who urged its members to delay redistricting in favor of other policy matters. [RE #67-21: BETH MUSGRAVE, *Beshear Asks Lawmakers to Delay Legislative Redistricting*, Lex. Herald Leader (Jan. 9, 2013).]

2

permanent injunctive relief barring the official capacity defendants from utilizing the 2002 maps in future Kentucky elections. [RE #1: *Herbert* Complaint, ¶¶ 37-39.] Because a group of Northern Kentucky voters and elected officials brought similar claims approximately two weeks earlier, the *Herbert* Plaintiffs' case was consolidated with the earlier-filed action, and the same three judge panel presided over both actions.

Once the two actions were consolidated, the parties conducted an expedited discovery and briefing schedule that culminated in the Plaintiffs filing a joint motion for summary judgment. [RE #67; RE #67-1.] Four separate responses opposing that motion were then filed by the various defendants. [RE #75-1: LRC's Memorandum in Opposition to Plaintiffs' Joint Motion for Summary Judgment; RE #81: Defendants' Response to Plaintiffs' Joint Motion for Summary Judgment (filed on behalf of KSBE, its official capacity officials, and the Secretary of State); RE #84: Speaker Stumbo's Response to *Brown* Plaintiffs' Motion for Summary Judgment; and RE #86: Response to Senate President Robert Stivers to the Plaintiffs' Joint Motion for Summary Judgment.] And the Plaintiffs thereafter filed their joint reply. [RE 88.]

On August 16, 2013, this Court granted the motion for summary judgment, declared that Kentucky's 2002 legislative maps violated the Fourteenth Amendment's Equal Protection Clause, and permanently enjoined the Secretary of State and official capacity KSBE officials from "administering further elections pursuant to" the 2002 districts. [RE #97: Memorandum Opinion & Order.] Then, in order to accommodate House Speaker Stumbo's emergency filings seeking to alter and/or stay the Court's judgment, the Court conducted a telephonic conference on August 19. [RE #103; RE #105.] The *Brown* and *Herbert* Plaintiffs thereafter filed their joint response opposing the

3

Speaker Stumbo's motions on August 20, 2013. [RE #106.] The Court then denied Speaker Stumbo's motions, thus leaving intact its earlier ruling. [RE #108: Order.]

After the General Assembly enacted new legislative districts in its Special Session, the *Herbert* Plaintiffs and the *Brown* Plaintiffs notified the Court of their intention *not* to raise objections to those newly-enacted maps, and they jointly asked the Court for entry of a final judgment incorporating the earlier declaratory and injunctive relief. [RE #110: Plaintiffs' Joint Motion to Enter Final Judgment.] On October 31, 2013, the Court granted Plaintiffs' motion for a final judgment and, in doing so, rejected the arguments of various Defendants that the case should be dismissed. [RE #127 and RE #15: Order; RE #128 and RE #16: Permanent Injunction; RE #114: Speaker Stumbo's Response to Joint Motion to Enter Final Judgment; RE #115: LRC's Motion to Dismiss; RE #120: Senate President Stivers' Notice Supporting LRC's Motion to Dismiss and Opposing Plaintiffs' Motion for Final Judgment; RE #123: Governor Beshear Response to Joint Motion to Enter Judgment.] The *Herbert* Plaintiffs now timely seek reasonable attorneys' fees and costs as prevailing parties in this litigation.

**Argument**

**I.    THE *HERBERT* PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AS PREVAILING PARTIES IN THIS ACTION.**

In civil rights cases brought under 42 U.S.C. § 1983, a prevailing party may recover attorneys' fees and costs pursuant to 42 U.S.C. § 1988. Specifically, § 1988(b) provides that in "any action or proceeding to enforce a provision of section[] ... 1983, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ..." In order for a plaintiff in a civil rights action to qualify for prevailing party status, she must attain "actual relief on the merits"

4

such that it "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012) (quoting *Farrar v. Hobby,* 506 U.S. 103, 111–112 (1992)). The success need not be on every issue raised, but must be "on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (internal quotations and citation omitted). At a minimum, "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (internal quotations and citation omitted).

Once the prevailing civil rights plaintiff achieves a material alteration in the parties' legal relationship, the plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Lefemine*, at 11-12 (internal quotations and citation omitted); *Fox v. Vice*, 131 S.Ct. 2205, 2213 (2011) (prevailing civil rights plaintiff "should ordinarily recover an attorney's fee from the defendant—the party whose misconduct created the need for legal action") (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 416 (1978)). This is so because "[w]hen a plaintiff succeeds in remedying a civil rights violation ... [s]he serves 'as a private attorney general, vindicating a policy that Congress considered of the highest priority.'" *Id*. at 2213 (quoting *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402 (1968) (per curiam)).

5

Here, it cannot be reasonably disputed that the *Herbert* Plaintiffs are prevailing parties. Specifically, they completely prevailed on the *only* claim they asserted in their Verified Complaint — that Kentucky's then-operative legislative districts violated their rights under Fourteenth Amendment's Equal Protection Clause. [RE #1: Verified Complaint (*Herbert* Verified Compl.), at ¶¶ 37.] This Court vindicated that claim in its August 16 ruling. [RE #97: Memorandum Opinion and Order.] And it further incorporated that decision into a final judgment. [RE #127 (*Brown, et al.*): Order; RE #15 (*Herbert, et al.*): Order.] Moreover, the Court awarded the *Herbert* Plaintiffs all of the relief they sought regarding the 2002 legislative maps: a declaratory judgment ruling those maps invalid and a permanent injunction barring the official capacity defendants from using them in future Kentucky elections. [RE #128 (*Brown, et al.*); RE #16 (*Herbert, et al.*).][3] The *Herbert* Plaintiffs thus obtained a final, enforceable judgment on the merits of their sole claim, *and* they obtained a material alteration in the parties' legal relationship that directly benefitted them because they resided in the overpopulated (and unconstitutionally mal-apportioned) legislative districts that Defendants are now enjoined from using again. [RE #1: *Herbert* Verified Compl., at ¶¶ 6-10; 30-32; 36.] The *Herbert* Plaintiffs are thus prevailing parties.

---

[3] The *Herbert* Plaintiffs previously agreed to entry of an order dismissing the Kentucky State Board of Elections as an organizational defendant in this action. [RE #72: Stipulation of Dismissal.] All of the remaining official capacity defendants named in the *Herbert* suit, however, were properly enjoined pursuant to the Court's permanent injunction. [RE #16 (*Herbert, et al.*)]; *Ex Parte Young*, 209 U.S. 123 (1908).

## II. THE *HERBERT* PLAINTIFFS' REQUESTED ATTORNEYS' FEES ARE REASONABLE.

Once a civil rights plaintiff attains prevailing party status, the plaintiff "should ordinarily recover an attorney's fee from the defendant ..." *Fox*, 131 S.Ct. at 2213 (internal quotations and citation omitted). In awarding attorneys' fees, the "primary concern ... is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (internal quotations and citation omitted).

The amount of fee to be recovered requires the district court to determine "the fee applicant's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821-22 (6th Cir. 2013) (internal quotations and citation omitted). Here, counsel (and one paralegal) for the *Herbert* Plaintiffs invested a total of 206.75 hours in the successful prosecution of this action. Because both the hours expended in this case (and the requested hourly rates) are reasonable, and because the *Herbert* plaintiffs completely prevailed on their sole claim, the Court should award the *Herbert* Plaintiffs their full lodestar amount as set forth below.

### A. The Hours Expended By Counsel For The *Herbert* Plaintiffs Are Reasonable.

In establishing the reasonableness of the number of hours expended by a successful civil rights plaintiff, the fee applicant "has the burden of providing for the court's perusal a particularized billing record." *Perotti v. Seiter,* 935 F.2d 761, 764 (6th Cir.1991). On this point, the Sixth Circuit has explained that:

7

> The key requirement for an award of attorney fees is that [t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.

*Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (alteration in original) (internal quotations and citations omitted).

In this case, counsel for the *Herbert* Plaintiffs — William E. Sharp, Ben Carter, Laughlin McDonald and Dale Ho — have attached their declarations containing their time entries in this case. [*See attached* Exh. 1: Sharp Decl.; Exh. 2: Carter Decl.; Exh. 3: McDonald Decl; and Exh. 4: Ho Decl.] As evidenced by those declarations, each attorney provides sufficient detail regarding the duration of time spent working on (and the specific nature of) various tasks throughout this litigation to enable this court to determine that the hours "were actually and reasonably expended" in prosecuting this case.

Specifically, the attached declarations establish that the hours contributed by counsel for the *Herbert* Plaintiffs are as follows: William Sharp (99 hours); Ben Carter (29.4 hours); Laughlin McDonald (40.45 hours); and Dale Ho (23.5 hours).[4] This investment of time is consistent with the able prosecution of a civil rights action, particularly a redistricting case where (as here) the Plaintiffs conducted an expedited discovery and briefing schedule, responded to a variety of defense arguments and motions, and engaged in an extensive and detailed analysis of legislative maps.

Further, the time entries contain sufficient detail to identify the specific tasks for which each attorney's time was devoted. Because these tasks were reasonably spent in

---

[4] The sole paralegal who provided assistance, Molly Rugg, contributed an additional 14.4 hours. [Exh.5: Rugg Timesheet; *see also* Exh. 4: Ho Decl., at ¶ 9.]

8

furtherance of this litigation (or in preparation for this litigation), and because counsel efficiently divided tasks thereby effectively eliminating unnecessary duplication of efforts, any reduction in hours is unwarranted. [*See* Exh. 1: Sharp Decl.; Exh. 2: Carter Decl.; Exh. 3: McDonald Decl.; Exh. 4: Ho Decl.] *See also Webb v. Bd. of Education of Dyer Co., Tenn.*, 471 U.S. 234, 243 (1985) ("Of course, some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.' Most obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case.").

> **B.     The Herbert Counsels' Requested Hourly Rates Are Reasonable Within The Eastern District of Kentucky.**

The second step in calculating the lodestar amount is multiplying the number of compensable hours by the attorney's hourly rate. *Waldo*, 726 F.3d at 821-22. In doing so, district courts enjoy "broad discretion" to determine the reasonableness of claimed hourly rates. *Wayne v. Vill. of Sebring,* 36 F.3d 517, 533 (6th Cir.1994). Courts must evaluate the hourly rates within "the prevailing market rate in the relevant community" — here, the Eastern District of Kentucky. *Adcock–Ladd,* 227 F.3d at 350 (quoting *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)); *see also Waldo*, 726 F.3d at 821-22 ("prevailing market rate is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.") (internal quotations and citation omitted)

Counsel for the *Herbert* Plaintiffs request the following hourly rates: William Sharp ($275); Ben Carter ($200); Laughlin McDonald ($450); and Dale Ho ($250). Given each counsel's respective qualifications, these hourly rates are consistent with those charged by attorneys in the Eastern District of Kentucky with comparable skill and

9

experience. [Exh. 6: Sammons Decl.] Specifically, William Sharp possesses thirteen years' litigation experience, more than six of which have been with the ACLU of Kentucky as staff counsel where his practice has been devoted almost exclusively to federal civil rights litigation. [Exh. 1: Sharp Decl., at ¶¶ 6-7.] In 2011 (the most recent contested fee decision in which a court assessed Mr. Sharp's hourly rate), the court awarded Mr. Sharp his requested rate of $200 per hour for appellate work spent successfully opposing certiorari in the United States Supreme Court. In granting that hourly rate, however, the court observed that "[t]he court would not be surprised if a large firm in Kentucky *were to charge more than twice Sharp's rate for an attorney with the same amount of experience to litigate the same matter*." *ACLU of Kentucky, et al. v. McCreary Co., Ky., et al.*, Civil Action No. 99-507-JBC (E.D. Ky. May 17, 2011). Similarly, Lexington-based attorney Anthony Sammons makes clear in his declaration that his familiarity with fees charged by attorneys in the Eastern District of Kentucky leads him to conclude that Sharp's requested hourly rate of $275 is comparable to that charged by attorneys with similar skill and experience, and that Sharp's requested rate is likely *below* that charged by "many attorneys" with less experience. [Exh. 6: Sammons Decl., at ¶ 5.]

The requested hourly rates for attorneys Laughlin McDonald and Dale Ho with the national ACLU's Voting Rights Project are likewise reasonable in the Eastern District of Kentucky, especially in light of their experience and expertise in voting rights cases. Specifically, Laughlin McDonald's legal career spans more than forty years, and during that time he has argued three cased before the United States Supreme Court and been counsel "in more than 175" voting rights cases. [Exh. 3: McDonald Decl., at ¶¶ 10(a),

10

10(e)-(f).] Mr. McDonald's requested hourly rate of $450 is commensurate with his skill and experience, and it is in line with hourly rates charged in the Eastern District of Kentucky by the few attorneys who possess comparable qualifications. [Exh. 6: Sammons Decl., at ¶ 6.] Likewise, Dale Ho — the current director of the ACLU's Voting Rights Project — possesses more than adequate qualifications to justify his requested rate of $250 per hour. Specifically, Mr. Ho has clerkship experience in both federal and state courts in New York, and he has significant prior election law experience during his work with Fried Frank as the NAACP Legal Defense and Education Fund Fellow, and later as Assistant Counsel in the Political Participation Group at the NAACP Legal Defense and Education Fund. [Exh. 4: Ho Decl., at ¶¶ 5-6.] As noted by Mr. Sammons, an hourly rate of $250 for Mr. Ho in a federal voting rights case in the Eastern District of Kentucky is "well within the range of fees" charged in this forum by attorneys who (like Mr. Ho) possess seven years' experience, including federal clerkship experience, and who "have specific expertise in the area being litigated." [Exh. 6: Sammons Decl., at ¶4.]

The requested hourly rate of $200 for Ben Carter is also reasonable. That lower amount reflects the fact that Mr. Carter lacks substantial federal court litigation experience, but it accounts for the fact that he nonetheless has five years' experience and that he has already distinguished himself by being named the Kentucky Bar Association's Young Lawyer of the Year in 2010. [Exh. 2: Carter Decl., at ¶¶ 2, 6.] The $200 hourly rate falls within the range charged by attorneys with comparable skill and experience for federal civil rights work in the Eastern District of Kentucky, and it falls below that which is charged for similar work with "less total experience." [Exh. 6: Sammons Decl., at ¶ 3.] Finally, the $100 hourly rate sought for Molly Rugg's paralegal assistance is also well

11

within the range charged in this forum, and should be awarded here for the 14.4 hours she reasonably devoted to this litigation. [Exh. 6: Sammons Decl., at ¶ 7 (stating that rate for paralegal services in Eastern District of Kentucky frequently billed between $95 and $185 per hour); Exh. 5: Rugg Timesheet; Exh. 4: Ho Decl., at ¶ 9.][5]

### C. Computation of Fees.

Multiplying counsels' (and one paralegal's) hourly rates by the respective number of hours each contributed to this litigation, the lodestar computation in this case is as follows:

| *Attorney* | *Rate* | *Hours* | *Lodestar* |
|---|---|---|---|
| William E. Sharp | $275 | 99 | $ 27,225.00 |
| Ben Carter | $200 | 29.4 | $ 5,880.00 |
| Laughlin McDonald | $450 | 40.45 | $ 18,202.50 |
| Dale Ho | $250 | 23.5 | $ 5,875.00 |
| *Paralegal* | | | |
| Molly Rugg | $100 | 14.4 | $ 1,440.00 |
| | | **Total** | $ 58,622.50 |

---

[5] The Supreme Court has described as "self-evident" the proposition that "'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989).

### III. THE *HERBERT* PLAINTIFFS ARE ENTITLED TO RECOVER THE FULL AMOUNT OF THEIR COSTS.

#### A. The *Herbert* Plaintiffs Are Entitled To Their Reasonable Out-Of-Pocket Expenses Under 42 U.S.C. § 1988.

In addition to reasonable attorneys' fees, prevailing civil rights plaintiffs may also recover their costs under 42 U.S.C. § 1988. "The award of statutory costs is a matter for the district court, in its best judgment as to what was reasonable and necessary, and the appellate courts will not normally interfere with the exercise of that discretion." *Waldo*, 726 F.3d at 827 (quoting *Sigley v. Kuhn,* 205 F.3d 1341, 2000 WL 145187, at *8 (6th Cir.2000)). Reasonable costs include those that are "incurred by the attorney which are normally charged to a fee-paying client." *Id*. (internal quotations and citation omitted).

Here, the costs associated with the *Herbert* litigation are detailed in the declarations of William Sharp and Dale Ho. [Exh. 1; Exh. 4.] Those costs include:

| Date | Description | Amount |
|---|---|---|
| 5/10/13 | Case filing fee | $ 400.00 |
| 5/10/13 | Postage (initial pleadings/service) | $ 73.70 |
| 6/21/13 | Travel to/from Lexington for hearing | $ 74.68 |
| 6/21/13 | Parking (Lexington) | $ 7.00 |
| 7/3/13 | Pro hac vice filing fee (Dale Ho) | $ 95.00 |
| 7/9/13 | Postage (LRC materials to expert) | $ 19.95 |
| 8/20/13 - 9/17/13 | PACER usage | $ 20.50 |
| | **Total** | $ 690.83 |

Because these above-listed costs are reasonably incurred and normally charged to fee-paying clients, the *Herbert* Plaintiffs' motion to recover these costs should be granted.

B.  **The *Herbert* Plaintiffs Are Entitled To Recover Their Expert Witness Costs Under 42 U.S.C. 1973*l*(e).**

Finally, the *Herbert* Plaintiffs also retained an expert witness, William S. Cooper, to assist with evaluating Kentucky's 2002 maps, preparing the necessary exhibits in support of their successful motion for summary judgment, and evaluating the newly-adopted maps enacted during the Special Session. Although the payment of expert fees are normally not recoverable under 42 U.S.C. § 1988, where (as here) the case involves the successful challenge on Fourteenth Amendment grounds to a state's legislative districts, reasonable expert fees *are* compensable as costs under 42 U.S.C. § 1973*l*(e). Specifically, that statute provides:

> In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, **reasonable expert fees**, and other reasonable litigation expenses as part of the costs.

42 U.S.C. § 1973*l*(e) (emphasis added). The *Herbert* Plaintiffs specifically invoked § 1973*l*(e) in their Verified Complaint as a basis upon which to recover their attorneys' fees and costs in this litigation, and the below-listed payments to Mr. Cooper were reasonably incurred and necessary in the prosecution of this important voting rights case. [RE #1: Herbert Verified Compl., at ¶ 41.] Thus, the court should grant the *Herbert* Plaintiffs' motion for the recovery of costs incurred form Mr. Cooper's services in the amount of $4,250.00 as noted in the declaration of Dale Ho. [Exh. 4: Ho Decl., at "Summary of Litigation Costs" (noting payments to Wm. Cooper in the amounts of $1,500.00 and $2,750.00 for services rendered in this litigation).]

**CONCLUSION**

The *Herbert* Plaintiffs are "prevailing parties" in this litigation, and as such are entitled to recover their reasonable attorneys' fees and costs. As noted above, the attached declarations establish with sufficient particularity the claimed hours and the reasonableness of their requested hourly rates. Because the *Herbert* Plaintiffs completely prevailed in this case on the sole claim they asserted, and because the claimed hours and hourly rates are reasonable, the Court should award them their attorneys' fees and costs in full. It should therefore award $ 58,622.50 in attorneys' fees and $ 4,940.83 in costs, pursuant to 42 U.S.C. § 1988 and § 1973*l*(e), for a total award of $ 63,563.33 for all work performed from December 3, 2012 through November 22, 2013.

Respectfully submitted,

s/ William E. Sharp
William E. Sharp
ACLU OF KENTUCKY
315 Guthrie Street, Suite 300
Louisville, KY 40202

Laughlin McDonald
ACLU Voting Rights Project
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303

Dale Ho
ACLU Voting Rights Project
125 Broad Street
New York, NY 10004

Ben Carter
BEN CARTER LAW PLLC
455 South Fourth Street, Suite 902
Louisville, KY 40202
ACLU of KY Cooperating Attorney

*Counsel for Herbert Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on November 22, 2013, I electronically filed this Memorandum in Support of *Herbert* Plaintiffs' Motion for Award of Attorneys' Fees and Costs with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Stanton L. Cave
s.cave1@insightbb.com
Jessica A. Burke
jessica@jblawoffices.net

*Counsel for Senate President Robert Stivers*

Pierce B. Whites
piercewhites@aol.com
Anna S. Whites
annawhites@aol.com

*Counsel for House Speaker Greg Stumbo*

Clay A. Barkley
clay.barkley@ag.ky.gov
Matt James
matt.james@ag.ky.gov

*Counsel for Gov. Steve Beshear, Commonwealth of Kentucky*

Laura H. Hendrix
laura.hendrix@lrc.ky.gov
Greg A. Woosley
greg.woosley@lrc.ky.gov

*Counsel for KY Legislative Research Commission*

Lynn Sowards Zellen
lynn.zellen@ky.gov
Noel E. Caldwell
ncaldwell@caldwelllawyers.com
Jonathan T. Salomon
jsalomon@tachaulaw.com

*Counsel for Kentucky State Bd. of Elections, Secretary of State Alison L. Grimes, David Cross, John W. Hampton, Stephen Huffman, Denise May, George Russell, Roy Sizemore, and Maryellen Allen*

Christopher D. Wiest
chriswiestlaw@yahoo.com
Rick Brueggemann
rbuegemann@hemmerlaw.com

*Counsel for Brown Plaintiffs*


s/ William E. Sharp
*Counsel for the Herbert Plaintiffs*

16