# EXHIBIT

# 3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, *et al.*, <br><br>                     Plaintiffs, <br><br> v. <br><br> COMMONWEALTH OF KY, *et al.*, <br><br>                     Defendants. | Case No. 2:13cv00068 |
| MARTIN HERBERT, *et al.*, <br><br>                     Plaintiffs, <br><br> v. <br><br> KENTUCKY STATE BOARD OF ELECTIONS, *et al.*, <br><br>                     Defendants. | Case No. 3:13cv00025 |

## DECLARATION OF M. LAUGHLIN MCDONALD

1. My name is M. Laughlin McDonald, one of the attorneys for the Plaintiffs. I submit this declaration in support of Plaintiffs' motion for costs and attorney fees.

2. <u>Time and Labor Required.</u> Attached hereto as Exhibit 1 is a statement of hours (40.45) and services which I rendered in this case in which all segments of time are identified as to the nature of the work performed. I personally prepared Exhibit 1 based upon a review of my contemporaneous time records, the pleadings, correspondence, and the entire record, and believe it to be true and

correct. I further certify that the work performed was reasonably necessary to the preparation and presentation of the case.

3. <u>The Novelty and Difficulty of the Questions.</u> The legal and factual issues in this case were novel and reasonably difficult.

4. <u>The Skill Requisite to Perform the Legal Services.</u> The preparation of this case required a significant level of skill and expertise.

5. <u>The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case.</u> Acceptance of this case was an important undertaking which preempted other business in my office.

6. <u>The Customary Fee.</u> In 2013 I was awarded fees at an hourly rate of $425 in <u>Large v. Fremont County, Wyoming</u>, Case No. 05-CV-0270 ( D. Wyo. September 20, 2013), a challenge to at-large elections. A copy of the order of the district court is attached hereto as Exhibit 2. In 2005 I was awarded an hourly rate of $400 in <u>Moultrie v. Charleston County</u>, C.A. No. 2:01-00562-23 (D.S.C. August 8, 2005), a challenge to at-large elections in Charleston County, South Carolina. A copy of the order of the district court is attached hereto as Exhibit 3. I was also awarded fees at an hourly rate of $400 in <u>Bone Shirt v. Hazeltine</u>, 2006 WL 1788307 *3 (D. S.D.), a voting rights case, and in <u>Cottier v. City of Martin</u>, 2008 WL 2696917 *5 (D. S.D.), another voting rights case. I believe the hourly rate I am currently seeking in this case of $450 is consistent with rates awarded attorneys in comparable complex federal litigation. The hourly rate is also consistent with, or below, the market rates of attorneys in the Atlanta area where my office is located. The Fulton County, Georgia, <u>Daily Report</u> released a survey in 2013 of hourly rates charged by attorneys in the Atlanta area. See <u>Daily Report</u>, "Hourly rates in a time of moderation," March 25, 2013, a copy of which is attached as Exhibit 4. The survey showed that the average rate billed by partners was $484 an hour, while the highest partner billing rate was $925 an hour. The rate I seek in this case is thus

comparable to those of other lawyers in the Atlanta area and demonstrates that the rate is reasonable. As the court held in <u>Martin v. University of South Alabama,</u> 911 F.2d 604, 610 (11th Cir. 1990), "[c]ommon sense dictates that the 'going rate' in the community is in actuality the most critical factor in determining a reasonable fee."

7. <u>Whether the Fee Is Fixed or Contingent.</u> The Voting Rights Project of the American Civil Liberties Union Foundation, Inc., of which I am the director emeritus, is a private charitable civil rights legal organization which accepts cases involving the constitutional and civil rights of minority and other persons on a non-fee generating basis. As such, we have no fee arrangements with our clients. However, the Voting Rights Project is dependent upon court awards of attorney's fees in appropriate cases for a percentage of its budget. To the extent that we are dependent upon court awarded fees, this was a contingent fee case because the court award was contingent upon Plaintiffs being the prevailing parties.

8. <u>Time Limitations Imposed by the Client or the Circumstances.</u> This has been a priority case and has preempted other work in my office.

9. <u>The Amount Involved and the Results Obtained.</u> Plaintiffs are the prevailing parties in this case in that they secured a permanent injunction from this Court against further use of the 2002 state legislative electoral districts (KRS 5.010-5.300).

10. <u>The Experience, Reputation, and Ability of the Attorney.</u>

a. <u>Education.</u> I received a B.A. degree from Columbia University in 1960, and an LL.B. degree from the University of Virginia Law School in 1965.

b. <u>Bar Membership.</u> I am admitted to the state bars of South Carolina and Georgia, and am admitted to practice in the Supreme Court of the United States and the Courts of Appeals for the Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Eleventh, and District of Columbia Circuits.

c. <u>Legal Practice and Experience.</u> I have been engaged in the active practice of law for more than 45 years both in private practice and as an employee of the ACLU. I have also been a member of the faculty of the University of North Carolina Law School at Chapel Hill.

d. <u>Publications.</u> I have written two book on voting rights, <u>American Indians and the Fight for Equal Voting Rights</u> (Oklahoma U. Press; Norman, 2010), and <u>A Voting Rights Odyssey; Black Enfranchisement in Georgia</u> (Cambridge U. Press; Cambridge, 2003). I have written other books on the rights of racial minorities, all of which contain chapters on voting rights, <u>i.e.,</u> <u>Racial Equality</u> (National Textbook Co.; Skokie, Ill., 1977); <u>The Rights of Racial Minorities</u> (Avon Books; New York, 1980) (co-author); <u>The Rights of Racial Minorities</u> (Southern Illinois U. Press, 1993) (co-author) (second edition); <u>The Rights of Racial Minorities</u>
(Puffin Books, 1997) (co-author) (edition for young adults).

I have written book chapters on voting rights, including: "The Bull Connor Is Dead Myth: Or Why We Need Strong, Effectively Enforced Voting Rights Laws," in <u>The Most Fundamental Right</u> ed. Daniel McCool (Bloomington; Ind. U. Press, 2012); "Beyond School Desegregation: The Impact of <u>Brown</u>," in <u>Remembering Brown at Fifty</u> eds. Orville V. Burton & David O'Brien (Urbana; U. Ill. Press, 2009); "Ballot Security," in <u>American Crisis,</u> Southern Solutions ed. Anthony Dunbar (Montgomery; NewSouth Books, 2008); "Expanding Coverage of Section 5 in Indian Country," in <u>The Future of the Voting Rights Act</u> eds. David Epstein, R. de la Graza, S. O'Halloran, & R. Pildes (New York; Russell Sage Foundation, 2006); "Redistricting and Voting Rights Issues, 1992-2002: A

Legal Analysis," in <u>Voting Rights and Minority Representation: Redistricting, 1992-2002</u> ed. David A. Bositis (Washington, D.C.; Joint Center for Political and Economic Studies, 2006); "Federal Oversight of Elections and Partisan Realignment," in <u>The Voting Rights Act: Securing the Ballot</u> ed. Richard M. Valelly (Washington, D.C.; CQ Press, 2006); "Democracy Cannot Be Exported If It Is Not Secure at Home," in <u>Where We Stand: Voices of Southern Dissent</u> ed. Anthony Dunbar (Montgomery; NewSouth Books, 2004); "Congressional Redistricting on the Basis of Race: Abrams v. Johnson," in <u>Commentaries on Law & Public Policy: 1997 Yearbook</u>, ed. Robert W. McGee (East Orange, N.J.; The Dumont Institute, 1998); "Georgia," in <u>Quiet Revolution in the South</u>, eds. Bernard Grofman & C. Davidson (Princeton; Princeton U. Press, 1994) (co-author); "The 1982 Amendments of Section 2 and Minority Representation," in <u>Controversies in Minority Voting: The Voting Rights Act in Perspective</u>, eds. Grofman & Davidson (The Brookings Institution; Washington, D.C., 1992).

I have written numerous articles or reviews on voting rights for scholarly journals and other publications, including: "The Looming 2010 Census: A Proposed Judicially Manageable Standard and Other Reform Options for Partisan Gerrymandering," 46 <u>Harv. J. Leg.</u> 243 (2009); "A Challenge to the Constitutionality of Section 5 of the Voting Rights Act: Northwest Austin Municipal Utility District Number One v. Mukasey," <u>3 Charleston L. Rev.</u> 231 (2009); "Crawford v. Marion County Board of Elections," <u>Minnesota Journal</u> (November 2008), 4; "Civil Rights In the Modern Era: Edgefield County, South Carolina, A Personal Reflection," 1 <u>Stan. J. of Civ. Rights & Civ. Lib.</u> 303 (2005); "The Voting Rights Act in Indian Country: South Dakota, A Case Study," 29 <u>Am. Ind. L. Rev.</u> 43 (2004-2005); "Rally 'Round the Flag Boys: Continued White Flight from the Democratic Party," 25 <u>Southern Changes</u> 8 (2003); "Whatever Happened to the Voting Rights Act? Or, Restoring

the White Privilege," 7 <u>J. South. Leg. Hist</u>. 207 (1999); "Can Minority Voting Rights Survive Miller

v. Johnson?" 1 <u>Mich. J. R. & L.</u> 119 (1996); "The Counterrevolution in Minority Voting Rights," 65

<u>Miss. L. J.</u> 271 (1995); "Holder v. Hall: Blinking at Minority Voting Rights," 3 <u>D.C. L. Rev.</u> 61

(1995); "This Way? Voting Rights At A Crossroads," 1 <u>Civil Rights J.</u> 36 (1995); "Racial Fairness--

Why Shouldn't It Apply to Section 5 of the Voting Rights Act?" 21 <u>Stetson L.Rev.</u> 847 (1992); "The

Quiet Revolution in Minority Voting Rights," 42 <u>Vand.L.Rev.</u> 1249 (1989); "Votes of Confidence,"

Foundation News, Sept./Oct. 1988; "An Aristocracy of Voters: The Disfranchisement of Blacks in

South Carolina," 37 <u>S.C.L.Rev.</u> 557 (1986); "Uneasy Victories in the Supreme Court," 8 <u>Southern</u>

<u>Changes</u> 15 (1986); "The Majority Vote Requirement: Its Use and Abuse in the South," 17 <u>Urban</u>

<u>Lawyer</u> 429 (1985); "The Voting Rights Act and Vote Dilution," 19 <u>Ga.Law.Rev.</u> 459 (1985); "The

1982 Extension of Section 5 of the Voting Rights Act of 1965: The Continued Need for

Preclearance," 51 <u>Tenn.L.Rev.</u> 1 (1983); "Voting Rights on the Chopping Block," 9 <u>Southern</u>

<u>Exposure</u> 89 (1981).

I have written a manual on voting rights litigation, <u>Litigation Under the Voting Rights Act</u>

(Center for Constitutional Rights, New York, 1986) (co-author), and a special report on voting rights

in the South, <u>Voting Rights in the South: Ten Years of Litigation Challenging Continuing</u>

<u>Discrimination against Minorities</u> (ACLU; New York, 1982).

e. <u>Litigation.</u> I have specialized in the area of voting rights and have been counsel in more

than 175 such cases, including:

6

Shelby County, Alabama v. Holder, 133 S.Ct. 2612 (2013) (challenge to the constitutionality of Section 5 of the Voting Rights Act); LaRoque v. Holder, 679 F.3d 905 (D.C. Cir. 2012) (challenge to the constitutionality of Section 5 of the Voting Rights Act); Large v. Fremont County, Wyoming, 670 F.3d 1133 (10th Cir. 2012) (challenge to at-large elections under Section 2 of the Voting Rights Act); Gray v. South Carolina State Election Commission, 2010 WL 753767 (D. S.C. 2010) (action to enforce Section 5 of the Voting Rights Act); Levy v. Lexington County, S.C., 589 F.3d 708 (4th Cir. 2009) (Section 2 challenge to at-large elections); Janis v. Nelson, 2009 WL 521902 (D. S.D. 2009) (dismissing a challenge to the constitutionality of Section 5); Northwest Austin Municipal Utility District Number One v. Mukasey, 573 F.Supp.2d 221 (D. D.C. 2008) (dismissing a challenge to the constitutionality of Section 5), vacated and remanded on other grounds, 557 U.S. 193 (2009); Cottier v. City of Martin, 445 F.3d 1113 (8th Cir. 2006); Stewart v. Blackwell, 444 F.3d 843 (6th Cir. 2006); Bone Shirt v. Hazeltine, 336 F.Supp.2d 976 (D. S.D. 2004); Moultrie v. Charleston County Council, 316 F.Supp.2d 268 (D. S.C. 2003); Wright v. City of Albany, 306 F.Supp.2d 1228 (M.D. Ga. 2003); Colleton County Council v. McConnell, 201 F.Supp.2d 618 (D. S.C. 2002); Emery v. Hunt, 272 F.3d 1042 (8th Cir. 2001); Old Person v. Cooney, 230 F.3d 1113 (9th Cir. 2000); RWTAAAC v. Sundquist, 209 F.3d 835 (6th Cir. 2000); Vander Linden v. Hodges, 193 F.3d 268 (4th Cir. 1999); Cuthair v. Montezuma-Cortez, Colorado School District, 7 F. Supp.2d 1152 (D. Col. 1998); Abrams v. Johnson, 521 U.S. 74 (1997); Miller v. Johnson, 515 U.S. 900 (1995); Cousin v. McWherter, 904 F. Supp. 686 (E.D. Tenn. 1995), rev'd and remanded, 46 F.3d 568 (6th Cir. 1995); Chatman v. Spillers, 44 F.3d 923 (11th Cir. 1995); Holder v. Hall, 512 U.S. 874 (1994); SRAC v. Theodore, 508 U.S. 968 (1993); Brooks v. State Board of Elections, 775 F. Supp. 1470, aff'd, 498 U.S. 916 (1990); Gresham v. Harris, 695 F. Supp. 1179 (N.D. Ga.), aff'd, 495 U.S. 954 (1990); Brown v. Board of

Commissioners of Chattanooga, Tenn., 722 F. Supp. 380 (E.D. Tenn. 1989); Jackson v. Edgefield County, South Carolina School District, 650 F. Supp. 1176 (D. S.C. 1986); Windy Boy v. County of Big Horn, 647 F. Supp. 1002 (D. Mont. 1986); McCain v. Lybrand, 465 U.S. 236 (1984); County Council of Sumter County, South Carolina v. United States, 596 F. Supp. 35 (D. D.C. 1984); Busbee v. Smith, 549 F. Supp. 494 (D.D.C. 1982), aff'd, 459 U.S. 1166 (1983); Rogers v. Lodge, 458 U.S. 613 (1982); Sumter County School District v. Edge, 541 F. Supp. 55 (M.D. Ga.), aff'd, 456 U.S. 1002 (1982); Allen v. Ellisor, 664 F.2d 391 (4th Cir.), vacated and remanded, 454 U.S. 807 (1981); Canady v. Lumberton City Board of Education, 454 U.S. 957 (1981); Berry v. Doles, 438 U.S. 190 (1978).

f. Supreme Court and Appellate Court Oral Arguments.  In addition to litigation in district courts, I have argued three cases before the Supreme Court of the United States and presented oral argument on appeal in the Fourth, Fifth, Sixth, Eight, Ninth, Tenth, and Eleventh Circuits.

g. Congressional Testimony.  I have testified before Congress on voting rights matters, including: the House of Representatives, Subcommittee on the Constitution, in 2008 on the denial and suppression of the American Indian vote (written statement); the House of Representatives, Committee on the Judiciary, in 2007 on federal oversight of the Voting Section of the Civil Rights Division of the Department of Justice; the United States Senate, Committee on the Judiciary, in 2006 on the extension of the Voting Rights Act; the House of Representatives, Committee on the Judiciary, in 2006 on extension of the Voting Rights Act; the United States Senate, Committee on Rules and Administration, in 1988 on the Universal Voter Registration Act; the House of Representatives, Subcommittee on Civil and Constitutional Rights, in 1985 in oversight hearings involving the Attorney General's proposed revisions of the Section 5 regulations; the United States

8

Senate, Committee on the Judiciary, in 1982 on the extension of the Voting Rights Act; and, the House of Representatives, Committee on the Judiciary, in 1981 on extension of the Voting Rights Act.

11. The Undesirability of the Case. It has been my experience that many members of the bar are reluctant to represent plaintiffs in voting rights cases because the possibility of recovering a fee is generally contingent and depends upon the plaintiffs being prevailing parties. The litigation is also often controversial, which makes it unattractive for some members of the bar.

12. The Nature and Length of the Professional Relationship with the Client. I have not received any fee from the Plaintiffs and have no professional fee relationship with them in any private or commercial matter.

13. Awards in Similar Cases. I believe the award requested in this case is consistent with awards made in similar voting rights cases.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 4, 2013, at Atlanta, Georgia.

s/ M. Laughlin McDonald

*Herbert v. Kentucky State Board of Elections*
Civil No. 13-cv-25 DJB-GFVT-WOB (E.D. Ken.)

**M. Laughlin McDonald, Attorney Hours**

| Date | Task | Hours |
|------|------|-------|
| 2013 February | | |
| 5 | Discuss with Kentucky ACLU legal director possible challenge to state legislative districting | .75 |
| March | | |
| 5 | Further discussions with Kentucky ACLU legal director about a one person, one vote challenge to state legislative districting and send e-mail with documents | 1.5 |
| April | | |
| 3 | Reply to a request for assistance from the Kentucy ACLU in a proposed challenge to state legislative districting | 1.0 |
| 30 | Read and edit complaint and respond by e-mails | 2.0 |
| May | | |
| 3 | Read and edit revised complaint and send e-mails | 1.5 |
| 9 | Review and edit draft of brief; prepare pro hac documents | 1.25 |
| 21 | Read pleadings in companion case (Brown v. Kentucky LRC) | .75 |
| June | | |
| 3 | Respond to e-mail from Kentucky co-counsel | .25 |
| 4 | TC with Kentucky co-counsel | .25 |
| 5 | Send pleadings in related cases to Kentucky co-counsel | 1.25 |
| 6 | Send brief in support of motion for summary judgment to co-counsel | .25 |

10

| | | |
|---|---|---|
| 10 | Read answer to complaint of defendant Stivers | .75 |
| 19 | Read and comment on response to motion to consolidate | .75 |
| 28 | Read court order and conference call with co-counsel | .75 |

July

| | | |
|---|---|---|
| 1 | Read and edit stipulations and initial response | 1.75 |
| 2 | Conference call with co-counsel; | .5 |
| | send data to William Cooper | .75 |
| 3 | Read defendant Stumbo's disclosures and documents and e-mails | 1.75 |
| 7 | Read William Cooper's expert report | 1.0 |
| 8 | Read and edit memorandum in support of motion for summary judgment | 3.25 |
| 10 | Read Brown plaintiffs expert witness designations | .15 |
| 12 | Review and edit final draft of motion and order, and read expert Report fo James Horton | 2.75 |
| 16 | Read e-mails and attached documents | 1.5 |

August

| | | |
|---|---|---|
| 5 | Read court orders | .75 |
| 19 | Read court order and defendants's motion and telephone call with co-counsel; | 2.0 |
| | telephone call with court | .45 |
| 20 | Read and edit plaintiffs' responsive brief | 1.5 |
| 26 | Telephone call with co-counsel | .25 |
| 27 | E-mails with co-counsel re costs and attorney fees; | .25 |
| | conference call with co-counsel; | .75 |
| | review state legislative plans | .5 |
| 28 | E-mail and telephone call with William Cooper re state's plans; | .35 |

11

|  |  | analyze state's redistricting plans for possible violations of Section 2 of the Voting Rights Act | 1.25 |
| 29 |  | Read defendant Stumbo's discovery requests and draft response; read drafts and comment on motion and order | .75 .25 |

September

| 6 |  | Prepare draft of a reply brief | 3.0 |
| 9 |  | Read and edit reply brief | 1.5 |
| 18 |  | Review drafts of response and e-mails concerning issues | .5 |

Total:    40.45