UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | | |
|---|---|---|
| **KENNY BROWN, individually and in his official capacity as the Boone County Clerk, et al.,** ) ) ) | ) | **ELECTRONICALLY FILED** |
| Plaintiffs, ) | | Civil No. 2:13-cv-00068 |
| v. ) | | DJB-GFVT-WOB |
| **THE COMMONWEALTH OF KENTUCKY, et al.,** ) ) ) ) | | |
| Defendants. ) | | |
| **MARTIN HERBERT, et al.** ) ) ) | | |
| Plaintiffs, ) | | Civil No. 3:13-cv-00025 |
| v. ) | | DJB-GFVT-WOB |
| **KENTUCKY STATE BOARD OF ELECTIONS, et al.,** ) ) ) ) | | |
| Defendants. ) ) | | |

**RESPONSE TO BROWN PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

Comes the Legislative Research Commission ("LRC") by counsel and states for its Response to the Brown Plaintiffs' Motion for Attorneys Fees and Costs (No. 129):

**I.  PLAINTIFFS ARE NOT "PREVAILING PARTIES" UNDER 42 U.S.C. § 1988.**

Plaintiffs do not qualify as "prevailing parties" under 42 U.S.C. § 1988. A prevailing-party determination is a conclusion of law, subject to *de novo* review by a Court of Appeals. Radvansky v. City of Olmsted Falls, 496 F.3d 609, 619 (6th Cir. 2007). The Plaintiffs' motion is

1

somewhat unclear, as it does not enumerate against whom it is seeking attorneys fees or costs. However, it is clear that Plaintiffs are not entitled to them.

The standard as set by the United States Supreme Court is that the party must obtain "actual relief on the merits of his claim that materially alters the legal relationship between the parties", in the manner of an enforceable judgment on the merits against a particular defendant or a settlement agreement enforceable through a consent decree, and may not recover attorneys' fees if a defendant voluntarily changes its behavior. Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, at 604-608 (2001). A judicial pronouncement that the defendant has violated the Constitution is not enough, unless it is accompanied by judicial relief that is enforceable against that defendant. Id, at 606. In this 2001 case, the Supreme Court restricted the case of Farrar v. Hobby, 506 U.S. 103 (1992) and overruled other cases cited in Plaintiff's memorandum, to the extent they held that there was a "catalyst theory"[1]. It rejected this "catalyst theory" espoused by Plaintiffs, as *dicta* arising from those earlier cases, and confirmed that parties cannot obtain an award without a change in the parties' "legal relationship", confirming that a voluntary act cannot be the basis for attorneys fees. Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598 (2001). In Buckhannon, the Plaintiffs argued that the legislative passage of a bill, which mooted the lawsuit and gave the Plaintiffs the relief they wanted, showed that they were the "catalyst" behind the change. However, the Supreme Court held that only a change in a legal relationship could support the award of attorneys fees, and the mere fact that a legislative change was made that did exactly what Plaintiffs wanted was not sufficient to support an award.

---

[1] For example, Texas State Teachers Association v. Garland Ind. School District, 489 U.S. 782 (full citation provided to the Court herein, not fully cited by Plaintiffs); DiLaura v. Township of Ann Arbor, 471 F.3d 666 (1992).

2

The fact that the Legislature passed a bill enacting a new redistricting plan is not a legally sufficient reason to grant attorneys' fees or costs. Therefore, courts have properly rejected the "catalyst" analysis of causation in determining prevailing party status. Statewide Reapportionment Advisory Committee v. Beasley, 99 F.3d 134, 136 (4th Cir. 1996) (legislative action after a lawsuit not sufficient, as Appeals Court properly "rejected a broad catalyst theory for awarding attorneys fees to litigants simply because their position in litigation was vindicated by an external process or sequence of events outside of the litigation.").

The second part of the Buckhannon test is also absent: that the court must be able to assess meaningful judicial relief that is enforceable against the Defendant in order to award fees against that Defendant. Here, no fees can be awarded against the legislative entities because of legislative immunity as stated below, and because the Courts have stated that they cannot enjoin legislative functions, as this would violate legislative immunity. The legislature does not enforce elections laws:

> Indeed, the Board of Elections is the only defendant in this case which has any role with respect to the relief sought by Scott, i.e., prospective relief seeking to enjoin the enforcement of the challenged voting district and a declaration as to its legality. As noted above, the legislator defendants have no role in the enforcement or implementation of the voting district. Should Scott prevail, she will still be able to obtain all of the relief she seeks. See, e.g., Smith v. Cobb County Bd. of Elections and Registrations, 230 F.Supp.2d 1313, 1315 (N.D.Ga.2002) (declaring districting plans for the Cobb County Commission unconstitutional and enjoining the county board of elections from conducting elections in accordance with them).

Scott v. Taylor, 405 F.3d 1251, 1256-57 (11th Cir. 2005).

The only action here was the external process of the Kentucky General Assembly as a body passing a legislative redistricting plan, in 2013 First Extraordinary Session House Bill 1. Therefore, in the redistricting context, the Plaintiffs cannot be considered a "prevailing party" as this occurred via the General Assembly in the legislative process. In other words, the Plaintiffs' claims and action herein had absolutely nothing to do with the relief they sought – new

3

legislative district boundaries. There was no legal relief given to the Plaintiffs as against the Legislative Defendants. Additionally, Plaintiffs did not submit any proposed maps to be adopted in this redistricting case, because the General Assembly acted to enact a redistricting plan. There is no basis for the assessment of attorneys fees against any of the Legislative Defendants.

**II.   THE LEGISLATIVE DEFENDANTS WERE CONCEDED BY PLAINTIFFS TO HAVE LEGISLATIVE IMMUNITY, AND THE COURT DISMISSED THEM FROM THIS ACTION.**

The Plaintiffs argued that the Legislative Defendants in this case were entitled to legislative immunity and belatedly asked that they be dismissed on this basis, and agree that any relief could only have been assessed against the executive branch entities in this case. However, they were the ones who sued the Legislative Defendants and brought them into this case. Although the Plaintiffs argue that the involvement of the Legislative Defendants was "contentious", the duty of any attorney is to give this Honorable Court the best information possible to make a decision and to defend a client's position with zeal. Therefore, once the Legislative Defendants were brought in against their will, those defendants had no choice but to defend the legislative process and the integrity of the General Assembly, which necessarily involved a vigorous defense of legislative independence.

The Legislative Defendants have been dismissed from this action upon the Motion of Plaintiffs. Therefore, they should not be liable for attorneys fees and costs.

Given the Plaintiffs' concession that the Legislative Defendants are entitled to legislative immunity, this Court should view the Legislative entities' involvement in this case similarly to that of an Amicus Curiae. Clearly, the presence of the legislative immunity issue weighed on the Court's mind, and the legislative entities involved wanted to give this Court the benefit of the knowledge of that branch of government, while also preserving the legislative process and its

4

independence.  See Michael K. Lowman, The Litigating Amicus Curiae, 41 Am. U. L. Rev. 1243, 1299 (1992)(noting that legislative members and bodies are routinely permitted to appear as amicus curiae to defend the legislative process, citing Yip v. Pagano, 606 F. Supp. 1566, 1568 (D.N.J. 1985), *aff'd,* 782 F.2d 1033 (3d Cir.) (permitting members of U.S. House of Representatives to appear as amicus curiae to convey importance of legislative-granted immunity to legislative process), cert. denied, 476 U.S. 1141 (1986); and League of Women Voters of Cal. v. FCC, 489 F. Supp. 517, 518 (C.D. Cal. 1980) (allowing Senate members to appear in order to assert constitutionality of federal act)).

### III. LEGISLATIVE ENTITIES MAY NOT BE ASSESSED ATTORNEYS FEES OR COSTS, AS THEY ARE IMMUNE.

Even if the Plaintiffs were legally "prevailing parties", they are not entitled to attorneys fees which are based on the premise of legislative action.  The Plaintiffs argue that they are entitled to attorneys fees and costs because they allege their lawsuit resulted in the passage of legislation. However, under governing United States Supreme Court precedent, state legislative entities may not be held liable for attorneys fees, and attorneys fees cannot be awarded on the basis of legislative acts:

> We are unable to agree that attorney's fees should have been awarded for the reasons relied on by the District Court. Although the Virginia Court and its chief justice were subject to suit in their direct enforcement role, they were immune in their legislative roles. Yet the District Court's award of attorney's fees in this case was premised on acts or omissions for which appellants enjoyed absolute legislative immunity. This was error.

Supreme Court of Virginia v. Consumers Union of U. S., Inc., 446 U.S. 719, 737-38 (1980). Even in the case where the actions were performed by non-legislative entities such as the courts, the court in Consumers Union refused to order attorneys fees to be paid.  Legislators and legislative entities exercising legislative functions are absolutely immune.  Tenney v. Brandhove, 341 U.S. 367 (1951); Eastland v. United States Servicemen's Fund, 421 U.S. 491 (1975).  The

5

Sixth Circuit recognizes that absolute immunity extends to "legislators and their aides when performing acts of a legislative nature." Cullinan v. Abramson, 128 F.3d 301, 308 (6th Cir. 1997), citing Gravel v. United States, 408 U.S. 606 (1972).

There can be no award of attorneys fees against immune Defendants. Courts may only award attorney fees "if it already had jurisdiction over a part of the award", and sovereign immunity, legislative immunity immunize defendants from attorney fees. Tenn. Dep't of Human Servs. v. U.S. Dep't of Educ., 979 F.2d 1162, 1170 (6th Cir.1992). Attorney fees may not be awarded if the defendant was immune or if the plaintiff did not prevail on the merits. Kentucky v. Graham, 473 U.S. 159, 164 (1985) ("[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant."); see also Collins v. Village of New Vienna, 75 Fed. Appx. 486, 488 (6th Cir.2003); Tucker v. City of Richmond, Ky., 388 F.3d 216, 223-24 (6th Cir. 2004).

The Legislative Research Commission, the Senate President, and the Speaker of the House, all sued in their official capacities, are all "legislative entities", and the Plaintiffs have specifically argued that they are immune. According to Kentucky law:

> LRC is part and parcel of the General Assembly and is under its control… As such, it is a part, albeit an important part, of the General Assembly, the legislative branch of government. It is part of the General Assembly by reason of its statutory birth and its statutory nourishing.

Legislative Research Com'n By and Through Prather v. Brown, 664 S.W.2d 907, 914, 917 (Ky. 1984). Legislative immunity is a bar to claims for injunctive and declaratory relief, Larsen v. Senate of Pa., 152 F.3d 240, 253 (3d Cir.1998).

Additionally, legislative immunity is not waived even if it is not asserted in an answer, and is not limited to being asserted as an affirmative defense, and is a functional federal common

6

law immunity that protects the legislative acts, regardless of who performs them.  Scott v. Taylor, 405 F.3d 1251, 1253-54 (11th Cir. 2005), citing Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 732 (1980).  Additionally, participation in litigation, including submission of information to the court such as an affidavit, does not waive the legislative privilege or immunity.  Greenburg v. Collier, 482 F. Supp. 200, 203 (E.D. Va. 1979).

The LRC continued to assert legislative immunity throughout this proceeding, as did the other legislative defendants.  Therefore, there can be no assessment of costs or attorneys fees against any of the legislative defendants.

### IV.     THE ELEVENTH AMENDMENT BARS ATTORNEY FEES OR COSTS

The Eleventh Amendment bars federal courts from hearing suits against the state, any state level department, or agency.  Kentucky v. Graham, 473 U.S. 159 (1985). The LRC, the President of the Senate, and the Speaker of the House did not make themselves parties to this suit, they were named by the Brown Plaintiffs, so these Legislative Defendants did not voluntarily invoke or submit to the court's jurisdiction and expressed no "clear intent to voluntarily submit its rights to judicial determination by a federal court."  Hornberger v. Tennessee, 782 F. Supp. 2d 561, 569 (M.D. Tenn. 2011).

Eleventh Amendment defenses to particular claims may be raised at any point, even up to and including appeal, "because the immunity issue 'sufficiently partakes of the nature of a jurisdictional bar,' Edelman v. Jordan, 415 U.S. at 678 it is an issue that may be raised at any time during the pendency of the case."  College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 131 F.3d 353, 365 (3d Cir. 1997) aff'd, 527 U.S. 666 (1999).

As stated by a member of this panel, the Eleventh Amendment bars such suits:

While '§ 1983 provides a federal forum to remedy many deprivations of civil liberties, ... it does not provide a federal forum for litigants who seek a remedy against a State for

7

alleged deprivations of civil liberties. The Eleventh Amendment bars such suits.' Will v. Mich. Dept. of State Police, 491 U.S. 58, 66 (1989). Because KSP is a subdivision of the state, it is also protected by the Eleventh Amendment and Broskys' federal claims against Farris in his official capacity are dismissed.

Brosky v. Farris, CIV. 11-308-GFVT, 2012 WL 4601283 (E.D. Ky. Sept. 28, 2012). As stated by the Western District of Kentucky:

> Under the Eleventh Amendment to the United States Constitution, this court retains no jurisdiction over claims asserted directly against the Commonwealth or its instrumentalities for monetary remedies.

Yoder v. University of Louisville, 3:09-CV-00205, 2012 WL 1078819 (W.D. Ky. Mar. 30, 2012) aff'd, 12-5354, 2013 WL 1976515 (6th Cir. May 15, 2013).

## V. SOVEREIGN IMMUNITY PRECLUDES THE ASSESSMENT OF ATTORNEYS FEES AND COSTS.

As a sovereign state, the Commonwealth of Kentucky and its constituent entities have not waived sovereign immunity from the payment of costs and attorneys fees. KRS 453.010 makes this clear. It provides in relevant part that:

> No judgment for costs shall be rendered against the Commonwealth in any action prosecuted by or against the Commonwealth in its own right, unless specifically provided by statute . . . .

KRS 453.010; *see also* CR 54.04 ("Costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the Commonwealth, its officers and agencies shall be imposed only to the extent permitted by law.").

While KRS 453.010 and CR 54.04 prohibit an award of costs to the Plaintiffs, Section 230 of the Kentucky Constitution, the Appropriations Clause, also precludes an award of attorneys' fees. Section 230 provides in relevant part that:

> No money shall be drawn from the State Treasury, except in pursuance of appropriations made by law . . . .

§ 230 KY. CONST.

## VI. IN THE ALTERNATIVE, THE FEES REQUESTED ARE NOT REASONABLE.

In the alternative, if the court decides to award fees consisting of the Commonwealth's taxpayer dollars, they should be reduced as they generally appear not to be "reasonable". The Court should subtract duplicative, unproductive, or excessive hours, as it appears that there are duplicative bills, including billing for the time spent conferring among the Plaintiffs' counsel, for status and strategy conferences. Cleveland Area Bd. of Realtors v. City of Euclid, 965 F. Supp. 1017, 1021-22 (N.D. Ohio 1997). This would defeat the alleged purpose of consolidating these actions for the purposes of avoiding such a result. Also, the hourly rate and hours billed are excessive in terms of the individual rates requested.

## CONCLUSION

Therefore, for the foregoing reasons, this Court should deny the Plaintiffs' Motion for attorneys' fees and costs.

Respectfully submitted:

s/Laura H. Hendrix\_\_\_
Laura H. Hendrix
General Counsel
Legislative Research Commission
State Capitol, Room 104
Frankfort, Kentucky 40601
Telephone: (502) 564-8100
Fax: (502) 564-6543
Email: Laura.Hendrix@lrc.ky.gov
Attorney for Legislative Research Commission

**CERTIFICATE OF SERVICE**

  I hereby certify that on December 10, 2013, a copy of the foregoing Response was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by electronic mail. Parties may access this filing through the Court's electronic filing system.

            s/Laura H. Hendrix
            Laura H. Hendrix