UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION – CIVIL

| | |
|---|---|
| KENNY BROWN, et al., ) | |
| ) | |
| Plaintiffs ) | |
| ) | *ELECTRONICALLY FILED* |
| v. ) | |
| ) | |
| THE COMMONWEALTH OF ) | Civil Action No. 2:13-cv-00068-WOB-GFVT-DJB |
| KENTUCKY, et al., ) | |
| ) | |
| Defendants ) | |

**AND**

| | |
|---|---|
| MARTIN HERBERT, et al. ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Civil Action No. 3:13-CV-025-GFVT-WOB-DJB |
| ) | |
| KENTUCKY STATE BOARD ) | |
| OF ELECTIONS, et al., ) | |
| ) | |
| Defendants ) | |

**BOARD DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS'
MOTIONS FOR ATTORNEYS' FEES AND COSTS**

For their Joint Response to the *Brown* Plaintiffs' Motion for Attorney Fees and Costs (DE #129) and the *Herbert* Plaintiffs' Motion for Award of Attorneys' Fees and Costs (DE #131), Defendants Alison Lundergan Grimes (in her official capacity as Secretary of State of the Commonwealth of Kentucky) (the "Secretary"); David Cross, John Hampton, Stephen Huffman, Denise May, George Russell, and Roy Sizemore (in their official capacities as Board Members of the Kentucky State Board of Elections) (the "Board Members"); and Maryellen Allen (in her

official capacity as Executive Director of the Kentucky State Board of Elections (the "Executive Director") (collectively, the "Board Defendants")[1] respectfully state as follows:

## FACTUAL BACKGROUND

At the time these lawsuits were filed, Kentucky's legislative districts had last been successfully redrawn in 2002. Following the 2010 Census, the Kentucky General Assembly enacted a redistricting plan in 2012, but it was declared unconstitutional by the Kentucky Supreme Court, leaving the 2002 redistricting plan in place. The General Assembly did not pass redistricting legislation during the 2013 regular legislative session.

On April 26, 2013, the *Brown* Plaintiffs filed a Complaint seeking: (1) money damages for past constitutional violations, (2) a declaration that the 2002 redistricting maps were unconstitutional, (3) an injunction prohibiting the use of the 2002 redistricting maps in future elections, and (4) injunctive relief with respect to the establishment of new redistricting maps. DE #1, at 18-19. In addition to the Board Defendants, the *Brown* lawsuit named as defendants Speaker of the House Greg Stumbo, Senate President Robert Stivers, and the Kentucky Legislative Research Commission (collectively, the "Legislative Defendants"); and Governor Steve Beshear. DE #1.[2]

---

[1] The Kentucky State Board of Elections was originally named as a defendant in both the *Brown* and *Herbert* complaints, but it has since been dismissed from both lawsuits. DE #72 (stipulation dismissing State Board as defendant in *Herbert*); DE #98 (order substituting Board Members for State Board as defendant/crossclaim defendant in *Brown*). Accordingly, the inclusion of the State Board in the October 31, 2013, Permanent Injunction (DE #128) appears to have been an error that the Court may correct pursuant to Federal Rule of Civil Procedure 60(a).

[2] Attorney General Jack Conway and the Commonwealth of Kentucky were originally named in the *Brown* complaint but were dismissed prior to the entry of the August 16, 2013, Opinion and Order. DE #40 (Order Dismissing Conway); DE #94 (Agreed Order Dismissing Commonwealth).

Similarly, the *Herbert* Plaintiffs' May 10, 2013, Complaint requested: (1) a declaratory judgment that further use of the 2002 lines would be unconstitutional, (2) a permanent injunction barring further use of the 2002 lines, and (3) that the Court institute proceedings to implement new redistricting maps. DE #1, at 7 (Case No. 3:13-25-GFVT). The only defendants named by the *Herbert* Plaintiffs were the Board Defendants. DE #1 (Case No. 3:13-25-GFVT).

On June 21, 2013, Governor Beshear called an extraordinary session of the General Assembly to address redistricting, to begin on August 19, 2013. On June 27, 2013, the Court consolidated the *Brown* and *Herbert* cases and entered a Scheduling Order essentially dividing this litigation into an initial phase and a final phase, with distinct discovery and dispositive motions deadlines. DE #47 (Order Consolidating); DE #49 (Scheduling Order). The initial phase related to the constitutionality of the 2002 redistricting plan, while the final phase was designed to address the validity of any redistricting legislation passed by the General Assembly during the extraordinary session. DE #49.

During the first phase, Plaintiffs filed a Joint Motion for Summary Judgment seeking (1) a declaratory judgment that the 2002 legislative districts were unconstitutionally mal-apportioned, and (2) a permanent injunction barring the defendants from using those districts in any future elections. DE #67, at 1-2. The Legislative Defendants filed separate responses opposing summary judgment on various grounds, while the Board Defendants took no position with respect to the constitutionality of the 2002 legislative districts and opposed only the entry of a blanket permanent injunction. *See* DE #88 (Plaintiffs' Reply, describing defendants' responses); DE #97, at 6 (Opinion and Order, noting that "several defendants" opposed summary judgment on multiple grounds). *Compare* DE #75 (LRC Response), *and* DE #84 (Stumbo Response), *and* DE #86 (Stivers Response), *with* DE #81 (Board Defendants Response).

On August 16, 2013, the Court entered a Memorandum Opinion and Order granting Plaintiffs' Joint Motion for Summary Judgment. DE #97. The Court declared the 2002 state legislative districts unconstitutional and permanently enjoined the Secretary and State Board from administering further elections pursuant to the 2002 districts. *Id*.

Speaker Stumbo immediately moved the Court to Alter or Amend and Stay the August 16, 2013, Order due to the effect it would have on the General Assembly's upcoming extraordinary session. DE ##98, 99. Following a telephonic conference and expedited briefing, the Court denied those motions. DE #108.

The August 19, 2013, extraordinary legislative session yielded House Bill 1, which redrew the Kentucky state legislative districts and, pursuant to an emergency clause, became effective when it was signed by Governor Beshear on August 23, 2013. Plaintiffs chose not to challenge the new districts and instead moved jointly for final judgment. DE #110. Each of the Legislative Defendants opposed Plaintiffs' Motion for Final Judgment. DE ##114, 121 (Stumbo Responses), DE ##119, 124 (LRC Responses), DE #120 (Stivers Response). In addition, the LRC filed a Motion to Dismiss (DE #115), and President Stivers filed a Statement concerning the constitutionality of House Bill 1 (DE #116). The Board Defendants did not oppose any of the motions filed after August 16, 2013.

On October 31, 2013, the Court granted Plaintiffs' Joint Motion, denied the LRC's Motion to Dismiss, and declined to address the constitutionality of HB1. DE #127. The final Permanent Injunction enjoins all Defendants "from administering further elections pursuant to the 2002 state legislative electoral districts." DE #128, at 2.

Plaintiffs have filed separate motions for attorneys' fees pursuant to 42 U.S.C. § 1988. DE ##129, 131. The *Brown* Plaintiffs seek an award of $114,651.42 — $113,135.00 in attorneys'

4

fees and $1,516.42 for costs and out-of-pocket expenses. The *Herbert* Plaintiffs claim $58,622.50 in attorneys' fees and $4,940.83 for costs, for a total of $63,563.33. For the reasons set forth below, the Court should deny or, in the alternative, reduce and apportion, the fee awards requested by Plaintiffs.

## ARGUMENT

Pursuant to 42 U.S.C. § 1988(b), a "prevailing party" in a § 1983 action may be awarded "a reasonable attorney's fee" as part of its costs. In order to be deemed prevailing under § 1988, a party must obtain a court-ordered, material change in the parties' legal relationship. *Buckhannon Bd. & Care Home v. W. Va. Dept. of Health & Human Servs.*, 532 U.S. 598, 604 (2001). However, a defendant's voluntary change in conduct lacks the "judicial *imprimatur*" necessary to create prevailing party status. *Id.* at 605. Moreover, even if a party prevails, "[t]here remain other considerations that may lead the district court to adjust the fee award … including the important factor of the results obtained. This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (quotation and citation omitted).

Because the Governor and General Assembly acted independently to call the August 19, 2013, extraordinary legislative session and enact redistricting legislation, Plaintiffs should not be deemed prevailing parties and are not entitled to an award of fees. In the alternative, even if the Court concludes that Plaintiffs did succeed to some limited degree, any fee award should be reduced to reflect the limited nature of Plaintiffs' success and apportioned equitably among all defendants.

### I. PLAINTIFFS ARE NOT PREVAILING PARTIES UNDER 42 U.S.C. § 1988.

Declaratory and injunctive relief precluding enforcement of a statute may in some circumstances be sufficient to create prevailing party status, even if the statute is subsequently repealed by the legislature pending final judgment. *See, e.g.*, *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009) (where court preliminarily enjoined enforcement of challenged statute that was subsequently repealed by state legislature, preliminary injunction was sufficient to create prevailing party status); *see also DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 671 (6th Cir. 2007) (court's statement that defendants could not enforce ordinance sufficient to create prevailing party status). However, redistricting lawsuits are unique. Unlike typical challenges to a statute's constitutionality, precluding further use of challenged districts does not end the dispute in the redistricting context. Instead, there remains the additional, necessary step of putting in place a new, constitutional redistricting plan. Thus, a party prevails in a redistricting lawsuit only if the party's proposed map is adopted. *See, e.g.*, *Hastert v. Ill. State Bd. of Election Comm'rs*, 28 F.3d 1430, 1443 (7th Cir. 1994).

*Hastert* arose out of the Illinois General Assembly's failure to timely enact redistricting legislation. *Id.* at 1435. Several groups filed lawsuits, each seeking a declaration that the existing districts were unconstitutional, to enjoin the State Board of Elections from conducting elections using those districts, and to have their own proposed redistricting plans implemented. *Id.* The district court granted injunctive relief and ordered the State Board to implement the redistricting plan that had been proposed by one of the groups of plaintiffs. *Id.* The Seventh Circuit concluded that each group of plaintiffs whose proposal was included in or had formally adopted the plan ultimately adopted by the district court had prevailed. *Id.* at 1436-42.

The Court of Appeals affirmed the district court's denial of fees to the plaintiff group that had supported a different map, rejecting that group's argument "that it was a substantial factor in eradicating conduct that violates the Voting Rights Act." *Id.* at 1443. The Court explained: "[R]edistricting cases like this one are unlike ordinary voting rights cases. As we have noted, in the redistricting context the touchstone for whether a party 'prevails' is simply whether that party's map (or the map the party ultimately embraces) is ultimately adopted." *Id.*

Like the non-prevailing plaintiffs in *Hastert*, the *Brown* and *Herbert* Plaintiffs did not prevail when the Court granted declaratory and injunctive relief with respect to the 2002 legislative districts. Both the *Brown* and *Herbert* Plaintiffs asked the Court to adopt or require the General Assembly to enact a new redistricting plan. But the Court never reached that final step. Instead, redistricting legislation was enacted without the Court requiring or approving it, and Plaintiffs chose not to challenge the maps that the General Assembly ultimately adopted. Plaintiffs therefore should not be deemed prevailing parties and are not entitled to an award of their attorneys' fees.

## II. EVEN IF THE COURT CONSIDERS PLAINTIFFS TO BE PREVAILING PARTIES, ANY FEE AWARD SHOULD BE REDUCED IN LIGHT OF THEIR LIMITED SUCCESS.

Even if the Court determines Plaintiffs prevailed by obtaining declaratory and injunctive relief, their success in the litigation as a whole was only partial. When a civil-rights plaintiff "fail[s] to prevail on claims that were unrelated to the claims on which he succeeded …. no fee may be awarded for services on the unsuccessful claim." *Hensley*, 461 U.S. at 434-35. The Court has considerable discretion with respect to whether and how to adjust a fee award. It "may

7

attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37.[3]

### A. Plaintiffs Should Not Recover Fees For Time Spent Evaluating House Bill 1.

Plaintiffs' claims concerning the constitutionality of the 2002 legislative districts and the legislative districts established by House Bill 1 are unrelated and easily distinguishable, as evidenced by the Court's division of this litigation into separate phases. The August 16, 2013, Summary Judgment, which the Court later reaffirmed, addressed only the constitutionality of the 2002 districts. DE #97. At no point did the Court either require the General Assembly to engage in redistricting or impose its own redistricting plan. Indeed, because Plaintiffs decided not to challenge House Bill 1, the Court held that it was without authority to determine the constitutionality of the new districts. DE #127, at 5.

Nonetheless, both the *Brown* and *Herbert* Plaintiffs seek fees and costs incurred to evaluate the new legislative districts adopted by the General Assembly. The *Brown* Plaintiffs' attorneys spent approximately eight hours deciding whether to challenge the legislative districts established by House Bill 1. The corresponding $2,200 in fees and $461.50 spent to purchase data related to that decision should be disallowed. The *Herbert* Plaintiffs' attorneys spent approximately 6.5 hours, for which they claim $2,170 in fees, and paid their expert $2,750 to

---

[3] In addition, "[r]easonable attorney's fees under § 1988 should be calculated according to the prevailing market rates in the relevant community." *Binta B. ex rel S.A. v. Gordon*, 710 F.3d 608, 627 (6th Cir. 2013). Plaintiffs have not shown that the rates requested for their attorneys' fees – particularly the $450 per hour rate sought for Mr. McDonald – are reasonable, and any fee award should be reduced in light of prevailing market rates in Kentucky. *See Lamar Advertising Co. v. Charter Twp. of Van Buren*, 178 Fed. Appx. 498, 501 (6th Cir. 2006) ("[A] reasonable hourly rate should be sufficient to encourage competent lawyers in the relevant community to undertake legal representation."); *see also Hadix v. Johnson*, 65 F.3d 532, 535-6 (6th Cir. 1995) (fee petitioners must show necessity of hiring out-of-town specialist attorney in order to justify higher rate).

evaluate House Bill 1 and possible challenges to the new districts. Under *Hensley*, those costs and fees should be excluded from any award.

> B. The *Herbert* Plaintiffs Should Not Recover Fees For Time Spent Litigating Against The Legislative Defendants.

In addition to reducing the *Herbert* Plaintiffs' fee award to account for time spent considering whether to challenge House Bill 1, the Court should also reduce any fee award to reflect the significant – and unnecessary – time their attorneys spent litigating against the Legislative Defendants.

The *Herbert* Plaintiffs named only the Board Defendants in their lawsuit – and consolidation of these two cases did not make the Legislative Defendants parties to the *Herbert* litigation. *Kraft, Inc. v. Local Union 327, Teamsters*, 683 F.2d 131, 133 (6th Cir. 1982) (quoting *Johnson v. Manhattan Rwy. Co.*, 289 U.S. 479, 496-97 (1933)) ("Consolidation … does not merge the suits into a single cause, or change the rights of the parties or make those who are parties in one suit parties in another."). As the *Herbert* Plaintiffs explained early on, "*Brown* involves numerous defendants, claims, defenses, and legal issues that are not (and cannot) be implicated in this action." DE #10 (Case No. 3:13-25-GFVT), at 3.

"[I]t is the party, rather than the lawyer," who is eligible for attorneys' fees under § 1988. *Venegas v. Mitchell*, 495 U.S. 82, 87 (1990). The *Herbert* Plaintiffs did not sue the Legislative Defendants. Accordingly, they should not be permitted to recover fees for time their attorneys spent litigating against the Legislative Defendants. *Cf. Freeman v. Dir. of the New Jersey Div. of Alcoholic Beverage Control*, 2013 WL 4870706, at *3 (3d Cir. 2013) (fees not warranted for work performed on behalf of plaintiff that was dismissed prior to resolution). Surely the *Herbert* Plaintiffs' lawyers would not expect their clients to compensate them for time spent pursuing the

9

*Brown* Plaintiffs' case against the Legislative Defendants. Nor can they reasonably expect the Board Defendants to remunerate them for that work.

By way of example, the *Herbert* Plaintiffs' attorneys spent approximately 23 hours, incurring $6,065 in fees, working on the 24-page Joint Reply in support of Plaintiffs' Motion for Summary Judgment. *See* DE #88 (Reply), DE #131 (Motion for Attorneys' Fees). The Board Defendants' Response (DE #83) was eight pages and, as Plaintiffs explained in their Joint Reply, while the Legislative Defendants raised various arguments against summary judgment, the Board Defendants "did not contest the merits of Plaintiffs' claims, but instead opposed only the entry of Plaintiffs' requested permanent injunction." DE #88, at 3-4. Not surprisingly, of the 24 pages in the Joint Reply, less than three pages address the Board Defendants' objection. DE #88, at 15-17.

The *Herbert* Plaintiffs cannot reasonably claim that the Board Defendants should pay over $6,000 in fees for 23 hours of work by their attorneys, when their Joint Reply included only a two-and-one-half-page response to the Board Defendants' argument. In fact, Mr. Sharp's time entries indicate that he devoted nearly three hours to researching collateral estoppel and *res judicata*, and at least some time researching entitlement to declaratory relief – all legal arguments the Board Defendants did not raise in their Response. *See* DE #131-2, at 9. Other time entries lack sufficient detail to determine what legal issues the *Herbert* attorneys were researching and briefing, but the Court can and should conclude that little of that time was devoted to addressing the single, limited objection the Board Defendants raised.

The need to reduce fees claimed by Plaintiffs after August 16, 2013, is even clearer. As noted above, since August 16, 2013, the Board Defendants have not opposed any of the relief sought in this litigation – either by Plaintiffs or the other defendants. Yet even excluding time spent on the fee request, more than 30 percent ($17,940) of the *Herbert* Plaintiffs' attorneys' fees

were incurred after that date. Very little of that time was spent on the motion for final judgment, with the overwhelming majority devoted to evaluating the new legislative districts and responding and replying to the Legislative Defendants' arguments.

### III.  ANY FEES AWARDED TO THE PLAINTIFFS SHOULD BE APPORTIONED EQUITABLY AMONG ALL DEFENDANTS.

After the *Brown* Plaintiffs' fees have been reduced to account for their limited success, any award should further be apportioned equitably among all defendants, taking into account that the Legislative Defendants – not the Board Defendants – vigorously contested Plaintiffs' claims. *See Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 641 (6th Cir. 2009) (citing *Turner v. D.C. Bd. of Elections and Ethics,* 354 F.3d 890, 898 (D.C.Cir.2004)) ("where multiple civil-rights plaintiffs are liable for attorney fees under § 1988 in the same proceeding, one plaintiff should not be required to pay for the attorney fees associated with defending against the claims of another plaintiff if the plaintiffs' respective claims are factually unrelated"); *accord Council for Periodical Distribs. Assocs. v. Evans*, 827 F.2d 1483, 1487 (11th Cir. 1987) ("it may be appropriate for a district court to apportion fees between the active instigator of a wrong and a more passive co-defendant who had a more peripheral or ministerial role in the wrong"); *see also Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 959-60 (1st Cir. 1984) (apportioning 25% of fees and expenses against local enforcement agency and 75% of fees and expenses against state agency); *Jose P. v. Ambach*, 669 F.2d 865, 871 (2d Cir. 1982) (approving apportionment of 80% liability to defendant who directly provided challenged services and 20% liability to defendant with only supervisory responsibility).

In apportioning fees among the defendants, the Court may consider the parties' relative culpability, time demands, ability to pay, and interrelatedness of claims. *Berry v. Sch. Dist. of City of Benton*, 703 F. Supp. 1277, 1286 (W.D. Mich. 1986); *see also Hendrickson v. Branstad*,

11

934 F.2d 158, 164 (8th Cir. 1991) (relative culpability and time spent seeking relief from specific defendants); *Grendel's Den*, 749 F.2d at 960 (relative culpability, time spent preparing case against each defendant, and ability to pay); *Jose P.*, 669 F.2d at 871 (relative culpability); *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1125-26 (9th Cir. 1981) (time spent preparing case against each defendant). As with fee adjustments, district courts have discretion and are in the best position to apportion fees considering the appropriate factors in order "to achieve the most fair and sensible solution that is possible." *Grendel's Den*, 749 F.2d at 960.

In this case, consideration of both relative culpability and time spent make clear that any attorneys' fee award should be assessed primarily against the Legislative Defendants.

### A. The Legislative Defendants Are Responsible For The Vast Majority Of Contested Issues In This Lawsuit.

"The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties…." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989). Redistricting lawsuits present unique circumstances due to the fact that state election officials are charged with enforcing and implementing legislation they lack authority to change. *See Hastert*, 28 F.3d at 1439 (With respect to dispute over configuration of new congressional districts, "The State Board of Elections is truly a nominal defendant, completely disinterested in the outcome of that fight."). Thus, when redistricting legislation is enacted pending litigation, the General Assembly – not the board of elections – most changes its position. *Dickinson v. Ind. State Elec. Bd.*, 817 F. Supp. 737, 743 (S.D. Ind. 1992).

Under Kentucky law, although the Board Defendants are constitutionally and statutorily charged with administering elections in accordance with the laws enacted by the General Assembly, they lack authority to redraw the districts pursuant to which those elections are conducted. Instead, the Kentucky General Assembly is responsible for enacting redistricting

12

legislation. Ky. Const. § 33; *see also* Ky. Const. § 29 (legislative power vested in General Assembly); Ky. Const. §§ 27, 28 (legislative, executive and judicial powers confined to separate branches of government).

While plaintiffs in redistricting lawsuits often opt not to sue the legislative body or its members, the *Brown* Plaintiffs chose to sue the Legislative Defendants. And the parties and Court have acknowledged that the relief entered in this case directly and significantly affected the Legislative Defendants. *See, e..g.*, DE #74 (Stivers Memorandum), at 10 (redistricting litigation "will significantly affect an important function and role of the legislature"); DE #73-1 (LRC Memorandum), at 3 (Plaintiffs' claims "may impact on the ability of the LRC and the legislature as a whole to act"); DE #97 (Order), at 2 ("What [this Order does] is prevent the General Assembly from falling back on lines that will be over a decade old if they fail.").

The disproportionate impact this litigation had on the Legislative Defendants compared with the Board Defendants is evidenced by the Legislative Defendants' persistent opposition to the Court's intervention. For example, while the Legislative Defendants opposed Plaintiffs' Joint Motion for Summary Judgment on several grounds, the Board Defendants took no position with respect to the constitutionality of the 2002 lines and opposed only the entry of "a blanket permanent injunction." DE #81, at 6; *see also* DE #88 (Plaintiffs' Reply, comparing Legislative Defendants' opposition on the merits to Board Defendants' limited objection). Moreover, each of the Legislative Defendants opposed the entry of final judgment, while the Board Defendants did not oppose final judgment or seek relief from the Court's August 16, 2013, Opinion and Order. *See* DE ##114, 121 (Stumbo Responses), DE #119, 124 (LRC Responses), DE #120 (Stivers Response).

13

Both the factual record and the law make clear that Legislative Defendants – not the Board Defendants – were primarily responsible for and most changed position as a result of this redistricting litigation. Any fees awarded to the Plaintiffs should therefore be apportioned primarily against the Legislative Defendants.

B. Most of Plaintiffs' Attorneys' Time Was Devoted to Litigating Against the Legislative Defendants.

In addition to having a passive role in the redistricting process, the Board Defendants played a non-adversarial role in this litigation, with opposition driven by the Legislative Defendants. Indeed, the *Brown* Plaintiffs suggest that their attorneys' time was reasonable in light of the need to "fend off attempts by elected officials, *particularly those of the legislative branch*, to keep in place mal-apportioned districts." DE #129, at 5 (emphasis added). And they identified the LRC, Speaker Stumbo, and President Stivers as "the more contentious Defendants." *Id.* at 8. *See also* DE #129-3, ¶ 12 ("review and responses to filings of Speaker Stumbo, the Kentucky LRC, and Senate President Stivers" necessitated significant time and labor); DE #129-4, ¶ 13 (same).

By the *Brown* Plaintiffs' own account, approximately 75 percent of their attorneys' time was spent litigating the mal-apportionment of the 2002 districts, which was adjudicated in the first phase of this litigation on Plaintiffs' Motion for Summary Judgment. *See* DE #129-1, at 8 (at least 240 of Mr. Wiest's 313.2 hours and 65 of Mr. Brueggemann's 98.2 hours spent litigating whether 2002 districts were mal-apportioned). As Plaintiffs acknowledged, while the Legislative Defendants opposed summary judgment on various grounds, the Board Defendants "did not contest the merits of Plaintiffs' claims, but instead opposed only the entry of Plaintiffs' requested permanent injunction." DE #88, at 3-4.

14

The time spent and fees incurred after the Court granted Plaintiffs' Motion for Summary Judgment on August 16, 2013, also illustrate the extent to which Plaintiffs' case against the Legislative Defendants was more time-consuming than their cases against the Board Defendants. The *Brown* Plaintiffs' attorneys recorded 67.6 hours after August 16, 2013. As discussed above, approximately eight hours were devoted to reviewing the new legislative districts and are not recoverable. Of the remaining 59.6 hours of possibly compensable time, 46 hours – more than 75 percent – was spent responding to motions and responses filed by the Legislative Defendants.

The Board Defendants should not be responsible for fees incurred by Plaintiffs while litigating against the Legislative Defendants. Taking into account the defendants' relative culpability and the time Plaintiffs spent litigating against each Defendant, the Court should exercise its discretion to equitably apportion the fees, with minimal fees assessed against the Board Defendants.[4]

## CONCLUSION

The ultimate goal of Plaintiffs' consolidated lawsuits was to have new legislative districts established in time to be used by candidates, election officials, and voters in Kentucky's 2014 elections. That goal was achieved through the enactment of House Bill 1 during the General Assembly's August 19, 2013, extraordinary session, which was conducted voluntarily and independent of any Court order. Plaintiffs therefore are not prevailing parties for the purpose of

---

[4] If the Court determines that Plaintiffs are not entitled to recover fees against the Legislative Defendants – either based on their voluntary dismissal of the Legislative Defendants or other grounds – then further (and significant) reductions of any fee award to Plaintiffs are necessary. *See Green v. Torres*, 361 F.3d 96, 100 (2d Cir. 2004) (district court properly reduced fee award to account for plaintiff's voluntary dismissal of inflated claims); *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1124 (9th Cir. 1981) (where plaintiffs were not entitled to fees against one defendant, they could not recover that portion from other defendant). Moreover, to the extent any of the defendants is immune from an award of § 1988 attorneys' fees, the Board Defendants also are immune.

42 U.S.C. § 1988, and their Motions for Attorneys' Fees should be denied. In the alternative, even if Plaintiffs are deemed to have prevailed with respect to the constitutionality of the 2002 legislative districts, their overall success in this litigation was limited, and any fee award should be reduced accordingly and apportioned equitably among the defendants.

Respectfully Submitted,

/s/ Lynn Sowards Zellen\
Lynn Sowards Zellen\
Noel E. Caldwell\
Office of the Secretary of State\
700 Capital Ave., Ste. 152\
Frankfort, KY 40601\
(502) 782-7407\
lynn.zellen@ky.gov

TACHAU MEEK PLC\
Jonathan T. Salomon\
3600 National City Tower\
101 S. Fifth Street\
Louisville, KY 40202-3120\
(502) 238-9900\
jsalomon@tachaulaw.com

*Counsel for the Board Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed this 11th day of December, 2013. All parties indicated on the electronic filing receipt will be served via the Court's electronic filing system. All other parties will be served via hand delivery or U.S. Mail.

/s/ Lynn Sowards Zellen\
Lynn Sowards Zellen
