UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, et al., | ) ) ) ) | |
| Plaintiffs, | ) | Civil No. 13-cv-68 |
| v. | ) ) | DJB-GFVT-WOB |
| THE COMMONWEALTH OF KENTUCKY, et al., | ) ) ) | |
| Defendants. | ) ) ) | |
| MARTIN HERBERT, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 13-cv-25 DJB-GFVT-WOB |
| v. | ) ) | |
| KENTUCKY STATE BOARD OF ELECTIONS, et al., | ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT STEVEN L. BESHEAR'S, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF KENTUCKY, RESPONSE TO THE *BROWN* AND *HERBERT* PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

Defendant Steven L. Beshear, in his official capacity as Governor of Kentucky ("Governor"), submits his Response to the *Brown* (Doc. # 129) and *Herbert* (Doc. # 131) Plaintiffs' Motions for Attorney's Fees. Plaintiffs seek attorney's fees pursuant to 42 U.S.C. § 1988(b). The Governor submits that attorney's fees cannot be obtained against him on the grounds that: (1) he is shielded by 11th amendment immunity because he has no power to grant Plaintiffs the relief they sought; and (2) Plaintiffs are not prevailing parties because they did not obtain a change in the legal relationship between themselves and the Governor and did not have

1

their maps adopted. In the alternative, if this Court finds that the Governor is liable for attorney's fees, the Governor submits that they should be reduced as unreasonable.

## I. The Governor Retains Eleventh Amendment Immunity

Plaintiffs' motion for attorney's fees against the Governor is barred by 11th Amendment immunity, as the Governor is sued in his official capacity. "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). "Absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court . . . This bar remains in effect when State officials are sued for damages in their official capacity. That is so because . . . 'a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents.'" *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The Governor has asserted his 11th Amendment immunity throughout. (Doc. # 21 at 11; Doc. # 123 at 2-4.)

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to Eleventh Amendment immunity in which it "does not bar certain actions against state officers for injunctive or declaratory relief." *Alden v. Maine*, 527 U.S. 706, 757 (1999). However, the officer must have some connection with the relief sought. In order to be a proper party, Governor Beshear must have some connection with the conduct of elections; his authority as chief executive is insufficient:

> If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws,

2

*Ex parte Young*, 209 U.S. at 157. The Supreme Court explicitly rejected this theory. "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.*[1]

Here, the Governor has no connection to the subject matter of this suit, as redistricting is committed to the General Assembly, and the conduct of elections is committed to the Secretary of State and Board of Elections by law. Plaintiffs sought a declaration that the 2002 maps were unconstitutional, injunctive relief against using them, and an opportunity to submit their own maps and have this Court draw districts that were constitutional. (Doc. # 1 at 18-19). This Court has permanently enjoined Defendants "from administering further elections pursuant to the 2002 state legislative electoral districts." (Doc. # 128 at 2.) However, the Governor has no authority to administer any elections. KY. CONST. §33 provides that "the General Assembly shall then, and every ten years thereafter, redistrict the State according to this rule." KRS 14.025(2) provides that the Division of Administration in the Department of State "shall be responsible for . . . elections," and KRS 117.015(1) provides that "there shall be a State Board of Elections which shall administer the election laws of the state and supervise registration and purgation of voters within the state." Redistricting is committed by the Kentucky Constitution to the General Assembly, and the conduct of elections is committed by statute to the Board of Elections. The Governor's Office has power over neither, and no legal authority relating to redistricting or the conduct of elections. This is evidenced by the fact that although the *Brown* plaintiffs named the

---

[1] *See also McCrimmon v. Daley*, 418 F.2d 366, 368 (7th Cir. 1969) ("It has long been held that before a state officer . . . may properly be made a party defendant to a suit to enjoin the enforcement of an act alleged to be unconstitutional, he must have some connection with the enforcement of the act.").

3

Governor as a Defendant, the *Herbert* plaintiffs did not, indicating that the *Herbert* plaintiffs recognized that the Governor was not a necessary party to provide them the relief they sought.

The Governor has no necessary connection with this action, and Plaintiffs could not prevail against him, as he has no authority to grant them the relief they sought. Since he has no connection with the action, the *Ex parte Young* waiver of 11th Amendment immunity does not apply, and the Governor is immune from this suit. Accordingly, assuming arguendo that the Plaintiffs were entitled to recover attorney's fees from any Defendant, Plaintiffs cannot recover attorney's fees from the Governor.

## II. Plaintiffs Are Not Prevailing Parties

### A. Plaintiffs Are Not Prevailing Parties Because Voluntary Changes In Conduct Do Not Confer Prevailing Party Status.

42 U.S.C. 1988(b) provides that in certain actions to enforce civil rights, a court may award fees to "the prevailing party." Plaintiffs are not prevailing parties because they did not materially alter the relationship between the parties, as the legislature independently passed a constitutional redistricting plan. Therefore, Plaintiffs are not entitled to recover attorneys fees from any Defendant.

"A plaintiff 'prevails' . . . 'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Lefemine v. Wideman*, 133 S.Ct. 9, 11 (2012). During the pendency of this litigation, the legislature independently passed constitutional district maps. "A defendant's voluntary change, even one precipitated by litigation, does not amount to 'a court-ordered change in the legal relationship' between the plaintiff and defendant, as required to establish prevailing-party status." *McQueary v. Conway*, 614 F.3d 591, 597 (6th Cir. 2010). Plaintiffs seek to recover under the "'catalyst theory,' which posits that a plaintiff is a 'prevailing

4

party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 601 (2001). The "catalyst theory" was struck down in *Buckhannon*. *Id.* at 610. Any victory the Plaintiffs may have obtained is purely symbolic, as the laws they sought to invalidate have been voluntarily repealed. "Absent a direct benefit, the plaintiff achieves only a symbolic victory, which § 1988(b) does not compensate." *McQueary*, 614 F.3d at 598. Even assuming the lawsuit itself spurred the General Assembly to pass redistricting legislation, an implausible assumption, that still would not be enough to recover attorney's fees, as fees are not recoverable for voluntary changes in conduct.

### B. Plaintiffs Are Not Prevailing Parties Because This Court Did Not Adopt Plaintiffs' Maps.

Plaintiffs are not prevailing parties in this litigation because their maps were not submitted, much less adopted. "In the redistricting context the touchstone for whether a party 'prevails' is simply whether that party's map (or the map the party ultimately embraces) is ultimately adopted." *Hastert v. Illinois State Bd. of Election Comm'rs,* 28 F.3d 1430, 1443 (7th Cir. 1993). Plaintiffs never submitted any maps, and this Court never adopted any maps. The only maps that were adopted were those voluntarily passed by the legislature. As such, they cannot be considered to be prevailing parties.

### C. Plaintiffs Did Not Prevail Against The Governor.

Even assuming that Plaintiffs are found to have prevailed against some party, they did not prevail against the Governor. "The logical place to look for recovery of fees is to the losing party-the party legally responsible for relief on the merits . . . where a defendant has not been prevailed against . . . § 1988 does not authorize a fee award against that defendant." *Graham*, 473 U.S. at 164-65. Plaintiffs cannot be said to have prevailed against the Governor, as the

5

Governor cannot provide them any relief on the merits. As argued above, the Governor has no connection with the subject matter of this case, and no power to grant the relief that Plaintiffs sought.[2] Plaintiffs did not prevail against the Governor because the Governor has no power to grant them the relief they requested.

### III.  In The Alternative, Plaintiffs' Overall Requested Fees Should Be Reduced, and Any Portion Attributable to Litigating Against the Governor is Negligible

In the alternative, if this Court should find that Plaintiffs are prevailing parties, and if the Court were to find that the Governor could be held responsible for any portion of Plaintiffs' fees, the overall fees should be reduced generally as duplicative, and any amount apportioned to the Governor must be based specifically on the basis of the time Plaintiffs' counsel spent in litigating against the Governor, which is negligible.

#### A.  Plaintiffs' Fees Should Be Reduced As Unreasonable, Excessive, Or Duplicative.

"A 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case . . . Section 1988's aim is to enforce the covered civil rights statutes, not to provide 'a form of economic relief to improve the financial lot of attorneys.'" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). "Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge." *Id.* at 558. "Hours may be cut for duplication, padding, or frivolous claims." *Kentucky Restaurant Concepts Inc. v. City of Louisville*, 117 Fed.Appx. 415, 419 (6th Cir. 2004). This Court should reduce any fees awarded for duplication and padding, as counsel repeatedly billed for conferences among themselves.

---

[2] At the very least, the *Herbert* plaintiffs did not prevail against the Governor, as they never named him as a Defendant, and thus the Governor cannot be held liable for the *Herbert* plaintiffs' attorney's fees.

### B. Plaintiffs' Fees Against The Governor Should Be Apportioned On The Basis Of The Negligible Time Plaintiffs Spent Litigating Against The Governor.

Any fees assessed against the Governor specifically should be reduced based on the negligible time that Plaintiffs' counsel actually spent litigating against the Governor. "Defendants' relative degrees of culpability and the time the plaintiffs were forced to spend litigating against the respective defendants . . . are appropriate considerations in determining who must shoulder the fees award." *Jenkins by Agyei v. State of Mo.*. 838 F.2d 260, 266 (8th Cir. 1988). As argued above, the Governor has no culpability here, as he could not take any action to give Plaintiffs the relief they sought. More tellingly, the Governor's name appears only three times in any of the submitted billing records: on page 12 of the Brueggemann Declaration billing .1 hours, (Doc. # 129-3 at 12.), on page 9 of the Wiest Declaration billing .3 hours (Doc. # 129-4 at 9), and on page 12 of the Wiest Declaration billing a total of .5 hours. *Id.* at 12. Not even a full billable hour among all counsel for Plaintiffs has been identifiable as time spent litigating this case against the Governor, and based on the billing records, it seems counsel did nothing more than read the Governor's pleadings. Since the Governor is not culpable for any relief Plaintiffs may have received, and opposing counsel spent only a nominal amount of time involving the Governor, the Governor's liability for any attorney's fees should be drastically reduced or nonexistent.

### CONCLUSION

For the above reasons, this Court should deny Plaintiffs' motions to award attorney's fees against Governor Steven L. Beshear, in his official capacity as Governor of Kentucky.

          Respectfully submitted,
          Jack Conway, Attorney General

          /s/ Clay. A. Barkley
          Clay A. Barkley
          Matt James
          Assistant Attorneys General
          Office of the Attorney General
          700 Capitol Ave., Suite 118
          Frankfort, KY 40601
          (502) 696-5300
          Counsel for the Governor

**CERTIFICATE OF SERVICE AND NOTICE OF ELECTRONIC FILING**

I hereby certify that on December 13, 2013, the foregoing was filed with the clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties.

                        Jack Conway, Attorney General

                        /s/ Clay A. Barkley
                        **Clay A. Barkley**
                        Assistant Attorney General
                        700 Capitol Ave., Suite 118
                        Frankfort, KY 40601
                        (502) 696-5300