UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, *et al.*, <br><br>    Plaintiffs, <br><br>v. <br><br>STEVEN BESHEAR, *et al.*, <br><br>    Defendants. | Case No. 2:13cv00068 <br><br>**Electronically filed** |
| MARTIN HERBERT, *et al.*, <br><br>    Plaintiffs, <br><br>v. <br><br>ALISON LUNDERGAN GRIMES, *et al.*, <br><br>    Defendants. | Case No. 3:13cv00025 |

## ***BROWN*** PLAINTIFFS' REPLY IN SUPPORT FOR THEIR MOTION FOR ATTORNEY FEES AND COSTS

The *Brown* Plaintiffs submit this Reply in Support of their Motion for Attorney Fees and Costs [R.E. #129] and respond to the various filings by the LRC [RE #132], President Stivers [RE #134], the Governor [RE#136], and the Board Defendants and Secretary of State (collectively the "Board Defendants") [RE #135].[1]

---

[1] The *Brown* Plaintiffs have no need to dispute arguments of the LRC that the LRC, President Stivers, and Speaker Stumbo have legislative immunity, and that they have been dismissed from the action and thus have not been prevailed upon; to be clear, fees are not sought against these entities. The remaining arguments raised by the LRC and President Stivers are without merit, and are dealt with in this Reply, because they are relevant to the executive defendants who are liable for such fees.

1

1. The *Brown* Plaintiffs are Prevailing Parties, entitled to the entirety of their fees.

In order to be a "prevailing party" and thus entitled to recover attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, a plaintiff must succeed "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Tex. State Teachers Ass'n*, 489 U.S. at 789 (citation and internal quotation marks omitted). "The touchstone of the prevailing party inquiry [is] the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.* at 792-93. "A material alteration [in the parties' legal relationship] requires that '[t]he plaintiff [] obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement.'" *DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 670 (6th Cir. 2006) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)). This change in the parties' legal relationship must be court-ordered, and it must directly benefit the plaintiff "at the time of the judgment or settlement." *DiLaura*, 471 F.3d at 670 (internal quotation marks omitted).

As indicated in Plaintiffs' Motion for Fees, cases are clear that legislative change that follows declaratory and preliminary injunctive relief which indicates probable success on the merits is sufficient to cross the threshold of prevailing party status. *Lux v. Judd*, 868 F. Supp. 2d 519, 527 n.5 (E.D. Va. 2012); *Nat'l Black Police Ass'n v. D.C. Bd. of Elections*, 168 F.3d 525, 335 U.S. App. D.C. 17 (D.C. Cir. 1999); *Nat'l Rifle Ass'n of Am., Inc., v. City of Chicago*, 646 F.3d 992 (7th Cir. 2011) (same); *Dearmore v. City of Garland*, 237 F.R.D. 573 (N.D. Tex. 2006) (same); *Palmetto Props., Inc., v. Cnty. of Dupage*, 375 F.3d 542 (7th Cir. 2004) (same); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1355-56 (11th Cir. 2009) (same); *see also McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010).

This case *is not a catalyst case* as was the situation in *Buckhannon Bd. of Care Home, Inc. v. West Va. Dept. of Health and Human Resources*, 532 U.S. 598 (2001). *Buckhannon* involved a case where there *was no entry of any injunctive relief* – where the Court made clear that only "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees.'" *Id.* at 604. A catalyst theory case "allows an award where there is no judicially sanctioned change in the legal relationship of the parties." *Id.* In this matter, there was a ***merits based, permanent injunction issued against the Defendants*** [RE #128].[2] The U.S. Supreme Court has been clear that a merits based, permanent injunction renders a Plaintiff a prevailing party. *Lefemine v. Wideman*, 133 S. Ct. 9, 184 L. Ed. 2d 313 (2012) ("an injunction or declaratory judgment, like a damages award, will usually satisfy [the prevailing party] test").

Some discussion of the relief sought by the *Brown* Plaintiffs is also appropriate. The *Brown* Plaintiffs sought, in their Complaint, relief including: (1) the establishment of a three judge panel to adjudicate the merits of the suit; (2) money damages; (3) a declaration that the current (2002) maps were unconstitutional; (4) injunctive relief prohibiting the further use of the 2002 maps and for the court to permit Defendants to enact constitutional maps, or, if they failed to do so, to adopt constitutional maps; (5) reasonable attorney fees and costs. [RE#1, at 18-19]. A three judge panel was appointed; Plaintiffs almost immediately withdrew their claims for money damages; Plaintiffs obtained a declaration that the 2002 maps were unconstitutional; Plaintiffs obtained an injunction against the continued use of the 2002 maps and the Court permitted Defendants to enact maps. Plaintiffs received everything they asked for.

---

[2] While all the Defendants in this case, including the legislative Defendants and the dismissed Kentucky State Board of Elections as an entity, were enjoined, enjoining only the individual members of the Kentucky State Board of Elections, the Kentucky Secretary of State, and the Kentucky Governor, as those responsible for implementing the legislative districts, is sufficient. Therefore, Plaintiffs have no objection to a FRCP 60(a) clerical modification to the injunction to that effect.

3

The case cited by the Secretary of State, *Hastert v. Illinois State Bd. of Election Comm'rs*, 28 F.3d 1430 (7th Cir. 1993) does not change the prevailing party analysis in this case. *Hastert* involved a case where "the fight over the configuration of Illinois' new congressional districts, was not between the plaintiffs and the defendant." *Id.* at 1439. Instead, "[t]he real dispute was between the various plaintiffs." *Id.* The court noted that "[e]ach had a plan to offer and the winner, at least from a lay person's perspective, is the litigant whose map the district court adopted." *Id.* The court stated "[c]onveniently, this common-sense understanding of winners and losers coincides in large part with the Supreme Court's definition of 'prevailing party.'" *Id.* Importantly, and central to the *Hastert* Court's holding was that "the principal issue in litigation during these proceedings involved the determination of which proposed [congressional districting] plan for the entire State of Illinois best met constitutional and statutory criteria." *Id.*

The central issue in this matter was not the determination of competing maps as was the case in *Hastert*. The central in this matter was whether or not the Commonwealth and its officers could continue to implement the 2002 maps in 2013 and beyond – a fact evidenced by the *Brown* Plaintiffs prayer for relief.³ The injunction against the continued use of the 2002 maps was sufficient to confer prevailing party status. *Ramos v. Koebig*, 638 F.2d 838 (5th Cir. 1981) (injunction against continued use of unconstitutional maps sufficient to confer prevailing party status); *Watkins v. Fordice*, 7 F.3d 453 (5th Cir. 1993) (injunction against continued use of unconstitutional maps, followed by enactment by state of constitutional maps sufficient to confer prevailing party status); *Pitochelli v. Johnston*, 1993 U.S. App. LEXIS 16814 (1st Cir. 1993) (prevailing party plaintiffs where town adopted redistricting after suit was filed and judgment

---

³ The Board Defendants claims that "redistricting legislation was enacted without the Court requiring or approving it" is wholly belied by the record. This Court did require that the *status quo* be changed. The legislature was fully aware that a merits based permanent injunction had issued from this Court, precluding use of the 2002 maps. The choice the legislature faced was to enact acceptable maps, or have this Court do it for them – there was no resorting to the *status quo*.

4

entered in favor of plaintiffs); *In re Kansas Congressional Dist. Reapportionment Cases*, 745 F.2d 610 (10th Cir. 1984) (prevailing party where party's map not adopted but party stopped use of unconstitutional districts). All that is important for prevailing party status is for the party to obtain the "substance of what [it] sought." *Hewitt v. Helms*, 482 U.S. 755, 761, 96 L. Ed. 2d 654, 107 S. Ct. 2672 (1987). If the plaintiff "has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind.'" *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 109 S. Ct. 1486; 103 L. Ed. 2d 866 (1989). The *Brown* plaintiffs undeniably prevailed on the entirety of the relief sought in their Complaint, with the exception of the money damages claim, which was withdrawn at a very early juncture.

2. Fee reduction is not appropriate for "limited success."

The Board Defendants next indicate that the fees should be reduced because the *Brown* Plaintiffs achieved "limited success" – despite the fact that they achieved every form of relief they asked for, with the exception of the money damages claim, which was withdrawn at the earliest possible opportunity. "Where the [prevailing party's] successful and unsuccessful claims are based on 'a common core of facts' and 'related legal theories,' the lawsuit cannot be viewed as a series of discrete claims, and 'the district court should focus on the significance of the overall relief obtained by the [prevailing party]." *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). Success was complete. The 2002 maps will never be used again in the Commonwealth of Kentucky.

The evaluation of HB1.

The evaluation of HB1 was an important consideration in this matter that was not a discrete claim. Rather, it was part and parcel with evaluating not merely whether to mount a

further challenge, but also was inextricably tied to: (1) moving for a final judgment entry, which was inextricably tied to the scheduling order in place in this matter (and the substance of that Motion), which required Plaintiffs to lodge any objections with the Court (or indicate that they were not going to); and (2) responding to Speaker Stumbo's various motions to attempt to dissolve the injunction against the 2002 maps. Under *Hensley*, these tasks were inextricably tied to the successful equal protection claims brought against the 2002 maps.

3. Apportioned fees and/or reduced fees due to the conduct of the legislative defendants

"Where, as here, a plaintiff's claims against the defendants arise from a common core of facts and related legal theories, the fact that the plaintiff does not prevail against all of the defendants is not a basis for reducing the plaintiff's fee award." *Welton v. Osborn*, 124 F. Supp. 2d 1114 (S.D. Ohio 2000); *Dowling v. Litton Loan Servicing, LP*, 320 Fed. Appx. 442, 448 (6th Cir. 2009); *Wayne v. Village of Sebring*, 36 F.3d 517, 532 (6th Cir. 1994); and, *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996). As was the case in *Wayne*, "Plaintiffs' claim for attorney fees should not be reduced simply because some indeterminate amount of time was expended on the prevailing individual defendants."

Nor does the Board Defendants claims of apportionment hold water – the Board Defendants did not concede unconstitutionality (though they could have, at any time) – instead, taking the same stance as the legislative defendants, they sat back with tacit approval while their co-defendants filed barrages, which ran up the Plaintiffs' attorney fees. Apportionment is not appropriate under these circumstances. First, a single issue – the continued use of the 2002 maps – was at issue in this case. *Corder v Gates*, 947 F2d 374 (9th Cir. 1991) (inappropriate to apportion when all claims against parties arose form same issue). Secondly, case law is clear that 42 USCS § 1988 fee awards based on nonfractionable claim may not be apportioned

6

between immune "losing party," who cannot be made to pay, and non-immune losing party that is jointly and severally liable for former's share of attorney's fee award. *Turner v D.C. Bd. of Elections & Ethics* (2004, App DC) 359 US App DC 332, 354 F3d 890, reh den (2004, App DC) 2004 US App LEXIS 4658 and reh, en banc, den (2004, App DC) 2004 US App LEXIS 4659 and cert den (2004) 543 US 817, 125 S Ct 55, 160 L Ed 2d 24.

The *Turner* Court noted a number of principles that are applicable to this particular litigation: (1) "an award of attorney's fees under § 1988 'is not meant as a 'punishment' for 'bad' defendants who resist plaintiffs' claims in bad faith[,] [but] is meant to compensate civil rights attorneys who bring civil rights cases and win them," and thus "the fact that it was not the 'fault' of the Board of Elections that the [challenged legislation was the fault of Congress] … is not a 'special circumstance' warranting denial of a fully compensatory fee;" (2) "it is irrelevant for purposes of § 1988 that Congress, and not the Council of the District of Columbia, enacted the Barr Amendment, because under 42 U.S.C. § 1983 the Amendment is treated as a District of Columbia law;" (3) "in light of *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 739, … because the Board continued to enforce the Barr Amendment throughout Turner's § 1983 litigation, it is irrelevant for purposes of § 1988 that in court the Board supported Turner's constitutional challenge to the [legislation];" and (4) "the immunity of one defendant does not reduce the liability of a non-immune co-defendant." 354 F.3d 890, 897-898. The *Turner* Court likewise noted that "in order to serve the remedial purposes of the Civil Rights Act, 'a number of courts have upheld the imposition of joint and several liability for a fee award where there existed a question as to whether the fee would be collectible from one of the defendants.'" *Id.* The *Turner* Court likewise was clear that "'[m]ere' enforcers of unconstitutional laws may be held liable for attorneys' fees even if their involvement in the

7

litigation has been minor or they have argued that their enforcement actions are improper and have lobbied for the underlying law to be changed." *Id.* The *Turner* Court concluded that "Section 1988 does not permit a court to inquire into defendants' comparative fault where to do so obstructs Congress' purpose of compensating successful private attorneys general."

As the *Hastert* Court noted, "the State Board may be held liable for fees to the prevailing parties plaintiff, whose status as such depends upon the relative success of their position in relation to the success of the other plaintiffs." 28 F.3d 1430. The *Hastert* Court continued: "[i]t is of no consequence that the State Board of Elections played no active role in the proceedings and agreed to enforce whatever plan the district court adopted, since fees may be taxed even against entities whose role is limited to enforcement of regulations they played no role in promulgating." *Id.* The *Hastert* Court concluded that "[n]or is the Board's putative 'good faith' a special circumstance justifying a refusal to award fees." *Id.*

Another fundamental misapplication is present in the Board Defendants' motion – each of the Defendants in this matter, sued in their official capacities, are agents of the Commonwealth of Kentucky. *Ky. v. Graham*, 473 U.S. 159, 105 S. Ct. 3099; 87 L. Ed. 2d 114 (1985). Only in an official-capacity action is a plaintiff who prevails entitled to look for relief, both on the merits and for fees, to the governmental entity. *Id.* Thus, all the Defendants, including the legislative Defendants whose litigation tactics caused a significant amount of the fees to be incurred – are agents of that same Commonwealth.

Joint and several liability between the prevailed upon Defendants is appropriate, with no offset or reduction for the conduct of the legislative defendants.[4] Certainly, it is without question that the legislative defendants, in particular the LRC and Speaker Stumbo, are the parties who

---

[4] If the Court determines that the Governor is not a proper party, then the Board Defendants should be jointly and severally liable for the fee award.

largely escalated the amount of fees in this matter. The law, however, provides that the Executive Defendants are the parties that are held liable.

4. <u>There is no immunity for fees for the Official Capacity Executive Defendants</u>

Injunctive relief was appropriately entered against the Board Defendants and the Governor. *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441; 52 L. Ed. 714 (1908). The U.S. Supreme Court has been clear that, (1) where, as here, injunctive relief is obtained against state officials in their official capacity, it is the same as an injunction against the state, and, (2) unlike money damages, attorney fees under 42 U.S.C. 1988 are more appropriately treated as costs, which are recoverable and are not barred by the Eleventh Amendment. *Hutto v. Finney*, 437 U.S. 678, 700, 98 S. Ct. 2565; 57 L. Ed. 2d 522 (1978); *Maher v. Gagne*, 448 U.S. 122, 100 S. Ct. 2570; 65 L. Ed. 2d 653 (1980). There is no question that K.R.S. 117.015(1) makes abundantly clear that the Secretary of State and other individual members of the State Board of Elections are charged with enforcement of the state's election laws, and are, under *Ex Parte Young*, clearly proper Defendants.

Some discussion is also appropriate concerning the Governor's role in the enforcement of the challenged action. The Governor is the appointing authority for the Kentucky State Board of Elections and their members. K.R.S. 117.015. The Governor likewise has the absolute ability to remove each member of the Kentucky Board of Elections, with or without cause, except the Secretary of State. K.R.S. 63.080. And the Governor has powers under the Kentucky Constitution to require reports be issued to him by officers of the State, including the Board of Elections. KY. CONST.§ 78. He is charged with the execution of the laws. KY. CONST. § 81. The Governor must also approve employment contracts with the Board and has the power to reduce budgets and spending. *See* attached Exhibit A (executive orders or portions thereof

9

approving employment contracts and directing funding reductions). The ability to appoint (and remove) members of the board that enforces a statute is sufficient for an injunction under *Ex Parte Young*. *Papasan v. Allain*, 478 U.S. 265, 106 S. Ct. 2932; 92 L. Ed. 2d 209 (1986) (suit against Governor and Secretary of State appropriate in school funding case); *Los Angeles County Bar Ass'n v. March Fong Eu*, 979 F.2d 697 (9th Cir. 1992) (duty to appoint by Governor sufficient nexus for *Ex Parte Young* injunction); *HRPT Props. Trust v. Lingle*, 715 F. Supp. 2d 1115 (D.Hi. 2010) (Governor appropriate party in light of constitutional duty to enforce); *but cf. Kelly v. Burks*, 414 F. Supp. 2d 681 (ED Ky. 2006) (Governor's appointment power over adjudicatory Personnel Board not enough to remove immunity). Here, of course, the Governor's involvement is far more pronounced than mere appointment, including his ability to require reports, to remove members at will, to control budgets, and approve contracts.

5. The Reasonableness of the Fee Request

    a. The Hourly rates

No party seriously challenges the requested $275/hour hourly rates of either Mr. Wiest or Mr. Brueggemann. These fees are supported with the declarations not just on Mr. Wiest and Mr. Brueggemann, but an outside attorney, Hon. Benjamin Dusing, who reviewed the bills and offered testimony about the market rates in Kentucky.

No party has taken issue with the case law on the hourly rates: A district court is permitted to "rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011); *see Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 447 (6th Cir. 2009). The $275/hour rate is consistent with, and even lower than, other rates awarded in the Eastern and Western Districts of Kentucky.

*Maxwell's Pic-Pac, Inc. v. Dehner*, 2013 U.S. Dist. LEXIS 34596 (WD Ky. 2013) ($342 an hour reasonable); *Bench Billboard Co., Inc. v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:05-CV-172-H, 2007 U.S. Dist. LEXIS 71137 (W.D. Ky. filed Sept. 25, 2007) (awarding $305 and $275 per hour); *Am. Canoe Ass'n v. City of Louisa*, 683 F. Supp. 2d 480 (EDKY 2010) (awarding $300 per hour); *Say v. Adams*, 2009 U.S. Dist. LEXIS 23863 (WD KY 2009) ($300 an hour appropriate for attorney with several years of federal court litigation experience).

Similarly, this particular matter was filed in the Northern Division of the Eastern District of Kentucky – which is essentially the greater Cincinnati area. Rates approved by the Southern District of Ohio's Western Division are similarly supportive of the claimed rates. *Hunter v. Hamilton County Bd. of Elections*, 2013 U.S. Dist. LEXIS 141297 (Sept. 30, 2013) (looking at "Rubin" rates of $299 for attorneys with 8 years' experience and approving rates up to $400 per hour).

    b. <u>The hours spent are reasonable</u>

The only serious objection that any party makes to the number of hours spent is attorney time for "conferences." Case law, however, is clear that "conferences between attorneys are necessary, valuable, and often result in greater efficiency and less duplication of effort." *Walker v. Gruver*, 2013 U.S. Dist. LEXIS 158219 (MD PA 2013). Only when such conferences are excessive or disproportionate are fee applications reduced. *See, also, Alloys Int'l, Inc. v. Aeronca, Inc.*, 2012 U.S. Dist. LEXIS 162007 (SD Ohio 2012) (conferences are reasonable and necessary when more than one attorney is working on a case and the fact that two timekeepers participate in a conference does not make their work duplicative).

Defendants sought consolidation, not Plaintiffs. And, having obtained consolidation, Plaintiffs endeavored to reduce filings and pleadings by having their counsel confer with each

11

other. In the present case, conferences between ACLU Attorneys and Mr. Wiest and Mr. Brueggemann resulted in a significant reduction of fees, rather than a duplication. Dividing the work resulted in: (1) one set of discovery, propounded to the various Defendants; (2) one Motion for Summary Judgment (instead of two or more); (3) one Reply to the Motion for Summary Judgment (instead of two or more); and only one response to a variety of the other filings in this case. It also remains true that Plaintiffs' counsel were representing sixteen different Plaintiffs, one in an individual and official capacity. Necessarily, this involved coordination – ensuring that each party's attorneys were comfortable with the joint filings. It is not an overstatement to say that the conferences and coordination saved *hundreds of hours*. Defendants should not be heard to complain that Plaintiffs had to confer, to be more efficient. Defendants' citation to *Cleveland Area Board of Realtors v. Euclid*, 965 F.Supp. 1017 (N.D. Ohio 1997) is simply inapposite – in that case, there was *one firm for the Plaintiff*, which was billing for "no less than thirty intra-office conferences between attorneys," which the court founds was "excessive, especially when many are described simply as 'regarding status.'" *Id.* at 1021. Here there are no conferences billed intra-office between attorneys in the same firm. In fact, as is apparent on Mr. Brueggemann's invoice, time input by members of his firm was already marked "No Charge."[5]

Here, there were two sets of Plaintiffs (eleven with the *Brown*, and five with the *Herbert* Plaintiffs, respectively), each group represented by entirely different counsel, and the coordination of efforts resulted in significant efficiency and less overall duplication, which

---

[5] The aggregate amount of time Mr. Brueggemann billed for conferences or teleconferences would total in terms of dollars, at most, approximately $2,062.50 (average of 0.3 hours each x 25). In nearly every instance where a conference or teleconference is billed, the purpose of it is detailed and involved coordination with co-counsel, communications with clients, discussing a group plan of dividing work, or to discuss proposed edits to the same. Mr. Wiest's billing entries reveal 18 entries involving phone calls, or other coordination. Many of these involved discussion of a particular motion or response, or discovery responses or discovery and the division of labor on same or discussing proposed edits, and were included in one entry with the overall preparation of the document. In total, these activities (the conferences) involved, at most, 9.9 hours, or $2,722.50. This amount was negligible in terms of the overall time spent, and necessary to avoid duplication of effort. There was significant detail in each about what was discussed and the purpose.

inured to the ultimate benefit of Defendants (who obviously recognized such efficiency by seeking – and obtaining – consolidation). Because of the coordination by Plaintiffs' counsel, attorney fees were likely hundreds of hours less than they otherwise would have been. Defendants, not Plaintiffs, made the choice to consolidate the *Brown* and *Herbert* matters for reasons of efficiency. Plaintiffs took it a step further and coordinated their efforts to be more efficient.

***Each Defendant*** refused to concede the issue of unconstitutional districts, prompting the significant and vast majority of the hours incurred in obtaining the judgment in question. [R.E. #50 at 66:14-68:20 (Secretary of State refused to concede), 69:7-23 (Governor refused to concede), 70:3-75:1 (President Stivers refused to concede); R.E. #84 at 6-7 (Speaker refused to concede); R.E. #86 at 3-6, 9 (President Stivers refusal to concede); R.E. #75 at 9-21, 33-38 (LRC refused to concede)]. This, of course, prompted discovery, it prompted consultation with experts, and it prompted significant motion practice. The presence of some 136 Docket Entries is astounding, demonstrating ongoing, unnecessarily contentious litigation on relatively straightforward issues. Furthermore, the tight timelines present in this case necessarily involved the division of labor between counsel, and that division of labor required conferences – to discuss who would do what, to discuss proposed edits and changes, arguments to be made, and to discuss concerns and perspectives raised by certain plaintiffs in comparison with the others.

Neither the Board Defendants, nor the Governor, are blameless in terms of the fees involved. These parties even refused to concede to the population data, requiring yet more discovery work. Had these parties consented, early on, to an injunction regarding the continued use of the 2002 maps, the legislative defendants could have been dismissed, saving the parties, and the Court, significant time and expense. They did not. And their silence, in the course of

13

persistent and ongoing overly litigious activities of the legislative defendants was a deafening ratification of the litigious approach taken by their co-Defendants.

Case law is clear that where significant hours are expended by Plaintiffs due to the litigation tactics of the Defendants, the Defendants cannot then be heard to complain. *Torres v. Gristede's Operating Corp.*, 2012 U.S. Dist. LEXIS 127890 (S.D. NY. 2012) ("[t]he Court notes that much of the work performed by Plaintiffs was due to Defendants' choice of litigation tactics. Given the Defendants' vigorous approach to litigating this case, they cannot now complain as to the amount that Plaintiffs were forced to expend in response."); *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (observing that "hours required to litigate even a simple matter can expand enormously" where "attorney is compelled to defend against frivolous motions and to make motions to compel [discovery] compliance"); *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000) ("defendants' obstructive and dilatory litigation tactics" gave rise to the fees incurred). The point, however, is not to point a finger about the fee award, but rather to point out that the litigation in this case was contentious, required a significant amount of time, and that the hours spent and claimed are both reasonable and necessary.

Defendants complain about conferences that totaled no more than approximately $5,000 of the total fee application. They do not challenge with any particularity the remaining fee application, which speaks volumes about the reasonableness and appropriateness of the rest of the application.

### III. CONCLUSION

Plaintiffs in the *Brown* matter have demonstrated that they are prevailing parties. Using the lodestar method, as required, they have further documented their entitlement to $113,135.00 in attorney fees, and $1,516.42 in costs.

                                  Respectfully submitted,

                                  s/ Christopher D. Wiest
                                  Christopher D. Wiest (KBA 90725)
                                  Chris Wiest, Atty at Law PLLC
                                  25 Town Center Blvd, Suite 104
                                  Crestview Hills, KY 41017
                                  513-257-1895 (v)
                                  chriswiestlaw@yahoo.com

                                  Rick Brueggemann (90619)
                                  E. Jason Atkins (88044)
                                  Hemmer DeFrank, PLLC
                                  250 Grandview Dr.
                                  Fort Mitchell, KY 41017
                                  859/578-3855 (v)
                                  rbrueggemann@hemmerlaw.com

                                  *Counsel for Brown Plaintiffs*

## CERTIFICATE OF SERVICE

    I certify that on December 18, 2013, I electronically filed this *Brown* Plaintiffs' Motion for Attorney Fees with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following to all of the other counsel of record in this matter.

                                  s/ Christopher D. Wiest
                                  *Counsel for the Brown Plaintiffs*

15