**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, *et al.*, | |
| Plaintiffs, | Case No. 2:13cv00068 |
| v. | **Electronically filed** |
| COMMONWEALTH OF KY, *et al.*, | |
| Defendants. | |
| MARTIN HERBERT, *et al.*, | |
| Plaintiffs, | Case No. 3:13cv00025 |
| v. | |
| KENTUCKY STATE BOARD OF ELECTIONS, *et al.*, | |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF *HERBERT* PLAINTIFFS' MOTION
FOR AWARD OF ATTORNEYS' FEES AND COSTS**

The Plaintiffs in *Herbert, et al. v. Kentucky State Board of Elections, et al.*, Case No. 3:13cv00025 ("*Herbert* Plaintiffs"), by counsel, submit this reply memorandum in support of their motion for an award of attorneys' fees and costs. [RE #131.]  In opposing the motion, Kentucky State Board of Elections Board Members and the Secretary of State (collectively "Board Defendants") assert primarily that the *Herbert* Plaintiffs are not prevailing parties; thus, any fee award is inappropriate. [RE #134: Board Defendants' Joint Response to Plaintiffs' Motions for Attorneys' Fees and Costs ("Bd. Def.

Response"), at 5-7.] The Board Defendants alternatively argue that even if the *Herbert* Plaintiffs are prevailing parties, the requested fee award should nonetheless be reduced because: 1) the *Herbert* Plaintiffs achieved only limited success [*id*. at 7-8]; 2) the claimed hours include time spent on non-compensable activities [*id*. at 8-9]; 3) the claimed hourly rates are not reasonable [*id*. at 8 n.3]; and 4) time spent responding to arguments raised by defendants other than the Board Defendants should be disallowed. [*Id*. at 9-11.][1] The *Herbert* Plaintiffs now reply.

## I.   THE HERBERT PLAINTIFFS ARE PREVAILING PARTIES.

The *Herbert* Plaintiffs successfully sought summary judgment on the merits of their sole claim, *and* they likewise obtained a final judgment awarding them declaratory and permanent injunctive relief barring the Board defendants from using Kentucky's 2002 legislative districts in future elections. The Board Defendants nonetheless argue that the *Herbert* Plaintiffs failed to attain prevailing party status because the litigation did not result in court-ordered legislative maps proposed by the *Herbert* Plaintiffs. [*Id*. at 5-7.] However, this argument fundamentally misconstrues the prevailing party inquiry by relying upon a factually distinguishable decision whose rationale is inapplicable here.

Specifically, the Board Defendants cite *Hastert v. Ill. State Bd. of Election Comm'rs*, 28 F.3d 1430 (7th Cir. 1994) for the proposition that, in redistricting cases, a plaintiff attains prevailing party status *only* when she proposes a legislative map that is ultimately adopted by the court. [RE #134: Bd. Def. Response, at 6.] But a review of *Hastert* reveals that the Board Defendants misconstrue its impact upon the prevailing

---

[1]   The Board Defendants also argue that any fee award should be equitably apportioned among the various defendants. [RE #134: Bd. Def. Response, at 11-15.] But because the Legislative defendants were not parties to the *Herbert* Plaintiffs' suit, the Board Defendants confine that argument to the *Brown* Plaintiffs' fee request. [*Id*.]

2

party framework. In *Hastert*, the Illinois General Assembly's failure to complete congressional redistricting in 1991 prompted four separate groups of plaintiffs to file suit. *Hastert*, 28 F.3d at 1435. As here, the suits were consolidated and heard by a three-judge district court. And, as here, the court found the existing map unconstitutional and enjoined its further use. *Id*. But unlike here, the Illinois General Assembly could not enact a new congressional map during the litigation because the state constitutional deadline for doing so had already passed. *Id*. ("[T]he Illinois Generally Assembly failed to enact a redistricting plan by the constitutionally mandated June 30, 1991 deadline."); *see also id*. at n.1 (citing Art. 4, § 3(b) of Illinois Const. for requirement that redistricting occur "[i]n the year following each Federal decennial census year…"). Thus, it fell to the *Hastert* Court to adopt a new congressional map for Illinois, and the various plaintiffs submitted competing plans for that purpose. *Id*. at 1439 (noting that the "real dispute" in the case was "among the various plaintiffs" over whose map would be adopted). It is in this context that the *Hastert* Court found that only those plaintiffs whose proposed maps were adopted could be deemed prevailing parties. *Id*. at 1443.

By contrast, the Kentucky Constitution imposes no "constitutional deadline" on the General Assembly to complete redistricting. That is why the General Assembly was able to convene in special session and enact new state legislative districts *after* the commencement of these suits and more than *two years* after receipt of the 2010 Census data. But the fact that the General Assembly (and not the Court) adopted new legislative maps does not undermine the fact that the Court's merits-based ruling invalidating Kentucky's 2002 maps and the accompanying permanent injunctive relief materially altered the parties' legal relationship in a way that directly benefitted the *Herbert*

3

Plaintiffs. Before the permanent injunction, the Board Defendants were free to continue using the 2002 maps to conduct elections, including special elections. After the injunction, of course, they were not. And the Board Defendants vigorously opposed that result by arguing that barring them from using the 2002 maps would hamper their ability to conduct elections. [RE #81: Board Defendants' Response to Plaintiffs' Joint Motion for Summary Judgment, at 3-5.] Only *after* the Court awarded summary judgment to the *Herbert* Plaintiffs and permanently enjoined the Board Defendants from further use of the 2002 maps did the Kentucky General Assembly then finally act to adopt new legislative maps using the 2010 Census data. Then, this Court memorialized the declaratory and permanent injunctive relief in its final judgment. [RE #127: Order; RE #128: Permanent Injunction.] Thus, under any reasonable application of the appropriate inquiry, the *Herbert* Plaintiffs have attained prevailing party status.[2] *See e.g.*, *Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012) (holding that grant of permanent injunction sufficient to confer prevailing party status); *id*. ("And we have repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy that test" for prevailing party status) (citing *Rhodes v. Stewart,* 488 U.S. 1, 4, (1988) (*per curiam* )).

---

[2]    The Board Defendants also seemingly suggest that the *Herbert* Plaintiffs are not prevailing parties because the defendants voluntarily changed their conduct. [RE #134: Bd. Def. Response, at 5 (citing *Buckhannon Bd. & Care Home v. W.Va. Dept. of Health & Human Servs.*, 532 U.S. 598, 604 (2001).] But that argument is inapplicable here. The *Herbert* Plaintiffs attained a merits-based ruling awarding them summary judgment on their sole claim *and* granting them their requested declaratory and permanent injunctive relief. As was noted in the very authority upon which the Board Defendants rely, "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Buckhannon*, 532 U.S. at 604 (internal quotations and citation omitted).

## II. THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE AND THUS FULLY COMPENSABLE.

### A. A fee reduction for "limited success" is inappropriate.

The Board Defendants also argue that even if the *Herbert* Plaintiffs are prevailing parties, any fee award should be reduced because they achieved only "limited success." [RE #134: Bd. Def. Response, at 8.] But the Board Defendants do not make clear why they construe the results obtained in this litigation as "limited success," nor do they point to any specific evidence to support reducing the fee award on that basis. Presumably, the argument relies on the fact that the General Assembly (and not the Court) adopted new legislative maps. But, if so, the argument disregards the nature of the *Herbert* Plaintiffs' sole claim — that Kentucky's 2002 maps violated the Fourteenth Amendment's Equal Protection Clause — and the nature of the prevailing party inquiry. [RE #1: *Herbert* Complaint, ¶ 37.]

Here, the *Herbert* Plaintiffs successfully challenged Kentucky's then-operative legislative maps as contrary to the Fourteenth Amendment. They sought (and obtained) declaratory and permanent injunctive relief relating to that claim. There is nothing "limited" about the success the *Herbert* Plaintiffs achieved in this litigation; they obtained all that they sought. The fact that the Governor convened a special session of the General Assembly (*after* the *Herbert* Plaintiffs filed suit) to address redistricting does not undermine the fact that the *Herbert* Plaintiffs obtained merits-based relief relating to their sole claim.

The Sixth Circuit has recently re-affirmed that reduction of a prevailing plaintiff's fee award for "limited success" is to "be applied only in rare and exceptional cases where specific evidence in the record requires it." *Waldo v. Consumers Energy Co.*, 726 F.3d

5

802, 822-23 (6th Cir. 2013) (internal quotations omitted). Moreover, the Court of Appeals stated that "the most critical factor governing the reasonableness of a fee award is the degree of success obtained. In cases when a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id*. (internal quotations and citations omitted). Because the *Herbert* Plaintiffs' success in this litigation represented a total vindication of the sole claim they asserted, the Board Defendants' argument that any fee award should be reduced for "limited success" is without merit.

### B. Counsels' time reviewing HB 1 was reasonably incurred and thus fully compensable.

The Board Defendants also seek to exclude from any fee award time spent by counsel (and expert fees incurred for) reviewing HB1. According to the Board Defendants, those fees and costs are non-compensable because they are "unrelated" to the *Herbert* Plaintiffs' claims regarding Kentucky's 2002 maps. [RE #134: Bd. Def. Response, at 8.] But the Board Defendants offer no legal authority for the proposition that those fees and costs were unreasonably incurred in this litigation, nor could they. Analysis of HB1 constituted work that a reasonable attorney would have engaged in within this litigation. At the time that work was performed, the parties were obliged to raise any challenges to HB1 in the second phase of this litigation. Deciding whether (or not) to raise any challenges to HB1 necessarily involved an extensive and thorough examination of those maps. As such, fees and costs associated with those efforts are fully compensable.

> [C]ourts have held that it is improper to engage in an "ex post facto determination of whether attorney hours were necessary to the relief obtained." The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."

6

>Hirsch and Sheehey, *Awarding Attorneys Fees and Managing Fee Litigation* (2nd Edition), Federal Judicial Center 2005, p. 29 (citing *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3rd Cir. 1993)).

*Fharmacy Records v. Nassar*, 729 F. Supp. 2d 865, 887 (E.D. Mich. 2010) *aff'd,* 465 F. App'x 448 (6th Cir. 2012).

### C. The *Herbert* Plaintiffs have established the reasonableness of counsels' requested hourly rates, and Defendants have failed to offer any evidence to rebut that conclusion.

The Board Defendants, in a footnote, also assert that the requested hourly rates for the *Herbert* Plaintiffs' counsel should be reduced "in light of prevailing market rates in Kentucky." [RE #134: Bd. Def. Response, at 8 n.3.] According to the Board Defendants, the "Plaintiffs have not shown that the rates requested … particularly the $450 per hour rate sought for Mr. McDonald — are reasonable …" [*Id*.] In doing so, the Board Defendants ignore the declaration of Anthony Sammons offered by the *Herbert* Plaintiffs establishing the reasonableness of counsels' requested hourly rates, including that of Mr. McDonald, in the relevant legal community. [RE #131-7: Declaration of Anthony Sammons ("Sammons Decl."), at ¶¶ 2-7.] And the Board Defendants offer no evidence to rebut Sammons' declaration or otherwise undermine his conclusions. *See e.g.*, *Women's Med. Prof'l Corp. v. Baird, M.D.*, 2:03-CV-162, 2003 WL 23777732 (S.D. Ohio Dec. 15, 2003) (awarding requested hourly rates where defendant failed to offer any evidence rebutting prevailing plaintiff's evidence establishing counsels' qualifications and the reasonableness of the claimed rates in the relevant legal community) *aff'd sub nom. Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006). Because the *Herbert* Plaintiffs have established the reasonableness of counsels' requested hourly rates, and

7

because the Board Defendants have offered no proof (or substantive legal arguments) to the contrary, the requested hourly rates should be awarded in full.

> **D.   Time spent responding to the Legislative Defendants' arguments is fully compensable particularly where (as here) the Board Defendants successfully sought consolidation of the two actions.**

Finally, the Board Defendants also argue that the Herbert Plaintiffs' fee award should be reduced for time spent responding to arguments raised by other defendants in this litigation. [RE #134: Bd. Def. Response, at 9-11.] The Board Defendants believe that the time spent responding to other defendants' arguments was "unnecessary" given that the *Herbert* Plaintiffs did not sue those defendants. [*Id*. at 9.] This argument, too, is without merit.

Omitted from the Board Defendants' argument is the fact that *they* moved to consolidate the actions over the *Herbert* Plaintiffs' objections. [*Compare* RE #9 (*Herbert, et al.*): Motion to Consolidate *with* RE #10 (*Herbert, et al.*): Plaintiffs' Response to Defendants' Motion to Consolidate.] And also omitted is the fact that, despite having had the opportunity to do so at the June 21, 2013 Scheduling Conference, the Board Defendants opted *not* to concede that the 2002 maps violated the Fourteenth Amendment, opting instead to litigate the case to final judgment with their co-defendants. Were either of these facts different, the Board Defendants' argument in favor of reducing the *Herbert* Plaintiffs' fee award for time spent responding to other defendants might have merit.[3] But

---

[3] Moreover, there is some indication that had the cases *not* been consolidated, the *Herbert* Plaintiffs would have had to invest even *more* time than they did in pursuing discovery given the Board Defendants' position that they lacked sufficient information to admit or deny many of the easily verifiable facts relating to the 2002 maps. [*See attached* Exh. 1: Defendant Secretary of State and State Board of Elections' Responses to Plaintiffs' Discovery Requests ("Bd. Def. Discover Responses"), at Responses to Request for Admission Nos. 1-3, 7-10, 15-22.]

because that time was reasonably incurred in the prosecution of the *Herbert* Plaintiffs' claim (or in defending the favorable rulings they obtained relating to that claim), it is fully compensable. *See Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 897 (D.C. Cir. 2004) ("[A]n award of attorney's fees under § 1988 "is not meant as a 'punishment' for 'bad' defendants who resist plaintiffs' claims in bad faith [,] [but] is meant to compensate civil rights attorneys who bring civil rights cases and win them.") (alterations in original)

## CONCLUSION

Because counsels' claimed hours on behalf of the *Herbert* Plaintiffs were reasonably incurred in successfully challenging Kentucky's 2002 legislative maps, and because the requested hourly rates are reasonable within the relevant legal community for the services rendered and are commiserate with those charged by attorneys with comparable skill, experience, and reputation, the Court should grant in full the *Herbert* Plaintiffs' motion for an award of attorneys' fees and costs in this matter in the amount of $63,563.33.

Respectfully submitted,

s/ William E. Sharp
William E. Sharp
ACLU OF KENTUCKY
315 Guthrie Street, Suite 300
Louisville, KY 40202

9

Laughlin McDonald
ACLU Voting Rights Project
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303

Dale Ho
ACLU Voting Rights Project
125 Broad Street
New York, NY 10004

Ben Carter
BEN CARTER LAW PLLC
455 South Fourth Street, Suite 902
Louisville, KY 40202
ACLU of KY Cooperating Attorney

*Counsel for Herbert Plaintiffs*

**CERTIFICATE OF SERVICE**

      I certify that on December 23, 2013, I electronically filed this Reply Memorandum in Support of *Herbert* Plaintiffs' Motion for Award of Attorneys' Fees and Costs with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Stanton L. Cave
s.cave1@insightbb.com
Jessica A. Burke
jessica@jblawoffices.net

*Counsel for Senate President Robert Stivers*

Pierce B. Whites
piercewhites@aol.com
Anna S. Whites
annawhites@aol.com

*Counsel for House Speaker Greg Stumbo*

Clay A. Barkley
clay.barkley@ag.ky.gov
Matt James
matt.james@ag.ky.gov

*Counsel for Gov. Steve Beshear, Commonwealth of Kentucky*

Laura H. Hendrix
laura.hendrix@lrc.ky.gov
Greg A. Woosley
greg.woosley@lrc.ky.gov

*Counsel for KY Legislative Research Commission*

Lynn Sowards Zellen
lynn.zellen@ky.gov
Noel E. Caldwell
ncaldwell@caldwelllawyers.com
Jonathan T. Salomon
jsalomon@tachaulaw.com

*Counsel for Kentucky State Bd. of Elections, Secretary of State Alison L. Grimes, David Cross, John W. Hampton, Stephen Huffman, Denise May, George Russell, Roy Sizemore, and Maryellen Allen*

Christopher D. Wiest
chriswiestlaw@yahoo.com
Rick Brueggemann
rbuegemann@hemmerlaw.com

*Counsel for Brown Plaintiffs*

 

s/ William E. Sharp
*Counsel for the Herbert Plaintiffs*