UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| KENNY BROWN, individually<br>And in his official capacity<br>as the Boone County Clerk,<br>et al., )<br><br>    Plaintiffs, )<br>)<br>V. )<br>)<br>KENTUCKY LEGISLATIVE )<br>RESEARCH COMMISSION, et )<br>al., )<br>)<br>    Defendants. )<br>_____ )<br>)<br>MARTIN HERBERT, et al. )<br>)<br>    Plaintiffs, )<br>)<br>V. )<br>)<br>KENTUCKY STATE BOARD OF )<br>)<br>ELECTIONS, et al., )<br>)<br>    Defendants. )<br>_____ ) | Civil No. 2:13-cv-68<br>DJB-GFVT-WOB<br><br><br><br><br><br><br><br><br><br><br><br><br>Civil No. 3:13-cv-25<br>DJB-GFVT-WOB<br><br><br>**MEMORANDUM OPINION**<br>        **AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Before: BOGGS, *Circuit Judge*, VAN TATENHOVE, *District Judge;* and BERTELSMAN, *Senior District Judge*.

    This matter is before the Court on the motion of two sets of plaintiffs' attorneys for attorney fees (Docs. 129, 131) arising out of two actions (later consolidated) to declare the existing state legislative redistricting plan for the

Commonwealth of Kentucky unconstitutional and require the creation and implementation of a new constitutional plan.

## *I. BACKGROUND AND PROCEDURE*

The Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States provides:

> No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws.

As applied to the design of state legislative districts, this clause has been interpreted to mean that, as far as possible, the rule of "one person, one vote" shall be implemented. *See Reynolds v. Sims*, 377 U.S. 533, 558 (1964) (citation and quotation omitted). That is, each person's vote should have about the same weight as every other person's vote. This requires legislative districts to be drawn such that they are as equal as possible in population. *Id*. at 568. Of course, total equity is not possible, and some deviation is permitted. *Id*. at 577.

Populations of legislative districts may change drastically over time. This fact requires periodic redistricting if the "one person, one vote" Constitutional mandate is to be observed. Section 33 of the Kentucky Constitutional, therefore, requires that Kentucky's legislative districts be reapportioned every 10 years—shortly after the results of the United States decennial census are available.

In 2002, the Kentucky General Assembly adopted a redistricting plan. In 2012, it adopted another, reflecting the intervening shifts in population. However, the Kentucky Supreme Court struck down the 2012 plan, declaring that plan unconstitutional under the Kentucky State Constitution because the plan "fail[ed] to achieve sufficient population equality and . . . fail[ed] to preserve county integrity." *Legislative Research Comm'n v. Fischer*, 366 S.W.3d 905, 908 (Ky. 2012). In order to "ensur[e] the orderly process of the 2012 elections," the Kentucky Supreme Court ordered that the 2002 redistricting plan remain in effect. *Id*. at 919.

As of early 2013, the Kentucky General Assembly had not adopted a new plan, leaving the 2002 plan prospectively in effect for the 2014 legislative elections. This was the situation, even though the Kentucky General Assembly had met in regular session in early 2013, and it was obvious that the population disparities of the 2002 plan districts far exceeded the parameters allowed by the "one person, one vote" doctrine.

The plaintiffs here, among other concerned citizens and civic groups, emphatically protested that the 2002 plan, among other deficiencies, unduly favored rural districts over urban ones and did not reflect the drastic shifts in population that had occurred from the former to the latter in the previous decade.

These citizens urged the Governor to call a special session of the General Assembly to correct the situation, but as of June, 2013, no action had been taken.

On June 27, 2013, a group of citizens, known in this litigation as the *Brown* plaintiffs, filed suit against the Commonwealth of Kentucky[1] and numerous agencies and officials thereof, namely, the Governor, the Secretary of State, the Speaker of the House of Representatives ("Speaker Stumbo"), the President of the Senate ("Senator Stivers"), the Board of Elections[2], the Legislative Research Commission ("LRC"), and the Attorney General[3]. The individual officials named were sued in their official capacities only.

This action was filed in the Covington Division of this Court. It demanded the appointment of a three-judge district court as provided in 28 U.S.C. § 2284 for redistricting suits; a declaration that existing 2002 districts violated the Equal Protection Clause; and an injunction requiring the defendants to draw new, constitutional legislative districts.

---

[1] The Commonwealth of Kentucky was dismissed via an Agreed Order entered by this Court on August 5, 2013, but in essence remains a party because the defendant officials were sued in their official capacities. (R. 94).

[2] The Board of Elections Members (David Cross, John Hampton, Stephen Huffman, Denise May, George Russell, and Roy Sizemore) were substituted for the Board of Elections on August 5, 2013. (R. 93).

[3] Pursuant to an Agreed Motion to Dismiss, the Attorney General was dismissed on June 20, 2013. (R. 40).

On May 10, 2013, another group of citizens, known in this litigation as the *Herbert* plaintiffs, filed a similar action in the Frankfort division of this Court. The officials named as defendants varied somewhat from the *Brown* plaintiffs' suit, but the gist of this second action was the same.

On May 30, 2013, the Honorable Alice M. Batchelder, Chief Judge of the United States Court of Appeals for the Sixth Circuit, appointed the three-judge district court as provided by 28 U.S.C. § 2284, consisting of the Honorable Danny J. Boggs, United States Circuit Judge, Sixth Circuit Court of Appeals; the Honorable Gregory F. Van Tatenhove, United States District Judge, Eastern District of Kentucky; and the Honorable William O. Bertelsman, Senior United States District Judge, Eastern District of Kentucky. (R. 25). Subsequently, the two cases were consolidated. (R. 47).

On June 6, 2013, the Court issued an order setting a pretrial and scheduling conference for June 21, 2013, in Lexington, Kentucky. (R. 27). Thereafter, on June 21, 2013, the Governor called a special legislative session to perform a redistricting of the Commonwealth's legislative districts. This session was directed to commence on Monday, August 19, 2013.

After hearing all parties at the June 21, 2013, pretrial and scheduling conference, the three-judge district court entered a scheduling order providing for limited discovery,

5

expedited summary judgment motions, and, most importantly, a deadline for the parties to file any objections to any plan enacted at the special legislative session. (R. 46; R. 49).

Subsequently, the plaintiffs filed a joint motion for summary judgment seeking (1) a declaratory judgment that the 2002 legislative districts were unconstitutionally malapportioned and (2) a permanent injunction barring the defendants from using those districts in any future elections. (R. 67-1). This motion was opposed by various defendants on various grounds, including their assertions that the plaintiffs did not have standing; the plaintiffs could not meet the requirements for a declaratory judgment or preliminary injunction; the plaintiffs' claims were barred by *res judicata*, collateral estoppel, mootness, the *Rooker-Feldman* doctrine, and the relevant statute of limitations. (R. 75; R. 81; R. 84; R. 86). Also, a number of the defendants maintained that no violation of equal protection had taken place.

On Friday, August 16, 2013, this three-judge panel unanimously granted the motion for summary judgment, declared the 2002 redistricting plan unconstitutional, and enjoined its use in future elections. (R. 97).

That following Monday, August 19, 2013, the General Assembly met pursuant to the Governor's mandate to perform a redistricting of the Commonwealth's legislative districts. On

August 23, 2013, House Bill 1, which redrew the Kentucky state legislative districts, was enacted into law when it was signed by the Governor.

Thereafter, the deadline established by this court for filing objections to House Bill 1 passed with no objections being filed.

On October 31, 2013, this Court, in a unanimous order, PERMANENTLY RESTRAINED AND ENJOINED the defendants from administering further elections pursuant to the 2002 plan and retained jurisdiction to enforce the injunction. (R. 128). Additionally, this Court set deadlines for filing motions for attorney fees, and such motions were timely filed by both sets of plaintiffs. (R. 127).

## *II. THE ATTORNEY FEES MOTIONS AND OBJECTIONS*

The *Brown* plaintiffs moved for attorney fees in the amount of $113,135.00 and costs of $1,516.42. (R. 129-1). The *Brown* plaintiffs' attorneys filed a memorandum in support of this motion, arguing that the plaintiffs they represented were "prevailing parties," as required by 42 U.S.C. § 1988, and that their hours and rates were reasonable.

Shortly thereafter, the *Herbert* plaintiffs filed a motion seeking $58,622.50 in attorney fees and $4,940.83 in costs, making substantially the same arguments as the *Brown* plaintiffs. (R. 131-1).

7

The defendants have filed timely objections to these motions, as follows:

1. All defendants argue that the plaintiffs were not "prevailing parties" and that the fees requested were unreasonable.
2. The Governor of the Commonwealth asserts that he is entitled to Eleventh Amendment immunity.
3. Senator Stivers and the LRC assert that they are entitled to legislative immunity.
4. The Secretary of State, the Board of Elections Members, and the Governor argue that any fees awarded should be apportioned "equitably among all defendants" with Senator Stivers, Speaker Stumbo, and the LRC ("legislative defendants") paying the greater portion.

**A. Plaintiffs are "Prevailing Parties"**

Defendants argue that neither group of plaintiffs were "prevailing parties" within the meaning of the statutes permitting the award of attorney fees to "prevailing parties" in civil rights litigation. *See* 42 U.S.C. § 1988.

Defendants contend that they would have enacted a redistricting statute anyway, even if this lawsuit had not been filed. It is probable, however, that a timely special session of the legislature was called only because the lawsuits had been filed.

8

That is not the test, however, because it would require application of the "catalyst theory" that was rejected by the United States Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Services*, 532 U.S. 598, 610 (2001). There, the Court mandated that a "prevailing party" was "one who has been awarded some relief by the court . . . ." *Id*. at 603.

The plaintiffs meet this definition because they obtained a declaration that the 2002 plan was unconstitutional and an injunction prohibiting its use in any future election. As we noted above, there was a substantial risk that if the 2013 plan enacted by the legislature in the special legislative session was declared unconstitutional for any reason (such as county integrity), the 2002 plan would again be revived as it had been in 2012. Therefore, the relief obtained is significant. Thus, reasonable attorney fees are properly awarded since it is required only that the plaintiffs obtain "some relief." *Id.*; *see also DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 670–71 (6th Cir. 2006); *Lux v. Judd*, 868 F. Supp. 2d 519, 527 n.5 (E.D. Va. 2012).

Defendants rely on *Hastert v. Illinois State Bd. of Election Commissioners*, 28 F.3d 1430 (7th Cir. 1994), for the proposition that fees should be allowed only if the plaintiffs succeeded in having their own plan adopted. This Court,

9

however, agrees with the plaintiffs that *Hastert* is distinguishable because, in *Hastert*, multiple groups of plaintiffs offered rival plans and the plan that was ultimately adopted only benefitted a few of the groups. *Id*. at 1443. In fact, the *Hastert* Court found that the case before it was "not ordinary litigation . . . [because] [t]he real dispute was among the various plaintiffs." *Id*. at 1439. That is not the situation before this Court. In any event, *Hastert* is superseded by the Supreme Court's definition of a "prevailing party" in *Buckhannon*. 532 U.S. at 603.

**B. The Eleventh Amendment**

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Shortly after its ratification by the states, it was held that, despite the language of the amendment, it applies to citizens suing their own state.

But, it is well settled that it does not apply to actions brought pursuant to the Equal Protection Clause of the Fourteenth Amendment, or legislation enacted thereunder, because that Amendment, enacted immediately after the Civil War, is directed at "state action" since it provides, "No State shall

make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." Also, Section Five of the Fourteenth Amendment further provides, "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

Some of the "appropriate legislation" Congress has passed to enforce the provisions of the Fourteenth Amendment are 42 U.S.C. §§ 1983 and 1988. The first of these sections provides a right of action to enforce a citizen's constitutional rights against deprivation by a state or persons engaged in "state action," and the second provides for awards of attorney fees to "prevailing parties" in such cases.

"[T]he U.S. Supreme Court has held that Congress, in the exercise of its enforcement powers under Section 5 of the Fourteenth Amendment, may authorize an award of attorney's fees against a state without violating the Eleventh Amendment." 1 ROBERT L. ROSSI, ATTORNEYS' FEES § 10:25 (3d ed. 2013) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)). "Thus, numerous cases have held or recognized that the Eleventh Amendment does not bar an award of attorney's fees under 42 U.S.C.A. § 1988 ancillary to a grant of prospective or declaratory relief against a state." *Id.* (citing *Maher v. Gagne*, 448 U.S. 122 (1980); *Stevens v. Gay*, 864 F.2d 113 (11th Cir. 1989); *Glosen v. Barnes*, 724 F.2d 1418 (9th Cir. 1984); *Helfrich v. Com. of Pa.*,

11

*Dept. of Military Affairs*, 660 F.2d 88 (3d Cir. 1981); *Se. Legal Def. Grp. v. Adams*, 657 F.2d 1118 (9th Cir. 1981)).

**C. Apportionment of Fees**

The Secretary of State, the Board of Elections Members, and the Governor all assert that if this Court finds that the plaintiffs are "prevailing parties," the Court should apportion the fees with the majority of the plaintiffs' attorney fee liability apportioned to the legislative defendants. (R. 134 at pp. 11-15; R. 136 at p. 7).

However, it should be noted that the *Brown* plaintiffs—the only plaintiffs to assert claims against the legislative defendants—concede that the legislative defendants have legislative immunity, the *Brown* plaintiffs have not prevailed against the legislative defendants, and, thus, they are not seeking attorney fees against the legislative defendants. (R. 137 at p. 1, n.1).

Further, apportionment is not appropriate under these circumstances. In *Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 895 (D.C. Cir. 2004), the plaintiff argued on appeal "that the district court erred as a matter of law in awarding only a portion of his request for attorney's fees and expenses under § 1988 based on apportioning most of the fees to an immune defendant." Reversing the district court, the *Turner* court stated, "[A] plaintiff's fully compensatory fee for claims

12

centered on a set of common issues against two or more jointly responsible defendants should be assessed jointly and severally." *Id.* at 898 (citation internal quotation omitted). Further, that court held, "enforcers of unconstitutional laws may be held liable for attorneys' fees even if their involvement in the litigation has been minor . . . ." *Id.* (citation omitted).

"Section 1988 does not permit a court to inquire into defendants' comparative fault where to do so obstructs Congress' purpose of compensating successful private attorneys general." *Id.* (citation omitted). Thus, it would be inappropriate for this Court to apportion the plaintiffs' attorney fees under the circumstances presented.

Additionally, as noted above, all individuals named as defendants herein are sued in their official capacity only. This is the same as suing the Commonwealth.

The defendants are apparently concerned about whose budget should be assessed for the fees. We believe it is inappropriate for a federal court to unnecessarily insert itself in such issues of state governance. Therefore, all fees will be assessed against the Commonwealth without apportionment among its officials and agencies.

**D. Contentions that the Fees Sought are Excessive and/or Duplicative**

This requires a detailed and meticulous analysis of the fee applications to review the propriety of the hourly rates requested, unnecessary duplication by the two groups of plaintiffs, etc.

It is customary in this district to refer such matters to the United States Magistrate Judge assigned to the case for his Report and Recommendation. *See* 28 U.S.C. § 636; Fed. R. Civ. P. 72.

Therefore, the Court being sufficiently advised, **IT IS ORDERED** that:

(1) Both groups of plaintiffs in this case are entitled to reasonable attorney fees as prevailing parties; and

(2) Pursuant to Fed. R. Civ. P. 72, the defendants' objections regarding the reasonableness of the plaintiffs' requested attorney fees are referred to the Honorable J. Gregory Wehrman, United States Magistrate Judge for the Eastern District of Kentucky, for his Report and Recommendation. The Magistrate Judge may require such additional briefing and hold such evidentiary or other hearings as he deems appropriate.

This 27th day of January, 2014.