**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON
CIVIL ACTION NO. 13-68-WOB-GFVT-DJB**

**KENNY BROWN, et al.**                                              **PLAINTIFFS**

**v.**

**KENTUCKY LEGISLATIVE RESEARCH
COMMISSION, et al.**                                                 **DEFENDANTS**

**AND**

**MARTIN HERBERT, et al.**                                           **PLAINTIFFS**

**v.         FRANKFORT CIVIL ACTION NO. 13-25-GFVT-WOB-DJB**

**KENTUCKY STATE BOARD OF ELECTIONS, et al.**        **DEFENDANTS**

**REPORT AND RECOMMENDATION[1]**

### I.        Introduction and Procedural History

The complaints in these consolidated actions[2] asked the Court to declare then-

existing state legislative redistricting plans unconstitutional.  In August 2013, the three

judge panel assigned to both cases granted plaintiffs' motion for summary judgment

and declared the 2002 redistricting plan unconstitutional.  Doc. 97.  Shortly thereafter,

the Kentucky General Assembly passed a new redistricting plan, and the deadline set

---

1 The Sixth Circuit has held that "[a] Magistrate Judge is not permitted to determine costs or fees, but may make a report and recommendation to the district court on such issues."  *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005).

2 A group of citizens, known as the *Brown* plaintiffs filed suit against the Commonwealth of Kentucky and numerous state agencies and officials in the Covington division of this Court in June 2013.  Case 2:13-cv-68-WOB-GFVT-DJB.  However, in May 2013 another group of citizens, known as the *Herbert* plaintiffs, filed a similar action in the Frankfort division of this Court.  Case 3:13-cv-25-GFVT-WOB-DJB.  The three judge panel assigned to the cases granted a motion to consolidate them in June 2013.  *See* Doc. 47 in case 2:13-cv-68 ("the *Brown* case").  Because the three judge panel ordered all future filings to be made in the *Brown* case, unless otherwise noted all citations to the record in this report and recommendation will be to that case.

by this Court for raising objections to that plan passed with no objections having been filed.   The Court thereafter permanently restrained defendants from administering any further elections pursuant to the 2002 redistricting plan.  Doc. 128.  The *Brown* plaintiffs and the *Herbert* plaintiffs then filed separate motions for attorney fees.  Docs. 129, 131.

After briefing on the attorney fees motions was completed, the three judge panel issued a memorandum opinion and order rejecting defendants' substantive objections to the awarding of attorney fees.  Doc. 140.  The three judge panel also refused to apportion fees against the various defendants.  *Id.*  The panel then referred defendants' objections to the reasonableness of the requested fees to the undersigned for preparation of a report and recommendation.  *Id.*  In light of the three judge panel's ruling, the only matter at issue is the proper amount of the attorney fee award.

II.    Analysis

A.    Standard of Review

"A reasonable fee is 'one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys.'" *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  In determining the reasonable fee to which a prevailing party is entitled, courts first multiply a reasonable hourly rate by the number of hours reasonably expended on the litigation.  *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994).  This calculation is called the lodestar figure and "[t]here is a 'strong presumption' that this lodestar figure represents a reasonable fee." *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (quoting *Pennsylvania v.*

2

*Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).  Because of the "strong presumption" in favor of the lodestar figure, that figure should be modified "'only in certain "rare" and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings" by the court.  *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Pennsylvania*, 478 U.S. at 565).  The lodestar figures can be adjusted upward or downward, however, based on a twelve-factor test adopted by the Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5 (1989).[3]

To determine a reasonable billing rate, courts should "assess the 'prevailing market rate in the relevant community.'" *Adcock-Ladd*, 227 F.3d at 350 (quoting *Blum*, 465 U.S. at 895) (emphasis omitted).  "[T]he 'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record . . . ." *Adcock-Ladd*, 227 F.3d at 350.  "The appropriate rate, therefore, is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 618 (6th Cir. 2007).

The Sixth Circuit grants trial courts discretion to set a reasonable hourly rate, but has cautioned that courts should "provide an adequate explanation of the reasons for its award and the manner in which that award [is] determined." *Geier v. Sundquist,* 372

---

[3] The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Blanchard*, 489 U.S. at 91, n.5.

F.3d 784, 791 (6th Cir. 2004).  The reasonable number of hours spent does not include those which are "excessive, redundant, or otherwise unnecessary . . . ."  *Hensley v. Eckhart*, 461 U.S. 424, 434 (1983).

### B.    Hourly Rates

### 1.    The *Brown* Plaintiffs

The *Brown* plaintiffs are represented by Christopher Wiest and Richard Brueggemann, who each work in the Northern Kentucky area and seek to receive $275 per hour.   In his affidavit, Wiest avers that he received his law degree in 2004 and he typically charges clients in complex federal litigation "between $250 and $350 per hour."  Doc. 129-4, p.2.  In his affidavit, Brueggemann asserts that he received his law degree in 2004 and that his "rates vary, but can exceed $300 per hour depending on the matter and manner of compensation."  Doc. 129-3, p.2.  The hourly rate of both attorneys is also supported by an affidavit from Benjamin Dusing, a practicing lawyer in Covington, Kentucky, who asserts that "a billing rate of $275.00 per hour is well within the range of fees charged by lawyers with 8 to 9 years of federal litigation experience."  Doc. 129-5, p. 2.  Defendants have raised no explicit objection to the hourly rate sought by Wiest and Brueggemann.  Accordingly, the Court should find that a rate of $275 per hour is reasonable for attorneys in this geographic area possessing Wiest's and Brueggemann's skills and experience.

### 2.    The *Herbert* Plaintiffs

The *Herbert* plaintiffs are represented by Benjamin Carter and William Sharp, from Louisville, Kentucky; Dale Ho, from New York City; and M. Laughlin McDonald

from Atlanta.  Carter seeks to receive $200 per hour; Sharp seeks to receive $275 per hour; Ho seeks to receive $250 per hour; and McDonald seeks to receive $450 per hour.  Plaintiffs also seek to receive $100 per hour for the work performed by Molly Rugg, a paralegal.[4]

Carter's affidavit states that he graduated from law school in 2006 but the affidavit does not reflect the rate he typically charges.  Doc. 131-3.  Sharp's affidavit provides that he graduated from law school in 1999 but does not contain a statement regarding his typical rate, which is not surprising as he works for the ACLU.  Doc. 131-2.  Ho, who also works for the ACLU, states in his affidavit that he graduated from law school in 2004.  Doc. 131-5.  McDonald's affidavit provides that he graduated from law school in 1965, has argued three cases before the United States Supreme Court and has extensive voting rights litigation experience.  Doc. 131-4.  McDonald states that his requested $450 hourly rate "is consistent with, or below, the market rates of attorneys in the Atlanta area where [his] office is located."  *Id.* at p. 3.

Defendants generally object to all unreasonable fees.  However, the only specific objection to any attorney's requested rate pertains to McDonald's requested fee.  Defendants argue that "[p]laintiffs have not shown that the rates requested for their attorneys' fees—particularly the $450 per hour rate sought for Mr. McDonald—are reasonable, and any fee award should be reduced in light of the prevailing market rates in Kentucky."  Doc. 134, p.8, n.3.

Defendants correctly assert that, generally, an attorney fee award should be

---

4 Generally, a motion for attorney fees may properly include a request for work performed by a paralegal. *See, e.g., Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989).

5

based upon the rate typically charged in the area in which the action is pending, not the

area in which the attorney in question typically practices.  As the Sixth Circuit has

explained,

> A trial court, in calculating the "reasonable hourly rate" component
> of the lodestar computation, should initially assess the
> *prevailing market rate in the relevant community.*" *Blum,* 465 U.S. at 895,
> 104 S.Ct. 1541 (emphasis added). The Sixth Circuit has resolved that,
> when a counselor has voluntarily agreed to represent a plaintiff in an out-
> of-town lawsuit, thereby necessitating litigation by that lawyer primarily in
> the alien locale of the court in which the case is pending, the court should
> deem the "relevant community" for fee purposes to constitute the legal
> community within that court's territorial jurisdiction; thus the
> "prevailing market rate" is that rate which lawyers of comparable skill and
> experience can reasonably expect to command within the venue of the
> court of record, rather than foreign counsel's typical charge for work
> performed within a geographical area wherein he maintains his office
> and/or normally practices, at least where the lawyer's reasonable
> "home" rate exceeds the reasonable "local" charge.

*Adcock-Ladd*, 227 F.3d at 350.  In other words, "judges may question the

reasonableness of an out-of-town attorney's billing rate if there is reason to

believe that competent counsel was readily available locally at a lower charge or

rate." *Haddix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995).

Though McDonald has extensive experience in voting rights litigation, the

*Herbert* plaintiffs have not shown why it was necessary for them to retain

McDonald, given the presence of competent local counsel (including Sharp and

Carter, as well as the *Brown* plaintiffs' counsel).[5]  *See id*. ("In the case at bar we

---

5 The *Herbert* plaintiffs' counsel's requested rates, including that of McDonald, are supported by the
affidavit of Anthony Sammons, an attorney in Lexington, Kentucky.  Doc. 131-7.  Sammons offers his
opinion that "in the Eastern District of Kentucky, a billing rate of $450 for Laughlin McDonald is well within
the range of hourly rates charged by attorneys who possess comparable skill and experience . . . ." *Id.* at
p. 4.  However, Sammons cites no concrete cases from this Court in which an attorney has been awarded
$450 per hour.  Similarly, McDonald's affidavit cites only cases from Wyoming, South Carolina and South
Dakota in support of his requested fee.  Doc. 131-4, p. 3.

are persuaded that the fee petitioners failed to carry the initial burden of showing that it was necessary to resort to an out-of-town specialist. The record is devoid of any suggestion that local counsel made any attempt to investigate the availability of competent counsel in the local market. The petitioners seek to justify their choice of Ms. Alexander by pointing to her nationally recognized expertise in institutional reform litigation, as well as her familiarity with the case. But Section 1988 does not guarantee civil rights plaintiffs the best counsel in the country; it guarantees them competent counsel. Proof that Ms. Alexander has a national reputation for expertise in this kind of litigation does not constitute proof that her expertise was necessary in this phase of the present litigation.").

McDonald's requested rate is $175 more per hour than that sought by any other attorney in this case. In addition, McDonald's affidavit, which relies upon the hourly rate of attorneys with similar skills and experience in Atlanta, is not controlling as the Court's task is to determine the rate which attorneys with similar skills and experience would expect to receive in this geographic market.

Although it was not a voting rights case, in another recent complex case this Court awarded an attorney with thirty-five years' experience an hourly rate of $325, which was less than the attorney sought, because that rate is what attorneys of comparable skill and experience could reasonably expect to command in this area. *See Harold C. Wallace v. Midwest Financial & Mortgage Services, Inc., et al.*, Covington Civil Action No. 07-cv-131-DLB-JGW, Docket Entry 251 (Memorandum Opinion and Order of September 30, 2013)

(unpublished).[6]  The Court will similarly award McDonald $325 per hour, which is $50 more per hour than the rate awarded to any other attorney in this action. The Court concludes that the requested rates of Carter, Sharp, Ho and paralegal Rugg are proper indicators of what similarly experienced and skilled attorneys (and paralegals) in this geographic area should expect to receive.

### C.    Hours Expended

Having determined the proper hourly rate for counsel, the Court turns to the second part of the lodestar analysis—determining the number of hours each attorney reasonably spent on this litigation.  The *Brown* plaintiffs assert that Wiest spent 313.2 compensable hours and Brueggemann spent 98.2 compensable hours.  The *Herbert* plaintiffs assert that Carter spent 29.4 compensable hours; Sharp spent 99 compensable hours; Ho spent 23.5 compensable hours; McDonald spent 40.45 compensable hours; and Rugg spent 14.4 compensable hours.

### 1.    Standard of Review

"When determining the reasonable number of hours, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed."  *McCarthy v. Ameritech Pub., Inc.*, 289 F.R.D. 258, 263 (S.D.Ohio

---

6 Rates consistent with that sought by McDonald have recently been approved by the Southern District of Ohio.  *See, e.g., Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan*, 2014 WL 421312 (S.D.Ohio Feb. 4, 2014).  However, as this Court noted in *Wallace*, the rates awarded in this district are usually lower than those awarded in the Southern District of Ohio, even though the distance between Covington, Kentucky and Cincinnati is less than one mile.  Covington Civil Action No. 07-cv-131-DLB-JGW, Docket Entry 251 (Memorandum Opinion and Order of September 30, 2013) (unpublished).  The Court reiterates that the *Herbert* plaintiffs have not cited to *any* decisions from this Court in which an attorney was awarded the

2013) (quotation marks and citation omitted).  "Typically, attorney's fees are not awarded for overkill, duplications, or hours spent in the pursuit of perfection when reasonable efforts would suffice."  *Lee v. Javitch, Block & Rathbone, LLP*, 568 F.Supp.2d 870, 877 (S.D.Ohio 2008).  "The Supreme Court has instructed district courts to exclude fees that were not 'reasonably expended,' such as fees due to overstaffing or redundancy of work."  *Gratz v. Bollinger*, 353 F.Supp.2d 929, 937 (E.D.Mich. 2005) (quoting *Hensley*, 461 U.S. at 434).

The party seeking to recover fees must provide documentation "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."  *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (quotation marks and citation omitted).  In making its calculations, the Court is "expressly forbid[den] . . . from determining fees based on the success or failure of individual claims when the claims arise from a common core of facts or related legal concepts."  *American Canoe Ass'n, Inc. v. City of Louisa*, 683 F.Supp.2d 480, 489 (E.D.Ky. 2010) (citing *Hensley*, 461 U.S. at 448).  Also, a defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."  *City of Louisa*, 683 F.Supp.2d at 491 (quotation marks and citation omitted).

### 2.    Conferences Among Counsel

Defendants contend that "[t]he billings appear duplicative regarding time spent conferring among the plaintiffs' counsel regarding status and strategy

---

rate sought by McDonald.

conferences." Doc. 135, p. 11.  *See also* Doc. 132, p. 9 ("The Court should

subtract duplicative, unproductive, or excessive hours, as it appears that there

are duplicative bills, including billing for the time spent conferring among the

Plaintiffs' counsel, for status and strategy conferences."); Doc. 133, p.9 (same);

Doc. 136, p. 6 ("This Court should reduce any fees awarded for duplication and

padding, as counsel repeatedly billed for conferences among themselves.").  In

response, plaintiffs contend the conferences between counsel actually reduced

the amount of fees sought because, among other reasons, the conferences

resulted in the filing of one set of various documents for all plaintiffs instead of

one set of documents being filed on behalf of the *Brown* plaintiffs and a separate

set of documents being filed on behalf of the *Herbert* plaintiffs.  Indeed, the

*Brown* plaintiffs contend that "the conferences and coordination saved *hundreds*

*of hours*."  Doc. 137, p. 12.

    Duplication of services is a factor the Court should consider when

determining whether attorneys' claimed billable hours were reasonably spent.

*See, e.g., American Civil Liberties Union of Kentucky, Inc. v. Grayson County,*

*Kentucky*, 2008 WL 5101672, at *3 (W.D.Ky. Nov. 26, 2008) ("One factor the

Court should examine in determining the reasonableness of hours expended is

the potential duplication of services.") (internal quotation marks and citation

omitted).   However, "[w]hen multiple firms and multiple attorneys represent

multiple plaintiffs, the time they spend coordinating efforts is compensable

unless it is excessive."  *Hunter v. Hamilton County Bd. Of Elections*, 2013 WL

10

5467751, at *22 (S.D.Ohio Sept. 30, 2013).  In fact, "the '[u]se of one or more

lawyers is a common practice, primarily because it often results in a more

efficient distribution of work.'"  *Id.* (quoting *Gautreaux v. Chicago Housing

Authority*, 491 F.3d 649, 661 (7th Cir. 2007)).  "[C]onferences are reasonable and

necessary when more than one attorney is working on a case and the fact that

two timekeepers participate in a conference does not make their work

duplicative."  *Alloys Intern., Inc. v. Aeronca, Inc.*, 2012 WL 5495180, at *4

(S.D.Ohio Nov. 13, 2012).

Plaintiffs' attorneys have submitted sufficiently detailed logs for the hours

in question.[7]  Other than generically arguing the faulty premise that conferences

between various counsel are inherently not compensable, defendants have not

demonstrated how any particular conference was excessive or otherwise

improper.  The case relied upon by defendants to bolster their argument that

time spent conferencing between counsel is not compensable is readily

distinguishable.  In the case defendants rely on the court reduced the attorney

fee award based, in part, on the fact that attorneys *from the same firm* sought

compensation for thirty intra-office conferences which occurred before the

complaint was even filed.  *Cleveland Area Bd. Of Realtors v. City of Euclid*, 965

F.Supp. 1017, 1021 (N.D.Ohio 1997).   The conferences at hand involved

attorneys of different firms conferencing after the filing of the complaints.

It would have been both impossible and inadvisable for the attorneys in

---

7 Defendants have offered no specific, substantive argument that the billing records are incomplete or
insufficient.

these consolidated cases[8] to have efficiently and jointly presented plaintiffs'

claims without having conferenced with each other on a regular basis.  In short,

the Court has reviewed the logs submitted by all counsel (Docs. 129-3

(Brueggemann); 129-4 (Wiest); 131-2 (Sharp); 131-3 (Carter); 131-4

(McDonald); 131-5 (Ho)) and that review does not lead to a conclusion that any

of the conferences between counsel were excessive.[9]

### 3.    Time Spent Reviewing House Bill 1

In June 2013, the Court issued a scheduling order which required, inter

alia, any "final statements on contentions regarding plans passed during the

Extraordinary Legislative Session scheduled to commence on August 19, 2013"

to be filed by September 5, 2013.  Doc. 49, p.3.  On August 29, 2013, plaintiffs'

counsel submitted a joint motion to enter final judgment, which provided that

"after reviewing the newly-adopted House and Senate legislative maps and

conferring with their clients, Plaintiffs do not offer any objections to those

enacted (and presently operative) legislative districts."  Doc. 110, p. 2.

Plaintiffs seek to be compensated for the approximate total of 14.5 hours

various counsel spent reviewing and discussing the newly enacted redistricting

maps.  Defendants assert that plaintiffs should not be entitled to recover fees for

---

8 It should be noted that defendant Stumbo sought to consolidate the two actions (doc. 26), as did the
*Herbert* defendants (doc. 9 in the *Herbert* case); plaintiffs opposed consolidation.  Doc. 42.  So the
necessity for coordinating strategy sessions between counsel for the *Brown* plaintiffs and the *Herbert*
plaintiffs was brought about by defendant(s), not plaintiffs.  In addition, once the cases were consolidated
it was not improper for the *Herbert* plaintiffs' attorneys to spend time engaging in research and similar
litigation tasks regarding defenses raised by the Legislative defendants (who were not named in the
*Herbert* plaintiffs' complaint) because consolidation entailed all plaintiffs presenting a unified front.
9 Review of the billing logs also shows that the time claimed for conferences amongst counsel comprises
a small portion of the overall hours for which compensation is sought.

time counsel spent reviewing the new redistricting plan because the issue of the constitutionality of that plan is different than the issue underlying the cases at hand (whether the 2002 legislative districts were constitutionally permissible).

Defendants' assertion that counsel acted unreasonably by reviewing the new redistricting plan is belied by the Court's own order expressly giving plaintiffs time to raise objections to any new redistricting plan.  As the *Herbert* plaintiffs' cogently note in their reply brief, "[a]nalysis of HB 1 constituted work that a reasonable attorney would have engaged in within this litigation.  At the time that work was performed, the parties were obliged to raise any challenges to HB 1 in the second phase of this litigation.  Deciding whether (or not) to raise any challenges to HB 1 necessarily involved an extensive and thorough examination of those maps."  Doc. 138, p. 6.  *See also* the *Brown* plaintiffs' reply brief (Doc. 137, p. 5-6) ("The evaluation of HB 1 was an important consideration in this matter that was not a discrete claim.  Rather, it was part and parcel with evaluating not merely whether to mount a further challenge, but was also inextricably tied to: (1) moving for a final judgment entry, which was inextricably tied to the scheduling order in place in this matter (and the substance of that Motion), which required Plaintiffs to lodge any objections with the Court (or indicate they were not going to) . . . .").  The Court should reject defendants' contention that counsel is not entitled to any compensation for the time spent reviewing the new redistricting plan.

### 4.    Fees and Costs

42 U.S.C. §1973*l*(e) specifically provides that "[i]n any action to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." The *Herbert* plaintiffs paid an expert, William Cooper, a total of $4,250 during the course of this litigation, some of which is attributable to compensating Cooper for time spent examining the new redistricting plan. Defendants offer no concrete reason why Cooper's fees should not be recoverable under 42 U.S.C. §1973*l*(e), other than the generic assertion that plaintiffs are not entitled to recover anything for time and expenses incurred in evaluating the new redistricting litigation. See Doc. 134, p. 8-9. Because the expert fees are statutorily authorized and do not appear to be excessive, and because defendants have not shown any specific reason why the fees should not be paid, the Court should grant the *Herbert* plaintiffs' request to recover the $4,250.00 paid to Cooper, as well as the other costs and fees (totaling $4,940.83, inclusive of Cooper's fee, and including routine matters such as the filing fee, postage, travel, etc.) which were reasonably incurred in order to prosecute adequately the *Herbert* plaintiffs' claims.

Defendants likewise have not shown how the total of $1,516.42 in fees and costs claimed by the *Brown* plaintiffs are unreasonable and the Court's review of those modest costs (including $461.50 to purchase materials from the Kentucky Board of Elections in order for plaintiffs to determine if they should challenge the new redistricting legislation, as well as the filing fee, process service fees and other similar

14

costs typically incurred in litigation) does not lead to a conclusion that the costs were unreasonably incurred.  Therefore, the Court should require defendants to pay the entirety of the *Brown* plaintiffs' claimed costs.  *See, e.g., Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) ("Section 1988 permits district courts to award those incidental and necessary expenses incurred in furnishing effective and competent representation as part of the award of attorney fees.  Recoverable out-of-pocket expenses are those incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as [r]easonable photocopying, paralegal expenses, and travel and telephone costs.") (internal quotation marks and citations omitted).

### III.  Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that the Court should award the following fees and costs:

#### 1.  *Brown* Plaintiffs

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Wiest | $275 | 313.2 | $ 86,130.00 |
| Brueggemann | $275 | 98.2 | $ 27,005.00 |
| Costs | | | $  1,516.42 |
| **Grand Total** | | | **$114,651.42** |

### 2.    *Herbert* Plaintiffs

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Sharp | $275 | 99 | $ 27,225.00 |
| Carter | $200 | 29.4 | $ 5,880.00 |
| McDonald | $325 | 40.45 | $ 13,146.25 |
| Ho | $250 | 23.5 | $ 5,875.00 |
| Rugg (Paralegal) | $100 | 14.4 | $ 1,440.00 |
| Costs | | | $ 4,940.83 |
| **Grand Total** | | | **$ 58,507.08** |

Particularized objections to this Report and Recommendation must be filed with

the Clerk of Court within fourteen (14) days of the date of service or further appeal is

waived.  Fed. R. Civ. P. 72(b)(2); *see also U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir.

2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985).  A

general objection that does not "specify the issues of contention" is not sufficient to

satisfy the requirement of a written and specific objection.  *Miller v. Currie*, 50 F.3d 373,

380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir.

1991)).  Poorly drafted objections, general objections, or objections that require a

judge's interpretation should be afforded no effect and are insufficient to preserve the

right of appeal.  *Howard*, 932 F.2d at 509.  A party may respond to another party's

objections within fourteen days of being served with a copy of those objections.  Fed. R.

Civ. P. 72(b)(2).

     This the 9th day of May, 2014.

**Signed By:**

**J. Gregory Wehrman**

**United States Magistrate Judge**