UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| KENNY BROWN, individually and in his official capacity as the Boone County Clerk, *et al.*,<br><br>      Plaintiffs,<br><br>v.<br><br>STEVEN BESHEAR, *et al.*,<br><br>      Defendants. | Case No. 2:13cv00068<br><br>**Electronically filed** |
| MARTIN HERBERT, *et al.*,<br><br>      Plaintiffs,<br><br>v.<br><br>ALISON LUNDERGAN GRIMES, *et al.*,<br><br>      Defendants. | Case No. 3:13cv00025 |

### *BROWN* PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

  The *Brown* Plaintiffs submit this Response to the Objections submitted by the Secretary of State and the individual members of the Kentucky Board of Elections (collectively the "Board Defendants") to the Magistrate Judge's Report and Recommendation regarding the *Brown* Plaintiff's Motion for Attorney Fees and Costs [R.E. #142].

  The Objections of the Board Defendants are boiled down to essentially one argument: that the fees and costs awarded should be reduced insofar as it included time that counsel spent litigating against the Legislative Defendants.

1

1. <u>Reduced fees due to the conduct of the legislative defendants[1]</u>

It was the *Brown* Plaintiffs understanding that the issue raised by the Board Defendants had already been asserted – and rejected – by the Court in its entry and decision of January 27, 2014, where this Court determined that "apportionment is not appropriate under these circumstances … it would be inappropriate for this Court to apportion the plaintiffs' attorney fees under the circumstances presented." (Jan. 27, 2014 Decision and Order at pp. 12-13).

In a flawed attempt to support its proposition that a reduction is necessary, the Board Defendants cite *Green v. Torres*, 361 F.3d 96, 100 (2d Cir. 2004). *Green*, however, is distinguishable. *Green* involved a case where nine separate claims were asserted against various parties in connection with a false arrest situation, and five of those claims were withdrawn on the eve of trial. *Id.* at 98. The *Green* Court decided something completely different than what is at issue in this case, *i.e.*, – complete success on the substantive <u>claims</u>, with certain <u>parties</u> that are immune who were dismissed. In contrast, *Green* involved the failure of many of the substantive <u>claims</u>. Importantly, the *Green* court noted that, "while the voluntary dismissal or withdrawal of *inflated* claims may justify a fee reduction, the same will not be true of claims pursued in good faith, but later withdrawn for valid reasons, such as the discovery of additional evidence." *Id.* Here, there are no inflated claims. There was an equal protection, "one person, one vote," violation – which this Court determined existed, and for which this Court entered a merits based, permanent injunction. *Green* is therefore inapposite.

Contrary to the Board Defendants' erroneous assertions, the law is well set out that the attorneys' fee award should not reduced merely because Plaintiffs dismissed some of the

---

[1] The *Brown* Plaintiffs have not responded to the arguments raised by the Board Defendants as to the fee request regarding the Herbert Plaintiffs, except to note that the Board Defendants sought consolidation, and Speaker Stumbo admitted that he would have sought to intervene in the *Herbert* case if consolidation were granted – again making these fees and the efforts of the Herbert Plaintiffs and their counsel to consolidate efforts to eliminate duplication in the best interests of all parties.

defendants: "Where, as here, a plaintiff's claims against the defendants arise from a common core of facts and related legal theories, the fact that the plaintiff does not prevail against all of the defendants is not a basis for reducing the plaintiff's fee award." *Welton v. Osborn*, 124 F. Supp. 2d 1114 (S.D. Ohio 2000); *Dowling v. Litton Loan Servicing, LP*, 320 Fed. Appx. 442, 448 (6th Cir. 2009); *Wayne v. Village of Sebring*, 36 F.3d 517, 532 (6th Cir. 1994); and, *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996).  As was the case in *Wayne*, "Plaintiffs' claim for attorney fees should not be reduced simply because some indeterminate amount of time was expended on the prevailing individual defendants."  The Sixth Circuit was clear in *Wayne* that "the lower court erred as a matter of law in rejecting some of the hours claimed on the ground that they must have been spent on unsuccessful claims against dismissed defendants." 36 F.3d 517, 532.  Thus, where "the plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim by claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."

    Put another way, had the arguments raised by the legislative defendants prevailed, can the Board Defendants honestly claim or argue that they would not have benefitted?  Similarly, the Board Defendants did not concede unconstitutionality (though they could have, at any time) – instead, taking the same stance as the legislative defendants, and sitting back with tacit approval while their co-defendants filed barrages of multiple motions, increasing the hours required by Plaintiffs' counsel to prosecute the case.

3

The Board Defendants argue that "even after recognizing that the Legislative Defendants were entitled to immunity, counsel for the Brown Plaintiffs continued to devote significant time to pursuing claims against them." (Board Response at 5, RE#142). That assertion is utterly false. On 7/11/2013, at an extremely early juncture in this case, the *Brown* Plaintiffs sought to dismiss the claims against the legislative Defendants. [RE#64]. On 7/12/2013, the *Brown* Plaintiffs sought to dismiss the LRC. [RE#69]. On 7/25/2013, the LRC opposed this attempt ("the LRC does not agree that it should be dismissed completely as a party". [RE #73, p 1.]. So did President Stivers ("Senate President Stivers furthermore has a sincere interest in being able to continue to participate in any litigation involving the constitutionality of proposed or enacted Senate redistricting plans and therefore also opposes the dismissal of Speaker Stumbo and Senate President Stivers from the litigation"). [RE #74]. As did the Speaker. [RE #79]. *See, also*, Tr. Proceedings, 6/21/13, p. 64 (Speaker Stumbo prepared to intervene in Herbert to seek a stay).

More to the point, the Board Defendants themselves, in response to these efforts, expressly stated that "the Legislative Defendants are directly interested in the subject matter of this litigation and may be necessary parties to the extent any relief ordered by the Court might require their participation" [RE#78, at 3]. The Board Defendants then concluded that "Defendants therefore respectfully suggest that if the Court anticipates compelling any action by or otherwise seeking participation from the Legislative Defendants in connection with these proceedings, their dismissal at this time may be premature." [RE#78, at 4]. Having argued to keep the Legislative Defendants as part of the litigation, the Board Defendants cannot now fairly argue that their being in the case somehow justifies a reduction in Plaintiffs' attorneys' fee award.

It is thus clear that keeping the Legislative Defendants in the case was not so much the desire of the *Brown* Plaintiffs. In fact, as the record shows, once it became clear that the

4

Legislative Defendants were not waiving their immunity, both the Legislative Defendants and the Board Defendants overtly sought to keep them in as parties.

A single issue – the continued use of the 2002 maps – was at the center in this case. *See Corder v Gates*, 947 F2d 374 (9th Cir. 1991) (inappropriate to apportion when all claims against parties arose form same issue). Case law is clear that 42 USCS § 1988 fee awards based on non-fractionable claim may not be apportioned – or reduced – because of an immune "losing party," who cannot be made to pay, and non-immune losing party that is jointly and severally liable for former's share of attorney's fee award. *Turner v D.C. Bd. of Elections & Ethics* (2004, App DC) 359 US App DC 332, 354 F3d 890, reh den (2004, App DC) 2004 US App LEXIS 4658 and reh, en banc, den (2004, App DC) 2004 US App LEXIS 4659 and cert den (2004) 543 US 817, 125 S Ct 55, 160 L Ed 2d 24.

Nor is a reduction in the fee appropriate due to the presence of immune Defendants who engaged in extremely litigious conduct. As the *Turner* Court noted, "an award of attorney's fees under § 1988 'is not meant as a 'punishment' for 'bad' defendants who resist plaintiffs' claims in bad faith[,] [but] is meant to compensate civil rights attorneys who bring civil rights cases and win them," and thus reduction of a fully compensatory fee was not appropriate even though certain of the Defendants had immunity. Furthermore, "in light of *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 739, … because the Board continued to enforce the Barr Amendment throughout Turner's § 1983 litigation, it is irrelevant for purposes of § 1988 that in court the Board supported Turner's constitutional challenge to the [legislation];" and "the immunity of one defendant does not reduce the liability of a non-immune co-defendant." 354 F.3d 890, 897-898.

5

The *Turner* Court likewise noted that "in order to serve the remedial purposes of the Civil Rights Act, 'a number of courts have upheld the imposition of joint and several liability for a fee award where there existed a question as to whether the fee would be collectible from one of the defendants.'" *Id.* The *Turner* Court likewise was clear that "'[m]ere' enforcers of unconstitutional laws may be held liable for attorneys' fees even if their involvement in the litigation has been minor or they have argued that their enforcement actions are improper and have lobbied for the underlying law to be changed." *Id.* The *Turner* Court concluded that "Section 1988 does not permit a court to inquire into defendants' comparative fault where to do so obstructs Congress' purpose of compensating successful private attorneys general."

As the Court noted in *Hastert v. Illinois State Bd. of Election Comm'rs*, 28 F.3d 1430 (7th Cir. 1993), "the State Board may be held liable for fees to the prevailing parties plaintiff, whose status as such depends upon the relative success of their position in relation to the success of the other plaintiffs." 28 F.3d 1430. The *Hastert* Court continued: "[i]t is of no consequence that the State Board of Elections played no active role in the proceedings and agreed to enforce whatever plan the district court adopted, since fees may be taxed even against entities whose role is limited to enforcement of regulations they played no role in promulgating." *Id.* The *Hastert* Court concluded that "[n]or is the Board's putative 'good faith' a special circumstance justifying a refusal to award fees." *Id.*

Another fundamental misapplication is present in the Board Defendants' motion – each of the Defendants in this matter, sued in their official capacities, are agents of the Commonwealth of Kentucky. *Ky. v. Graham*, 473 U.S. 159, 105 S. Ct. 3099; 87 L. Ed. 2d 114 (1985). Only in an official-capacity action is a plaintiff who prevails entitled to look for relief, both on the merits and for fees, to the governmental entity. *Id.* Thus, all the Defendants,

6

including the legislative Defendants whose litigation tactics caused a significant amount of the fees to be incurred – are agents of that same Commonwealth.

***Each Defendant*** refused to concede the issue of unconstitutional districts, prompting the significant and vast majority of the hours incurred in obtaining the judgment in question.  [R.E. #50 at 66:14-68:20 (Secretary of State refused to concede), 69:7-23 (Governor refused to concede), 70:3-75:1 (President Stivers refused to concede); R.E. #84 at 6-7 (Speaker refused to concede); R.E. #86 at 3-6, 9 (President Stivers refusal to concede); R.E. #75 at 9-21, 33-38 (LRC refused to concede)].  This, of course, prompted discovery, it prompted consultation with experts, and it prompted significant motion practice.

Neither the Board Defendants, nor the Governor, are blameless in terms of the fees involved.  These parties even refused to concede to the population data, requiring yet more discovery work.  Had these parties consented, early on, to an injunction regarding the continued use of the 2002 maps, the legislative defendants could have been dismissed, saving the parties, and the Court, significant time and expense.  They did not.  And their silence, in the course of persistent and ongoing overly litigious activities of the legislative defendants was a deafening ratification of the litigious approach taken by their co-Defendants.

Case law is clear that where significant hours are expended by Plaintiffs due to the litigation tactics of the Defendants, the Defendants cannot then be heard to complain.  *Torres v. Gristede's Operating Corp.*, 2012 U.S. Dist. LEXIS 127890 (S.D. NY. 2012) ("[t]he Court notes that much of the work performed by Plaintiffs was due to Defendants' choice of litigation tactics. Given the Defendants' vigorous approach to litigating this case, they cannot now complain as to the amount that Plaintiffs were forced to expend in response."); *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (observing that "hours required to litigate even a simple matter

7

can expand enormously" where "attorney is compelled to defend against frivolous motions and to make motions to compel [discovery] compliance"); *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000) ("defendants' obstructive and dilatory litigation tactics" gave rise to the fees incurred). The point, however, is not to point a finger about the fee award, but rather to point out that the litigation in this case was contentious, required a significant amount of time, and that the hours spent and claimed are both reasonable and necessary.

More recently, in *Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013), the Sixth Circuit Court of Appeals affirmed the District Court's determination that no reduction was warranted, even though the Plaintiffs did not succeed on all of their claims, because it was appropriate to determine the degree of success obtained, and because often times attorney fees arise from inter-related claims on a common nucleus of operative facts.

"[A] reduction in attorney fees [awarded to a prevailing plaintiff] is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Isabel v City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005). Specifically, a court should not measure a plaintiff's success simply by using a ratio of successful claims to claims raised. *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 421 F.3d 417, 423 (6th Cir. 2005). Indeed, the Sixth Circuit has "repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 554 (6th Cir. 2008) (quoting *Deja Vu*, 421 F.3d at 423). Instead, "[w]hen claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Deja Vu*, 421 F.3d at 423 (internal quotation marks omitted). This is because when several claims arise from a common core of facts, "[m]uch of

8

counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). Instead, when claims "involve a common core of facts" or are "based on related legal theories," the district court's rejection of certain grounds is not a sufficient reason for reducing a fee. *Hensley*, 461 U.S. 424, 435.

2.  <u>The Report and Recommendation appropriately set the fees</u>

The Report and Recommendation appropriately calculated the lodestar amount; appropriately determined the prevailing market rates based on the evidence, and appropriately dealt with the arguments of the Board Defendants and Governor. It is correct in law, and fact and Defendants do not challenge it.

### III.    CONCLUSION

Plaintiffs in the *Brown* matter have demonstrated that they are prevailing parties. Using the lodestar method, as required, they have further documented their entitlement to $113,135.00 in attorney fees, and $1,516.42 in costs. The objections of the Board Defendants should be overruled, and the decision of the Magistrate Judge adopted. The *Brown* Plaintiffs request that post-judgment interest be included in the final entry.

Respectfully submitted,

s/ Christopher D. Wiest
Christopher D. Wiest (KBA 90725)
Chris Wiest, Atty at Law PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513-257-1895 (v)
chriswiestlaw@yahoo.com

Rick Brueggemann (90619)
E. Jason Atkins (88044)
Hemmer DeFrank, PLLC
250 Grandview Dr.
Fort Mitchell, KY 41017
859/578-3855 (v)
rbrueggemann@hemmerlaw.com

*Counsel for Brown Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on May 27, 2014, I electronically filed this *Brown* Plaintiffs' Motion for Attorney Fees with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following to all of the other counsel of record in this matter.

s/ Christopher D. Wiest
*Counsel for the Brown Plaintiffs*

10